John D. Klinedinst, Bar No. 86254
Gregor A. Hensrude, Bar No. 226660
Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
ghensrude@klinedinstlaw.com

Attorneys for Defendant
TOM COVERSTONE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT A. FLEMING,<br>Plaintiff,<br>v.<br>TOM COVERSTONE,<br>Defendant. | Case No. 3:08-cv-00355 WQH-NLS<br>**DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**<br>Date: July 21, 2008<br>Time: 11:00 a.m.<br>Courtroom: 4<br>Judge: William Q. Hayes<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: February 22, 2008<br>Trial Date: None set |

///

///

///

///

///

///

///

///

///

///

///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

III. LEGAL STANDARD ..... 4

IV. FLEMING'S SECOND AND THIRD CAUSES OF ACTION ARE SUBJECT TO SECTION 425.16 ..... 5

V. FLEMING CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON THE SECOND AND THIRD CAUSES OF ACTION ..... 7

A. The Second and Third Causes of Action are Barred by Section 47(b) ..... 7

B. Fleming Cannot Establish a Prima Facie Case for His Second Cause of Action ..... 9

C. Fleming Cannot Establish Prima Facie Case for His Third Cause of Action ..... 10

1. A claim for duress fails where the defendant is threatening to do what he or she has a right to do. ..... 11

2. The threatened claim must be false in order to support a claim for duress ..... 11

3. One cannot bring a civil action for "attempted" duress where he or she did not lose any money or other valuable right as a result of the alleged duress ..... 12

VI. AN AWARD OF ATTORNEYS' FEES IS MANDATORY ..... 12

VII. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aronson v. Kinsella*,
58 Cal. App. 4th 254, 270 (1997) ....................9

*Blanchard v. DIRECTV, Inc.*,
123 Cal.App.4th 903, 918-919 (2004) ....................6, 8, 9

*Briggs v. Eden Council for Hope & Opportunity*,
19 Cal.4th 1106, 1115 (1999) ....................6

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
47 Cal.App.4th 777, 784 (1996) ....................6

*Equilon Enterprises v. Con-sumer Cause, Inc.*,
29 Cal.4th 53, 67 (2002) ....................5

*Eye Laser Care Center, LLC v. MDTV Medical News Now, Inc.*,
2007 U.S. Dist. LEXIS 4844 at *12-14 (S.D. Cal. 2007) ....................9

*Furhman v. California Satellite Systems, Inc.*,
179 Cal.App.3d 408, 426 (1986) ....................10, 11, 12

*Ketchum v. Moses*,
24 Cal.4th 1122, 1131 (2001) ....................12

*Knoell v. Petrovich*,
76 Cal.App.4th 164, 169 (1999) ....................9

*Navellier v. Sletten*,
29 Cal. 4th 82, 89-90 (2002) ....................6

*Neville v. Chudacoff*,
160 Cal.App.4th 1255, 1262 (2008) ....................6

*Rohde v. Wolf*,
154 Cal.App.4th 28, 35 (2007) ....................4, 6, 9

*Rubin v. Green*,
4 Cal.4th 1187, 1193 (Cal. 1993) ....................7, 8

*Sacramento Brewing Co. v. Desmond, Miller & Desmond*,
75 Cal.App.4th 1082, 1089 (1999) ....................7

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*,
473 F.Supp.2d 1083, 1088 (S.D. Cal. 2007) ....................8

*Silberg v. Anderson*,
50 Cal. 3d 205, 212 (1990) ....................7, 10

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

*Taus v. Loftus*,
40 Cal.4th 683, 703 (2007) ....................5, 7, 9

*Thomas v. Fry's Electronics, Inc.*,
400 F.3d 1206, 1206-1207 (2005) ....................5

*United Professional Planning, Inc. v. Superior Court*,
9 Cal.App.3d 377, 395 (1970) ....................11

