John D. Klinedinst, Bar No. 86254
Gregor A. Hensrude, Bar No. 226660
Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
jklinedinst@klinedinstlaw.com
ghensrude@klinedinstlaw.com

Attorneys for Defendant
TOM COVERSTONE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT A. FLEMING,<br><br>                    Plaintiff,<br><br>        v.<br><br>TOM COVERSTONE,<br><br>                    Defendant. | Case No.    3:08-cv-00355 WQH-NLS<br><br>**NOTICE OF LODGMENT IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO SECTION 425.16**<br><br>Date           July 21, 2008<br>Time:          11:00 a.m.<br>Courtroom:    4<br>Judge:         William W. Hayes<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: February 22, 2008<br>Trial Date:    None set |

Defendant TOM COVERSTONE hereby lodges the following documents in

support of his Special Motion to Strike pursuant to California Code of Civil Procedure

section 425.16:

    1.    Lodged herewith as Exhibit "A" is a true and correct copy of an email from

Hoyt Fleming to Tom Coverstone, dated January 22, 2008.

    2.    Lodged herewith as Exhibit "B" is a true and correct copy of an email from

Tom Coverstone to Hoyt Fleming, dated January 22, 2008.

    3.    Lodged herewith as Exhibit "C" is a true and correct copy of an email

string between Hoyt Fleming and Tom Coverstone, dated February 6, 2008.

    4.    Lodged herewith as Exhibit "D" is a true and correct copy of an email from

Hoyt Fleming to Tom Coverstone, dated February 7, 2008.

- 1 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    5.    Lodged herewith as Exhibit "E" is a true and correct copy of an email string

2    between Tom Coverstone and Hoyt Fleming, dated February 13, 2008.

3    6.    Lodged herewith as Exhibit "F" is a true and correct copy of an email from

4    Tom Coverstone to Hoyt Fleming, dated February 14, 2008.

5    7.    Lodged herewith as Exhibit "G" is a true and correct copy of an email

6    string between Hoyt Fleming and Tom Coverstone, dated February 15, 2008.

7    8.    Lodged herewith as Exhibit "H" is a true and correct copy of an email

8    string between Tom Coverstone and Hoyt Fleming, dated February 15, 2008.

9    9.    Lodged herewith as Exhibit "I" is a true and correct copy of an email from

10   Hoyt Fleming to Tom Coverstone, dated February 16, 2008.

11   10.   Lodged herewith as Exhibit "J" is a true and correct copy of the Complaint

12   and Demand for Jury Trial filed by Hoyt Fleming on February 16, 2008.

13

14                                     KLINEDINST PC

15

16   DATED: June 18, 2008            By: /s/ Gregor A. Hensrude
17                                        JOHN D. KLINEDINST
                                          GREGOR A. HENSRUDE
18                                        Attorneys for Defendant
                                          TOM COVERSTONE

19   642728v1

20

21

22

23

24

25

26

27

28

NOTICE OF LODGMENT IN SUPPORT OF SPECIAL MOTION TO STRIKE PURSUANT TO
SECTION 425.16
08 CV 355WQHNLS

**Dan S. Agle**

Subject:            Purchase of Fleming Radar Detector Patent Family

From: Hoyt Fleming [mailto:hoytf@mac.com]
Sent: Tuesday, January 22, 2008 1:31 PM
To: Tom Coverstone
Subject: Purchase of Fleming Radar Detector Patent Family

Tom,

      This email confirms that I have agreed to sell and that you have agreed to purchase
U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent
Application No. U.S. Patent No.
11/196,841, and Patent Application No. 11/924,352.  The purchase price for the above
patents and applications is one million dollars.

      You and I will strive to close the sale by February 1, 2008.
However, you and I will close the sale by February 15, 2008.

      Both you and I understand that I will assign a 10% interest in the above patents and
applications  to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will
then assign its 10% interest to you, or an entity that you designate.  I will assign my
90% interest directly to you or an entity that you designate.  You will then immediately
pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

      You and I agree that you and/or your attorneys will draft the necessary agreements.

      You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase
price.  This deposit will not be refunded if the above sale is not completed by February
15, 2008.  I agree to work with you and your attorneys to close the sale by February 15,
2008.

      If you desire my assistance on matters relating to the above patents

and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming.  My
hourly rate is $425 for non-testifying services, and $850 for testifying services.

      If you agree to the above, then please confirm via email.

Thank you.

