John D. Klinedinst, Bar No. 86254
Gregor A. Hensrude, Bar No. 226660
Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
ghensrude@klinedinstlaw.com

Attorneys for Defendant
TOM COVERSTONE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT A. FLEMING,<br><br>    Plaintiff,<br><br>  v.<br><br>TOM COVERSTONE,<br><br>    Defendant. | Case No. 3:08-cv-00355 WQH-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S 12(B)(6) MOTION TO DISMISS**<br><br>Date:     July 21, 2008<br>Time:     11:00 a.m.<br>Courtroom:   4<br>Judge:     William Q. Hayes<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: February 22, 2008<br>Trial Date:   None set |

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
///

# TABLE OF CONTENTS

                                                                              Page

I.    INTRODUCTION ...............................................................................1

II.   STATEMENT OF FACTS ..................................................................1

III.  LEGAL STANDARD...........................................................................4

IV.   ARGUMENT........................................................................................4

      A.    There can be no breach of contract cause of action without an
            enforceable contract ................................................................5

            1.    Fleming never agreed to have his wife joined as a party to the
                  contract ..........................................................................5

            2.    Coverstone was not negotiating on behalf of himself ...............5

            3.    Vineyard Boise was removed from the transaction, thereby
                  altering its material terms ..............................................6

            4.    The parties even note that further documents are "necessary,"
                  showing that this is not the actual binding contract...............7

      B.    The defamation cause of action fails because it is barred by the
            litigation privilege and unsupported by facts.................................8

            1.    The defamation claim is barred by the litigation privilege.................8

            2.    The defamation claim also lacks any *factual* allegations that
                  would allow it to proceed ...............................................10

      C.    The civil extortion cause of action also fails .............................11

            1.    The civil extortion claim is barred by the litigation privilege..........11

            2.    The civil extortion claim lacks the necessary allegations that
                  would allow it to proceed ...............................................11

            3.    The e-mails supporting extortion are inadmissible to support
                  the cause of action .........................................................12

V.    CONCLUSION....................................................................................13

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S 12(B)(6) MOTION TO DISMISS
08 CV 355WQHNLS

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aronson v. Kinsella,*
58 Cal. App. 4th 254, 270 (1997) ........................................................ 10

*Balistreri v. Pacifica Police Dept.,*
901 F.2d 696, 699 (9th Cir. 1990) ........................................................ 4

*Beck v. American Health Group, Intl.*
(1989) 211 Cal.App.3d 1555 ................................................................ 7

*Bell Atl. Corp. v. Twombly,*
127 S. Ct. 1955, 1965 (U.S. 2007) ...................................................... 4

*Blanchard v. DIRECTV, Inc.,*
123 Cal.App.4th 903, 919, (2004) ..................................................... 9, 10

*Bullock v. McKeon*
(1930) 104 Cal.App.72 ......................................................................... 5

*Bustamante v. Intuit, Inc.*
(2006) 141 Cal.App.4th 199 ................................................................ 6

*Cahill v. Liberty Mutual Ins. Co.,*
80 F.3d 336, 337-38 (9th Cir. 1996) .................................................... 4

*Conley v. Gibson,*
355 U.S. 41, 45-46 (1957) .................................................................... 4

*Eye Laser Care Center, LLC v. MDTV Medical News Now, Inc.,*
2007 U.S. Dist. LEXIS 4844 at *12-14 (S.D. Cal. 2007) ...................... 9

*Furhman v. California Satellite Systems, Inc.,*
179 Cal.App.3d 408, 426 (1986) ...................................................... 11, 12

*Jacobson v. Schwarzenegger,*
357 F.Supp.2d 1198, 1216 (C.D. Cal. 2004) ...................................... 10

*Jet Source Charter, Inc. v. Gemini Air Group, Inc.,*
2007 U.S. Dist. LEXIS 85308, 4-6 (SD Cal. 2007) ............................ 4

*Knoell v. Petrovich,*
76 Cal.App.4th 164, 169 (1999) .......................................................... 10

*Lindsay v. Lewandowski*
(2006) 139 Cal.App.4th 1618 .............................................................. 5

