1    Steven F. Schossberger, California Bar No. 178494
HAWLEY TROXELL ENNIS & HAWLEY LLP
2    877 Main Street, Suite 1000
P.O. Box 1617
3    Boise, ID 83701-1617
Telephone: (208) 344-6000
4    Facsimile: (208) 342-3829

5    Attorneys for Plaintiff

6

7              IN THE UNITED STATES DISTRICT COURT

8                SOUTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| HOYT A. FLEMING, | ) |
|            Plaintiff, | ) Case No. 08 CV 355WQHNLS |
| | ) |
| vs. | ) MEMORANDUM IN OPPOSITION TO |
| | ) DEFENDANT'S 12(b)(6) MOTION TO |
| | ) DISMISS |
| TOM COVERSTONE, | ) |
|            Defendant | ) Hearing Date: July 21, 2008 |
| | ) Hearing Time: 11:00 AM |
| | ) Courtroom: 4 |
| | ) |
| | ) Judge: William Q. Hayes |
| | ) Magistrate Judge: Nita L. Stormes |
| | ) Complaint Filed: February 22, 2008 |
| | ) Trial Date: None set |
| | ) |
| | ) ORAL ARGUMENT NOT REQUIRED |

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................... 1

III.   12(B)(6) STANDARD .................................................................................... 3

IV.    ARGUMENT ................................................................................................... 3

       A     The Complaint States A Claim For Breach Of Contract ..................... 3

             1.     The Contract Satisfies the Essential Elements of a Contract........... 4

             2.     The Court May Look Only To The Contract For Purposes Of
                    This Motion To Dismiss ............................................................ 6

             3.     The Grounds Asserted By Coverstone For Dismissal Should
                    Be Rejected ............................................................................... 7

       B.    The Complaint States A Claim For Defamation............................... 14

             1.     Fleming Has Sufficiently Stated A Claim For Defamation ......... 14

             2.     Publication Of A Complaint To A Newspaper Is Not Protected
                    by the Litigation Privilege ........................................................ 18

       C.    The Complaint States A Claim For Civil Extortion ......................... 19

             1.     Civil Extortion Is a Valid Cause of Action in California .............20

             2.     It Is Not a Defense to Extortion that Coverstone Believed He
                    Had a Right to Pursue his Claims...............................................20

             3.     Fleming Can Bring An Action for Extortion Even Though He
                    Correctly Refused to Be Blackmailed By Coverstone................21

             4     Coverstone's Extortion Emails Are Not Protected By The
                   Litigation Privilege ....................................................................21

             5     Coverstone's Extortion Emails Are Not Protected By Rule Of
                   Evidence 408...............................................................................22

V.    CONCLUSION..............................................................................................23

- i -

44015 0001 1238993 1

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

5

*Abifadel v. Cigna Ins. Co.,*
  8 Cal.App.4th 145, 9 Cal.Rptr.2d 910 (Cal. App. 1992) ....................................................... 6

6

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
7    41 Cal.4th 1232, 63 Cal.Rptr.3d 398 (Cal. 2007) ............................................................... 22

8

*Adair v. Stockton Unified School Dist.,*
  162 Cal.App.4th 1436, 77 Cal.Rptr.3d 62, (Cal. App. 2008) .............................................. 12

9

*ARC Ecology v. U.S. Dep't of Air Force,*
10    411 F.3d 1092 (9th Cir. 2005) ............................................................................................... 3

11

*Arpin v. Santa Clara Valley Transp. Agency,*
  261 F.3d 912 (9th Cir. 2001) ................................................................................................. 3

12

*Banner Entertainment, Inc. v. Superior Court,*
13    62 Cal.App.4th 348, 58 (Cal. App. 1998) ........................................................................... 14

14

*Beck v. American Health Group, Intl.,*
  211 Cal.App.3d 1555, 260 Cal.Rptr. 237 (Cal. App. 1989) ................................................ 14

15

16

*Columbia Pictures Corp. v. De Toth,*
  87 Cal.App.2d 620, 197 P.2d 580, (Cal. App. 1948) .......................................................... 13

17

*Flatley v. Mauro,*
18    39 Cal.4th 299, 46 Cal.Rptr.3d 606 (2006) ........................................................ 19, 20, 21, 22

19

*Gilmore v. The Palestinian Interim Self-Government Authority,*
20    422 F.Supp.2d 96 (D. D.C. 2006) ....................................................................................... 6, 9

21

*Guardian Media Technologies, LTD, and GMT Management Co. v. Howrey L.L.P. and Michael S.*
  *Dowler,*
22    Case No. 2008-20263 .......................................................................................................... 16, 17

23

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
  896 F.2d 1542(9th Cir. 1990) ........................................................................................ 3, 6, 9

24

*Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.,*
25    160 Cal. App.2d 290 (Cal. App. 1958) .................................................................................. 5

26

*Krantz v. BT Visual Images, L.L.C.,*
  89 Cal.App.4th 164, 107 Cal.Rptr.2d 209 (Cal. App. 2001) ................................................. 7

27

28

- i -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Mann v. Quality Old Time Service, Inc ,*
  120 Cal App 4th 90, 15 Cal Rptr 3d 215,  (Cal. App. 2004) .................................. 18

*Nguyen v. Proton Technology Corp.*
  69 Cal. App.4th 140 (1999) ................................................................ 22

*Okun v. Superior Court,*
  29 Cal.3d 442, 175 Cal Rptr. 157, (Cal. 1981) ................................... 15, 16

*Olsten Corp. v. Sommers,*
  534 F.Supp. 395 (D. Or. 1982) ............................................................ 11

*Schwartz v. Shapiro,*
  229 Cal App 2d 238, 40 Cal Rptr. 189, (Cal. App. (1964) .................. 13

*Shahvar v. Superior Court,*
  25 Cal.App.4th 653 (Cal. App. 1994) ................................................. 18, 19

*Silberg v. Anderson*
  50 Cal. 3d 205, 2012 (1990) .............................................................. 18, 21

*Stewart v. Preston Pipeline Inc ,*
  36 Cal. Rptr.3d 901 (Cal. App. 2005) .................................................. 5

*Susan A  v. County of Sonoma,*
  2 Cal.App.4th 88, (Cal. App. 1991) ................................................... 18, 19

*Taus v. Loftus,*
  40 Cal 4th 683, 54 Cal Rptr.3d 775 (Cal. 2007) .............................. 15

*West Covina Enterprises, Inc. v  Chalmers,*
  49 Cal.2d 754, 322 P.2d 13 (1958) .................................................... 12

