1  STEVEN F. SCHOSSBERGER
2  California Bar Number 178494
   HAWLEY TROXELL ENNIS & HAWLEY, LLP
3  877 W. Main Street, Suite 1000
   Boise, ID 83702
4  (208) 344-6000
   (208) 342-3529 (facsimile)
5
6  Attorneys for Plaintiff
7
8              IN THE UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  HOYT A. FLEMING, | ) Case No.: 3:08 CV 355 WQH-NLS |
| 12          Plaintiff, | ) **MEMORANDUM IN OPPOSITION TO** |
| 13      vs. | ) **DEFENDANT'S SPECIAL MOTION TO** ) **STRIKE PURSUANT TO CAL. CODE OF** ) **CIV. PROC. SECTION 425.16** |
| 14  TOM COVERSTONE, | ) |
| 15          Defendant | ) Hearing Date: July 21, 2008 ) Hearing Time: 11:00 AM |
| 16 | ) Courtroom: 4 |
| 17 | ) Judge: William Q. Hayes |
| 18 | ) Magistrate Judge: Nita L. Stormes ) Complaint Filed: February 22, 2008 |
| 19 | ) Trial Date:  None set |
| 20 | ) ORAL ARGUMENT NOT REQUIRED |

21
22
23
24
25
26
27

28  **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO**
    **STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
                                                        3:08 CV 355 WQH-NLS

44015.0001.1239019.2

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND......................................................................................... 1

III. ANALYSIS.................................................................................................................... 5

A.  California's Anti-SLAPP Statute........................................................................... 5

B.  Fleming's Defamation Cause of Action ................................................................ 6

1.  Coverstone's Outrageous Assertions ............................................................ 9

2.  Coverstone's Extortion was Not "In Connection With" a Protected Activity ........... 10

3.  Fleming is Likely to Prevail on his Defamation Cause of Action............................ 12

4.  Summary ..................................................................................................... 13

C.  Fleming's Extortion Cause of Action .................................................................. 14

1.  Coverstone's Extortion Was Not "In Connection With" a Protected Activity .......... 14

2.  Coverstone's Emails Were Criminal Extortion as a Matter of Law and are Not
Protected Under the Anti-SLAPP Statute .................................................... 15

3.  Fleming Is Likely to Prevail on his Extortion Cause of Action............................ 20

4.  Summary ..................................................................................................... 23

IV. CONCLUSION............................................................................................................ 24

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO
STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
3:08 CV 355 WQH-NLS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Barton v. State Bar*
(1935) 2 Cal.2d 294, 40 P.2d 502 ...................................................................17

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003) ........................................................................6

*Birkner v. Lam,*
156 Cal App. 4th 275 (2007)......................................................................5, 14

*Equilon Enterprises v. Consumer Cause, Inc.,*
29 Cal. 4th 53 (2002) ........................................................................................5

*Flatley v. Mauro,*
39 Cal. 4th 299 (2006) ...........................................................................passim

*Gomez v. Garcia*
(9th Cir.1996) 81 F.3d 95 ..............................................................................23

*Libarian v. State Bar*
(1952) 38 Cal.2d 328, 239P.2d 865 ..............................................................17

*Lindenbaum v. State Bar*
(1945) 26 Cal.2d 565, 160 P.2d 9 ..................................................................23

*Navellier v. Sletten,*
29 Cal. 4th 82, 52 (2002)...................................................................................5

*Neville v. Chudacoff,*
160 Cal. App. 4th 1255 (2008) ..............................................................11, 14

*Nguyen v. Proton Technology Corp.*
69 Cal. Ap.4th 140 (1999)..............................................................................21

*Paul for Council v. Hanyecz,*
85 Cal. App. 4th 1356 (2001) ...........................................................................5

*People v. Beggs*
(1918) 178 Cal. 79 172 P. 152.).....................................................................23

*People v. Goldstein*
(1948) 84 Cal.App.2d 581, 191 P.2d 102........................................................16

- i -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

44015.0001.1239019.2

*People v. Hesslink*
  (1985) 167 Cal.App.3d 781, 213 Cal. Rptr. 465.) ................................................. 16

People v. Massengale
  (1968) 261 Cal.App.2d 758, 68 Cal. Rptr. 415.) ................................................. 16

*People v. Sanders*
  (1922) 188 Cal. 744, 207 P. 380 ......................................................................... 16

*People v. Tufunga*
  (1999) 21 Cal.4th 935, 987 P.2d 168 ................................................................. 23

*Shahvar v. Superior Court (ASP Computer Products, Inc.,*
  25 Cal. App. 4th 653 (1994) ....................................................................... 11, 13

*Silberg v. Anderson,*
  50 Cal. 3d 205, 2012 (1990) ...................................................................... 13, 21

*State v. Harrington*
  (1969) 128 Vt. 242 A.2d 692 ............................................................................. 17

*Susan A. v. County of Sonoma,*
  2 Cal.App.4th 88 (1991) ..................................................................................... 13

*Taus v. Loftus,*
  40 Cal. 4th 683 (2007) ......................................................................................... 5

*Weinberg v. Feisel,*
  110 Cal. App. 4th 1122 (2003) ........................................................................... 12

*Wilcox v. Superior Court,*
  27 Cal.App.4th 809 (1994) ................................................................................... 5

**Other Authorities**

*47* Subd. (b) ........................................................................................................... 20

*Cal. Penal Code* § 518 ............................................................................... 17, 20, 22

*Cal. Penal Code* § 519 ................................................................................... passim

*California Civ. Code Section 47* subd. (b) ...................................................... 18, 21

*California Code of Civil Procedure* § 425.16 .................................................. passim

*California Code of Civil Procedure* section 426.16 .............................. 1, 5, 15, 18

- ii -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

1

**Rules**

(Cal. Rules of Prof. Conduct, rule 5-100(A) ............................................................... 16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

- iii -

27

28

44015.0001.1239019.2

## I.    INTRODUCTION

On February 15, 2008, Defendant Tom Coverstone ("Coverstone") backed out of an agreement to purchase intellectual property from Plaintiff Hoyt A. Fleming ("Fleming") for $1,000,000.  On that same day, Coverstone attempted to blackmail Fleming by sending Fleming a series of emails that accused Fleming of an "illegal tax scheme" and "very serious ethics violations".  Coverstone threatened that if Fleming did not pay Coverstone $10,000, Coverstone would expose Fleming's purported behavior.  Fleming did not pay Coverstone the demanded $10,000.  Instead, Fleming initiated this action.

On March 12, 2008, Fleming filed a First Amended Complaint that alleged Coverstone's emails constituted civil extortion and that "on information and belief, Defendant published to third parties false statements regarding Fleming's character, truthfulness, and veracity . . ." and that such conduct constituted defamation *per se*.

Coverstone filed a motion to strike Fleming's defamation and civil extortion causes of action pursuant to *California Code of Civil Procedure* section 426.16 (the "anti-SLAPP" statute).

## II.    FACTUAL BACKGROUND

On January 22, 2008, Coverstone orally agreed to purchase intellectual property from Fleming for $1,000,000.  Affidavit of Hoyt A. Fleming in Opposition to Defendant's Special Motion to Strike Pursuant to Cal. Code of Civ. Proc. Section 425.16 ("Fleming Aff.") at ¶ 6.  In confirmation of the oral agreement, Fleming drafted and sent Coverstone an email entitled "Purchase of Fleming Radar Detector Family."  Id. at ¶ 7.  Later that day, Fleming received a confirming email from Coverstone.  Id. at ¶ 8.