**Statutes**

*Cal. Code of Civ. Proc.* section 425.16, subd. (b)(2)....................5

*Cal. Evid. Code* § 952 ....................9

California Code of Civil Procedure section 425.16, subdivision (b)(1) ....................4, 5

*California Code of Civil Procedure* section 425.16, subdivision (e)(2)....................5

Civil Code section 47(b) ....................1, 7, 13

Code of Civil Procedure section 426.16 ....................1

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

# I.

# INTRODUCTION

The second and third causes of action must be dismissed pursuant to California Code of Civil Procedure section 426.16 (the "anti-SLAPP" statute) because both are barred as a matter of law. There can be no dispute that the representations and negotiations in question cannot form the basis for liability based upon the litigation privilege, codified in California as Civil Code section 47(b). Moreover, even if such allegations were admissible, Plaintiff would be unable to demonstrate a probability of prevailing, as he is required to do, because he has neither facts, nor even allegations, to *suggest* that a tort was committed by Defendant. Consequently, this motion should be granted and, pursuant to statute, attorneys' fees awarded.

# II.

# STATEMENT OF FACTS

In late January of 2008, Hoyt A. Fleming (Fleming) and Tom Coverstone (Coverstone) agreed to negotiate GMT Management Co.'s potential purchase of a patent portfolio purportedly owned by Fleming. [See Declaration of Tom Coverstone ("Coverstone Declaration") at ¶ 3] At the time, Coverstone was negotiating on behalf of GMT Management Co. [See Coverstone Declaration at ¶ 4] The two had discussions about the patent and its value and Fleming told Coverstone that a patent sought by Uniden was rejected because it could not overcome the claims made in Fleming's patent portfolio, and that Escort as well had a patent blocked by the Fleming patents. [See Coverstone Declaration at ¶ 7] This obviously contributed significantly to the value of the patents, especially as the companies that were (allegedly) unable to overcome the Fleming patents were two of the biggest radar detector manufacturers in the world.

Fleming and Coverstone then agreed to negotiate a purchase-and-sale of the patent. [See Coverstone Declaration at ¶¶ 3-6; Ex. A: 1/22/08 e-mail (1:31 p.m.); Ex. B: 1/22/08 e-mail (6:11 p.m.)] As part of their agreement to negotiate, Coverstone gave Fleming a $10,000 deposit which was, *according to Fleming*, to compensate Fleming for

agreeing not to sell the patents to someone else during the due diligence period. [First Amended Complaint ¶ 17] Coverstone did not intend for that agreement to be an enforceable purchase and sale agreement. [See Coverstone Declaration at ¶ 6] Both parties contemplated that if the due diligence went well, they would have their attorneys draft the necessary documents. [Ex. A: 1/22/08 e-mail (1:31 p.m.)]

As with all patent purchases, Coverstone had to conduct his own due diligence before he could agree to the purchase. [See Coverstone Declaration at ¶ 6] As part of this due diligence, he learned that some of the representations, specifically including the representation about the patent causing the Uniden patent to be denied, were untrue. After having learned that to be the case, based upon the public records of the United States Patent and Trademark Office, and informing Fleming, Fleming still insisted that he believed he was right. [Ex. C: 2/6/08 e-mail] Ultimately, however, he did concede that he was incorrect. [Ex. D: 2/7/08 e-mail] Consequently, the portfolio was not worth anywhere close to Fleming's $1,000,000 asking price.