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)

This transmission contains confidential and/or legally privileged information, which is
intended only for the use of the individual or entity named as the Recipient.  If you are
not the intended Recipient, you are hereby notified that any disclosure, copying,
distribution or reliance upon the contents of the information contained in this
transmission is strictly prohibited.   If you have received this
facsimile in error, please notify us immediately and destroy all copies of this
transmission.

EXHIBIT 

1

## Dan S. Agle

**Subject:** RE: Purchase of Fleming Radar Detector Patent Family

**From:** "T Coverstone" <patpend@sbcglobal.net>
**Date:** Tue, 22 Jan 2008 18:11:00
**To:** "'Hoyt Fleming'" <hoytf@mac.com>
**Subject:** RE: Purchase of Fleming Radar Detector Patent Family


Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the
assignment documents or whatever is needed. I am tied up this week,
let's talk next Monday morning.

Best Regards,
Tom


> -----Original Message-----
> From: Hoyt Fleming [mailto:hoytf@mac.com]
> Sent: Tuesday, January 22, 2008 1:31 PM
> To: Tom Coverstone
> Subject: Purchase of Fleming Radar Detector Patent Family
>
> Tom,
>
>      This email confirms that I have agreed to sell and that you have
> agreed to purchase U.S. Patent No. 6,204,798, which has been reissued,
> Reissue Patent No. 039,038, Patent Application No. U.S. Patent No.
> 11/196,841, and Patent Application No. 11/924,352. The purchase price
> for the above patents and applications is one million dollars.
>
>      You and I will strive to close the sale by February 1, 2008.
> However, you and I will close the sale by February 15, 2008.
>
>      Both you and I understand that I will assign a 10% interest in the
> above patents and applications to Vineyard Boise, a church in Boise,
> Idaho, and that Vineyard Boise will then assign its 10% interest to
> you, or an entity that you designate. I will assign my 90% interest
> directly to you or an entity that you designate. You will then
> immediately pay me $900,000 and you will then immediately pay Vineyard
> Boise $100,000.
>
>      You and I agree that you and/or your attorneys will draft the

EXHIBIT _B_

> necessary agreements.
>
>      You agree to wire me ten thousand dollars tomorrow as a deposit on
> the purchase price. This deposit will not be refunded if the above
> sale is not completed by February 15, 2008. I agree to work with you
> and your attorneys to close the sale by February 15, 2008.
>
>      If you desire my assistance on matters relating to the above patents
>
> and/or applications, you may retain me through my firm, Park, Vaughan,
> and Fleming. My hourly rate is $425 for non-testifying services, and
> $850 for testifying services.
>
>      If you agree to the above, then please confirm via email.
>
> Thank you.
>
> Hoyt Fleming
> Park, Vaughan & Fleming LLP
> P.O. Box 140678
> Boise, ID 83714
> 208-336-5237 (voice)
> 208-342-5363 (fax)
>
>
>
> This transmission contains confidential and/or legally privileged
> information, which is intended only for the use of the individual or
> entity named as the Recipient. If you are not the intended Recipient,
> you are hereby notified that any disclosure, copying, distribution or
> reliance upon the contents of the information contained in this
> transmission is strictly prohibited. If you have received this
> facsimile in error, please notify us immediately and destroy all
> copies of this transmission.
>
>
>
>
>

## Greg A. Hensrude

**From:** Hoyt Fleming [hoytf@mac.com]
**Sent:** Wednesday, February 06, 2008 1:54 PM
**To:** T Coverstone
**Subject:** Re: Uniden

Strange. I still recall that Uniden had to revise their claims to overcome my patent.

hf.

On Feb 6, 2008, at 2:07 PM, T Coverstone wrote:

Here is the transaction history on that patent. It looks like it was allowed from the get go.