*Rojas v. Loewen Group Int'l*
(D.P.R. 1998) 178 F.R.D. 356 ............................................................. 7

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- ii -

*Rubin v. Green*,
    4 Cal.4th 1187, 1193 (Cal. 1993)...................................................................8, 9

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*,
    473 F.Supp.2d 1083, 1088 (S.D. Cal. 2007)..............................................9

*Silberg v. Anderson*,
    50 Cal. 3d 205, 212 (1990) .................................................................8, 9, 11

*Taus v. Loftus*,
    40 Cal. 4th 683, 720 (2007) .......................................................................10

*United Professional Planning, Inc. v. Superior Court*,
    9 Cal.App.3d 377, 395 (1970) ..................................................................11

*United States Liability Insurance Company v. Haidinger-Hayes, Inc.*
    (1970) 1 Cal.3d 586 .....................................................................................6

**Statutes**

*Cal. Civil Code* section 47 subd. (b) .................................................................8

Fed. Rules of Evid. 408..........................................................................................12

Federal Rules of Civil Procedure 19(a)(1) .........................................................7

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- iii -

# I.

## INTRODUCTION

This action is merely an attempt to be the "first to file," filed unbeknownst to Defendant while settlement negotiations were ongoing in an attempt to be the plaintiff, even though it is Plaintiff, an attorney, who misrepresented facts underlying the agreement and engaged in ethically questionable conduct.

The house of cards "plaintiff's" case is built on is apparent from the First Amended Complaint (FAC) itself. None of the claims for relief stated in the complaint are sufficient for the court to grant relief. In fact, Plaintiff has pled sufficient facts to demonstrate, as a matter of law, that his claims lack merit. Consequently, Tom Coverstone's (Coverstone) motion to dismiss should be granted.

# II.

## STATEMENT OF FACTS

Plaintiff and Defendant explored the possibility of Defendant purchasing a patent portfolio from Plaintiff, who also agreed to represent Defendant (the ethical considerations of entering into a transaction with your client without a waiver are not at issue in the complaint, so cannot be addressed at this juncture) with respect to patent litigation.

Fleming contends that those negotiations reached sufficient certainty as to become an enforceable contract. Fleming relies wholly on two e-mails in an attempt to establish an enforceable contract, the first from Fleming to Coverstone:

> Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.
>
> You and I agree that you and/or your attorneys will draft the <u>necessary agreements</u>.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 1 -

1

> You agree to wire me ten thousand dollars tomorrow
> as a deposit on the purchase price. This deposit will not be
> refunded <u>if the above sale is not completed</u> by February 15,
> 2008. I agree to work with you and your attorneys to close
> the sale by February 15, 2008.

[First Amended Complaint (FAC) ¶ 10 (emphasis added)]

And the second from defendant to Plaintiff:

> Agreed.

> I will wire the $10,000 tomorrow to your account.

> As we discussed on the phone just now, <u>your wife
> Teresa will sign the assignment documents</u> or whatever is
> needed. I am tied up this week, let's talk next Monday
> morning.

> Best Regards,
> Tom

[FAC ¶ 11 (emphasis added)]

Plaintiff admits through incorporation that he subsequently changed material terms, in order to avoid the tax consequences of what he was trying to do (after Coverstone learned it was an illegal tax avoidance scheme), to make it so that Vineyard Church *had no obligation to assign its ten percent*:

> As an example, and in one alternative potential agreement,
> you offered to change the assignment allocation regarding the
> church and I then pay you $25,000 more than the earlier price
> you wanted because you had doubts in your illegal tax
> deduction scheme with Boise Vineyard. In addition, when I
> told you that your tax scheme was illegal, you responded by
> citing a tax reference that showed that the Vineyard would
> not have an obligation to assign their interest in the patent to
> me.

[FAC ¶ 20]

Plaintiff also admits, in e-mails incorporated into the complaint, that the agreement was not a firm contract, and the money paid was earnest money to allow GMT Management Co. to perform due diligence on the patent portfolio, which made the agreement equivalent to an option to purchase if the due diligence was satisfactory:

///

///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

> As you are well aware, the deposit was consideration for me taking my patent portfolio off the market in general and more specifically, not negotiating with a patent broker that contacted me regarding purchasing my patent portfolio.