**Other Authorities**

Cal. Civ. Code § 1549 .......................................................................... 4

*Cal. Civ. Code § 1550* ......................................................................... 4

*Cal. Civ. Code § 1605* ......................................................................... 5

*Cal. Civil Code § 47 subd. (b)* ........................................................... 21

Cal. Penal Code § 518 ...................................................................... 19, 20

Cal. Penal Code § 519 ...................................................................... 19, 20

Cal. Penal Code § 523 .......................................................................... 21

TABLE OF AUTHORITIES

08 CV 355 WQH-NLS

44015 0001 1238993 1

RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 2 .................................................... 8, 11

RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 9 .................................................... 8, 11

**Rules**

Fed. R. Civ. P. 12(d) ........................................................................................................ 3

Rule 12(b)(6) ........................................................................................................... passim

Rule Of Evidence 408 ....................................................................................................... 22

TABLE OF AUTHORITIES

08 CV 355 WQH-NLS

44015 0001 1238993 1

1   Plaintiff Hoyt A. Fleming, by and through his counsel of record, Hawley Troxell Ennis

2   & Hawley LLP, submits this Memorandum in Opposition to Defendant's 12(b)(6) Motion to Dismiss.

3   **I.     INTRODUCTION**

4   On February 15, 2008, Defendant Tom Coverstone ("Coverstone") backed out of an

5   agreement to purchase intellectual property from Plaintiff Hoyt A. Fleming ("Fleming") for

6   $1,000,000. On that same day, Coverstone attempted to blackmail Fleming by sending Fleming a

7   series of emails that accused Fleming of an "illegal tax scheme" and "very serious ethics violations."

8   Coverstone threatened that if Fleming did not pay Coverstone $10,000, Coverstone would expose

9   Fleming's purported behavior. Fleming did not pay Coverstone the demanded $10,000. Instead,

10  Fleming initiated this action.

11  In response to Fleming's First Amended Complaint ("the Complaint"), Coverstone filed a

12  Motion to Dismiss. Coverstone's Motion to Dismiss improperly attempts to introduce factual

13  allegations outside of the Complaint and asserts factual arguments inappropriate for resolution on a

14  motion to dismiss. The motion to dismiss should be denied.

15  **II.    FACTUAL BACKGROUND**

16  In January 2008, Fleming and Coverstone, both licensed United States patent attorneys,

17  discussed Coverstone's purchase of a patent portfolio from Fleming. *See* First Amended Complaint,

18  ¶¶ 5-11. The discussions culminated, on January 22, 2008, with Coverstone orally agreeing to

19  purchase the intellectual property. *Id.* at ¶¶ 9-10. In confirmation of the oral agreement, Fleming

20  sent Coverstone an email entitled "Purchase of Fleming Radar Detector Family." *Id.* at ¶ 10. The

21  email stated, in relevant part:

22  "Tom,

23  This email confirms that I have agreed to sell and that you have
    agreed to purchase U.S. Patent No. 6,204,798, which has been reissued,
24  Reissue Patent No. 039,038, Patent Application No. U.S. Patent No.
    11/196,841, and Patent Application No. 11/924,352. The purchase
25  price for the above patents and applications is one million dollars.

26  You and I will strive to close the sale by February 1, 2008.
27  However, you and I will close the sale by February 15, 2008.

28  - 1 -

1
2
3
4

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

5
6

You and I agree that you and/or your attorneys will draft the necessary agreements

7
8
9

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

10

. . . .

11

If you agree to the above, then please confirm via email.

12

Thank you.

13

Hoyt Fleming"

14

*Id.*

15

Later that day, Coverstone responded to the email confirming his agreement to the terms:

16

"Hoyt,

17

Agreed.

18

I will wire the $10,000.00 tomorrow to your account

19
20

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed. I am tied up this week, let's talk next Monday morning.

21

Best Regards,

22

Tom"

23
24

*Id.* at ¶ 11. Coverstone's email, which also included the text of Fleming's January 22, 2008 email, will hereafter be referred to as "the Contract."

25
26

Coverstone has now refused to purchase the patent from Fleming. *Id.* at ¶ 24

27

28

- 2 -

1    After breaching his agreement to purchase Fleming's patent portfolio, Coverstone commenced
2    a campaign of extortion and defamation against Fleming. Coverstone falsely accused Fleming of a
3    variety of criminal, tortious and unethical conduct. *See Id.* at ¶¶ 18 and 21. Coverstone then
4    threatened to publicly expose these false accusations against Fleming unless Fleming paid Coverstone
5    $10,000. *Id.* at ¶ 21. Finally, Coverstone made good on his threat to bring Fleming's actions "into
6    the light" by making false and defamatory statements to third parties. *Id.* at ¶ 22.

7    **III.    12(b)(6) STANDARD**

8    When reviewing a 12(b)(6) motion to dismiss, the Court must "accept all factual allegations of
9    the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Arpin v.*
10   *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (citations omitted). "A
11   dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can
12   prove no set of facts in support of his claim which would entitle him to relief." *Id.*

13   The Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6)
14   motion." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir.
15   1990); *see also ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005) ("With
16   respect to a Rule 12(b)(6) dismissal, appellate review is limited to the contents of the complaint.")
17   Any attempt to introduce evidence outside of the pleading would require converting the 12(b)(6)
18   motion into a motion for summary judgment, which is not appropriate at this time given the absence
19   of discovery. *See* F.R.C.P. 12(d).

20   **IV.    ARGUMENT**

21   **A.    The Complaint States A Claim For Breach Of Contract**

22   The Complaint alleges that the parties entered into a Contract in which Fleming would sell
23   and Coverstone would purchase a patent portfolio owned by Fleming. *See* First Amended Complaint,
24   ¶¶ 10-11. The Complaint further alleges that Coverstone has breached the Contract by refusing to
25   pay the agreed upon purchase price. *Id.* at ¶ 24. These allegations state a valid claim for breach of
26   contract, so Coverstone's motion to dismiss must be denied.

27

28    - 3 -

**1.      The Contract Satisfies the Essential Elements of a Contract**

"A contract is an agreement to do or not to do a certain thing" Cal. Civ. Code § 1549. The essential elements of a contract are:

   1. Parties capable of contracting;

   2. Their consent;

   3. A lawful object; and

   4. A sufficient cause or consideration.

*Cal. Civ. Code* § 1550.