On February 15, 2008, Coverstone sent Fleming an email that stated in part:

"Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there is an agreement. There was not an agreement, there never was.  We did not agree on key material terms.  In fact, key material terms were being renegotiated just recently and over many weeks.  As an example, and in one alternative potential agreement, you

- 1 -

offered to change the assignment allocation regarding the church and I then pay you $25,000 more than the earlier price you wanted because you had doubts in your illegal tax deduction scheme with Boise Vineyard. In addition, when I told you that your tax scheme was illegal, you responded by citing a tax reference that showed that the Vineyard would not have an obligation to assign their interest in the patent to me. That seems important since even a small owner of a patent can license infringers. When parties are renegotiating key material terms - does that sound like the key material terms were set in an agreement? You can keep pasting a fragment of a sentence in an email and sending it to me, but I have not heard any substance from you at all. In fact, I all hear is lies and misrepresentations. I will not even address the fact that you prepared the email that you keep pasting from and you coerced me into agreeing to your email while I was on an airplane and the flight attendant was telling me to get off of the phone. You could not wait because you had so many buyers for the patents knocking on your door. Was that a lie too?

In addition, you committed fraud – even if there was an agreement – which there was not – it would have been based on fraud in the inducement. You materially misrepresented key facts relating to your patents and competing patents. You deny ethics violations in your email, but you do not deny the misrepresentations you made.

Having said all of this – I am willing to let this be dropped. I want my 10k back. And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release.

Think about resolving this issue over the weekend. Nevertheless, I will need to hear back from you on Monday so that I can plan my course.

Tom" *Id*. at ¶ 9.

On February 15, 2008, Coverstone sent Fleming another email that stated in part:

"You breached your fiduciary responsibility that you owed me; you breached your duty of loyalty you owed to me; you breached your duty to represent me zealously. And all of this was in the guise of you being so committed to your church. And that, amongst other things, ironically was one reason why we never reached an agreement. Because of your illegal tax scam with your church – we were negotiating the assignment issue in every conversation that we had – let me repeat that: in every conversation that we had we were negotiating the assignment issue regarding the church. You were adverse to me while you were representing me!! A key term was not defined!!! In time, the negotiation matured into different financial terms with differences of tens of thousands of dollars. Are you denying this? Are you denying that your position regarding the church assignment was that the church had no obligation whatsoever to assign their interest in the patent to me? Are you denying that? Are you going to just cut and paste a fragment of the sentence of the email that you sent to me while I was traveling? Are you denying that you badgered me while I was on an airplane to agree to your alleged agreement? - that you had other buyers that just had to

- 2 -

know that day – that hour – that quarter of an hour?!!   Any contract – not that there was one - would be void and null anyway since one of the material key elements of your proposal included the illegal tax scam with the church.  What is your legal position?  Are you a lawyer?  Are you going to just cut and paste a fragment of a sentence in response?  This issue is becoming a matter of principle for me.  I am getting to a point where this (and you) need to be dragged into the light.  You do not deserve to be practicing law nor do you deserve to be in the patent fraternity.  Truth and good will prevail - You can take that to your church – I am giving you until Monday – and that is a generous offer on my part." *Id*. at ¶ 10.

Fleming did not pay Coverstone the $10,000 as Coverstone demanded.  *Id*. at ¶ 11. Instead, on February 22, 2008, Fleming filed the original Complaint in this action. *Id*. at ¶ 12.

On March 12, 2008, Fleming filed the First Amended Complaint in this action. *Id*. at ¶ 13.  The First Amended Complaint alleged that Coverstone, on information and belief, published to third parties false statements regarding Fleming's character, truthfulness and veracity and that such conduct constituted defamation *per se*. (Docket No. 3 at ¶¶ 22 and 30).  In addition, the First Amended Complaint alleged that Coverstone's emails constituted civil extortion. *Id*. at ¶ 33.

On or about April 2, 2008, Coverstone had The Smoot Law Firm file a complaint ("the Texas Complaint") against third parties.  *Fleming Aff*. at ¶ 15, Exhibit G.  The Texas Complaint contained a section entitled "Facts".  *Id*. at ¶ 15, Exhibit G at pg. 2.  That section of the Texas Complaint stated:

> "13. Coverstone and Dowler thereafter met with Fleming at the Consumer Electronics Symposium in Las Vegas, Nevada.  Both Dowler and Fleming further puffed up the value of the patent. . . .
> 14. Based on the representations of Dowler and Fleming as to the remarkable value of the patent and the analysis Dowler had allegedly committed to investigating the patent, Coverstone expressed his interest in Guardian possibly buying the patent for the $1,000,000.00 asking price, subject to Coverstone's review of the due diligence materials. . . .
> 15. Again based on the representations of Dowler and Fleming as to the remarkable value of the patent, Coverstone continued to express his interest in Guardian potentially buying the patent. . . .

- 3 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

44015.0001.1239019.2

16. Both Fleming and Dowler pressured Coverstone to commit to purchase the patent. While in the course of traveling and at the insistence and urging of Dowler and Fleming, Coverstone was convinced to rush a $10,000 wire transfer to Fleming as earnest money on behalf of Guardian.

17. Coverstone on behalf of Guardian thereafter made his own inquiry as to the validity and value of the patent, unfortunately learning that the patent did not in fact, contrary to what had been represented by Dowler and Fleming, provide protection from the potential commercial competitors in the marketplace for the product envisioned by the patent and actually had little to no value. Coverstone learned that the principal makers of radar detectors were familiar with and not concerned about infringing the patent that Dowler had so highly touted. Contrary to the representations of Dowler and Fleming, Coverstone discovered that the principal makers of radar detectors were able to market, and were already marketing, GPS enabled radar detectors without fear of illegally infringing the patent Dowler had been fawning over.

18. After learning that Dowler and Fleming had misrepresented the value of the patent, Coverstone told Fleming that he had discovered the misrepresentations and the true value of the patent, and that the sale would therefore not go through. Consequent to the actions of Defendants, Fleming has filed lawsuits in federal district courts against Coverstone Individually, erroneously claiming that he personally agreed to pay Fleming $1,000,000.00 for the patent." *Id.* at ¶ 15, Exhibit G at pp. 3 – 4.

On April 7, 2008, Fleming received a phone call from Mr. Jonathan Fox, a reporter for the Texas Lawyer, a legal interest newspaper. *Id.* at ¶ 15. Mr. Fox requested Fleming's comment on the Texas lawsuit. *Id.* As Fleming was not aware of the Texas lawsuit, Mr. Fox faxed Fleming a copy of the Texas Complaint. *Id.* When Fleming inquired as to how Mr. Fox learned of the Texas lawsuit and obtained a copy of the Texas Complaint, Mr. Fox replied that he was "tipped off". *Id.* Mr. Fox refused to identify the person that provided the Texas Complaint to the Texas Lawyer. *Id.*

On or about April 21, 2008, an article entitled "Former Clients Sue Howrey After Alleged Patent Deal Sours", and a copy of the Texas Complaint, both of which contain defamatory statements regarding Fleming, were published by www.law.com, a widely read legal interest website. *Id.* at ¶¶ 18 – 19.