Other material and significant terms of the initial deal memorandum also changed as well. For example, the transaction initially contemplated Fleming giving 10% of the patent to a church, Vineyard Boise, and then Coverstone paying the church 10% of the purchase price. [Ex. A: 1/22/08 e-mail (1:31 p.m.)] In that transaction the sellers of the patent would be Fleming, his wife, and the church. But that tax avoidance scheme turned out to be unlawful per Internal Revenue Service guidance, so Fleming changed the proposed deal to a "straight" purchase and sale *with a higher price*, which Coverstone never agreed to. [See Coverstone Declaration at ¶ 8]

Based on these material changes, and other circumstances related to the negotiations, Coverstone offered to purchase the portfolio for a smaller down payment plus a percentage of the net interest (after attorneys' fees and costs) in any proceeds from infringement litigation, if any occurred. [Ex. E: 2/13/08 e-mail] That way, if the patent really had the value Fleming asserted that it did, he could still get the same purchase price, but if Coverstone was correct, he would not have to overpay. Coverstone noted

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

that if Fleming was not interested in this offer, he would need to return the deposit and they would cancel the transaction. [Ex. E: 2/13/08 e-mail] This offer was rejected, and Coverstone decided that he did not want to purchase the portfolio. [See Coverstone Declaration at ¶¶ 9, 10] Thereafter, Coverstone requested that Fleming return the $10,000 deposit. [Ex. F: 2/14/08 e-mail]

In response to Coverstone's request, Fleming took the position that he was entitled to keep the deposit and asked Coverstone to provide him with "a credible legal analysis that indicates why [he] should refund the deposit . . . ." [Ex. G: 2/15/08 e-mail (10:31 a.m.)] That same day, Coverstone responded by setting forth his basis for asking that the deposit be returned. [Ex. G: 2/15/08 e-mail (2:24 p.m.)] In his response, Coverstone asserted that Fleming had committed fraud by mischaracterizing the portfolio, the prior art, and the file histories. [Ex. G: 2/15/08 e-mail (2:24 p.m.)] Coverstone also asserted that Fleming committed ethical violations because he was acting as Coverstone's attorney when he committed the fraud. [Ex. G: 2/15/08 e-mail (2:24 p.m.)]

Rather than return the deposit, Fleming said that he had not violated any ethical rules, and told Coverstone that he was going to keep the deposit and seek specific performance. [Ex. G: 2/15/08 e-mail (4:22 p.m.)] He also told Coverstone to direct any future correspondence to his current litigation counsel. [Ex. G: 2/15/08 e-mail (4:22 p.m.)]

At this point, Coverstone determined that he would need to file a lawsuit to recover the $10,000 deposit. [Coverstone Declaration at ¶ 10] He spoke with his litigation attorneys. [Coverstone Declaration at ¶ 11] However, he decided to give Fleming one more chance to return the deposit before he filed his lawsuit. To that end, Coverstone again set forth his position that Fleming had violated his duties as Coverstone's attorney, that Fleming misrepresented material facts related to the portfolio and competing patents and materially changed the terms of the purchase and sale. [Ex. H: 2/15/08 e-mail (7:30 p.m.)] Coverstone offered to drop his claims against Fleming if Fleming would return the deposit. As part of his offer, he suggested that they sign mutual

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

releases. [Ex. H: 2/15/08 e-mail (7:30 p.m.)] He then ended by giving Fleming time to think about his offer over the weekend. [Ex. H: 2/15/08 e-mail (7:30 p.m.)]

Initially, Fleming agreed to return the deposit and execute mutual releases (Ex. I: 2/16/08 e-mail (10:17 a.m.), but little did Coverstone know that Fleming was actually filing a lawsuit against him that day, while ostensibly offering a settlement. [Ex. J: Idaho Complaint; Request for Judicial Notice] After the lawsuit had been accepted by the Court (the very next business day), Fleming "changed his mind" and decided not to settle. [Coverstone Declaration at ¶ 10] Less than one week later, Fleming filed this lawsuit with a complaint identical to that filed in Idaho.