### Transaction History

| Date | Transaction Description |
|------|------------------------|
| 10-10-2003 | Correspondence Address Change |
| 10-22-2002 | Recordation of Patent Grant Mailed |
| 10-03-2002 | Issue Notification Mailed |
| 10-22-2002 | Patent Issue Date Used in PTA Calculation |
| 10-22-2002 | Patent Issue Date Used in PTA Calculation |
| 09-26-2002 | Receipt into Pubs |
| 09-04-2002 | Issue Fee Payment Verified |
| 08-22-2001 | Workflow - Drawings Finished |
| 08-22-2001 | Workflow - Drawings Matched with File at Contractor |
| 09-24-2002 | Correspondence Address Change |
| 09-13-2002 | Receipt into Pubs |
| 09-13-2002 | Receipt into Pubs |
| 09-05-2002 | Application Is Considered Ready for Issue |
| 09-04-2002 | Issue Fee Payment Received |
| 08-28-2002 | Receipt into Pubs |
| 08-20-2002 | Receipt into Pubs |
| 08-14-2002 | Receipt into Pubs |
| 06-21-2002 | Workflow - File Sent to Contractor |
| 06-21-2002 | Receipt into Pubs |
| 06-19-2002 | Dispatch to Publications |
| 06-07-2002 | Dispatch to Publications |
| 06-06-2002 | Mail Notice of Allowance |
| 06-06-2002 | Notice of Allowance Data Verification Completed |
| 04-03-2002 | Case Docketed to Examiner in GAU |
| 02-07-2002 | Information Disclosure Statement (IDS) Filed |
| 02-07-2002 | Information Disclosure Statement (IDS) Filed |
| 10-31-2001 | Case Docketed to Examiner in GAU |



EXHIBIT C

| | |
|---|---|
| 10-03-2001 | Application Dispatched from OIPE |
| 10-02-2001 | Correspondence Address Change |
| 08-29-2001 | IFW Scan & PACR Auto Security Review |
| 08-22-2001 | Initial Exam Team nn |

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Wednesday, February 06, 2008 3:00 PM
**To:** T Coverstone
**Subject:** Re: Uniden

Tom,

   I do not seem to have the file history for that patent. However, I do recall reviewing it. I tried to check PAIR, however, but I cannot get past PAIR's new challenge/response.

Hoyt

On Feb 6, 2008, at 1:39 PM, T Coverstone wrote:

Hoyt,

Do you have the file history for this patent? I thought this was the one that they had to avoid your reference, but it looks like it sailed through the office. Am I thinking of a different patent or application?

Tom

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Tuesday, February 05, 2008 2:36 PM
**To:** T Coverstone
**Subject:** Re: Teleconf

Tom,

   Just got back into the office. I am available to talk at your convenience.

   The Uniden patent number is 6,469,653.

   I do not know the identity of Malin's GPS cases.

Hoyt

On Feb 5, 2008, at 11:16 AM, T Coverstone wrote:

Do you know which GPS cases Steve Malin has been involved with prior?

http://www.sidley.com/ourpeople/detail.aspx?attorney=495

Tom

---

**From:** T Coverstone [mailto:guardianmediatech@sbcglobal.net]
**Sent:** Tuesday, February 05, 2008 12:00 PM
**To:** 'Hoyt Fleming'
**Subject:** Teleconf

Hoyt,

Do you have time to talk this morning?  Did you send me the Uniden patent application or number?  Also, I have an update on the agreement.

Tom

## Dan S. Agle

**From:** Hoyt Fleming [hoytf@mac.com]
**Sent:** Thursday, February 07, 2008 6:43 AM
**To:** T Coverstone
**Subject:** Re: Nokia Presentation

Very strange regarding the email.

I searched for other Uniden patents with the same inventor yesterday.
However, no other patents were located. I must have mentally merged
the Escort patent and the Uniden patent. Thus, it looks like only the
Escort patent was rejected based upon my patent.

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)

This transmission contains confidential and/or legally privileged
information, which is intended only for the use of the individual or
entity named as the Recipient. If you are not the intended Recipient,
you are hereby notified that any disclosure, copying, distribution or
reliance upon the contents of the information contained in this
transmission is strictly prohibited. If you have received this
facsimile in error, please notify us immediately and destroy all
copies of this transmission.

EXHIBIT D

## Dan S. Agle

**Subject:** RE: File History

**From:** T Coverstone [mailto:guardianmediatech@sbcglobal.net]
**Sent:** Wednesday, February 13, 2008 11:03 PM
**To:** 'Hoyt Fleming'
**Subject:** RE: File History

I should clarify: the 20% would be of the net. Assuming the contingency firm would take 30%, your back end would be 20% of net, 14% of gross profits.