[FAC ¶ 17]

Because Plaintiff (conveniently) does not include the other e-mails clearly demonstrating that this is not a contract in the complaint, those are not at issue here at the pleadings stage.

After the initial agreement to negotiate took place, and during the due diligence period, Coverstone began to discover the major problems made with the patent, and the misrepresentations made by Fleming. Coverstone also learned that Fleming (purportedly his attorney for the purposes of this patent) was not even licensed to practice in Idaho, where he maintains an office and where had agreed to represent GMT Management Co. After these revelations, the negotiations broke down into settlement discussions in an attempt to save this relationship from certain lawsuit.

Coverstone initially provided another offer in an attempt to negotiate the agreement, but that was rejected. Coverstone then requested his deposit back, but Fleming took the position that he was entitled to keep the deposit, and asked Coverstone to provide him with "a credible legal analysis that indicates why [he] should refund the deposit . . . ." [FAC ¶ 17] That same day, Coverstone responded by setting forth his basis for asking that the deposit be returned. In his response, Coverstone stated that Fleming had committed fraud by mischaracterizing the portfolio, the prior art, and the file histories. [FAC ¶ 20] Coverstone also asserted that Fleming committed ethical violations. [FAC ¶ 20][1] Fleming concluded the e-mail by noting that if they could not agree to a mutual release, Coverstone would have no choice but to inform his litigation attorneys. [FAC ¶ 20]

///

---

[1]  The allegations of ethical misconduct are based upon Fleming's deliberate concealment of the truth *from his client* and the fact that he was purportedly practicing law in Idaho (including his representation of Coverstone's entity), where he was not licensed to practice.

- 3 -

1    Rather than respond, Fleming filed a virtually identical lawsuit in Idaho <u>the next</u>

2    <u>day</u>. [Request for Judicial Notice]  While it was pending (and unbeknownst to

3    Coverstone), he agreed to return the deposit and execute mutual releases.  He then backed

4    out of that agreement and, less than one week later, Fleming filed this lawsuit with a

5    complaint identical to that filed in Idaho (this complaint has since been amended).

6                                        **III.**

7                                  **LEGAL STANDARD**

8    Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss will be

9    granted when the plaintiff cannot prove facts in support of his claim that would entitle

10   him to relief.  *Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*.  Rule 12(b)(6) permits

11   dismissal of a claim either where the claim lacks a cognizable legal theory or where

12   insufficient facts are alleged to support the plaintiff's theory.  See *Balistreri v. Pacifica*

13   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion a

14   complaint must contain factual allegations sufficient "to raise a right to relief above the

15   speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007).  A

16   plaintiff's obligation under Rule 8(a)(2)'s notice pleading standard is "to provide the

17   grounds of his entitlement to relief [using] more than labels and conclusions. . . ." Id.   In

18   resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most

19   favorable to the plaintiff and must accept all well-pleaded factual allegations as true.

20   *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, a court

21   is not required to credit "conclusory allegations of law and unwarranted inferences." *Jet*

22   *Source Charter, Inc. v. Gemini Air Group, Inc.*, 2007 U.S. Dist. LEXIS 85308, 4-6 (SD

23   Cal. 2007).

24                                        **IV.**

25                                    **ARGUMENT**

26   Fleming asserts three causes of action in the complaint, none of which are viable.

27   There can be no breach of contract action were no enforceable contract exists, as here, so

28   that cause of action should be dismissed.  Similarly, the contentions regarding

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 4 -

1    Coverstone's post-negotiation comments are not actionable as a matter of law.

2    Therefore, all three causes of action should be dismissed.

3    **A.    There can be no breach of contract cause of action without an enforceable**

4    **contract**

5    Plaintiff alleges breach of contract, but it is axiomatic that one cannot have a

6    breach of a contract without an enforceable contract. And here, there was no enforceable

7    contract. This was an agreement to deal, together with earnest money and, like in all

8    patent transactions, a due diligence period ("The deposit will not be refunded if the above

9    sale is not completed by February 15, 2008").