The Contract satisfies each of the above four elements. First, the Contract identifies the parties. The Contract states:

> "<u>Tom</u>,
>
>  This email confirms that I have agreed to sell and that you have agreed to purchase . .
>
> <u>Hoyt Fleming</u>"

and

> "<u>Hoyt</u>,
>
> Agreed.
>
> . . .
>
> Best Regards,
>
> <u>Tom</u>"

*Id.* at ¶¶ 10-11 (emphasis added).

Second, both parties evidenced their consent. Again, the Contract states:

> Tom,
>
>  This email confirms that <u>I have agreed</u> to sell and that <u>you have agreed</u> to purchase . . . .
>
>  <u>You and I agree</u> that you and/or your attorneys will draft the necessary agreements.
>
>  <u>You agree</u> to wire me ten thousand dollars tomorrow as a

- 4 -

deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

. . . .

If you agree to the above, then please confirm via email.

Hoyt Fleming

and

"Hoyt,

Agreed.

. . .

Best Regards,

Tom"

*Id.* (emphasis added).

Third, the Contract demonstrates a lawful object, namely, the selling of certain intellectual property owned by Fleming. The Contract states:

> "This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352."

*Id.*

Fourth, the Contract demonstrates sufficient consideration, namely mutual promises. *See Cal Civ. Code* § 1605; *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.*, 160 Cal. App 2d 290, 295 (Cal App. 1958) ("Mutual promises constitute consideration."); *Stewart v. Preston Pipeline Inc.*, 36 Cal. Rptr 3d 901, 918 (Cal App. 2005) ("mutual promises (sufficient consideration)"). Specifically, Fleming promised to sell his intellectual property in exchange for $1,000,000.

- 5 -

1

2. **The Court May Look Only To The Contract For Purposes Of This Motion**
**To Dismiss**

2

3      Much of Coverstone's motion to dismiss inappropriately seeks to have this Court consider

4   (1) alleged facts not contained in the Complaint, and (2) extrinsic communications that occurred

5   subsequent to the parties entering into the Contract. For purposes of a 12(b)(6) motion to dismiss a

6   breach of contract cause of action, neither type of evidence can be considered.

7      As to Coverstone's invitation to consider alleged facts not contained in the Complaint, it is

8   clear that the Court is not permitted to do so because the Court "may not consider any material

9   beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios,* 896 F.2d at 1555

10   Thus, Coverstone's allegations as to the intent of the parties and his self-serving assertion of the

11   purpose of the Contract may not be considered by the Court. *See Gilmore v. The Palestinian Interim*

12   *Self-Government Authority,* 422 F.Supp.2d 96, 102 (D. D.C. 2006) ("It is well-settled that the issue of

13   intent is one for the jury to decide, and not an appropriate basis for ruling on a motion to dismiss.").

14      Similarly, the Court is not permitted to consider extrinsic evidence, such as email

15   communications subsequent to the parties entering into the Contract, even if those emails are

16   referenced in the Complaint. If the Contract is unambiguous, then the Court should only refer to the

17   Contract terms when interpreting the Contract. On the other hand, if the Contract is ambiguous, then

18   the Contract should only be interpreted by the trier of fact:

19      "The interpretation of a contract is a question of law when the contract terms are
      unambiguous. However, when extrinsic evidence is required to determine the intent of
20      the parties to the contract, the interpretation becomes a question of fact for the trier of
      fact."

21

22   *Abifadel v. Cigna Ins. Co.,* 8 Cal.App.4th 145, 159, 9 Cal.Rptr.2d 910, 919 (Cal. App. 1992)

23      Thus, if the Court determines that extrinsic evidence is necessary to interpret the Contract, the

24   interpretation of the Contract would be a question of fact inappropriate for resolution on a motion to

25   dismiss.

26

27

28

- 6 -

44015 0001 1238993 1

1

**3.    The Grounds Asserted By Coverstone For Dismissal Should Be Rejected**

2

Coverstone asks the Court to conclude, as a matter of law, that the Contract he entered into

3    with Fleming to purchase Fleming's patent portfolio is unenforceable. Much of Coverstone's

4    argument focuses on purported uncertainties in the Contract. This argument is a blatant attempt to

5    escape his contractual obligations and is disfavored under California law "It is clear from case law on

6    the issue of indefiniteness and contractual enforceability that courts have a pronounced preference for

7    enforcing agreements, if that is reasonably possible." *Krantz v. BT Visual Images, L.L.C.*, 89

8    Cal App 4th 164, 175, 107 Cal Rptr 2d 209, 217 (Cal. App. 2001). "Stated otherwise, the contract

9    will be enforced if it is possible to reach a fair and just result even if, in the process, the court is

10    required to fill in some gaps." *Id* (citation omitted)

11

Coverstone breaks his argument down into four separate arguments: (1) "Fleming never

12    agreed to have his wife joined as a party to the contract"; (2) "Coverstone was not negotiating on

13    behalf of himself"; (3) "Vineyard Boise was removed from the transaction, thereby altering its

14    material terms"; and (4) "The parties even note that further documents are 'necessary,' showing that

15    this is not the actual binding contract." Each of these arguments should be rejected for the reasons set

16    forth below.

17

**a)    The Parties Agreed That Fleming's Wife Would Sign An**

18

**Assignment Document**

19

Coverstone first argues that the Contract is unenforceable because "Fleming never agreed to

20    have his wife joined as a party to the contract." *See* Defendant's Memorandum, p. 5. In making this

21    argument, Coverstone relies on the following portion of the January 22, 2008 email after he had

22    "agreed" to the terms of the Contract:

23

"Hoyt,

24

Agreed.

25

I will wire the $10,000.00 tomorrow to your account.

26

**As we discussed on the phone just now, your wife Teresa will sign
the assignment documents or whatever is needed.** I am tied up this
week, let's talk next Monday morning."

27

28

- 7 -

1   *Id.* at 11 (emphasis added).

2        Coverstone attempts to twist the meaning of his email by arguing that it "added an express

3   condition" that Fleming's wife sign an assignment document and that "Fleming never agreed" to that

4   condition. *See* Defendant's Memorandum, p. 5. This argument contradicts Coverstone's own email.

5   The email makes clear that it is not adding a new condition, but instead specifically states that the

6   agreement that Fleming's wife would sign the assignment documents was reached over the phone.

7   *See Id.* ("**As we discussed on the phone just now**, your wife Teresa will sign the assignment

8   documents or whatever is needed.") (emphasis added). Thus, this portion of the email merely

9   confirms an agreement that had already been reached. Given that the parties had already reached

10  agreement on the term, there was no reason for Fleming to respond to the statement, which is also

11  evidenced by the fact that Coverstone did not request confirmation from Fleming.