Instead of answering the First Amended Complaint, Coverstone has filed a special motion to strike Fleming's defamation and extortion causes of action pursuant to *California*

- 4 -

1  *Code of Civil Procedure*, section 426.16 ("*Defendant's Motion to Strike*").  *Defendant's Motion*

2  *to Strike* should be denied.

3  **III.    ANALYSIS**

4      **A.    California's Anti-SLAPP Statute**

5         "[T]he purpose of section 425.16 is to prevent the chilling of 'the valid exercise of

6  the constitutional rights of freedom of speech and petition for the redress of grievances' by 'the

7  abuse of the judicial process.' (§ 426.16, subd. (a).)  As a necessary corollary to this statement,

8  because not all speech or petition activity is constitutionally protected, not all speech or petition

9  activity is protected by section 425.16." *Flatley v. Mauro*, 39 Cal. 4th 299, 313 (2006).  For

10  example, criminal activities are "not a *valid* activity undertaken by defendants in furtherance of

11  their constitutional right of free speech." *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356,

12  1365 (2001).  "Extortion is not a constitutionally protected form of speech."  *Flatley v. Mauro*,

13  *supra*, at 329.  *California Code of Civil Procedure* ("the anti-SLAPP statute") "poses no

14  obstacle to suits that possess minimal merit." *Navellier v. Sletten*, 29 Cal. 4th 82, 52 (2002).  To

15  determine if a suit possesses minimal merit, courts engage in a two step process in applying the

16  anti-SLAPP statute: "First, the court decides whether the defendant has made a threshold

17  showing that the challenged cause of action is one arising from protected activity.... If the court

18  finds such a showing has been made, it then determines whether the plaintiff has demonstrated a

19  probability of prevailing on the claim." *Taus v. Loftus*, 40 Cal. 4th 683, 703 (2007) original

20  omission, quoting *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 76 (2002).

21  Plaintiff's "burden can be met by showing [defendant's] purported " 'defenses are not applicable

22  to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier

23  of fact, would negate such defenses.' " " *Birkner v. Lam*, 156 Cal App. 4th 275, 285 (2007) citing

24  *Paul for Council v. Hanyecz, supra,* at p. 1367, italics in original, quoting *Wilcox v. Superior*

25  *Court,* 27 Cal.App.4th 809, 824 (1994).

26  - 5 -

27  

28  **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

44015.0001.1239019.2

If the court denies an anti-SLAPP motion to strike, the parties continue with discovery. *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).  Once the plaintiff's case has survived the motion, the anti-SLAPP statute no longer applies and the parties proceed to litigate the merits of the action. *Id.*

**B.    Fleming's Defamation Cause of Action**

As stated in Fleming's First Amended Complaint, paragraph 23:

> "Defendant threatened Fleming that unless he refunded the $10,000 non-refundable deposit and otherwise released Defendant from his contractual obligations, Defendant would report Fleming to third parties in an effort to impugn and discredit Fleming and otherwise accuse him of a crime." *Fleming Aff.* ¶ 13.

Fleming did not pay Coverstone the demanded $10,000.  *Id.* at ¶ 11.  Thus, Fleming took Coverstone at his word, and believed that Coverstone would publish defamatory statements regarding Fleming to third parties.  *Id.* at ¶ 14.  At the time that the First Amended Complaint was filed, Fleming did not possess the details as to which forum Coverstone would use to defame Fleming.[1]  Nonetheless, it was clear to Fleming, from the obvious anger and vindictiveness in Coverstone's February 15, 2008 emails ("this (and you) need to be dragged into the light.  You do not deserve to be practicing law nor do you deserve to be in the patent fraternity") that Coverstone would soon make good on Coverstone's threat to defame Fleming.  *Id.*  On April 7, 2008, Fleming learned that Coverstone had indeed made good on Coverstone's defamatory threat. *Id.* at ¶ 15.  Coverstone's selected forum was the Texas Lawyer, a legal interest newspaper.  *Id.*

---

[1]    On June 30, 2008, Fleming filed a Motion to Amend Complaint seeking leave to file a Second Amended Complaint to add the facts learned by Fleming after the First Amended Complaint was filed.

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

On April 7, 2008, Fleming received a phone call from Mr. Jonathan Fox, a reporter for the Texas Lawyer, requesting Fleming to comment on a Texas lawsuit.  *Id.* at ¶ 15.  As Fleming was not aware of the Texas lawsuit, Mr. Fox faxed Fleming a copy of the complaint in the Texas lawsuit ("the Texas Complaint").  *Id.*  The Texas Complaint indicated that two of Coverstone's companies had sued two third parties.  *Id.*  The Texas Complaint also contained numerous false and defamatory statements regarding Fleming.  *Id.* at ¶ 20.

The fax header from the second page of the Texas Complaint is shown below. *Id.* at ¶ 15.



The far right portion of the fax header indicates that the Texas Complaint has been faxed three times.  *Id.*  Two of the faxes are indicated to have 7 pages ("P. 3/7" and "003/007"), while the third fax is indicated to only have 6 pages ("P. 2/6").  *Id.*  The  "TO" and "FROM" fax machine numbers are shown for two of the faxes.  *Id.*  The fax from "2146511107" to "2083425363" was a 6 page fax from Mr. Fox to Fleming.  *Id.*  at ¶¶ 15 – 17.   Likewise, the fax from "7133286863" to "12147412325" is indicated to be a 7 page fax.  According to Mr. Fox, this was a fax from Ms. Brenda Jeffries, of the Texas Lawyer, to Mr. Fox.  *Id.* at ¶¶ 15 – 17.  Unfortunately, the "TO:" and "FROM:" fax numbers for the initial fax appear to be obscured.  *Id.* at ¶ 15.  An enlarged annotated portion of the fax header is shown below. *Id.* at ¶ 21.

- 7 -

1  As shown above, a portion of the "FROM:" phone number and fax machine descriptor can be

2  seen in the fax header.  *Id.*  As shown above, the last 5 characters of the phone number are either

3  "-0706" or "-0708".  *Id.*  In addition, the fax descriptor of the sending fax machine contains the

4  text "LAW LLC".  *Id.*

5       A portion of the final page of the Texas Complaint follows.  *Id.* at ¶ 15.



```
Respectfully submitted,

SMOOT LAW FIRM, P.C.

By:
Steven M. Smoot
S.B.N. 18774300
1301 McKinney, Suite 2900
Houston, Texas 77010
Telephone (713) 854-0708
Telecopier (713) 854-0706
ssmoot@smootlawfirm.com
```

14       Note that the last 5 characters of the two phone numbers for The Smoot Law Firm,

15  Coverstone's counsel in the Texas lawsuit, are "-0708" and "-0706".  *Id.*  Thus, the Texas

16  Complaint contains *prima facie* evidence that Coverstone, through his attorneys, The Smoot Law

17  Firm, published defamatory statements to a newspaper, the Texas Lawyer.

18       If for any reason, the Court does not believe that the *prima facie* evidence is sufficient,

19  then Fleming requests the opportunity to take discovery, which is within the sole knowledge of

20  Coverstone, regarding Coverstone's publishing of the Texas Complaint through third parties,

21  such as The Smoot Law Firm, before the Court rules on *Defendant's Motion to Strike*.