Throughout all of this correspondence with Fleming, Coverstone said nothing that was untruthful in any way. [Coverstone Declaration at ¶ 12] Instead, he was setting forth the facts related to what had transpired over the past month. This includes Coverstone's conversations as part of his due diligence; he never stated anything negative about Fleming or the patents during those conversations. [Coverstone Declaration at ¶ 11] While Coverstone did contact his attorneys related to this dispute, he never spoke with anyone else about these matters. [Coverstone Declaration at ¶ 11]

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

## III.

## LEGAL STANDARD

Pursuant to California Code of Civil Procedure section 425.16, subdivision (b)(1), a litigant may move to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue . . . ." Such acts include "any written or oral statement or writing made *in connection with* an issue under consideration or review by a . . . judicial body . . ." *Cal. Code of Civ. Proc.* section 425.16, subd. (e)(2), emphasis added. "Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." *Rohde v. Wolf*, 154 Cal.App.4th 28, 35 (2007). While anti-SLAPP motions

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

arise out of the California Code of Civil Procedure, they are unquestionably available to litigants in federal court. *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1206-1207 (2005).

Courts engage in a two step process in applying the anti-SLAPP statute. "'First, the court decides whether the [moving party] has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the [complaining party] has demonstrated a probability of prevailing on the claim.'" *Taus v. Loftus*, 40 Cal.4th 683, 703 (2007), original omission, quoting *Equilon Enterprises v. Con-sumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). If the complaining party cannot show a probability that he or she will prevail, the court should grant the motion to strike. *Cal. Code of Civ. Proc.* section 425.16, subd. (b)(1). In analyzing whether the moving party has met its burden of showing that the suit arises from protected activity, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Cal. Code of Civ. Proc.* section 425.16, subd. (b)(2).

**IV.**

**FLEMING'S SECOND AND THIRD CAUSES OF ACTION ARE SUBJECT TO SECTION 425.16**

Fleming's second and third causes of action are based on the statements Coverstone set forth in the e-mail correspondence sent only to Fleming that related to the purchase-and-sale of the portfolio. Because all of those statements (1) were made in anticipation of litigation and (2) are directly related to the substantive issues of the dispute, they are subject to section 425.16 special motion to strike.

*California Code of Civil Procedure* section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made *in connection with* an issue under consideration or review by a . . . judicial body . . . ." (italics added) And, statements made in connection with anticipated litigation are considered to be "under consideration or review by a . . . judicial body" and are subject to a special motion to strike. *Neville v.*

*Chudacoff*, 160 Cal.App.4th 1255, 1262 (2008); See *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1115 (1999).

Here, there is absolutely no doubt that the communications in question were related to the contemplated (and now actual) litigation, and addressed only those issues. [Ex. G: 2/15/08 e-mail (2:24 p.m.) ("I will agree to release and waive my potential claims against you and your law firm provided it is a mutual waiver . . . . Otherwise, I will be forced to consider my other options."), ("If we cannot resolve this issue now, then I will have you communicate with my litigation attorneys."); Ex. G: 2/15/08 e-mail (4:22 p.m.) (Fleming directs Coverstone to send all future correspondence to Fleming's litigation attorneys); Ex. H: 2/15/08 e-mail (7:30 p.m.) ("I am willing to let this be dropped. . . . And if you send the 10k back . . . I am willing to sign a mutual release."), ("I will need to hear back from you on Monday so that I can plan my course.")] Mr. Coverstone, as is obvious from the text of these messages, was acutely aware of the fact that he (or, as it turns out, Fleming) would be filing litigation if the settlement discussions failed. [Coverstone Declaration at ¶ 10] In fact, as of the last messages, the lawsuit had already been filed, or would be filed within 24 hours. [Ex. J: Idaho Complaint] It could be no more imminent or contemplated than that.

The courts have decisively and repeatedly held that communications such as these are subject to anti-SLAPP scrutiny. *Navellier v. Sletten*, 29 Cal. 4th 82, 89-90 (2002) (claims of fraud associated with settlement negotiations were subject to section 425.16); *Rohde v. Wolf*, 154 Cal.App.4th 28, 37 (2007) (defendant's prelitigation communications that he would take appropriate action if his demands were not met were subject to section 425.16); *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 918-919 (2004) (defendant's demand letter "sent in advance of, or to avoid, litigation" to vindicate its rights was subject to section 425.16); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 784 (1996) (defendant's communication to private citizens related to anticipated action were subject to section 425.16). Thus, there is no doubt that the anti-SLAPP statute applies.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

V.