Tom

---

**From:** T Coverstone [mailto:guardianmediatech@sbcglobal.net]
**Sent:** Wednesday, February 13, 2008 10:52 PM
**To:** 'Hoyt Fleming'
**Subject:** RE: File History

Hoyt,

Responding to your recent emails and concerning our on-going negotiations, I don't agree with your advising me that we have a binding agreement for this purchase yet. My understanding is that our exchange of emails and our conversations is only an outline of a potential, future agreement, and we have since been engaged in communications and assessment of the price and terms, particularly related to the 10% interest. Therefore, there is no current legal obligation. The prospective agreement is incomplete until it is reduced to writing, finalized by attorneys and signed at closing. I don't intend a contract until this is done. Furthermore, material terms and essential elements of the assignment are still missing. Inter alia, the following essential terms are missing: the timing of the assignment of the 90% and 10%; the association with Vineyard Boise and whether you could bind them to an agreement; the monetary consideration which would be paid; and, any alternatives to the 10% assignment to the church. Because this third party assignment for your tax purposes is not only a material term, but is a troublesome and unconventional term, a binding agreement has not been formed. Even if any contract had been entered, which I don't believe there has, there is no severability provision. As such, this third party assignment term, which we have since discussed re-negotiating, may not be severable since it pertains to and potentially effects the assignment. The fact that further substantive discussions have taken place over a material change in key terms, including a proposal to change the monetary consideration by tens of thousands of dollars and to substantially change the percentage and structure of the 10% assignment, demonstrate that we have participated in negotiations but have not reached a binding agreement on key, material terms. That you are advising and urging me to hold fast to a supposed deadline you unilaterally imposed does not, to me, seem in good faith. That concerns me, particularly because I now believe other material information was not properly disclosed even despite the fact that you entered an attorney – client relationship with me and agreed to represent me in connection herewith. Despite the foregoing, I am still willing to negotiate in good faith. To that end, I offer you $250,000 plus 20% on the back end. If you are not interested in this offer, then we need to make arrangements for the return of the $10,000 I put toward the purchase of the patents.

Tom

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Saturday, February 09, 2008 7:16 PM
**To:** T Coverstone
**Subject:** Re: File History

Tom,

To say the least, I am very surprised with the request in your email. The clear implication of

EXHIBIT _E_

your email is that only 6 days before the last possible closing date, you have decided that you are not sure if you want to purchase my patent portfolio. You now want to delay closing so that you can review the file history of a patent that issued from an application that was filed approximately three years after my first patent application. Please note that you have already reviewed the portion of the file history of the '905 patent before 2002.

As you stated to me earlier this week, I contractually bound to sell you my patent portfolio. Thus, you are likewise contractually bound to purchase my patent portfolio. Please recall that I told a patent broker that I could not accept an offer in excess of 1 million dollars for my patent portfolio as I had previously agreed to sell it to you. Thus, I will NOT agree to extend the closing date. To the contrary, if the closing does not occur on or before February 15, I will be free to sell my patent portfolio to the highest bidder.

Your statement that it will take "a couple of weeks" to obtain the file history for the '905 patent is incorrect. I have obtained the file history in less than 24 hours. I will send the file history to you via a separate email as the size of the PDF file containing the file history is just under 9 MB.

Tom, I look forward to working with you to complete this transaction on or before February 15. I plan, as best as possible, to forget that you made the request in your email.

Hoyt

On Feb 9, 2008, at 11:26 AM, T Coverstone wrote:

Hoyt,

Ok. I think it is important to look at that. I am going to have to order it then, it may take a couple of weeks to get it, so it will go beyond the 15th. Is it OK to extend the deadline to purchase?

Tom

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Saturday, February 09, 2008 10:43 AM
**To:** T Coverstone
**Subject:** Re: File History

Tom,

I do not have a copy of the file history.

Hf

Sent from my iPhone

On Feb 8, 2008, at 7:36 PM, T Coverstone <guardianmediatech@sbcglobal.net> wrote:

Hoyt,

Do you have the file history to 6,670,905? It is not available on public pair. If you don't have it, I will have to order it.

6/11/2008

Tom

## Dan S. Agle

**From:** guardianmediatech@sbcglobal.net
**Sent:** Thursday, February 14, 2008 2:51 PM
**To:** Hoyt Fleming
**Subject:** Re: File History

Hoyt,

There is and never was any agreement on the key, material terms for this potential contract. I don't believe you are negotiating in good faith. I would like the $10,000 returned.

Tom

------Original Message------
From: Hoyt Fleming
To: Guardian Media Technologies
Sent: Feb 9, 2008 7:15 PM
Subject: Re: File History

Tom,


To say the least, I am very surprised with the request in your email. The clear implication of your email is that only 6 days before the last possible closing date, you have decided that you are not sure if you want to purchase my patent portfolio. You now want to delay closing so that you can review the file history of a patent that issued from an application that was filed approximately three years after my first patent application. Please note that you have already reviewed the portion of the file history of the '905 patent before 2002.