10    A contract "is unenforceable if the parties fail to agree on a material term or if a

11    material term is not reasonably certain." *Lindsay v. Lewandowski* (2006) 139

12    Cal.App.4th 1618, 1622. Here, there are a multitude of material terms that were never

13    agreed upon:

14    **1.    Fleming never agreed to have his wife joined as a party to the contract**

15    Coverstone agreed to the terms proposed by Fleming but *added an express*

16    *condition*, that Fleming's wife sign off on the transaction, something that was never

17    acknowledged or agreed to by Fleming. It is axiomatic that the "acceptance" of an offer

18    that in actuality imposes another condition is a counter-offer that itself must be accepted.

19    *Bullock v. McKeon* (1930) 104 Cal.App.72, 79.

20    Here, there was no manifestation of assent to this new condition. Such an assent is

21    not even *alleged*. In fact, the filing of the complaint *by Fleming only* demonstrates that

22    he rejected the condition requiring that his wife be a party to the contract.[2] Therefore,

23    there was never an enforceable contract.

24    **2.    Coverstone was not negotiating on behalf of himself**

25    And not only were the parties on the Fleming side of the contract never pinned

26    down; the parties to the contract on the other side were never determined either. Fleming

27    knew that Coverstone was negotiating on behalf of his entity (GMT Management Co.), as

28

---

[2] See discussion of necessary and indispensable parties in contract actions in section IV(A)(2), *infra*.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    evidenced by the express condition that the patent would be assigned to Coverstone "*or*

2    *an entity that you designate*." [FAC ¶ 10] If the court cannot determine against whom to

3    enforce the contract, then of course the contract cannot be enforced. *Bustamante v. Intuit,*

4    *Inc.* (2006) 141 Cal.App.4th 199, 209.

5        Moreover, because Coverstone is the only named defendant, and he cannot

6    possibly be liable on the action, it cannot proceed. The California Supreme Court has

7    made clear: "Directors and officers are not personally liable on contracts signed by them

8    for and on behalf of the corporation unless they purport to bind themselves individually."

9    *United States Liability Insurance Company v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d

10    586, 595. This demonstrates not only the unenforceable nature of the agreement, but

11    independently proves that Coverstone individually cannot be a named defendant in this

12    action.

13        **3.    Vineyard Boise was removed from the transaction, thereby altering its**

14            **material terms**

15        According to the "contract" terms, Vineyard Boise had rights and obligations

16    under the contract (to assign 10% of the patent in exchange for $100,000). There is no

17    allegation or evidence suggesting that they agreed to their purported role. Moreover, as

18    noted in later e-mails mentioned in the complaint, the Vineyard Boise obligation was

19    removed, such that the assignment of their interest was "optional." Fleming alleges that

20    there was an enforceable contract, in which Vineyard Boise clearly has both benefits and

21    obligations, but does not join Vineyard Boise as a party, *and claims the full measure of*

22    *the purchase price for himself.* The reason is obvious, as demonstrated by subsequent e-

23    mails, Coverstone learned that the IRS had declared Fleming's tax avoidance scheme was

24    unlawful, so Fleming proposed removing Vineyard Boise from the transaction (a fact he

25    conveniently omits from the complaint). However, this demonstrates that an agreement

26    on the essential terms (e.g., how much money was to be paid to whom, who was going to

27    assign the patent to GMT) was never decided.

28    ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 6 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    If the "contract" as iterated in the complaint is actually binding, then there is no

2    doubt that Vineyard Boise is a required party within the meaning of Federal Rules of

3    Civil Procedure 19(a)(1).[3]  See *Rojas v. Loewen Group Int'l* (D.P.R. 1998) 178 F.R.D.

4    356, 361 ("generally, in breach of contract actions, all parties to the contract are

5    necessary ones.").