12       Contrary to Coverstone's assertion, Fleming's wife is not a party to the Contract. Fleming's

13  promise to have his wife execute patent assignment documents does not make her a party to the

14  Contract. The *Restatement of the Law, Second, Contracts*, defines the two types of parties to a

15  contract: a promisor and a promisee.

16          "There must be at least two parties to a contract, a promisor and a
17          promisee, but there may be any greater number."

18  RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 9.

19          "(1) A promise is a manifestation of intention to act or refrain from
            acting in a specified way, so made as to justify a promisee in
20          understanding that a commitment has been made.

21          (2) The person manifesting the intention is the promisor.

22          (3) The person to whom the manifestation is addressed is the
23          promisee."

24  RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 2.

25       In this case, Fleming (the promisor) promised to Coverstone (the promisee) that Fleming's

26  wife would execute the patent assignment documents. If Fleming did not have his wife execute the

27  patent assignment documents, then Fleming would have broken his promise to Coverstone. Just as

28                                             - 8 -

1   Coverstone's attorneys who were to "draft the necessary agreements" are not parties to the Contract,

2   neither is Fleming's wife.

### b)     Coverstone Negotiated On His Own Behalf

4           Coverstone next attempts to improperly interject a factual question of intent into his 12(b)(6)

5   motion by arguing: "Fleming knew that Coverstone was negotiating on behalf of his entity (GMT

6   Management Co.)." *See* Defendant's Memorandum, p. 5. As an initial matter, Coverstone's

7   argument raises an issue of intent that is not appropriate for resolution on a motion to dismiss. *See*

8   *Gilmore*, 422 F. Supp.2d at 102 ("It is well-settled that the issue of intent is one for the jury to decide,

9   and not an appropriate basis for ruling on a motion to dismiss.").

10          The Court's review on this Motion to Dismiss is limited to the Complaint, and the Court "may

11   not consider any material beyond the pleadings." *Hal Roach Studios, Inc*, 896 F.2d at 1555. The

12   Complaint alleges that "Fleming agreed to sell and Defendant agreed to purchase U.S. Patent No.

13   6,204,798." *See* First Amended Complaint, ¶ 9 (emphasis added). Thus, the Complaint states a claim

14   against Coverstone, not against GMT Management Co., which is mentioned at no place either in the

15   Contract or the Complaint.

16          Even if the Court were permitted under F.R.C.P. 12(b)(6) to look beyond the pleadings and at

17   the intent of the parties, Coverstone's argument that he negotiated on behalf of GMT Management

18   Co. is baseless. The very email Coverstone relies on makes clear that, while the patent portfolio

19   might ultimately be assigned to some separate entity, it was Coverstone, himself, who was purchasing

20   the patent portfolio.

21          "Tom,

22          This email confirms that I have agreed to sell and that you have
            agreed to purchase U.S. Patent No. 6,204,798, which has been reissued,
23          Reissue Patent No. 039,038, Patent Application No. U.S. Patent No.
            11/196,841, and Patent Application No. 11/924,352. The purchase
24          price for the above patents and applications is one million dollars.

25          You and I will strive to close the sale by February 1, 2008.
26          However, you and I will close the sale by February 15, 2008.

27          Both you and I understand that I will assign a 10% interest in
            the above patents and applications to Vineyard Boise, a church in

28                                                  - 9 -

Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to <u>you, or an entity that you designate</u>. I will assign my 90% interest directly to **you or an entity that you designate**. <u>You</u> will then immediately pay me $900,000 and <u>you</u> will then immediately pay Vineyard Boise $100,000.

<u>You</u> and I agree that <u>you</u> and/or <u>your</u> attorneys will draft the necessary agreements

<u>You</u> agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with <u>you</u> and your attorneys to close the sale by February 15, 2008.

If <u>you</u> agree to the above, then please confirm via email

Thank you.

Hoyt Fleming"

*See* First Amended Complaint, ¶ 10.

Coverstone then responded, not by asserting that **GMT Management Co.** would wire the $10,000 payment, but that promising that "**I** will wire the $10,000.00 tomorrow to your account." *See Id.* at ¶ 11 (emphasis added). Indeed, when the payment was made the next day, it was not made by GMT Management Co. To the contrary, as alleged in the Complaint, "<u>Defendant</u> wired $10,000 to a bank account of Fleming." *Id.* at 12 (emphasis added) [1]

While Coverstone emphasizes the statement that the patent portfolio would be assigned "to you or an entity that you designate," that statement simply recognizes that there is a distinction between Coverstone, the individual, and any entity that he owns. While the patent portfolio could ultimately be assigned to some other entity of Coverstone's choosing, the Contract makes clear that Coverstone, not any separate entity, was the party purchasing the patent portfolio.[2]

---

[1] Additional clarification is provided on this issue in Fleming's proposed Second Amended Complaint, which alleges: "On January 23, 2008, Defendant wired $10,000 from a bank account entitled 'THOMAS E COVERSTONE SOLE AND SEPARATE PROPERTY' to Fleming's bank account." Fleming filed a motion for leave to file this Second Amended Complaint on June 30, 2008

[2] Coverstone's motive for his after-the-fact introduction of GMT Management Co. is obvious. That

- 10 -

1

**c)    The Terms Of The Contract Have Not Been Altered**

2      Coverstone next argues that a purported uncertainty in the Contract related to the Vineyard

3  Boise church makes the Contract unenforceable. Coverstone bases this argument on a subsequent

4  email in which Fleming supposedly "proposed removing Vineyard Boise from the transaction." *See*

5  Defendant's Memorandum, p 6. As an initial matter, this argument is inappropriate for purposes of a

6  motion to dismiss because it relies both on extrinsic evidence offered to prove the intent of the parties

7  and facts not contained within the four corners of the Complaint. *See* Defendant's Memorandum, pg.

8  6 (conceding that the alleged proposal to remove Vineyard Boise from the Contract is not contained

9  within the Complaint) As explained above, neither type of evidence is appropriate in connection

10  with a motion to dismiss.

11      Coverstone argues that Fleming's alleged proposal to remove Vineyard Boise from the

12  transaction rendered the Contract uncertain as to an essential term. This argument misses the mark

13  (even if this allegation, which is not contained in the Complaint, could be considered on a motion to

14  dismiss). The parties to a contract are free to modify the terms of the contract at any time. A

15  proposal to modify a contract, if rejected, does not void the contract. Instead, the original terms of

16  the contract simply remain in force. *See Olsten Corp. v. Sommers*, 534 F Supp 395, 399 (D Or.