22       On or about April 21, 2008, an article entitled "Former Clients Sue Howrey After

23  Alleged Patent Deal Sours", which was written by Mr. Fox and which contains defamatory

24  statements regarding Fleming, and the Texas Complaint were published by www.law.com, a

25  widely read legal interest website.  *Id.* at ¶¶ 18 - 19.  Now, when one performs a Google search

26                                              - 8 -

27

28  **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

1    for ["Hoyt Fleming" attorney], the first search result is the defamatory article written by Mr. Fox

2    and the second search result is the defamatory Texas Complaint.  *Id.* at ¶ 22.

### 1.    Coverstone's Outrageous Assertions

Coverstone boldly states in *Defendant's Motion to Strike*:

> "Coverstone has not published any statements, true or false to third parties
> regarding Fleming's character, truthfulness, or veracity. [Coverstone Declaration
> at ¶ 11]." *Defendant's Motion to Strike*, pp. 9 – 10.

Considering the previously discussed evidence, Coverstone's statement is misleading at best.

The Texas Complaint states the following:

> "17. Coverstone on behalf of Guardian thereafter made his own inquiry as to the
> validity and value of the patent, unfortunately learning that the patent did not in
> fact, *contrary to what had been represented by Dowler and Fleming*, provide
> protection from the potential commercial competitors in the marketplace for the
> product envisioned by the patent and actually had little to no value. Coverstone
> learned that the principal makers of radar detectors were familiar with and not
> concerned about infringing the patent that Dowler had so highly touted. *Contrary
> to the representations of Dowler and Fleming*, Coverstone discovered that the
> principal makers of radar detectors were able to market, and were already
> marketing, GPS enabled radar detectors without fear of illegally infringing the
> patent Dowler had been fawning over.
> 18. *After learning that Dowler and Fleming had misrepresented the value of the
> patent*, Coverstone told Fleming that he had discovered the misrepresentations
> and the true value of the patent, and that the sale would therefore not go through.
> Consequent to the actions of Defendants, Fleming has filed lawsuits in federal
> district courts against Coverstone Individually, erroneously claiming that he
> personally agreed to pay Fleming $1,000,000.00 for the patent." (emphasis added)
> *Id.* at ¶ 14.

Such statements directly relate to Fleming's business character, truthfulness, and

veracity.  In addition, the defamatory statements are false and actionable as defamation *per se*.

Unfortunately, Coverstone's falsities are not limited to the above assertion.  Coverstone's

declaration contains numerous false statements.  *Id.* at ¶¶ 26 – 38.  For example, paragraph 3 of

Coverstone's declaration states that in January 2008, he and Fleming exchanged emails

- 9 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO
STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
3:08 CV 355 WQH-NLS

44015.0001.1239019.2

evidencing an intention to "put a transaction together wherein [Coverstone's] company would purchase [Fleming's] patent for $1 million if it checked out after a due diligence period." However, none of the emails mention any of Coverstone's companies purchasing Fleming's Intellectual Property or any "due diligence period." *Id.* at 27.

Similarly, paragraph 10 of Coverstone's declaration states "We then exchanged a number of e-mails back and forth. . .. A true and correct [sic] of those e-mails discussing settlement are lodged herewith as Exhibits "E," "F," "G," "H," and "I." . . . As can be seen from the face of the emails, they were all within a few days of one another. At that time, I was prepared to file a lawsuit on behalf of GMT (as I indicated in my correspondence) in the event we were not able to reach a satisfactory resolution." However, Exhibits E, F, G, H, and I of Coverstone's declaration do not indicate that Coverstone was prepared to file a lawsuit *on behalf of* any company, including GMT. *Id.* at ¶ 36. In fact, those Exhibits do not even contain the word "GMT." *Id.* The falsity of many of Coverstone's statements can be easily determined simply by reviewing the actual text of the emails exchanged between Fleming and Coverstone.

### 2. Coverstone's Extortion was Not "In Connection With" a Protected Activity

In moving for a motion to strike Fleming's defamation cause of action under the anti-SLAPP statute, it is Coverstone's burden to demonstrate the statute's applicability by showing that Coverstone's defamation was "in connection with" a protected activity. *California Code of Civil Procedure* § 425.16; *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (2008).

In Coverstone's analysis relating to Fleming's defamation cause of action, Coverstone completely ignores the publication of the Texas Complaint and the defamatory article. *Fleming Aff.*, ¶ 15 – 20. This omission is particularly surprising considering that his litigation counsel for this action as well as Steven M. Smoot of The Smoot Law Firm, Coverstone's counsel in the Texas lawsuit, were both quoted in the defamatory article. *Id.* at ¶ 18.

- 10 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

1    Nonetheless, in moving for a motion to strike Fleming's defamation cause of action,

2    Coverstone must demonstrate that the anti-SLAPP statute applies by showing that the faxing of

3    the Texas Complaint to a newspaper was "in connection with" a protected activity. *California*

4    *Code of Civil Procedure* § 425.16; *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (2008).

5    This Coverstone cannot do.

6    Subdivision (e)(2) of the anti-SLAPP statute protects "any written or oral statement or

7    writing made *in connection with* an issue under consideration or review by . . . a judicial body . .

8    ." (emphasis added).  Faxing a copy of a complaint to a newspaper is not a writing made "in

9    connection" with a litigation.

> "The basis for cross-complainants' libel cause of action is not that Shahvar filed a false complaint in court. Rather, the libel claim is based on Shahvar's communication of a copy of the complaint to the newspaper, which induced the newspaper to publish an article summarizing the complaint's allegations. Cross-complainants contend that Shahvar's communication of his allegations to a third party, the Examiner, was unrelated to this litigation and therefore not covered by the litigation privilege. We agree." *Shahvar v. Superior Court (ASP Computer Products, Inc.*, 25 Cal. App. 4th 653, 658 (1994). (Discussing the applicability of litigation privilege)

16    Thus, subdivision (e)(2) of the anti-SLAPP statute is not applicable to Coverstone's

17    publication of the Texas complaint through his agent, the Smoot Law Firm.

18    Just as Coverstone can find no solace in subdivision (e)(2) of the anti-SLAPP statute,

19    Coverstone likewise cannot find solace in subdivision (e)(3) because Coverstone's publication of

20    the Texas Complaint to a newspaper is not a "writing made in a place open to the public or a

21    public forum in connection with an issue of public interest."  A newspaper is not a "place open to

22    the public or a public forum".  *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1130 (2003)  ("A

23    public forum is a place open to the use of the general public 'for purposes of assembly,

24    communicating thoughts between citizens, and discussing public questions.'. . . Means of

25    communication where access is selective, such as most newspapers, newsletters, and other media

26    outlets are not public forums.")

- 11 -

27

28    **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

Nor was the dispute between Fleming and Coverstone, before Coverstone published the Texas complaint to the Texas Lawyer, an "issue of public interest".    According to the *Weinberg* court:

> "a public figure is a person who has assumed a role of special prominence in the affairs of society, who occupies a position of persuasive power and influence, or who has thrust himself to the forefront of a particular public controversy in order to influence the resolution of the issues involved."  *Weinberg*, *supra*, at 1131.