**FLEMING CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON THE SECOND AND THIRD CAUSES OF ACTION**

Because the anti-SLAPP statute applies, the burden now shifts to Fleming to establish a probability of prevailing, a burden he cannot bear. See *Taus v. Loftus*, 40 Cal.4th 683, 703 (2007). In fact, both the second and third causes of action are barred as a matter of law for several reasons.

First, both the allegedly defamatory statements, and the statements that purportedly constitute extortion, are absolutely privileged as being pre-litigation settlement discussions.

Second, as to both causes of action, there are not even the requisite factual *allegations*, much less the existence of proof sufficient to demonstrate a probability of prevailing. And, as noted above, it is Fleming that must so prove.

**A. The Second and Third Causes of Action are Barred by Section 47(b)**

Fleming cannot even establish a *possibility* of prevailing, much less a probability, because the second and third causes of action are barred by the litigation privilege, *Cal. Civ. Code* section 47 subd. (b).

"For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as *section 47(b)*." *Rubin v. Green*, 4 Cal.4th 1187, 1193 (Cal. 1993). To be protected, the communication must have "some connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990). The privilege has been applied quite expansively and "should be denied only where [the communication] is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt its irrelevancy." *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal.App.4th 1082, 1089 (1999). The privilege is also "applicable to any communication . . . and all torts except malicious prosecution." *Silberg*, 50 Cal. 3d at 212 (citations omitted).

///

As would be indicated by the broad method in which the privilege is to be interpreted, the California courts have also been clear that section 47(b) includes communications made in a pre-litigation context. See *Rubin*, 4 Cal.4th at 1194 (1993); *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 919, (2004); *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F.Supp.2d 1083, 1088 (S.D. Cal. 2007) quoting *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 919 ("if the statement is made with a good faith belief in a legally viable claim and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. If it applies, the privilege is absolute.").

All of Coverstone's statements, taken together, are pre-litigation demands for the return of the deposit in exchange for a mutual release. The statements are also directly related to grounds for either invalidating the purported contract or establishing that no contract ever existed. [Ex. H: 2/15/08 e-mail (7:30 p.m.) ("[E]ven if there was an agreement – which there was not – it would have been based on fraud in the inducement. You materially misrepresented key facts related to your patents and competing patents.")] Further, Coverstone's claim that Fleming had acted fraudulently was offered as grounds for the return of the deposit. [Ex. G: 2/15/08 e-mail (2:24 p.m.) ("You mischaracterized your patents, the prior art and the file histories. You also did not disclose material facts relating the same. . . . Please send my $10,000 to the address below by February 20th. If you agree to return the $10,000, I will agree to release and waive my potential claims against you . . . .")] Coverstone's statements easily meet the "*some* relation" requirement because they are *directly* related to issues that will arise if this lawsuit proceeds.

Additionally, all of Coverstone's statements were made with a good faith belief that he had a legally viable claim to recover the $10,000 deposit, and make a claim for fraud. [Coverstone Declaration at ¶ 12] At the time he made the statements, Coverstone was seriously contemplating litigation and had already contacted litigation counsel. [Coverstone Declaration at ¶¶ 10, 11] In light of the dispute over the validity of the purported contract and Fleming's refusal to return the deposit, Coverstone was not only

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

seriously contemplating litigation, litigation was actually imminent. In fact, the first lawsuit was filed just hours after Coverstone gave Fleming the weekend to consider his offer and before the negotiations had ended.