As you stated to me earlier this week, I contractually bound to sell you my patent portfolio. Thus, you are likewise contractually bound to purchase my patent portfolio. Please recall that I told a patent broker that I could not accept an offer in excess of 1 million dollars for my patent portfolio as I had previously agreed to sell it to you. Thus, I will NOT agree to extend the closing date. To the contrary, if the closing does not occur on or before February 15, I will be free to sell my patent portfolio to the highest bidder.


Your statement that it will take "a couple of weeks" to obtain the file history for the '905 patent is incorrect. I have obtained the file history in less than 24 hours. I will send the file history to you via a separate email as the size of the PDF file containing the file history is just under 9 MB.


Tom, I look forward to working with you to complete this transaction on or before February 15. I plan, as best as possible, to forget that you made the request in your email.


Hoyt



EXHIBIT F

On Feb 9, 2008, at 11:26 AM, T Coverstone wrote:


Hoyt,

Ok. I think it is important to look at that. I am going to have to order it then, it may take a couple of weeks to get it, so it will go beyond the 15th. Is it OK to extend the deadline to purchase?


Tom


----------------

From: Hoyt Fleming [mailto:hoytf@mac.com <mailto:hoytf@mac.com> ]
Sent: Saturday, February 09, 2008 10:43 AM
To: T Coverstone
Subject: Re: File History


Tom,


I do not have a copy of the file history.


Hf

Sent from my iPhone

On Feb 8, 2008, at 7:36 PM, T Coverstone <guardianmediatech@sbcglobal.net <mailto:guardianmediatech@sbcglobal.net> > wrote:


Hoyt,

Do you have the file history to 6,670,905? It is not available on public pair. If you don't have it, I will have to order it.


Tom

## Dan S. Agle

**Subject:** Re: Coverstone request to return deposit

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 4:22 PM
**To:** T Coverstone
**Subject:** Re: Coverstone request to return deposit

Tom,

My legal representation to you was limited to "prosecution and enforcement matters" of my patent portfolio. I have not performed any act related to "prosecution or enforcement matters" of my patent portfolio during my short representation of you. Specifically, I have not filed any prosecution document with the USPTO during my short representation of you. In addition, as my patent portfolio is not in litigation, there are no enforcement matters in which I could currently represent you. Each and every ethics violation you made is completely baseless.

Your position is you would like me to return your deposit even though you agreed that the deposit would not be refunded. My position is that you owe me specific performance. Recall, that you agreed "to purchase U.S. Patent No. 6,204,798 . . .."

Please direct all future correspondence relating to this matter to:

Mr. Bradlee Frazer
Hawley Troxell Ennis and Hawley LLP
877 Main Street, Suite 1000
Boise, Idaho 83702

Hoyt

On Feb 15, 2008, at 2:24 PM, T Coverstone wrote:

Hoyt,

You committed fraud and conspired to do the same. You mischaracterized your patents, the prior art and the file histories. You also did not disclose material facts relating to same. You did all of this even despite the attorney engagement you requested and entered with me, apparently on behalf of your entire firm. These are very serious ethics violations.

Please send my $10,000 to the address below by February 20th.

If you agree to return the $10,000, I will agree to release and waive my potential claims against you and your law firm provided it is a mutual waiver, with you likewise releasing and waiving any potential claims. Otherwise, I will be forced to consider my other options.

Finally, do not communicate with Howrey on this. If we cannot resolve this issue now, then I will have you communicate with my litigation attorneys.

Tom

EXHIBIT 

6/17/2008

3525A Del Mar Heights Rd.
#334
San Diego, CA 92130

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 10:31 AM
**To:** Tom Coverstone
**Cc:** Hank Petri
**Subject:** Coverstone request to return deposit

Tom,

This email responds to your email of February 14, 2008 in which you state:

"I would like the $10,000 returned."

The facts regarding this matter are as follows:

(1) On January 22, 2008, I sent you an email that stated:

"Tom,

This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

If you desire my assistance on matters relating to the above patents and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.

If you agree to the above, then please confirm via email.

Thank you.

6/17/2008

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)"

(2) On January 22, 2008, you replied with an email that stated:

"Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the
assignment documents or whatever is needed. I am tied up this week, let's
talk next Monday morning.