6    In other words- there are only two possibilities.  The contract is binding, and the

7    case must be dismissed for failure to add necessary and indispensable parties or, as

8    Plaintiff concedes by not adding those parties, *there is no binding contract.*

9    **4.    The parties even note that further documents are "necessary," showing**

10   **that this is not the actual binding contract**

11   The parties to the contract indicated that further documentation was "necessary"

12   and that they would "strive to close the deal" by February 15, 2008.  Fleming, in his own

13   words, stated that the earnest money was consideration for him to take the patents off the

14   market during the due diligence period, which is categorically inconsistent with his

15   argument now that they intended to create a binding deal when the money was paid.  This

16   evinces a clear intention that the electronic mails were not intended to be the final and

17   binding contract, but an agreement to agree.

18   In very similar circumstances, the court has clearly held that there is no

19   enforceable contract.  *Beck v. American Health Group, Intl.* (1989) 211 Cal.App.3d 1555,

20   1562-63.  In *Beck*, the parties both affirmatively signed an agreement with the terms

21   specified, but also stated that they would forward the agreement to counsel in order to

22   have the documents drawn up, and that hopefully they would have a completed contract

23   in the near future.  The *Beck* court found that the original agreement was not enforceable.

24   That is exactly the same as the electronic e-mails in this case, except that *Plaintiff himself*

25   characterized the further documentation as *necessary.*

26   ///

27

28   ---
[3]    The reason they are not joined is obvious—they never agreed to the "contract" as iterated in the alleged binding agreement.  This, of course, compels the same conclusion—there was no binding contract.

1    And this is the only interpretation consistent with common sense. The reason it

2    was going to take several weeks to complete the transaction, and the reason earnest

3    money was put in place, was to allow defendant and his representatives to conduct due

4    diligence on the patent. Indeed, it was that very due diligence that led to them rescinding

5    the offer to purchase the patent, for it was worth far less than represented.

6    Because Fleming (and his wife) never agreed to the counter-offer requiring their

7    signature, and because Vineyard Boise never agreed to, nor was involved in, the

8    transaction (though allegedly an integral part), and because the required parties are not

9    before the court, and because it is obvious on face that the agreement contemplated many,

10    many further actions and details before it became binding, or for any one of these

11    reasons, there was no binding contract created in this matter.

12    **B.**    **The defamation cause of action fails because it is barred by the litigation**

13    **privilege and unsupported by facts**

14    The defamation cause of action fails for two reasons: (1) it is protected by the

15    litigation privilege; and (2) Plaintiff has not even *alleged* the facts necessary to state a

16    cause of action for defamation.

17    **1.**    **The defamation claim is barred by the litigation privilege**

18    Fleming's second cause of action is barred by the litigation privilege, *Cal. Civil*

19    *Code* section 47 subd. (b).

20    "For well over a century, communications with 'some relation' to judicial

21    proceedings have been absolutely immune from tort liability by the privilege codified as

22    *section 47(b)*." *Rubin v. Green*, 4 Cal.4th 1187, 1193 (Cal. 1993). To be protected, the

23    communication must have "some connection or logical relation to the action." *Silberg v.*

24    *Anderson*, 50 Cal. 3d 205, 212 (1990). The privilege has been applied quite expansively

25    and "should be denied only where [the communication] is so palpably irrelevant to the

26    subject matter of the action that no reasonable person can doubt its irrelevancy."

27    *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal.App.4th 1082, 1089

28    ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 8 -

1 | (1999). The privilege is also "applicable to any communication . . . and all torts except
2 | malicious prosecution." *Silberg*, 50 Cal. 3d at 212 (citations omitted).

3 | The California courts have also been clear that section 47(b) includes
4 | communications made in a pre-litigation context. See *Rubin*, 4 Cal.4th at 1194 (1993);
5 | *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 919, (2004); *Sengchanthalangsy v.*
6 | *Accelerated Recovery Specialists, Inc.*, 473 F.Supp.2d 1083, 1088 (S.D. Cal. 2007)
7 | quoting *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 919 ("if the statement is
8 | made with a good faith belief in a legally viable claim and in serious contemplation of
9 | litigation, then the statement is sufficiently connected to litigation and will be protected
10 | by the litigation privilege. If it applies, the privilege is absolute.").