17  1982) (explaining that a proposed modification, if not accepted, has "no effect on the original

18  contract"). Nothing about the alleged proposed modification calls into question the terms of the

19  Contract entered into between Fleming and Coverstone.

20      Coverstone appears to be alleging that the Vineyard Boise church is a party to the Contract.

21  Vineyard Boise is not a promisor or a promisee. Thus, Vineyard Boise is not a party to the Contract.

22  *See* RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 9 ("There must be at least two parties to a

23  contract, a promisor and a promisee, but there may be any greater number"). To the contrary,

24  Vineyard Boise is a beneficiary "Where performance will benefit a person other than the promisee,

25  that person is a beneficiary." RESTATEMENT (SECOND) OF THE LAW, *Contracts* § 2. Fleming agreed

26

27

entity will undoubtedly turn out to be an empty shell with no assets to satisfy a judgment

28

- 11 -

1  to "assign a 10% interest in the above patents and applications to Vineyard Boise." Similarly,

2  Coverstone agreed to "pay Vineyard Boise $100,000" after "Vineyard Boise assigned its 10%

3  interest" to Coverstone or an entity that he designated. Thus, it is clear from the Contract that

4  Vineyard Boise is a beneficiary of the Contract, but not a party to it.

5        Finally, although not germane to this motion to dismiss, a few points should be made

6  regarding Coverstone's allegations of illegality. While not based on facts within the four corners of

7  the Complaint, Coverstone asserts that the provisions of the Contract relating to payment being made

8  to Vineyard Boise are illegal. Coverstone's self-serving description of this provision as being

9  "unlawful" and a "tax avoidance scheme" is unfounded. While the structuring of the transaction may

10  or may not have had certain tax consequences depending on how the IRS classified the payments,

11  there is absolutely nothing illegal about the transaction itself. If a party were to misclassify the nature

12  of the payments to the IRS, that misclassification might be illegal, but the transaction itself would not.

13  *See West Covina Enterprises, Inc. v. Chalmers,* 49 Cal.2d 754, 759, 322 P.2d 13, 16 (1958) (If a

14  contract can be performed legally, a court will presume that the parties intended a lawful mode of

15  performance). Moreover, even if some provision of the Contract were ultimately found to be

16  unlawful by the Court, that provision could be severed from the Contract. *See Adair v. Stockton*

17  *Unified School Dist.*, 162 Cal.App.4th 1436, 1450, 77 Cal.Rptr.3d 62, 73 (Cal. App. 2008) ("It is

18  settled that where a contract has both void and valid provisions, a court may sever the void provision

19  and enforce the remainder of the contract.").

20        **d)    The Parties Entered Into A Binding Contract, Not Merely An**

21        **Agreement To Agree**

22        Finally, Coverstone argues that the Contract he entered into does not constitute a binding

23  agreement, but was merely an "agreement to agree." This argument both ignores the clear language

24  of the Contract and raises questions of fact that are inappropriate for resolution on a 12(b)(6) motion

25  to dismiss.

26        The clear terms of the Contract evidence an intent by both parties to enter into a binding

27  contractual relationship. As alleged in the Complaint, the parties reached an agreement over the

28                    - 12 -

1    phone whereby Coverstone would purchase the patent portfolio from Fleming for $1,000,000.  The

2    parties memorialized this agreement by email.  *See* First Amended Complaint, ¶ 10 ("This email

3    confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798.").

4    The email specifically asked Coverstone to confirm "[i]f you agree to the above," and Coverstone

5    responded unequivocally: "Agreed."  *Id.*  Under well-established California contract law, this

6    exchange constitutes a binding agreement, notwithstanding the fact that the emails contemplated that

7    Coverstone's "attorneys will draft the necessary agreements."[3]  *Id.*

8         In *Schwartz v. Shapiro*, 229 Cal.App.2d 238, 247-48, 40 Cal.Rptr. 189, 195-96 (Cal. App.

9    (1964), the court explained:

10            "Parties may engage in preliminary negotiations, oral or written, in
             order to reach an agreement. These negotiations ordinarily result in a
11            binding contract when all of the terms are definitely understood, even
             though the parties intend that a formal writing embodying these terms
12            shall be executed later. . . . [W]here the minds of the parties have met
             respecting the terms and conditions of the more formal writing that is to
13            be executed by them, and the agreed terms of the contract thereafter to
             be executed are certain and in all respects definitely understood and
14            agreed upon in advance, either orally or by informal writing, there is in
             such case an obligatory contract . . . . The formal written contract is not
15            the agreement of the parties, but only evidence of that agreement . . . ;
             it adds nothing to what the parties have already agreed upon. . . .
16            Accordingly, the oral terms agreed upon, or the informal writing or
17            writings entered into, become the binding contract notwithstanding the
             agreement was not reduced to a more formal writing."
18

19   *Id.* (citations omitted); *see also Columbia Pictures Corp. v. De Toth*, 87 Cal.App.2d 620, 628-29, 197

20   P.2d 580, 585-86 (Cal. App. 1948) ("The cases are legion to the effect that when the respective

21   parties orally agree upon all of the terms and conditions of an agreement with the mutual intention

22   that it shall thereupon become binding, the mere fact that a formal written agreement to the same

23   effect is to be prepared and signed does not alter the binding validity of the oral agreement.").

24

25

26   ───────────────────
     [3] The agreements "necessary" to close a patent sale of intellectual property, such as a patent
27   portfolio, are assignment documents that transfer title of the intellectual property from the seller to
     another entity.
28                                              - 13 -

Coverstone's reliance on *Beck v. American Health Group, Intl*, 211 Cal.App.3d 1555, 260 Cal.Rptr. 237 (Cal. App. 1989), is misplaced. There, the "agreement to agree" was unambiguously clear on its face that the parties did not intend to be bound until a final contract had been agreed upon in the future. As explained by the *Beck* court:

> "The letter under consideration begins: 'It is a pleasure to draft the ***outline of our future agreement*** . . .' After outlining the terms of the proposed agreement the writer of the letter asks plaintiff to sign it 'if this is a general understanding of the agreement,'' in order that the Hospital may "forward it to Corporate Counsel ***for the drafting of a contract***.' The letter concludes: 'When we have a draft, we will discuss it, and ***hopefully shall have a completed contract*** and operating unit in the very near future.' Taken in their ordinary sense, the words of the letter manifest an intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel."