Neither Fleming nor Coverstone were public figures before Coverstone's defamatory publication took place.  In addition, Coverstone has not submitted any evidence that indicates that either Fleming or Coverstone were public figures before Coverstone's defamatory publication took place.  The above discussion relating to an "issue of public interest" also removes subdivision (b)(1) of the anti-SLAPP statute from consideration because that subdivision requires "free speech . . . in connection with a public issue".

In summary, Coverstone has not and cannot prevail on his burden to present a *prima facie* showing that his publication of the Texas Complaint to the Texas Lawyer newspaper was "in connection with" a protected activity.  As Coverstone has failed on the first prong, the Court's analysis ends.

### 3.    Fleming is Likely to Prevail on his Defamation Cause of Action

Even though Coverstone has failed to present a *prima facie* showing that his defamatory communication is a protected activity, Fleming will nonetheless address the second prong of the anti-SLAPP analysis.

a.    <u>Publication of a Complaint to a Newspaper is Not Protected by the Litigation Privilege</u>

As discussed briefly above, the publication of a complaint to a newspaper is not protected by the litigation privilege.

- 12 -

1
2
3
4
5

"The basis for cross-complainants' libel cause of action is not that Shahvar filed a false complaint in court. Rather, the libel claim is based on Shahvar's communication of a copy of the complaint to the newspaper, which induced the newspaper to publish an article summarizing the complaint's allegations. Cross-complainants contend that Shahvar's communication of his allegations to a third party, the Examiner, was unrelated to this litigation and therefore not covered by the litigation privilege. We agree." *Shahvar v. Superior Court (ASP Computer Products, Inc.*, 25 Cal. App. 4th 653, 658 (1994).

6
7
8
9
10
11

"As *Silberg, Financial Corp. of America* and *Susan A.* illustrate, statements about existing or anticipated litigation by a party or the party's attorney to the news media, when the news media is neither a party to nor a participant in the litigation, are *not* privileged. Such statements are extraneous to the action and are not made '[i]n any ... judicial proceeding.' Here the facsimile communication of the complaint to the newspaper was nothing more than a republication of the complaint's allegations to an unrelated person. Whether the complaint was filed before or after the transmission of the facsimile, the communication to the newspaper was not protected by the litigation privilege in Civil Code section 47." *Id*. at 600.

12
13
14

As has been well known for years, "an attorney who wishes to litigate his case in the press will do so at his own risk." *Susan A. v. County of Sonoma*, 2 Cal.App.4th 88, 95 (1991).

15

           b.      <u>Fleming Has Made a Sufficient *Prima Facie* Showing of Facts</u>

16
17
18

      As discussed above, Fleming has shown *prima facie* evidence that Coverstone, through his attorneys, published false and defamatory statements to a newspaper.  If that evidence is accepted by a trier of fact, then Fleming will prevail on his defamation cause of action.

19

        **4.**    **Summary**

20
21
22
23
24

      In summary, Coverstone chose to completely ignore the Texas Complaint and the defamatory article in *Defendant's Motion to Strike*.  Thus, Coverstone has not met his threshold showing that publishing the Texas Complaint to a newspaper is "in connection with" a protected activity.  As discussed above, Coverstone's publication of the Texas Complaint to a newspaper is not protected by any provision of the anti-SLAPP statue.

25
26
27
28

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
3:08 CV 355 WQH-NLS

44015.0001.1239019.2

Fleming has submitted *prima facie* evidence that Coverstone, through his attorneys, published false defamatory statements to the Texas Lawyer, a newspaper.  Fleming has also shown that Coverstone's litigation privilege defense is not applicable as a matter of law.  Thus, Coverstone's attempt to strike Fleming's defamation cause of action fails.  *Birkner, supra*, at 285 ("Plaintiff's "burden can be met by showing [defendant's] purported " 'defenses are not applicable to case as a matter of law *or* by prima facie showing of facts which, if accepted by trier of fact, would negate such defenses.' ")

### C.    Fleming's Extortion Cause of Action

#### 1.    Coverstone's Extortion Was Not "In Connection With" a Protected Activity

In moving for a motion to strike Fleming's extortion cause of action under *California Code of Civil Procedure* § 425.16, it was Coverstone's burden to demonstrate the anti-SLAPP statute's applicability by showing that Coverstone's extortion was "in connection with" a protected activity. *California Code of Civil Procedure* § 425.16; *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1261 (2008).  This Coverstone has failed to do.

Coverstone's extortion threats are not "in connection with" protected petitioning.  On February 15, 2008, when Coverstone sent emails attempting to blackmail Fleming, Coverstone and Fleming were involved in a contract dispute.  *Fleming Aff.*, ¶ 24.  Coverstone's threat on that date to *expose* Fleming's participation in an "illegal tax scam" had absolutely no connection to the contract dispute.  Statements relating to whether a particular clause in the Contract is *enforceable* or not due to illegality would have been "in connection with" protecting petitioning.  However, just as a threat to kill Fleming would have been, a threat to *expose* Fleming's participation in an "illegal tax scam" is extraneous to protected petitioning.  To the contrary, Coverstone's threat was a clear attempt to extort money from Fleming.  The Supreme Court of California has made it very clear: "Extortion is not a constitutionally protected form of speech." *Flatley v. Mauro*, *supra*, at 329.

- 14 -

---

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

Coverstone alleges that the emails were a part of "settlement discussions". *Defendant's Motion to Strike*, pg. 10.   Extortion threats are not a part of "settlement discussions."  "That the threats were half-couched in legalese does not disguise their essential character as extortion." *Flatley v. Mauro*, *supra,* at 330.   Similarly, "a threat that constitutes criminal extortion is not cleansed of its illegality merely because it is laundered by transmission through the offices of an attorney." *Flatley v. Mauro*, *supra,* at 327.

     **2.**     **Coverstone's Emails Were Criminal Extortion as a Matter of Law and are Not Protected Under the Anti-SLAPP Statute**

"[T]he purpose of section 425.16 is to prevent the chilling of 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' by 'the abuse of the judicial process.' (§ 426.16, subd. (a).)  As a necessary corollary to this statement, because not all speech or petition activity is constitutionally protected, not all speech or petition activity is protected by section 425.16." *Flatley v. Mauro*, *supra,* at 313.  Again, "Extortion is not a constitutionally protected form of speech." *Flatley v. Mauro*, *supra,* at 329.

Fleming alleges that Coverstone, a California attorney, attempted to blackmail Fleming by claiming that Coverstone would publicly expose that Fleming was involved in an "illegal tax scam" unless Fleming paid Coverstone $10,000.

> "I want my 10k back.  And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release. Think about resolving this issue over the weekend.  Nevertheless, I will need to hear back from you on Monday so that I can plan my course."

> "Because of your illegal tax scam with your church – we were negotiating the assignment issue in every conversation that we had – let me repeat that:  in every conversation that we had we were negotiating the assignment issue regarding the church. . . . I am getting to a point where this (and you) need to be dragged into the light.  You do not deserve to be practicing law nor do you deserve to be in the patent fraternity.  Truth and good will prevail - You can take that to your church – I am giving you until Monday – and that is a generous offer on my part." Docket No. 3 at ¶ 21.

- 15 -

The gravamen of Fleming's claim is that Coverstone attempted to extort money from Fleming by threatening to ruin Fleming's reputation.  Such a threat is a criminal act.