In such circumstances, the federal and state courts have uniformly applied the litigation privilege. *Eye Laser Care Center, LLC v. MDTV Medical News Now, Inc.*, 2007 U.S. Dist. LEXIS 4844 at *12-14 (S.D. Cal. 2007) (threats of litigation if demands were not met were subject to section 47(b) privilege); *Rohde v. Wolf*, 154 Cal.App.4th 28, 37 (2007) (defendant's pre-litigation communications that he would take appropriate action if his demands were not met were subject to section 47(b) privilege); *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 918-919 (2004) (defendant's pre-litigation demand letter was subject to section 47(b) privilege); *Knoell v. Petrovich*, 76 Cal.App.4th 164, 169 (1999) (defendant's prelitigation demand letter alleging forgery was subject to section 47(b) privilege); *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270 (1997) (holding defendant's "prelitigation demand letter is precisely the type of statement that the litigation privilege is intended to protect").

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

Therefore, Fleming's second and third causes of action are absolutely barred, as a matter of law.

**B. Fleming Cannot Establish a Prima Facie Case for His Second Cause of Action**

Even if section 47(b) were inapplicable to the second cause of action, Fleming cannot possibly establish a prima facie showing, much less a probability of prevailing, because he cannot establish publication or falsity. Both are required elements of a cause of action for defamation: "[t]he tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (citations omitted).

While Coverstone has spoken with counsel regarding the statements he made to Fleming, all of those conversations are strictly privileged under the attorney-client privilege. *Cal. Evid. Code* § 952. And, Coverstone has not published any statements, true

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

or false, to third parties regarding Fleming's character, truthfulness, or veracity. [Coverstone Declaration at ¶ 11] He has also never published any accusations, true or false, of illegal conduct or legal malpractice to third parties. [Coverstone Declaration at ¶ 11]

Additionally, all of the statements included in the correspondence between Coverstone and Fleming were true in all respects.[1] For example, it is true that Fleming made false representations about the patent portfolio and competing patents in order to persuade Coverstone to purchase the portfolio. *He even admitted that his representation about the Uniden patent was false*. Further, Fleming was representing Coverstone at the same time they were disputing the deposit and the validity of the contract which resulted in a conflict situation. Even if Coverstone had published his statements to third parties—which he did not—Fleming will never be able to establish that the statements were false, *because they were not.*

Because there was never any publication to third parties and because all of the statements are true, Fleming will never be able to demonstrate a probability of prevailing on the second cause of action. Fleming carries the burden and because he cannot establish that the statements were both published and false, Coverstone must prevail.

**C. Fleming Cannot Establish Prima Facie Case for His Third Cause of Action**

Even if section 47(b) were inapplicable to the third cause of action, Fleming cannot possibly make a prima facie showing, much less establish a probability of prevailing. First and foremost, there is no such thing as a cause of action for civil extortion. See discussion in *Furhman v. California Satellite Systems, Inc.*, 179 Cal.App.3d 408, 426 (1986) (explaining that civil extortion is more properly termed a cause of action for moneys obtained by duress), disapproved on other grounds, *Silberg v. Anderson*, 50 Cal.3d 205, 212–213 (1990). Even assuming that Fleming means duress, per the guidance in *Fuhrman*, he still cannot prevail because: (1) threatening to file a civil

[1] Although the FAC does not expound on the actual statements, it appears that the substance of the alleged defamation is based on the statements made by Coverstone in the correspondence set forth in the FAC.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

action, where one has a right to do so, cannot be the basis of a claim for duress; (2) a claim for duress cannot be stated unless the defendant threatens to make a claim he or she knows to be false; and (3) a cause of action for duress must be based upon the plaintiff having conceded to the duress by providing money or other consideration (in other words, there is no claim for "attempted duress."). Fleming fails in *all three* categories.[2]