Best Regards,
Tom"

Tom, you agreed to the following: "This deposit will not be refunded if the above sale is not completed
by February 15, 2008." The statement to which you agreed was very clear. If the patent portfolio sale
is not completed by February 15, 2008, then the deposit will not be refunded. Regardless of whether
you or I agree that the February 22, 2008 emails create a contractual requirement for you to purchase
my patent portfolio, you agreed to the non-return of your deposit if the patent portfolio sale was not
completed by February 15, 2008.

As you are well aware, the deposit was consideration for me taking my patent portfolio off the market
in general and more specifically, not negotiating with a patent broker that contacted me regarding
purchasing my patent portfolio.

Today is February 15, 2008. I have not received any assignment documents from you or your
attorney. Thus, the patent portfolio sale will not close today. Pursuant to the above cited portion of the
January 22, 2008 agreement, I believe it is proper for me not to refund the deposit.

If you, a sophisticated attorney that makes his living purchasing and licensing patents, or your attorney,
Mr. Hank Petri, whom I respect greatly, provides me with a creditable legal analysis that indicates I
should refund the deposit, I will objectively review such analysis and will consider your request to
return the deposit.

Hoyt Fleming

## Dan S. Agle

| | |
|---|---|
| **From:** | T Coverstone [guardianmediatech@sbcglobal.net] |
| **Sent:** | Friday, February 15, 2008 5:49 PM |
| **To:** | ███████████    [REDACTED: Attorney-Client Privilege] |

**Subject:** FW: Coverstone request to return deposit

---

**From:** T Coverstone [mailto:guardianmediatech@sbcglobal.net]
**Sent:** Friday, February 15, 2008 7:30 PM
**To:** 'Hoyt Fleming'
**Subject:** RE: Coverstone request to return deposit

I am glad you admit your representation.

To the contrary to your email below, ALL of our discussions were about enforcing your patents and prosecution. We spoke about what claims covered what, what claims to assert and against whom, when to file lawsuits (when your continuation application issues), filing additional continuation applications, what claims should be in the new continuation matters, and several other items relating to prosecution and enforcement of your patent portfolio.

So, again, you misrepresent the situation.

Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there was an agreement. There was not an agreement, there never was. We did not agree on key material terms. In fact, key material terms were being renegotiated just recently and over many weeks. As an example, and in one alternative potential agreement, you offered to change the assignment allocation regarding the church and I then pay you $25,000 more than the earlier price you wanted because you had doubts in your illegal tax deduction scheme with Boise Vineyard. In addition, when I told you that your tax scheme was illegal, you responded by citing a tax reference that showed that the Vineyard would not have an obligation to assign their interest in the patent to me. That seems important since even a small owner of a patent can license infringers. When parties are renegotiating key material terms - does that sound like the key material terms were set in an agreement? You can keep pasting a fragment of a sentence in an email and sending it to me, but I have not heard any substance from you at all. In fact, I all hear is lies and misrepresentations. I will not even address the fact that you prepared the email that you keep pasting from and you coerced me into agreeing to your email while I was on an airplane and the flight attendant was telling me to get off of the phone. You could not wait because you had so many buyers for the patents knocking on your door. Was that a lie too?

In addition, you committed fraud – even if there was an agreement – which there was not – it would have been based on fraud in the inducement. You materially misrepresented key facts relating to your patents and competing patents. You deny ethics violations in your email, but you do not deny the misrepresentations you made.

Having said all of this – I am willing to let this be dropped. I want my 10k back. And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release.

Think about resolving this issue over the weekend. Nevertheless, I will need to hear back from you on Monday so that I can plan my course.

Tom

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 4:22 PM
**To:** T Coverstone

EXHIBIT H

**Subject:** Re: Coverstone request to return deposit

Tom,

My legal representation to you was limited to "prosecution and enforcement matters" of my patent portfolio. I have not performed any act related to "prosecution or enforcement matters" of my patent portfolio during my short representation of you. Specifically, I have not filed any prosecution document with the USPTO during my short representation of you. In addition, as my patent portfolio is not in litigation, there are no enforcement matters in which I could currently represent you. Each and every ethics violation you made is completely baseless.

Your position is you would like me to return your deposit even though you agreed that the deposit would not be refunded. My position is that you owe me specific performance. Recall, that you agreed "to purchase U.S. Patent No. 6,204,798 . . .."