11 | All of Coverstone's statements are unquestionably pre-litigation demands for the
12 | return of the deposit in exchange for a mutual release. The statements are also directly
13 | related to grounds for either invalidating the purported contract or establishing that no
14 | contract ever existed. [FAC ¶ 20 ("[E]ven if there was an agreement – which there was
15 | not – it would have been based on fraud in the inducement. You materially
16 | misrepresented key facts related to your patents and competing patents.")] Further,
17 | Coverstone's claim that Fleming had acted fraudulently was offered as grounds for the
18 | return of the deposit. [FAC ¶ 18 ("You mischaracterized your patents, the prior art and
19 | the file histories. You also did not disclose material facts relating the same. . . . Please
20 | send my $10,000 to the address below by February 20th. If you agree to return the
21 | $10,000, I will agree to release and waive my potential claims against you . . . .")] All of
22 | the e-mails in question were in conjunction with the proposed settlement of the case that
23 | is now before the court. And the language makes clear that litigation was contemplated
24 | by both sides (in fact, it was filed *one day after* the e-mails cited in the complaint were
25 | sent).

26 | In such circumstances, the federal and state courts have uniformly applied the
27 | litigation privilege to bar the action. *Eye Laser Care Center, LLC v. MDTV Medical*
28 | *News Now, Inc.*, 2007 U.S. Dist. LEXIS 4844 at *12-14 (S.D. Cal. 2007) (threats of

- 9 -

1    litigation if demands were not met were subject to section 47(b) privilege); *Rohde v.*

2    *Wolf*, 154 Cal.App.4th 28, 37 (2007) (defendant's pre-litigation communications that he

3    would take appropriate action if his demands were not met were subject to section 47(b)

4    privilege); *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 918-919 (2004)

5    (defendant's pre-litigation demand letter was subject to section 47(b) privilege); *Knoell v.*

6    *Petrovich*, 76 Cal.App.4th 164, 169 (1999) (defendant's prelitigation demand letter

7    alleging forgery was subject to section 47(b) privilege); *Aronson v. Kinsella*, 58 Cal.

8    App. 4th 254, 270 (1997) (holding defendant's "prelitigation demand letter is precisely

9    the type of statement that the litigation privilege is intended to protect").

10        Therefore, Fleming's second cause of action is absolutely barred, as a matter of

11   law.

12       **2.    The defamation claim also lacks any *factual* allegations that would**

13           **allow it to proceed**

14        "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory,

15   and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special

16   damage.'" *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citations omitted).  When a

17   plaintiff brings a cause of action for defamation in a California state court, "the allegedly

18   defamatory statement must be specifically identified, and the plaintiff must plead the

19   substance of the statement." *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216

20   (C.D. Cal. 2004) (citations omitted).  "Even under liberal federal pleading standards,

21   'general allegations of the defamatory statements' which do not identify the substance of

22   what was said are insufficient." *Id.*

23        Here, there are absolutely none of the imperative allegations.  There is no

24   allegation with respect to what specifically was said.  There are no allegations regarding

25   to whom the statement(s) was or were made.  There are no allegations suggesting that the

26   statement(s) that were made to third parties were false.  Indeed, as demonstrated in the

27   companion motion, everything Coverstone said was absolutely accurate.  Therefore, this

28   claim must be dismissed in its entirety.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 10 -

**C.    The civil extortion cause of action also fails**

The "civil extortion" cause of action fails for a number of reasons, not the least of which is the fact that it is similarly protected by the litigation privilege. It also fails because "civil extortion" equates to a cause of action for duress and Fleming fails to meet the pleading requirements for that cause of action.

**1.    The civil extortion claim is barred by the litigation privilege**

The civil extortion claim arises out of the same facts and circumstances as the defamation action, and therefore the litigation privilege is equally applicable. This operates as an independent bar to the cause of action.

**2.    The civil extortion claim lacks the necessary allegations that would allow it to proceed**

Fleming has not pled necessary elements of an "extortion" cause of action. In California, there is no such thing as a cause of action for civil extortion. See discussion in *Furhman v. California Satellite Systems, Inc.*, 179 Cal.App.3d 408, 426 (1986) (explaining that civil extortion equates to a cause of action for moneys obtained by duress), disapproved on other grounds by *Silberg v. Anderson*, 50 Cal.3d 205, 212–213 (1990). Because Fleming has not pled the necessary elements of a cause of action for duress, he has failed to state a claim.