*Id.*, 211 Cal.App.3d at 1562-63 (emphasis supplied in *Beck*).

The language used in *Beck* is easily distinguishable from the evidence in the present Contract, which demonstrates an intent by the parties to be immediately bound.

In any event, Coverstone's argument that the parties intended only an "agreement to agree" raises an issue of fact that is not appropriate for resolution on a 12(b)(6) motion to dismiss. The determination whether the parties have reached a final agreement or merely an agreement to agree "is to be determined by the surrounding facts and circumstances of a particular case and is a question of fact for the trial court." *Columbia Pictures Corp.*, 87 Cal.App.2d at 629 (emphasis added); *see also Banner Entertainment, Inc. v. Superior Court*, 62 Cal.App.4th 348, 58 (Cal. App. 1998) (same). Thus, Coverstone's assertion that the parties intended only an agreement to agree cannot be considered in the motion to dismiss.

## B.    The Complaint States A Claim For Defamation

Coverstone also seeks to dismiss Fleming's defamation cause of action. Contrary to the arguments made by Coverstone, Fleming has adequately stated a claim for defamation.

### 1.    Fleming Has Sufficiently Stated A Claim For Defamation

To state a claim for defamation a plaintiff must allege "(a) a publication that is (b) false, (c)

- 14 -

1  defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special

2  damage." *Taus v. Loftus*, 40 Cal 4th 683, 720, 54 Cal Rptr 3d 775, 804 (Cal 2007). Coverstone

3  asserts that Fleming's allegations of defamation are not pled with sufficient specificity. This

4  argument ignores the rule under California law that "[l]ess particularity is required [to plead

5  defamation] when it appears that defendant has superior knowledge of the facts, so long as the

6  pleading gives notice of the issues sufficient to enable preparation of a defense." *Okun v. Superior*

7  *Court*, 29 Cal 3d 442, 458, 175 Cal Rptr. 157, 166-67 (Cal. 1981)

8      Here, at the time the First Amended Complaint was filed, Fleming knew that Coverstone was

9  making defamatory statements, but had limited knowledge of the exact nature of the defamation. As

10 alleged in the First Amended Complaint, Coverstone accused Fleming of a variety of criminal,

11 tortious and unethical conduct. *See* First Amended Complaint, ¶ 18 ("You committed fraud and

12 conspired to do the same. You mischaracterized your patents, the prior art and the file histories. You

13 also did not disclose material facts relating to same. You did all of this even despite the attorney

14 engagement you requested and entered with me, apparently on behalf of your entire firm. These are

15 very serious ethics violations.)"; ¶ 21 ("You breached your fiduciary responsibility that you owed me;

16 you breached your duty of loyalty you owed to me; you breached your duty to represent me

17 zealously."). Fleming informed Coverstone that these allegations were false. *See Id.* at ¶ 19 ("Each

18 and every ethics violation you made is completely baseless "). Despite being on notice that his

19 allegations were false, Coverstone expressly stated to Fleming that Coverstone intended to make

20 these defamatory statements to third parties:

21          **"I am getting to a point where this (and you) need to be dragged**
            **into the light**. You do not deserve to be practicing law nor do you

22          deserve to be in the patent fraternity. Truth and good will prevail –
            You can take that to your church – I am giving you until Monday – and

23          that is a generous offer on my part."

24 *Id.* at ¶ 21 (emphasis added).

25     When Fleming filed his First Amended Complaint, he took Coverstone at his word that he

26 would defame Fleming, *i.e*, drag Fleming "into the light." Fleming plead the nature of the

27

28                                    - 15 -

1  defamatory statements – that Fleming had mischaracterized patents, prior art and file histories, not

2  disclosed material facts, committed fraud, and committed malpractice  Fleming also plead that the

3  statements were false, defamatory, and injured Fleming. *Id.* at ¶¶ 22 and 30. However, at the time the

4  First Amended Complaint was filed, Fleming did not know the exact wording that Coverstone

5  utilized when Coverstone defamed Fleming. For this reason, Fleming was not able to allege the exact

6  wording of the defamatory statements. Instead, Fleming alleged the general nature of Coverstone's

7  defamatory statements  In light of Coverstone's superior knowledge of the facts and Fleming's

8  limited knowledge of the facts at the time that the First Amended Complaint was filed, the First

9  Amended Complaint adequately stated a cause of action for defamation in that it "gives notice of the

10  issues sufficient to enable preparation of a defense." *See Okun*, 29 Cal 3d at 458.

11       If the Court finds that the First Amended Complaint did not satisfy the lower pleading

12  standard set forth in *Okun*, any technical pleading deficiency can be cured by amendment  *See Id* at

13  460. Fleming has already filed a motion for leave to file a Second Amended Complaint that includes

14  details learned subsequently about Coverstone's defamatory statements. Fleming now knows the

15  exact wording of at least some of Coverstone's defamatory statements.

16       Subsequent to filing the First Amended Complaint, Fleming learned the details of how

17  Coverstone made good on his threat to defame Fleming. As alleged in the proposed Second

18  Amended Complaint, on April 7, 2008, Fleming received a phone call from Mr. Jonathan Fox, a

19  reporter for the Texas Lawyer, a legal interest newspaper. *Second Amended Complaint*, at ¶ 32.  Mr.

20  Fox faxed Fleming a copy of a Petition filed in the case *Guardian Media Technologies, LTD, and*

21  *GMT Management Co. v. Howrey L.L.P. and Michael S. Dowler*, Case No. 2008-20263 ("the Texas

22  Complaint"), which is a lawsuit by two of Coverstone's companies against third parties. *Id.* at ¶ 33.

23  Mr. Fox communicated to Fleming that he was "tipped off" about the Texas Complaint. *Id.* at ¶ 34.

24       As alleged in the proposed Second Amended Complaint, the Texas Complaint was faxed from

25  Coverstone's agent, The Smoot Law Firm, P C., to the Texas Lawyer  *Id.* at 35. Fleming alleges that

28  - 16 -

1   The Smoot Law Firm faxed the Texas Complaint to the Texas Lawyer at Defendant's direction. *Id.* at

2   36.