"Moreover, threats to do the acts that constitute extortion under Penal Code section 519 are extortionate whether or not the victim committed the crime or indiscretion upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities or arrested the victim. (*People v. Sanders* (1922) 188 Cal. 744, 756, 207 P. 380; *People v. Goldstein* (1948) 84 Cal.App.2d 581, 587, 191 P.2d 102; *People v. Hesslink* (1985) 167 Cal.App.3d 781, 787, 213 Cal. Rptr. 465.)  Furthermore, the crime with which the extortionist threatens his or her victim need not be a specific crime.  '[T]he accusations need only be such as to put the intended victim of the extortion in fear of being accused of some crime.  The more vague and general the terms of the accusation the better it would subserve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of the failure to accomplish his extortion and of a prosecution for his attempted crime.' (*People v. Sanders*, supra, at pp. 749-750, 207 P. 380; People v. Massengale (1968) 261 Cal.App.2d 758, 764-765, 68 Cal. Rptr. 415.)

Attorneys are not exempt from these principles in their professional conduct. Indeed, the Rules of Professional Conduct specifically prohibit attorneys from "threaten[ing] to present criminal, administration, or disciplinary charges to obtain an advantage in a civil dispute." (Cal. Rules of Prof. Conduct, rule 5-100(A).)
. . .
In *Librarian v. State Bar* (1952) 38 Cal.2d 328, 239P.2d 865, we upheld disciplinary action against Librarian who, after losing at trial, sent a letter to opposing counsel, accusing his opponent's client of perjury and threatening to use the perjury charge as the basis of a new trial motion and a criminal complaint unless opposing counsel's client paid Librarian's client. 'Although no action was taken either by Librarian or Siegel to prosecute Nadel, the record clearly shows conduct which is in violation of Librarian's oath and duties as an attorney.  The threats contained in the letter indicate an attempt to commit extortion.  The sending of a threatening letter with intent to extort money is 'punishable in the same manner as if such money ... were actually obtained' (Pen.Code, § 523) and the crime of extortion involves moral turpitude.' (*Id.* at pp. 329-330, 239 P.2d 865; *Barton v. State Bar* (1935) 2 Cal.2d 294, 297, 40 P.2d 502 [The conduct of an attorney who threatened an oil company with reporting adulteration of its gasoline to the prosecutor unless it paid his clients was not only grounds for disbarment but 'constituted an attempt to extort money as said crime is defined in sections 518, 519 and 524 of the Penal Code']; *State v. Harrington* (1969) 128 Vt. 242, 260 A.2d 692, 699 [attorney's suggestion in letter demanding $175,000 settlement in divorce case that he might advise his client to report husband to

- 16 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

Internal Revenue Service and United States Custom Service constituted "veiled threats [that] exceeded the limits of respondent's representation of his client in the divorce action'" *Flatley v. Mauro*, *supra*, at 327 - 328.

The facts and legal arguments of this case are almost identical[2] to the facts in *Flatley v. Mauro*.

| Fleming v. Coverstone | Flatley v. Mauro |
|---|---|
| Coverstone, an attorney, sent Fleming written communication that contained an extortion threat. *Fleming Aff.*, ¶¶ 9 and 10. | Mauro, an attorney, sent Flatley a written communication that contained an extortion threat. ("[W]e conclude that the letter . . . constitute[s] criminal extortion as a matter of law." *Flatley v. Mauro, supra*, at 330.) |
| Fleming did not pay Coverstone the demanded money. *Fleming Aff.*, ¶ 11. | Flatley did not pay Mauro the demanded money. ("Flatley did not pay Robertson and Mauro." *Flatley v. Mauro, supra*, at 311.) |
| Fleming sued Coverstone for civil extortion.  First Amended Complaint, ¶¶ 32 – 24. | Flatley sued Mauro for civil extortion.  ("In a second amended complaint, Flatley alleged five causes of action for civil extortion . . .." *Flatley v. Mauro, supra*, at 306.) |
| Coverstone filed an Anti-SLAPP motion. *Defendant's Motion to Strike*, pg. 1. | Mauro filed an Anti-SLAPP motion. ("Mauro filed a motion to strike Flatley's complaint under the anti-SLAPP statute." *Flatley v. Mauro, supra*, at 305.) |
| Coverstone did not dispute that he sent Fleming the communication that contained the extortion threat. *Defendant's Motion to Strike*, pp. 1 – 4. | Mauro did not dispute that he sent Flatley the communication that contained the extortion threat. ("Mauro did not deny that he sent the letter . . ." *Flatley v. Mauro, supra*, at 328.) |
| Coverstone argued that his settlement communication, which contained an extortion threat, is protected by the Anti-SLAPP statute. ("The second and third causes of action must be dismissed pursuant to California Code of Civil Procedure section 426.16 (the 'anti-ALAPP' statute) because both are barred as a matter of law." *Defendant's* | Mauro argued that his settlement communication, which contained an extortion threat, is protected by the Anti-SLAPP statute. ("Flatley's claims against Mauro in the present case arise from Mauro's litigation-related communications – a settlement demand." *Opening Brief on the Merits, Flatley v. Mauro, supra*, at 29.) (attached as Exhibit L to *Fleming Aff.*) |

---

2   Just as *Defendant's Motion to Strike* completely ignores Coverstone's publication of the defamatory Texas Complaint to a newspaper, Coverstone's motion also completely ignores *Flatley v. Mauro*, a Supreme Court of California case that is directly on point.  This is even though the case relied upon by Coverstone, *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1263 (2008), cites and quotes with authority *Flatley v. Mauro*.

- 17 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

| *Motion to Strike*, pg. 1.) | |
|---|---|
| Coverstone argued that his communication, which contained an extortion threat, is protected by *California Civ. Code Section 47* subd. (b). ("Fleming cannot even establish a *possibility* of prevailing, much less a probability, because the second and third causes of action are barred by the litigation privilege, *Cal. Civ. Code section 47 subd (b)*." *Defendant's Motion to Strike*, pg. 7.) | Mauro, argued that his communication, which contained an extortion threat, is protected by *California Civ. Code Section 47* subd. (b). ("Mauro also moved to strike the complaint under the anti-SLAPP statute, arguing Flatley could not establish a probability of success on the merits of his claims because the demand is absolutely protected by the litigation." *Opening Brief on the Merits, Flatley v. Mauro, supra,* at 33.) |
| Coverstone argued that he had a legal right to pursue his claims. ("Fleming cannot prevail on his third cause of action because Coverstone had a legal right to pursue his claims against Fleming." *Defendant's Motion to Strike*, pg. 11.) | Mauro argued that he had a legal right to pursue his claims. ("Since it is legal to do these things, it also is, in many circumstances, legal to *threaten* to do them in order to induce settlement." *Opening Brief on the Merits, Flatley v. Mauro, supra,* at 20.) |
| Coverstone argued that he did not commit extortion because Fleming cannot show that Coverstone knew his claims were meritless. ("Fleming's claim *also* fails because he cannot show that Coverstone knew his claims were meritless." *Defendant's Motion to Strike*, pg. 11.) | Mauro argued that he did not commit extortion because Flatley cannot show that Mauro knew his claims were meritless. ("If Mauro believed in good faith the validity of Robertson's claim, then his effort to obtain for her financial compensation from Flatley could not have been "wrongful.' . . . At the very least, Mauro's mental state is an additional disputed question of fact contradicting the court of appeal's conclusion that he attempted to extort money from Flatley by threatening to publish 'defamatory' matter about the rape to the press." *Opening Brief on the Merits, Flatley v. Mauro, supra,* at 23.) |

The Supreme Court of California made the following holding in *Flatley v. Mauro*:

"We conclude, therefore, that where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action. In reaching this conclusion, we emphasize that the question of whether the defendant's underlying conduct was illegal as a matter of

- 18 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law-either through defendant's concession or by uncontroverted and conclusive evidence-is not the same showing as the plaintiff's second prong showing of probability of prevailing." *Flatley v. Mauro*, *supra,* at 320.