**1. A claim for duress fails where the defendant is threatening to do what he or she has a right to do.**

Fleming cannot prevail on his third cause of action because Coverstone had a legal right to pursue his claims against Fleming. And, the law is clear that "[t]here is no impropriety in a party to a transaction threatening to enforce his legal rights and remedies and in pointing out to the other party the consequences thereof, so long as he believes in good faith that he is entitled to the rights and remedies asserted." *United Professional Planning, Inc. v. Superior Court*, 9 Cal.App.3d 377, 395 (1970). In this case, Coverstone genuinely believed that Fleming acted fraudulently and that he was entitled to the return of his deposit based on that fraud. [Coverstone Declaration at ¶ 12] Therefore, he informed Fleming of the consequences that would follow if Fleming did not return the deposit. [Ex. G: 2/15/08 e-mail (2:24 p.m.)] This is the exact type of conduct set forth in *United Professional Planning* and therefore, it is not actionable. Therefore, the third cause of action must fail.

**2. The threatened claim must be false in order to support a claim for duress**

As if that were insufficient to doom the cause of action, Fleming's claim *also* fails because he cannot show that Coverstone knew his claims were meritless.[3] It is well settled that for the duress to be actionable, the threat "must be made with the knowledge of the falsity of the claim." *Furhman*, 179 Cal.App.3d at 426. As set forth at length

---

[2] Fleming carries the burden and must satisfy all three categories to withstand this motion to strike. If he fails to satisfy one, the motion must be granted.

[3] In fact, Fleming cannot even establish that the claims were meritless, much less that Coverstone knew they were meritless.

above, Coverstone believed that the assertions he had with respect to Fleming *were correct*. And, Coverstone still believes that his claims are valid based upon those facts. [Coverstone Declaration at ¶ 12] Because Fleming cannot prove otherwise, he will never prevail on this cause of action.

**3. One cannot bring a civil action for "attempted" duress where he or she did not lose any money or other valuable right as a result of the alleged duress**

Fleming's claim also fails because he never gave Coverstone any money or conferred some other valuable right to Coverstone. *Furhman* unequivocally explains that "[a]n action for duress is an action for the recovery of moneys received by defendant under the influence of duress." *Id.* at 428 (emphasis added). In *Furhman*, the plaintiff could not show that she ever paid the money sought in defendants' demand letters and, therefore, her "civil extortion" claim failed as a matter of law. *Id.* at 426. In this case, Fleming never paid Coverstone any money or anything else of value as a result of Coverstone's demands.[4] [Coverstone Declaration at ¶ 13] Because no money was obtained, there is no money that can be recovered. And, based on the holding in *Furhman*, Fleming can never prevail on this cause of action.

## VI.

## AN AWARD OF ATTORNEYS' FEES IS MANDATORY

A prevailing party on a special motion to strike "*shall* be entitled" to recover his or her attorneys' fees and costs. Cal. Code of Civ. Proc. section 425.16(c) (emphasis added). The fee award is mandatory: "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001). Accordingly, Coverstone is entitled to recover attorneys' fees and

///

///

[4] Fleming seeks $990,000 for the alleged breach of the $1,000,000 contract because he never returned the $10,000 deposit or anything else of value to Coverstone.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

costs expended in litigating any causes of action that arise out of his right to petition and free speech.[5]

## VII.

## CONCLUSION

The second and third causes of action are subject to a special motion to strike under Code of Civil Procedure section 425.16 because the communications in question were made in anticipation of litigation and address the substance of the litigation. And, Fleming will never be able to establish a probability of prevailing on those causes of action because both are precluded by the litigation privilege of California Civil Code section 47(b). In addition to the litigation privilege, Fleming cannot establish a probability of prevailing because he will never be able to make even a prima facie showing of his case at trial because his statements and allegations are flatly wrong. Therefore, Coverstone respectfully requests that this special motion to strike be granted and that he be awarded reasonable attorneys' fees.

KLINEDINST PC

DATED: June 18, 2008

By: /s/ Gregor A. Hensrude
GREGOR A. HENSRUDE
Attorneys for Defendant
TOM COVERSTONE

637550v1

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

[5] A separate motion for attorneys' fees will be filed after the hearing on this motion.