Please direct all future correspondence relating to this matter to:

Mr. Bradlee Frazer
Hawley Troxell Ennis and Hawley LLP
877 Main Street, Suite 1000
Boise, Idaho 83702

Hoyt

On Feb 15, 2008, at 2:24 PM, T Coverstone wrote:

Hoyt,

You committed fraud and conspired to do the same. You mischaracterized your patents, the prior art and the file histories. You also did not disclose material facts relating to same. You did all of this even despite the attorney engagement you requested and entered with me, apparently on behalf of your entire firm. These are very serious ethics violations.

Please send my $10,000 to the address below by February 20th.

If you agree to return the $10,000, I will agree to release and waive my potential claims against you and your law firm provided it is a mutual waiver, with you likewise releasing and waiving any potential claims. Otherwise, I will be forced to consider my other options.

Finally, do not communicate with Howrey on this. If we cannot resolve this issue now, then I will have you communicate with my litigation attorneys.

Tom

3525A Del Mar Heights Rd.
#334
San Diego, CA 92130

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 10:31 AM

**To:** Tom Coverstone
**Cc:** Hank Petri
**Subject:** Coverstone request to return deposit

Tom,

This email responds to your email of February 14, 2008 in which you state:

"I would like the $10,000 returned."

The facts regarding this matter are as follows:

(1) On January 22, 2008, I sent you an email that stated:

"Tom,

This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

If you desire my assistance on matters relating to the above patents and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.

If you agree to the above, then please confirm via email.

Thank you.

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)"

(2) On January 22, 2008, you replied with an email that stated:

"Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the
assignment documents or whatever is needed. I am tied up this week, let's
talk next Monday morning.

Best Regards,
Tom"

Tom, you agreed to the following: "This deposit will not be refunded if the above sale is not completed
by February 15, 2008." The statement to which you agreed was very clear. If the patent portfolio sale
is not completed by February 15, 2008, then the deposit will not be refunded. Regardless of whether
you or I agree that the February 22, 2008 emails create a contractual requirement for you to purchase
my patent portfolio, you agreed to the non-return of your deposit if the patent portfolio sale was not
completed by February 15, 2008.

As you are well aware, the deposit was consideration for me taking my patent portfolio off the market
in general and more specifically, not negotiating with a patent broker that contacted me regarding
purchasing my patent portfolio.

Today is February 15, 2008. I have not received any assignment documents from you or your
attorney. Thus, the patent portfolio sale will not close today. Pursuant to the above cited portion of the
January 22, 2008 agreement, I believe it is proper for me not to refund the deposit.

If you, a sophisticated attorney that makes his living purchasing and licensing patents, or your attorney,
Mr. Hank Petri, whom I respect greatly, provides me with a creditable legal analysis that indicates I
should refund the deposit, I will objectively review such analysis and will consider your request to
return the deposit.

Hoyt Fleming

## Dan S. Agle

**Subject:** FW: Resolution of Coverstone/Fleming matter

```
From: Hoyt Fleming [mailto:hoytf@mac.com]
Sent: Saturday, February 16, 2008 10:17 AM
To: Tom Coverstone
Subject: Resolution of Coverstone/Fleming matter

Tom,
After having thought about this situation for the last 24 hours, a new
day has brought a clearer perspective.  You and I are now headed down
a path that portends great time and expense, both financial and
emotional, for both of us.  While I am confident that I have done
nothing wrong and have good causes of action for breach of contract
and related claims, it is clear from your e-mails that you feel
equally strongly that you have been wronged.  We will likely never see
eye-to-eye on the issue of who's right and who's wrong here, but I
think it behooves us both to put this matter behind us and move on.
Accordingly, I propose that we sign a mutual release and
confidentiality agreement in exchange for my returning the $10,000
payment.  I regret that this negotiation ended on this note, but as I
said, we both have better things to do with our time and money that
continue to fight over this matter.  Please let me know as soon as
possible by reply e-mail if you agree, and I will prepare a form of
release for you and your lawyer to review.

Hoyt
```

EXHIBIT I

Steven F. Schossberger, ISB #5358
Bradlee R. Frazer, ISB #3857
HAWLEY TROXELL ENNIS & HAWLEY, LLP
877 W. Main Street, Suite 1000
Boise, ID 83702
(208) 344-6000
(208) 342-3529 (facsimile)
sfs@hteh.com
bfra@hteh.com

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HOYT A. FLEMING, | ) | Case No. _____ |
| An individual, | ) | |
| Plaintiff, | ) | COMPLAINT AND DEMAND FOR |
| | ) | JURY TRIAL |
| vs. | ) | |
| TOM COVERSTONE, | ) | |
| A California resident and an individual, | ) | |
| Defendant. | ) | |

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Hoyt A. Fleming ("Fleming") is an individual and a resident of the State of Idaho.