First, Fleming fails to allege that Coverstone lacked a good faith belief that he was entitled to pursue the claims he was asserting in the e-mails. The law is clear that "[t]here is no impropriety in a party to a transaction threatening to enforce his legal rights and remedies and in pointing out to the other party the consequences thereof, so long as he believes in good faith that he is entitled to the rights and remedies asserted." *United Professional Planning, Inc. v. Superior Court*, 9 Cal.App.3d 377, 395 (1970). Because this is an element of the cause of action, Fleming's failure to set forth this requisite allegation is fatal to this cause of action and it should be dismissed. Additionally, none of the e-mails cited in the FAC show that Coverstone was acting with anything other than good faith.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    Second, Fleming fails to allege that Coverstone knew his purported claims were

2 false. It is well settled that for the duress to be actionable, the threat "must be made with

3 the knowledge of the falsity of the claim." *Furhman*, 179 Cal.App.3d at 426. In

4 *Furhman*, the court found that the plaintiff failed to state a claim due to her failure to

5 allege that the defendants knew their claims were false. *Id.* The case at bar is identical.

6 Because Fleming failed to include this necessary allegation, he has failed to state a valid

7 claim.

8    Third, Fleming does not allege that he ever gave any money or other valuable right

9 to Coverstone (because he did not). *Furhman* unequivocally explains that "[a]n action

10 for duress is an action for the <u>recovery of moneys received</u> by defendant under the

11 influence of duress." *Id.* at 428 (emphasis added). In *Furhman*, the plaintiff did not

12 allege, nor could she show that she ever paid the money sought in defendants' demand

13 letters and, therefore, her "civil extortion" claim was dismissed without prejudice. *Id.* at

14 426-428. In this case, Fleming does not allege that he ever paid Coverstone any money

15 or anything else of value as a result of Coverstone's demands. Nor can Fleming allege

16 that payment in good faith.[4] Because no money was obtained, there is no money that can

17 be recovered. And, based on the holding in *Furhman*, this cause of action should be

18 dismissed with prejudice.

19  **3.  The e-mails supporting extortion are inadmissible to support the cause**

20     **of action**

21    Moreover, the alleged "extortion" took place in the context of settlement

22 negotiations. The courts have long protected the interchange made in settlement

23 negotiations, and precluded a party from then using the same negotiations to establish

24 liability for a tort on the theory that such liability would chill open settlement discussions.

25 Fed. Rules of Evid. 408. Here, Fleming attempts to circumvent the Rule of Evidence,

26 ///

27

28

<div style="text-align: left; font-size: small;">

---

[4] Fleming seeks $990,000 for the alleged breach of the $1,000,000 contract because he never returned the $10,000 deposit or anything else of value to Coverstone.

</div>

<div style="text-align: left; font-size: xx-small; writing-mode: vertical-rl;">
KLINEDINST PC<br>
501 WEST BROADWAY, STE. 600<br>
SAN DIEGO, CALIFORNIA 92101
</div>

1  seeking admission of settlement e-mails, by contending that the substance of those e-
2  mails contains separate torts.  There is no support for such a position.

### V.

### CONCLUSION

5       This is a complaint that never should have been filed.  The tenuous and atypical
6  causes of action pled are mute testimony to the grasping at straws engaged in by Fleming.
7  While in negotiation, parties can (and often do) become vested in the process.  But the
8  law does not protect vesting—it protects legally binding contracts, of which there was not
9  one here.  And the tangential causes of action, for the conduct when the two parties were
10  attempting to negotiate a pre-litigation settlement, are not actionable.  All of these bars
11  are legal in nature, so leave to amend is inappropriate.
12       Defendant respectfully requests that his motion to dismiss the complaint be
13  granted without leave to amend.

KLINEDINST PC

17  DATED: June 18, 2008                    By:  /s/ Gregor A. Hensrude
18                                               GREGOR A. HENSRUDE
                                                 Attorneys for Defendant
19                                               TOM COVERSTONE

637589v1

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101