3       The Texas Complaint contains at least the following false, defamatory and unprivileged

4   statements that have a natural tendency to injure or cause special damage to Fleming:

5
6       "17. Coverstone on behalf of Guardian thereafter made his own inquiry
        as to the validity and value of the patent, unfortunately learning that the
7       patent did not in fact, <u>contrary to what had been represented by Dowler
        and Fleming</u>, provide protection from the potential commercial
        competitors in the marketplace for the product envisioned by the patent
8       and actually had little to no value. Coverstone learned that the principal
        makers of radar detectors were familiar with and not concerned about
9       infringing the patent that Dowler had so highly touted. <u>Contrary to the
10      representations of Dowler and Fleming</u>, Coverstone discovered that the
        principal makers of radar detectors were able to market, and were
11      already marketing, GPS enabled radar detectors without fear of illegally
        infringing the patent Dowler had been fawning over.

12
13      18. <u>After learning that Dowler and Fleming had misrepresented the
        value of the patent</u>, Coverstone told Fleming that he had discovered the
14      misrepresentations and the true value of the patent, and that the sale
        would therefore not go through. Consequent to the actions of
15      Defendants, Fleming has filed lawsuits in federal district courts against
        Coverstone Individually, erroneously claiming that he personally
16      agreed to pay Fleming $1,000,000.00 for the patent."

17  *Id.* at ¶ 37 (emphasis added).

18      On or about April 21, 2008, www.law.com, a legal interest website, published an article

19  entitled "Former Clients Sue Howrey After Alleged Patent Deal Sours," written by Jonathan Fox, and

20  published a copy of the Texas Complaint. *Id.* at ¶¶ 39-40. In addition to republishing the Texas

21  Complaint, the article contains the following false, defamatory, and unprivileged statement that has a

22  natural tendency to injure or cause special damage to Fleming:

23      "Coverstone, the plaintiffs allege, then investigated the patent,
        'unfortunately learning that the patent did not in fact, contrary to what
24      had been represented by Dowler and Fleming, provide protection from
        the potential commercial competitors in the market place for the
25      product envisioned by the patent and actually had little to no value.'"

26  *Id.* at ¶ 41.

27

28                                  - 17 -

1    Coverstone's forwarding a copy of the Texas Complaint to the Texas Lawyer constitutes

2    defamation. *Shahvar v. Superior Court*, 25 Cal.App.4th 653, 658 (Cal. App. 1994) (Plaintiff stated a

3    claim for defamation based on the defendants "communication of a copy of the complaint to the

4    newspaper, which induced the newspaper to publish an article summarizing the complaint's

5    allegations.") Moreover, the defamatory statements directly call into question Fleming's integrity as

6    a patent attorney and, therefore, constitute defamation *per se. Mann v. Quality Old Time Service,*

7    *Inc.*, 120 Cal.App.4th 90, 107, 15 Cal.Rptr.3d 215, 224 (Cal. App. 2004) (explaining that statements

8    "tending directly to injure a plaintiff in respect to the plaintiff's business by imputing something with

9    reference to the plaintiff's business that has a natural tendency to lessen its profits" constitute

10   defamation *per se*)

### 2.    Publication Of A Complaint To A Newspaper Is Not Protected by the Litigation Privilege

13   Coverstone next argues that the defamation cause of action should be dismissed because the

14   defamatory statements are protected by the litigation privilege. However, the California Court of

15   Appeals has expressly held that a defendant's actions in forwarding a complaint to a newspaper are

16   not protected by the litigation privilege:

> "The basis for cross-complainants' libel cause of action is not that
> Shahvar filed a false complaint in court. Rather, the libel claim is based
> on Shahvar's communication of a copy of the complaint to the
> newspaper, which induced the newspaper to publish an article
> summarizing the complaint's allegations. Cross-complainants contend
> that Shahvar's communication of his allegations to a third party, the
> Examiner, was unrelated to this litigation and therefore not covered by
> the litigation privilege. We agree. '[R]epublications to nonparticipants
> in the action are generally not privileged under section 47 (2), and are
> thus actionable unless privileged on some other basis.' . . . .
>
> . . . .
>
> As *Silberg, Financial Corp. of America* and *Susan A.* illustrate,
> statements about existing or anticipated litigation by a party or the
> party's attorney to the news media, when the news media is neither a
> party to nor a participant in the litigation, are *not* privileged. Such
> statements are extraneous to the action and are not made '[i]n any ...
> judicial proceeding.' Here the facsimile communication of the

- 18 -

1
2
3

> complaint to the newspaper was nothing more than a republication of
> the complaint's allegations to an unrelated person. Whether the
> complaint was filed before or after the transmission of the facsimile, the
> communication to the newspaper was not protected by the litigation
> privilege in Civil Code section 47 "

4

*Shahvar v. Superior Court*, 25 Cal. App. 4th 653, 658-660 (Cal. App. 1994); *see also Susan A. v.*

5

*County of Sonoma*, 2 Cal.App 4th 88, 95 (Cal App. 1991) ("an attorney who wishes to litigate his

6

case in the press will do so at his own risk").

7

8

Coverstone's defamatory statements are not protected by the litigation privilege, and his

motion to dismiss Fleming's defamation cause of action should be denied.

9

    **C.**    **The Complaint States A Claim For Civil Extortion**

10

As alleged in the Complaint, Coverstone attempted to blackmail Fleming by threatening to

11

publicly expose that Fleming was involved in an "illegal tax scam" unless Fleming paid Coverstone

12

13

$10,000. More specifically, Coverstone threatened that, unless Fleming paid Coverstone $10,000, "I

[Coverstone] am getting to a point where this [the "illegal tax scam"] (and you [Fleming]) need to be

14

15

dragged into the light. . . . I am giving you until Monday – and that is a generous offer on my part "

16

*See* First Amended Complaint, ¶ 21.

17

Coverstone's conduct constitutes civil extortion under California law. Coverstone's emails

18

demonstrate an attempt to obtain property [$10,000] from another [Fleming], with his consent,

19

induced by a wrongful use of fear [the fear of Coverstone exposing Fleming's participation in an

20

"illegal tax scam"]. *See* Cal. Penal Code § 518. Cal. Penal Code § 519 defines "fear" as follows: "To

21

accuse the individual threatened . . . of any crime" and "To expose, or impute to him . . any . .

22

crime."

23

24

Coverstone asserts a variety of arguments against Fleming's civil extortion cause of action, all

but one of which were ruled upon in the California Supreme Court's discussion of the civil extortion

25

26

cause of action in *Flatley v. Mauro*, 39 Cal.4th 299, 305, 46 Cal.Rptr 3d 606 (2006).