Coverstone has not denied that he sent the emails containing the extortion threat to Fleming. Thus, the evidence is uncontroverted and conclusive that Coverstone sent Fleming the emails. The emails are not ambiguous.

"I want my 10k back. And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release. Think about resolving this issue over the weekend. Nevertheless, I will need to hear back from you on Monday so that I can plan my course." *Fleming Aff.* at ¶ 9.

"Because of your illegal tax scam with your church – we were negotiating the assignment issue in every conversation that we had – let me repeat that: in every conversation that we had we were negotiating the assignment issue regarding the church. . . . I am getting to a point where this (and you) need to be dragged into the light. You do not deserve to be practicing law nor do you deserve to be in the patent fraternity. Truth and good will prevail - You can take that to your church – I am giving you until Monday – and that is a generous offer on my part." *Id*. at ¶10.

The key passage in Coverstone's emails is where Fleming is warned that, unless Fleming concedes to Coverstone's demands, "I [Coverstone] am getting to a point where this [the "illegal tax scam"] (and you [Fleming]) need to be dragged into the light. . . . I am giving you until Monday – and that is a generous offer on my part." *Id*. at ¶ 10.

Coverstone's emails clearly indicate an attempt to obtain property [$10,000] from another [Fleming], with his consent, induced by a wrongful use of fear [the fear of Coverstone exposing Fleming's participation in an "illegal tax scam"]. See *Cal. Penal Code* § 518. *Cal. Penal Code* § 519 defines "fear" as follows: "To accuse the individual threatened . . . of any crime" and "To expose, or impute to him . . . any . . . crime."

The evidence is uncontroverted and conclusive that Coverstone committed extortion, conduct that is illegal as a matter of law. Thus, Coverstone is precluded from using the anti-

- 19 -

SLAPP statute to strike the Fleming's civil extortion cause of action. *See Flatley v. Mauro*,

*supra,* at 320.

Because (1) Coverstone has not made a *prima facie* showing that his extortion was "in

connection with" a protected activity, and (2) Coverstone is precluded from using the anti-

SLAPP statute to strike Fleming's civil extortion cause of action the Court's analysis ends.

Coverstone's motion to strike Fleming's civil extortion cause of action fails.

### 3.    Fleming Is Likely to Prevail on his Extortion Cause of Action

#### a.    Coverstone's Extortion is Not Protected by *California Civ. Code Section 47* Subd. (b).

Coverstone argues that Fleming is not likely to prevail on Fleming's extortion

cause of action because that action is bared by the litigation privilege of the anti-SLAPP statute.

*Defendant's Motion to Strike*, pg. 7.  In *Flatley v. Mauro*, Mauro made the identical argument.

*Flatley v. Mauro*, *supra,* at 321. ("In advancing this argument, he invokes the litigation privilege

set forth in Civil Code section 47, subdivision (b).")   The *Flatley v. Mauro* court held:

> "Mauro maintains that section 425.16 similarly protects any prelitigation-related communications even if that communication constitutes extortion.  Assuming without deciding that the litigation privilege may apply to such threats, we conclude that they are nonetheless not protected under the anti-SLAPP statute because the litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes, and it is not consistent with the language or the purpose of the anti-SLAPP statute to protect such threats." *Flatley v. Mauro*, *supra,* at 323.

> "The fact that Civil Code section 47 may limit the liability of a party that sends to an opposing party a letter proposing settlement of proposed litigation does not mean that the settlement letter is also a protected communication for purposes of section 425.16.  Therefore, we reject Mauro's contention that, because some forms of illegal litigation-related activity may be privileged under the litigation privilege, that activity is necessarily protected under the anti-SLAPP statute." *Flatley v. Mauro*, *supra,* at 325.

- 20 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

1    While *Flatley v. Mauro* makes it clear that the litigation privilege is irrelevant at this

2    point in this proceeding because Coverstone has failed to make his *prima facie* showing,

3    Coverstone's extortion threat nonetheless is not protected by the litigation privilege.  The

4    litigation privilege applies to "any communication (1) made in judicial or quasi-judicial

5    proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

6    the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v.*

7    *Anderson*, 50 Cal. 3d 205, 2012 (1990).  The last two requirements are related: "The requirement

8    that the communication be in furtherance of the objects of the litigation is, in essence, simply

9    part of the requirement that the communication be connected with, or have some logical relation

10   to, the action, i.e. that it not be extraneous to the action" *Id*. at pp. 219-220.  In short, the

11   statement must have some "reasonable relevance to the subject matter of the action."  *Id*. at pg.

12   220.  The relevancy requirement is real.  *Cal. Civil Code* § 47 subd. (b) "does not prop the barn

13   door wide open for any and every sort of prelitigation charge or innuendo, especially concerning

14   individuals."  *Nguyen v. Proton Technology Corp*. 69 Cal. Ap.4[th] 140, 150 (1999).  The Nguyen

15   court refused to immunize the attorney's accusation of criminal conduct.  *Id*. at 152.  Allegations

16   of crimes "in purely civil disputes . . . is and should be fraught with peril."  *Id*.

17        Coverstone's threat of *exposing* criminal conduct bore no logical connection or

18   relation to the contract issues being discussed on February 15, 2008.  Thus, Coverstone's

19   extortion threats were extraneous to Coverstone's efforts to avoid the contract and were outside

20   the scope of the litigation privilege.

21              b.    Civil Extortion is a Valid Cause of Action in California

22        Coverstone alleges: "First and foremost, there is no such thing as a cause of action for

23   civil extortion." *Defendant's Motion to Strike*, pg. 10.  Such an allegation is incredulous.  The

24   Supreme Court of California teaches otherwise.

- 21 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
44015.0001.1239019.2

"Plaintiff Michael Flatley, a well-known entertainer, sued defendant D. Dean Mauro, an attorney, for civil extortion . . .." *Flatley v. Mauro, supra,* at 305.

The *Flatley* court then unambiguously applied *Cal. Pen. Code* sections 518, 519, and 523, the

California extortion statutes, in a civil litigation.

"'Extortion is the obtaining of property from another, with his consent ... induced by a wrongful use of force or fear....' (Pen. Code, § 518.) Fear, for purposes of extortion 'may be induced by a threat, either: [¶] ... [¶] 2. To accuse the individual threatened ... of any crime; or, [¶] 3. To expose, or impute to him ... any deformity, disgrace or crime[.]' (Pen. Code, § 519.) "Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat." (Pen. Code, § 523.)" *Flatley v. Mauro, supra,* at 326.