2. Defendant Tom Coverstone is an individual and a resident of the State of California.

COMPLAINT—Page 1

EXHIBIT __J__

3.  This court has jurisdiction over this matter and over the person of defendant pursuant to 28 U.S.C. Section 1332.

4.  Venue is proper in this federal district.

## FACTUAL BACKGROUND

5.  On or about January 22, 2008, Fleming and Defendant, both registered patent attorneys, entered into a written contract for Defendant to purchase from Fleming a certain family of issued United States patents for a stated consideration.

6.  The contract recited that the sale would be fully consummated and the parties would complete their respective performances on or before, but no later than, February 15, 2008.

7.  On or about January 23, 2008, Defendant paid Fleming a non-refundable, per the express terms of the contract, $10,000 down payment towards the purchase price for the patent family.

8.  On or about January 29, 2008, Defendant engaged Fleming, a licensed patent attorney, to assist Defendant in matters relative to prosecution of the patents with the United States Patent and Trademark Office and enforcing the patents against third parties after consummation of the sales transaction.

9.  On or about February 14, 2008, Defendant advised Fleming of his decision to anticipatorily breach the contract and not tender the agreed-upon purchase price. Defendant also demanded the return of his non-refundable down payment.

COMPLAINT—Page 2

10. On and after February 14, 2008, on information and belief, Defendant published to third parties false statements regarding Fleming's character, truthfulness, and veracity and accused him of illegal conduct and legal malpractice.

11. On and after February 14, 2008, Defendant advised Fleming that unless he refunded the $10,000 non-refundable down payment and otherwise release Defendant from his contractual obligations, Defendant advised that he would report Fleming to various Bar associations, clients, and others in an effort to impugn and discredit Fleming.

12. On and after February 15, 2008, the date on which Defendant's performance was to have been fully completed, Defendant continued to refuse, despite demand, to tender the agreed-upon purchase price and otherwise fully perform his contractual obligations.

## COUNT ONE—BREACH OF CONTRACT

13. Fleming restates and re-avers the preceding paragraphs 1 through12 of this Complaint in and to paragraph 13 of this Count One.

14. By refusing and continuing to refuse his contractual obligations, Defendant has breached the January 22, 2008 contract.

15. Fleming, despite efforts to mitigate his damages, has not yet been able to secure a substitute and successor buyer for the patent family and thus has been deprived of the benefit of his contract with Defendant.

16. As a direct and proximate result of Defendant's breach, Fleming has been damaged in an amount in excess of $75,000 and in an exact amount to be determined at trial.

## COUNT TWO--DEFAMATION

17. Fleming restates and re-avers the preceding paragraphs 1 through 16 of this Complaint in and to paragraph 17 of this Count Two.

18. Defendant's conduct complained of above constitutes defamation per se and has subjected Fleming to obloquy and scorn and has caused Fleming to suffer embarrassment and emotional distress.

19. As a direct and proximate result of Defendant's defamation, Fleming has been damaged in an amount in excess of $75,000 and in an exact amount to be determined at trial.

20. Defendant's above described conduct was wanton, malicious, and an extreme deviation from reasonable standards of conduct warranting that the Court grant a future motion to amend to include a prayer for punitive damages.

## COUNT THREE--EXTORTION

21. Fleming restates and re-avers the preceding paragraphs 1 through 20 of this Complaint in and to paragraph 21 of this Count Three.

22. Defendant's conduct complained of above constitutes extortion.

23. As a direct and proximate result of Defendant's conduct, Fleming has been damaged in an amount in excess of $75,000 and in an exact amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Fleming prays for the following relief:

1. On Count One, for money damages proximately caused by Defendant's breach;

COMPLAINT—Page 4

2. On Count Two, for money damages proximately caused by Defendant's acts of defamation;

3. On Count Three, for money damages proximately caused by Defendant's acts of extortion;

4. On all Counts, for injunctive relief enjoining Defendant from further acts as complained of herein;

5. For an award of Fleming's reasonable attorneys' fees and costs; and

6. For such other and further relief as the court may deem just and proper.

Fleming demands a jury trial on all counts.

RESPECTUFLLY SUBMITTED this 16th day of February 2008.

HAWLEY TROXELL ENNIS & HAWLEY, LLP


_____ /s/ Bradlee R. Frazer _____

Bradlee R. Frazer
Of the Firm

COMPLAINT—Page 5