27

28

MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS
08 CV 355 WQH-NLS

44015 0001 1238993 1

1

### 1.    Civil Extortion Is a Valid Cause of Action in California

Coverstone's assertion that "there is no such thing as a cause of action for civil extortion" is

flatly wrong  *See* Defendant's Memorandum, p. 11  The Supreme Court of California teaches

otherwise. *See Flatley*, 39 Cal.4th at 305 ("Plaintiff Michael Flatley, a well-known entertainer, sued

defendant D  Dean Mauro, an attorney, for civil extortion  .  ."). The *Flatley* court then

unambiguously applied *Cal. Pen. Code* sections 518, 519, and 523**Error! Bookmark not defined.**,

the California extortion statutes, in a civil litigation. *Id.* at 326. Thus, the California Supreme Court

recognizes civil extortion as a cause of action in California.

### 2.    It Is Not a Defense to Extortion that Coverstone Believed He Had a Right to Pursue his Claims

Coverstone next argues that the civil extortion cause of action fails because Coverstone had a

"good faith belief that he was entitled to pursue the claims he was asserting in the e-mail." *See*

Defendant's Memorandum, p. 11. This exact argument, however, was specifically rejected by the

California Supreme Court in *Flatley*:

> "Extortion has been characterized as a paradoxical crime in that it criminalizes the making of threats that, in and of themselves, may not be illegal. '[I]n many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money.'"

*Flatley*, 39 Cal.4th at 326.

It is similarly not a defense to extortion that Coverstone believed his claims had merit.

*See* Defendant's Memorandum, p. 12 ("Fleming fails to allege that Coverstone knew his

purported claims were false."). Again, Coverstone's argument has already been rejected by

the California Supreme Court:

> "The extortion statutes 'all adopted at the same time and relating to the same subject matter, clearly indicate that the legislature in denouncing the wrongful use of fear as a means of obtaining property from another had in mind threats to do the acts specified in section 519, the making of which for the purpose stated is declared to be a wrongful use of fear induced thereby.' .  .  .  'It is the means employed [to obtain the property of another] which the law denounces, and though the purpose may be to collect a just

- 20 -

44015 0001 1238993 1

1

> indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition. The law does not contemplate the use of criminal process as a means of collecting a debt.'"

2

3

*Flatley*, 39 Cal 4th at 326-27.

4

### 3.   Fleming Can Bring An Action for Extortion Even Though He Correctly

5

### Refused to Be Blackmailed By Coverstone

6

Coverstone next argues that Fleming's civil extortion claim fails because Fleming did not

7

actually succumb to Coverstone's $10,000 blackmail demand. Once again, the California Supreme

8

Court has held to the contrary. In *Flatley*, the Court made clear that "Flatley did not pay Robertson

9

and Mauro." *Flatley*, 39 Cal.4th at 326-27. However, the plaintiff's refusal to pay the money illegally

10

demanded did not invalidate the civil extortion cause of action:

11

> "Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat."

12

13

14

15

*Id* at 326 (citing Cal. Penal Code § 523) (emphasis added)

16

### 4.   Coverstone's Extortion Emails Are Not Protected By The Litigation

17

### Privilege

18

The litigation privilege applies to "any communication (1) made in judicial or quasi-judicial

19

proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

20

litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson* 50

21

Cal. 3d 205, 2012 (1990). The last two requirements are related: "The requirement that the

22

communication be in furtherance of the objects of the litigation is, in essence, simply part of the

23

requirement that the communication be connected with, or have some logical relation to, the action,

24

i.e. that it not be extraneous to the action" *Id.* at pp. 219-220. In short, the statement must have some

25

"reasonable relevance to the subject matter of the action." *Id.* at p. 220. The relevancy requirement

26

is real. *Cal. Civil Code* § 47 subd. (b) "does not prop the barn door wide open for any and every sort

27

28

- 21 -

44015 0001 1238993 1

of prelitigation charge or innuendo, especially concerning individuals." *Nguyen v. Proton Technology Corp.* 69 Cal. App 4th 140, 150 (1999). The Nguyen court refused to immunize the attorney's accusation of criminal conduct. *Id.* at 152. Allegations of crimes "in purely civil disputes . . is and should be fraught with peril." *Id.* (explaining that an attorney's demand letter that "threatened to initiate . . . criminal proceedings" was not protected by the litigation privilege).

Coverstone's threat of *exposing* criminal conduct bore no logical connection or relation to the contract issues being discussed on February 15, 2008. Thus, Coverstone's extortion threats were extraneous to Coverstone's efforts to avoid the contract and were outside the scope of the litigation privilege.

In any event, even if the litigation privilege could apply to Coverstone's extortion emails, the question of whether the litigation privilege applies is a question of fact inappropriate for resolution on a motion to dismiss. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1251, 63 Cal.Rptr.3d 398, 415 (Cal. 2007) ("Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact."). While Coverstone may contend that his extortion emails were made in good faith, Fleming contends they were made in bad faith simply for the purpose of extorting $10,000. This issue of fact involving Coverstone's subjective intent cannot be resolved on a 12(b)(6) motion to dismiss.

### 5.    Coverstone's Extortion Emails Are Not Protected By Rule Of Evidence 408

Finally, Coverstone asserts that his emails are inadmissible settlement discussions pursuant to Federal Rule of Evidence 408. This is the only argument presented by Coverstone that was not directly addressed by *Flatley*. However, this argument ignores both the intent and plain language of Rule 408. Rule 408 makes clear that settlement discussions are inadmissible only "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." *See* Fed. R. Evid. 408(a). The Rule

- 22 -

1  | specifically provides that settlement discussions may be admitted if offered for any other purpose:

2  | **(b) Permitted uses**. This rule does not require exclusion if the evidence
3  | is offered for purposes not prohibited by subdivision (a). Examples of
   | permissible purposes include proving a witness's bias or prejudice;
4  | negating a contention of undue delay; and proving an effort to obstruct
   | a criminal investigation or prosecution.

5  | Here, Coverstone's emails are not offered to prove liability for, invalidity of, or amount of a

6  | claim that was disputed as to validity or amount. Instead, the emails are offered as evidence of

7  | Coverstone's blackmail demands. Thus, the emails are offered for a proper purpose and are

8  | admissible.

9  | **V.     CONCLUSION**

10 | For the reasons set forth above, Coverstone's Motion to Dismiss should be denied.

13 | RESPECTFULLY SUBMITTED THIS 7th day of July, 2008.

14 | HAWLEY TROXELL ENNIS & HAWLEY LLP

17 | By: /s/    Steven F. Schossberger
   | Steven F. Schossberger, CA No. 178494
18 | Attorneys for Plaintiff

- 23 -

MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS
08 CV 355 WQH-NLS

44015 0001 1238993 1