Civil extortion is indeed a cause of action in California.

c.      It Is Not a Defense to Extortion that Coverstone Believed He Had a Right to Pursue his Claims

Coverstone alleges: "Fleming cannot prevail on his third cause of action because Coverstone had a legal right to pursue his claims against Fleming." *Defendant's Motion to Strike,* pg. 11.  Again, Coverstone is wrong.

"Extortion has been characterized as a paradoxical crime in that it criminalizes the making of threats that, in and of themselves, may not be illegal. '[I]n many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money.' (citations omitted)" *Flatley v. Mauro, supra,* at 326.

d.      It Is Not A Defense To Extortion that Coverstone Believes His Claims Had Merit

Coverstone alleges: "Fleming's claim *also* fails because he cannot show that Coverstone knew his claims were meritless." *Defendant's Motion to Strike, pg.* 11.  Yes, once again, Coverstone is wrong.

"The extortion statutes 'all adopted at the same time and relating to the same subject matter, clearly indicate that the legislature in denouncing the wrongful use

- 22 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

of fear as a means of obtaining property from another had in mind threats to do the acts specified in section 519, the making of which for the purpose stated is declared to be a wrongful use of fear induced thereby." ( *People v. Beggs* (1918) 178 Cal. 79, 83, 172 P. 152.) "It is the means employed [to obtain the property of another] which the law denounces, and though the purpose may be to collect a just indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition. The law does not contemplate the use of criminal process as a means of collecting a debt." (*Id.* at p. 84, 172 P. 152; *People v. Tufunga* (1999) 21 Cal.4th 935, 955, 987 P.2d 168 [In *Beggs* "we explained that because of the strong public policy militating against self-help by force or fear, courts will not recognize a good faith defense to the satisfaction of a debt when accomplished by the use of force or fear"]; *Lindenbaum v. State Bar* (1945) 26 Cal.2d 565, 573, 160 P.2d 9 [For purposes of extortion "[i]t is immaterial that the money which petitioner sought to obtain through threats may have been justly due him"]; *Gomez v. Garcia* (9th Cir.1996) 81 F.3d 95, 97 ["The law of California was established in 1918 that belief that the victim owes a debt is not a defense to the crime of extortion"].)" *Flatley v. Mauro*, *supra*, at 326 – 327.

      e.    <u>Fleming Can Bring An Action for Extortion Even Though He Correctly Refused to Be Blackmailed By Coverstone</u>

Coverstone alleges: "Fleming's claim also fails because he never gave Coverstone any money or conferred some other valuable right to Coverstone. *Defendant's Motion to Strike,* pg. 12. Yes, yet again, Coverstone is wrong.

"Flatley did not pay Robertson and Mauro." *Flatley v. Mauro*, *supra,* at 311.

"'Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat.' (Pen.Code, § 523.)" *Flatley v. Mauro*, *supra*, at 326.

**4.    Summary**

In summary, Coverstone chose to completely ignore the Supreme Court of California's pronouncement in *Flatley v. Mauro*, that contains almost identical facts and arguments. The *Flatley v. Mauro* court unambiguously stated, "Extortion is not a constitutionally protected form of speech." *Flatley v. Mauro*, *supra*, at 329. For the reasons

- 23 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2

1  discussed above, this Court should find that Coverstone's extortion is not a constitutionally

2  protected form of speech as well.

3  **IV.    CONCLUSION**

4       For each of the above and foregoing reasons, *Defendant's Motion to Strike* should be

5  denied in its entirety.  Due to the fact that Coverstone completely ignored his publication of

6  defamatory material to a newspaper, made demonstrably false statements in his declaration, and

7  completely ignored the Supreme Court of California's holding in *Flatley v. Mauro*, Fleming

8  submits that *Defendant's Special Motion to Strike* is frivolous and is solely intended to cause

9  unnecessary delay.  *Cal. Code. Civ. Proc.* § 425.16(c). Consequently, Fleming respectfully

10  requests that the Court award Fleming's costs and reasonable attorney fees.

11

12  Dated this 7th day of July, 2008

13                                      Respectfully Submitted,

14                                      HAWLEY TROXELL ENNIS & HAWLEY LLP

15                                      By: /s/Steven F. Schossberger_____

16                                          Attorneys for Plaintiff
                                            E-mail: sfs@hteh.com

17

18

19

20

21

22

23

24

25

26                                      - 24 -

27

28  **MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO
    STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**
                                            3:08 CV 355 WQH-NLS

# CERTIFICATE OF SERVICE

STATE OF IDAHO                    )
                                                 ) ss.
County of Ada                      )

I declare that:

I am and was at the time of service of the papers herein, over the age of eighteen (18) years and am not a party to the within entitled action.  I am employed in the County of Ada, Idaho and my business address is 877 Main Street, Suite 1000, P.O. Box 1617, Boise, Idaho 83701.

On July 7, 2008, I caused to be served the following documents:

OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16

☐     By **U.S. Mail:** I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  It is depositing with the U.S. Postal Service on that same day with postage thereon fully prepaid at Boise, Idaho in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     By **Facsimile**:  I caused such document to be transmitted by facsimile machine pursuant to Rule 2008(e).  The recipient's name and fax number that I used are as shown above. The facsimile machine that I used complied with Rule 2003(3) and no error was reported by the machine.  Pursuant to Rule 2008(e)(4), a transmission report was properly issued by the transmitting facsimile machine.

☐     By **Fed Ex**:  Via Federal Express overnight express carrier, by placing the document(s) in a sealed Federal Express envelope addressed to each person listed above (or on the attached Service List) with delivery fees prepaid or provided for; and depositing the document(s) in a box or other facility regularly maintained in Boise, Idaho by Federal Express, or by delivering the document(s) to an authorized courier or driver authorized by Federal Express to receive documents.

☒     By **Electronic Service Filing**:  Complying with Fed. R.Civ.P.5(b)(2)(d), my electronic business address is sfs@hteh.com and I caused such document(s) to be served for the above-entitled case to those parties listed on the Service List below.  The file transmission was reported complete and a copy will be maintained with the original document(s) in our office.

- 25 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

3:08 CV 355 WQH-NLS

44015.0001.1239019.2

☐    By **PERSONAL SERVICE**:  I served the person(s) listed below by leaving the documents, in an envelope or package clearly labeled to identify the person being served, to be personally served via Tri County Process Service on the parties listed below at their designated business address.

☐    By personally delivering the copies;

☐    By leaving the copies at the attorney's office;

☐    With a receptionist, or with a person having charge thereof; or

☐    In a conspicuous place in the office between the hours of _____ in the morning and five in the afternoon;

☐    By leaving the copies at the individual's residence, a conspicuous place, between the hours of eight in the morning, and six in the afternoon.

I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

| | |
|---|---|
| John D. Klinedinst<br>Gregor A. Hensrude<br>Daniel S. Agle<br>KLINEDINST PC<br>501 West Broadway, Suite 600<br>San Diego, CA 92101 | (619) 239-8131/Fax:  (619) 238-8707<br>Attorneys for Defendant |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the United States Postal Service on the same day with postage thereon fully prepaid at Boise, Idaho, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of Idaho that the above is true and correct.

Executed on July 7, 2008, at Boise, Idaho.

By: _____

◇

- 26 -

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO CAL. CODE OF CIV. PROC. SECTION 425.16**

44015.0001.1239019.2