

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Boards & Counsel > OED > Patent Attorney/Agent Search > Search Results**

### You searched for Last Name: Coverstone
Displaying results **1-1** of **1** found. Please select the Last Name of a row to view its details.

| Last Name | First Name | Middle Name | Suffix | City | State/Province | Postal Code | Country |
|-----------|-----------|-------------|--------|------|----------------|-------------|---------|
| Coverstone | Thomas | E | | San Diego | CA | 92130-2122 | US |

| HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT |

Last Modified: 06/30/2008 EST

**EXHIBIT A**

 United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | aBiz alerts | News | Help

**Boards & Counsel > OED > Patent Attorney/Agent Search > Search Results**

**You searched for Last Name: Fleming, First Name: Hoyt**
Displaying results **1-1** of **1** found  Please select the Last Name of a row to view its details

| Last Name | First Name | Middle Name | Suffix | City | State/Province | Postal Code | Country |
|-----------|-----------|-------------|--------|------|----------------|-------------|---------|
| Fleming | Hoyt | A | III | Boise | ID | 83714 | US |

| HOME | INDEX | SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

Last Modified: 06/30/2008 EST



# THE STATE BAR OF CALIFORNIA

Monday, June 30, 2008                                                                        State Bar Home

Home > Attorney Search > Attorney Profile

## ATTORNEY SEARCH

# Thomas Eugene Coverstone - #216649

## Current Status: Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

| | | | |
|---|---|---|---|
| **Bar Number** | 216649 | | |
| **Address** | Thoma E. Coverstone<br>3525A Del Mar Heights Rd # 334<br>San Diego, CA, 92130 | **Phone Number** | (858) 336-8620 |
| | | **Fax Number** | Not Available |
| | | **e-mail** | patpend@sbcglobal.net |
| **District** | District 9 | **Undergraduate School** | Indiana State Univ; Terre Haute IN |
| **County** | San Diego | **Law School** | Univ of Miami SOL; Coral Gables FL |
| **Sections** | None | | |

## Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 12/4/2001 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

### Disciplinary and Related Actions
This member has no public record of discipline.

### Administrative Actions
This member has no public record of administrative actions.

Start New Search >

**EXHIBIT B**

From: Hoyt Fleming <hoytf@mac.com>
**Subject: Purchase of Fleming Radar Detector Patent Family**
Date: January 22, 2008 12:30:33 PM MST
To: Tom Coverstone <patpend@sbcglobal.net>



Tom,

This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

If you desire my assistance on matters relating to the above patents and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.

If you agree to the above, then please confirm via email.

Thank you

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)

This transmission contains confidential and/or legally privileged information, which is intended only for the use of the individual or entity named as the Recipient. If you are not the intended Recipient, you are hereby notified that any disclosure, copying, distribution or reliance upon the contents of the information contained in this transmission is strictly prohibited. If you have received this facsimile in error, please notify us immediately and destroy all copies of this transmission.

**EXHIBIT C**

From: T Coverstone <patpend@sbcglobal net>
Subject: **RE: Purchase of Fleming Radar Detector Patent Family**
Date: January 22, 2008 5:11:00 PM MST
To: 'Hoyt Fleming' <hoytf@mac.com>

Hoyt,

Agreed

I will wire the $10,000.00 tomorrow to your account

As we discussed on the phone just now, your wife Teresa will sign the
assignment documents or whatever is needed I am tied up this week, let's
talk next Monday morning

Best Regards,
Tom

-----Original Message-----
From: Hoyt Fleming [mailto:hoytf@mac.com]
Sent: Tuesday, January 22, 2008 1:31 PM
To: Tom Coverstone
Subject: Purchase of Fleming Radar Detector Patent Family

Tom,

    This email confirms that I have agreed to sell and that you have
agreed to purchase U.S. Patent No. 6,204,798, which has been reissued,
Reissue Patent No 039,038, Patent Application No. U.S Patent No
11/196,841, and Patent Application No. 11/924,352. The purchase price
for the above patents and applications is one million dollars

    You and I will strive to close the sale by February 1, 2008
However, you and I will close the sale by February 15, 2008

    Both you and I understand that I will assign a 10% interest in the
above patents and applications to Vineyard Boise, a church in Boise,
Idaho, and that Vineyard Boise will then assign its 10% interest to
you, or an entity that you designate I will assign my 90% interest
directly to you or an entity that you designate You will then
immediately pay me $900,000 and you will then immediately pay Vineyard
Boise $100,000

    You and I agree that you and/or your attorneys will draft the
necessary agreements

    You agree to wire me ten thousand dollars tomorrow as a deposit on
the purchase price. This deposit will not be refunded if the above
sale is not completed by February 15, 2008 I agree to work with you
and your attorneys to close the sale by February 15, 2008

    If you desire my assistance on matters relating to the above patents

and/or applications, you may retain me through my firm, Park, Vaughan,
and Fleming. My hourly rate is $425 for non-testifying services, and
$850 for testifying services

    If you agree to the above, then please confirm via email

Thank you.

**EXHIBIT D**

Hoyt Fleming
Park  Vaughan & Fleming LLP
P.O  Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)

This transmission contains confidential and/or legally privileged
information, which is intended only for the use of the individual or
entity named as the Recipient   If you are not the intended Recipient,
you are hereby notified that any disclosure, copying, distribution or
reliance upon the contents of the information contained in this
transmission is strictly prohibited    If you have received this
facsimile in error, please notify us immediately and destroy all
copies of this transmission

From: T Coverstone <guardianmediatech@sbcglobal.net>
Subject: **RE: Coverstone request to return deposit**
Date: February 15, 2008 6:29:41 PM MST
To: 'Hoyt Fleming' <hoytf@mac.com>

I am glad you admit your representation

To the contrary to your email below, ALL of our discussions were about enforcing your patents and prosecution. We spoke about what claims covered what, what claims to assert and against whom, when to file lawsuits (when your continuation application issues), filing additional continuation applications, what claims should be in the new continuation matters, and several other items relating to prosecution and enforcement of your patent portfolio

So, again, you misrepresent the situation.

Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there was an agreement. There was not an agreement, there never was. We did not agree on key material terms. In fact, key material terms were being renegotiated just recently and over many weeks. As an example, and in one alternative potential agreement, you offered to change the assignment allocation regarding the church and I then pay you $25,000 more than the earlier price you wanted because you had doubts in your illegal tax deduction scheme with Boise Vineyard. In addition, when I told you that your tax scheme was illegal, you responded by citing a tax reference that showed that the Vineyard would not have an obligation to assign their interest in the patent to me. That seems important since even a small owner of a patent can license infringers. When parties are renegotiating key material terms - does that sound like the key material terms were set in an agreement? You can keep pasting a fragment of a sentence in an email and sending it to me, but I have not heard any substance from you at all. In fact, I all hear is lies and misrepresentations. I will not even address the fact that you prepared the email that you keep pasting from and you coerced me into agreeing to your email while I was on an airplane and the flight attendant was telling me to get off of the phone. You could not wait because you had so many buyers for the patents knocking on your door. Was that a lie too?

In addition, you committed fraud – even if there was an agreement – which there was not – it would have been based on fraud in the inducement. You materially misrepresented key facts relating to your patents and competing patents. You deny ethics violations in your email, but you do not deny the misrepresentations you made.

Having said all of this – I am willing to let this be dropped. I want my 10k back. And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release

Think about resolving this issue over the weekend. Nevertheless, I will need to hear back from you on Monday so that I can plan my course

Tom

---

From: Hoyt Fleming [mailto:hoytf@mac.com]
Sent: Friday, February 15, 2008 4:22 PM
To: T Coverstone
Subject: Re: Coverstone request to return deposit

Tom,

My legal representation to you was limited to "prosecution and enforcement matters" of my patent portfolio. I have not performed any act related to "prosecution or enforcement matters" of my patent portfolio during my short representation of you. Specifically, I have not filed any prosecution document with the USPTO during my short representation of you. In addition, as my patent portfolio is not in litigation, there are no enforcement matters in which I could currently represent you. Each and every ethics violation you made is completely baseless.

Your position is you would like me to return your deposit even though you agreed that the deposit would

**EXHIBIT E**

not be refunded. My position is that you owe me specific performance. Recall, that you agreed "to purchase U.S. Patent No. 6,204,798 . . . "

Please direct all future correspondence relating to this matter to:

Mr. Bradlee Frazer
Hawley Troxell Ennis and Hawley LLP
877 Main Street, Suite 1000
Boise, Idaho 83702


Hoyt

On Feb 15, 2008, at 2:24 PM, T Coverstone wrote:


Hoyt,

You committed fraud and conspired to do the same. You mischaracterized your patents, the prior art and the file histories. You also did not disclose material facts relating to same. You did all of this even despite the attorney engagement you requested and entered with me, apparently on behalf of your entire firm. These are very serious ethics violations.

Please send my $10,000 to the address below by February 20th.

If you agree to return the $10,000, I will agree to release and waive my potential claims against you and your law firm provided it is a mutual waiver, with you likewise releasing and waiving any potential claims. Otherwise, I will be forced to consider my other options.


Finally, do not communicate with Howrey on this. If we cannot resolve this issue now, then I will have you communicate with my litigation attorneys.

Tom

3525A Del Mar Heights Rd.
#334
San Diego, CA 92130


**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 10:31 AM
**To:** Tom Coverstone
**Cc:** Hank Petri
**Subject:** Coverstone request to return deposit

Tom,

This email responds to your email of February 14, 2008 in which you state:

"I would like the $10,000 returned."

The facts regarding this matter are as follows:

(1) On January 22, 2008, I sent you an email that stated:

"Tom,

This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

If you desire my assistance on matters relating to the above patents and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.

If you agree to the above, then please confirm via email.

Thank you.

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)"

(2) On January 22, 2008, you replied with an email that stated:

"Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed. I am tied up this week, let's talk next Monday morning.

Best Regards,
Tom"

Tom, you agreed to the following: "This deposit will not be refunded if the above sale is not completed by February 15, 2008." The statement to which you agreed was very clear. If the patent portfolio sale is not completed by February 15, 2008, then the deposit will not be refunded. Regardless of whether you or I agree that the February 22, 2008 emails create a contractual requirement for you to purchase my patent portfolio, you agreed to the non-return of your deposit if the patent portfolio sale was not completed by February 15, 2008.

As you are well aware, the deposit was consideration for me taking my patent portfolio off the market in general and more specifically, not negotiating with a patent broker that contacted me regarding purchasing my patent portfolio.

Today is February 15, 2008. I have not received any assignment documents from you or your attorney. Thus, the patent portfolio sale will not close today. Pursuant to the above cited portion of the January 22, 2008 agreement, I believe it is proper for me not to refund the deposit.

If you, a sophisticated attorney that makes his living purchasing and licensing patents, or your attorney, Mr Hank Petri, whom I respect greatly, provides me with a creditable legal analysis that indicates I should refund the deposit, I will objectively review such analysis and will consider your request to return the deposit.

Hoyt Fleming

**From:** T Coverstone <guardianmediatech@sbcglobal net>
**Subject: RE: Coverstone request to return deposit**
**Date:** February 15, 2008 10:44:16 PM MST
**To:** 'Hoyt Fleming' <hoytf@mac com>

In addition, if your patents are so valuable, as you say, then my offer of 250k and 20% of net and 14% of gross (which you have rejected) would have brought you more money in your pocket than a supposed 1M deal  You must not have faith in your patents after all.  And there must not be a long line of purchasers beating down your door as you said  That only further supports the fact that you misrepresented the situation and you are looking to rip me off and take advantage of me  Pretty despicable since you were acting as my attorney and you were acting on behalf of your law firm as you misled me through this scam transaction  You insisted on me engaging your law firm  You breached your fiduciary responsibility that you owed me; you breached your duty of loyalty you owed me; you breached your duty to represent me zealously  And all of this was in the guise of you being so committed to your church  And that, amongst other things, ironically was one reason why we never reached an agreement  Because of your illegal tax scam with your church – we were negotiating the assignment issue in every conversation that we had – let me repeat that:  in every conversation that we had we were negotiating the assignment issue regarding the church  You were adverse to me while you were representing me!!  A key term was not defined!!!  In time, the negotiation matured into different financial terms with differences of tens of thousands of dollars  Are you denying this?  Are you denying that your position regarding the church assignment was that the church had no obligation whatsoever to assign their interest in the patent to me?  Are you denying that?  Are you going to just cut and paste a fragment of the sentence of the email that you sent to me while I was traveling?  Are you denying that you badgered me while I was on an airplane to agree to your alleged agreement?  - that you had other buyers that just had to know that day – that hour – that quarter of an hour?!!  Any contract – not that there was one - would be void and null anyway since one of the material key elements of your proposal included the illegal tax scam with the church.  What is your legal position?  Are you a lawyer?  Are you going to just cut and paste a fragment of a sentence in response?  This issue is becoming a matter of principle for me  I am getting to a point where this (and you) need to be dragged into the light  You do not deserve to be practicing law nor do you deserve to be in the patent fraternity.  Truth and good will prevail - You can take that to your church –

I am giving you until Monday – and that is a generous offer on my part

**From:** T Coverstone [mailto:guardianmediatech@sbcglobal.net]
**Sent:** Friday, February 15, 2008 7:30 PM
**To:** 'Hoyt Fleming'
**Subject:** RE: Coverstone request to return deposit

I am glad you admit your representation

To the contrary to your email below, ALL of our discussions were about enforcing your patents and prosecution.  We spoke about what claims covered what, what claims to assert and against whom, when to file lawsuits (when your continuation application issues), filing additional continuation applications, what claims should be in the new continuation matters, and several other items relating to prosecution and enforcement of your patent portfolio

So, again, you misrepresent the situation

Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there was an agreement  There was not an agreement, there never was.  We did not agree on key material terms  In fact, key material terms were being renegotiated just recently and over many weeks.  As an example, and in one alternative potential agreement, you offered to change the assignment allocation regarding the church and I then pay you $25,000 more than the earlier price you wanted because you had doubts in your illegal tax deduction scheme with Boise Vineyard  In addition, when I told you that your tax scheme was illegal, you responded by citing a tax reference that showed that the Vineyard would not have an obligation to assign their interest in the patent to me  That seems important since even a small owner of a patent can license infringers.  When parties are renegotiating key material terms - does that sound like the key material terms were set in an agreement?  You can keep pasting a fragment of a sentence in an email and sending it to me, but I have not heard any substance from you at all  In fact, I all hear is lies and misrepresentations.  I will not even address the fact that you prepared the email that you keep pasting from and you coerced me into agreeing to your email while I was on an airplane and the flight attendant was telling me to get off of the phone  You could not wait because you had so many buyers for the patents knocking on your door.  Was that a lie too?

**FXHIBIT F**

In addition, you committed fraud – even if there was an agreement -- which there was not – it would have been based on fraud in the inducement  You materially misrepresented key facts relating to your patents and competing patents  You deny ethics violations in your email, but you do not deny the misrepresentations you made.

Having said all of this – I am willing to let this be dropped  I want my 10k back  And if you send the 10k back -- and the return of the money is based on a matter of principle – I am willing to sign a mutual release

Think about resolving this issue over the weekend  Nevertheless, I will need to hear back from you on Monday so that I can plan my course

Tom

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 4:22 PM
**To:** T Coverstone
**Subject:** Re: Coverstone request to return deposit

Tom,

My legal representation to you was limited to "prosecution and enforcement matters" of my patent portfolio. I have not performed any act related to "prosecution or enforcement matters" of my patent portfolio during my short representation of you. Specifically, I have not filed any prosecution document with the USPTO during my short representation of you. In addition, as my patent portfolio is not in litigation, there are no enforcement matters in which I could currently represent you. Each and every ethics violation you made is completely baseless.

Your position is you would like me to return your deposit even though you agreed that the deposit would not be refunded. My position is that you owe me specific performance. Recall, that you agreed "to purchase U.S. Patent No. 6,204,798 ...."

Please direct all future correspondence relating to this matter to:

Mr. Bradlee Frazer
Hawley Troxell Ennis and Hawley LLP
877 Main Street, Suite 1000
Boise, Idaho 83702

Hoyt

On Feb 15, 2008, at 2:24 PM, T Coverstone wrote:

Hoyt,

You committed fraud and conspired to do the same. You mischaracterized your patents, the prior art and the file histories  You also did not disclose material facts relating to same. You did all of this even despite the attorney engagement you requested and entered with me, apparently on behalf of your entire firm  These are very serious ethics violations.

Please send my $10,000 to the address below by February 20th

If you agree to return the $10,000, I will agree to release and waive my potential claims against you and your law firm provided it is a mutual waiver, with you likewise releasing and waiving any potential claims. Otherwise, I will be forced to consider my other options

Finally, do not communicate with Howrey on this. If we cannot resolve this issue now, then I will have you communicate with my litigation attorneys

Tom

3525A Del Mar Heights Rd.
#334
San Diego, CA 92130

---

**From:** Hoyt Fleming [mailto:hoytf@mac.com]
**Sent:** Friday, February 15, 2008 10:31 AM
**To:** Tom Coverstone
**Cc:** Hank Petri
**Subject:** Coverstone request to return deposit

Tom,

      This email responds to your email of February 14, 2008 in which you state:

"I would like the $10,000 returned."

The facts regarding this matter are as follows:

      (1) On January 22, 2008, I sent you an email that stated:

"Tom,

      This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841. and Patent Application No. 11/924,352. The purchase price for the above patents and applications is one million dollars.

      You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008

      Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000

      You and I agree that you and/or your attorneys will draft the necessary agreements.

      You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

If you desire my assistance on matters relating to the above patents and/or applications, you may retain me through my firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.

If you agree to the above, then please confirm via email.

Thank you.

Hoyt Fleming
Park, Vaughan & Fleming LLP
P.O. Box 140678
Boise, ID 83714
208-336-5237 (voice)
208-342-5363 (fax)"

(2) On January 22, 2008, you replied with an email that stated:

"Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed. I am tied up this week, let's talk next Monday morning.

Best Regards,
Tom"

Tom, you agreed to the following: "This deposit will not be refunded if the above sale is not completed by February 15, 2008." The statement to which you agreed was very clear. If the patent portfolio sale is not completed by February 15, 2008, then the deposit will not be refunded. Regardless of whether you or I agree that the February 22, 2008 emails create a contractual requirement for you to purchase my patent portfolio, you agreed to the non-return of your deposit if the patent portfolio sale was not completed by February 15, 2008.

As you are well aware, the deposit was consideration for me taking my patent portfolio off the market in general and more specifically, not negotiating with a patent broker that contacted me regarding purchasing my patent portfolio.

Today is February 15, 2008. I have not received any assignment documents from you or your attorney. Thus, the patent portfolio sale will not close today. Pursuant to the above cited portion of the January 22, 2008 agreement, I believe it is proper for me not to refund the deposit.

If you, a sophisticated attorney that makes his living purchasing and licensing patents, or your attorney, Mr. Hank Petri, whom I respect greatly, provides me with a creditable legal analysis that indicates I should refund the deposit, I will objectively review such analysis and will consider your request to return the deposit.

Hoyt Fleming

No 2008-40863

GUARDIAN MEDIA TECHNOLOGIES, LTD. and
GMT MANAGEMENT COMPANY

v.

HOWREY L.L.P. and MICHAEL S. DOWLER

IN THE DISTRICT COURT

HARRIS COUNTY, TEXAS

234 JUDICIAL DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, GUARDIAN MEDIA TECHNOLOGIES, LTD. and GMT MANAGEMENT COMPANY, complain of Defendants, HOWREY L.L.P. and MICHAEL S. DOWLER, as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiffs request a Level 3 discovery control plan under TEX. R. CIV. PROC. 190.3.

2. Plaintiffs bring this action based on Defendants' clear and serious breaches of fiduciary duty to secure the forfeiture of legal fees previously paid Defendants and to secure a declaration that legal fees Defendants claim as currently due are not in fact due or owing. All conditions precedent have occurred.

3. Plaintiff GUARDIAN MEDIA TECHNOLOGIES, LTD. is a Texas limited liability partnership. Plaintiff GMT MANAGEMENT COMPANY is a Texas corporation. Collectively, Plaintiffs will be referred to herein as Guardian. At all times relevant, Tom Coverstone was acting as the principal for and entirely within the course and scope of his duties and responsibilities with Guardian.

4. Defendant HOWREY L.L.P. ("Howrey" or "the law firm") is a Texas professional limited liability partnership. Citation may be served on this Defendant by serving its registered agent, Thomas Miller, at its registered address, 1111 Louisiana, 25th Floor, Houston, Texas 77002.

5. Defendant MICHAEL S. DOWLER ("Dowler" or "the lawyer") is an individual. At all relevant times and for all relevant acts and omissions, Dowler was a partner and employee of Howrey acting within the course and scope of his duties and employment with the law firm. Citation may be served on this Defendant at 1111 Louisiana, 25th Floor, Houston, Texas 77002.

6. Howrey maintained its principal office in Harris County, Texas at the time these causes of action accrued; Dowler was a resident of Harris County, Texas at the time these causes of action accrued; and all or substantial part of the events or omissions giving rise

**EXHIBIT G**

2008 04/07 14:01:45 ..... NLS Document ... Filed 07/07/2008 Page 17 of 32

APR-07-2008 12:48 From:TEXAS LAWYER          2146511107          To:2083425363          P.2/6
JUN-27-2004 10:35P FROM:          .... 7133286863          TO:12147412325PP9722          P.3/7
                                                                                        003/007

to Guardian's claims occurred in Harris County, Texas; making venue proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code §15.002(a)(1)(2)(3). The amount in controversy exceeds the minimal jurisdictional limits of this Court.

7. Limitations do not bar any causes of action herein, but to the extent that Defendants may so allege, the discovery rule applies to toll accrual of Plaintiffs' causes of action because Plaintiffs did not discover, and should not have discovered in the exercise of reasonable care and diligence, the facts establishing the elements of Plaintiffs' causes of action alleged herein against Defendants, until such a time so that no applicable statute of limitations now prohibits the bringing of this action against Defendants. Further, the continuous representation rule tolls limitations to February of 2008.

## II. FACTS

8. Howrey is a global law firm which prides itself on its antitrust, global litigation and intellectual property practice. Howrey has been "[n]amed Global Patent Law Firm of the Year in 2005, 2006 and 2007 by Who's Who Legal" and "Howrey's Houston IP practice is the largest and most prominent in the city," according to the firm website.

9. Guardian has acquired and is licensing patents. Based on the law firm's expertise in patent matters, Guardian through its principal, Tom Coverstone, hired Howrey in 2003 to represent Guardian in its patent matters. Howrey's representation of Guardian thereafter included patent investigation, acquisition, licensing, validity, infringement, enforceability, and litigation. Guardian has paid Howrey several millions of dollars in legal fees since 2003.

10. Early in the relationship, Dowler came to be the principal partner in charge of the Howrey representation of Guardian. "Dowler was recognized by his peers as one of the best attorneys in Texas, having been named a Texas Rising Star in 2004 and a Texas Super Lawyer from 2005-2007," again according to the firm website as of the filing of this lawsuit.

11. By e-mail dated October 8, 2007, Dowler advised Guardian through Coverstone that he had been studying a patent, having "worked very hard doing the due diligence," which was owned by a personal friend of his, Hoyt Fleming, who was interested in selling the patent. The patent involved the coupling of GPS capability with radar detector used in automobiles to detect law enforcement speed detecting radar guns. Dowler also told Coverstone that "the patent looks about as good as I've seen." Dowler further advised that

**Plaintiffs' Original Petition**

Page 2 of 6

he was "putting together an investment group to buy the patent," asking whether Coverstone "might be interested in this opportunity" and declaring that he hoped so "since we work so well together."

12. Based on the trust Dowler had engendered over the course of representing Guardian, Coverstone responded to the solicitation of Dowler by expressing his feeling that his companies would be potentially interested in buying the patent. Dowler proceeded to tell Coverstone that the patent was "very clean," as well as the best patent he had ever seen. Dowler told Coverstone that the selling price of $1,000,000.00 was non-negotiable. Coverstone justifiably assumed however that as the lawyer for Guardian, Dowler would look out for the best interests of Guardian.

13. Coverstone and Dowler thereafter met with Fleming at the Consumer Electronics Symposium in Las Vegas, Nevada. Both Dowler and Fleming further puffed up the value of the patent. Dowler told Coverstone that he had some "$800,000.00 in time" conducting due diligence into the patent.

14. Based on the representations of Dowler and Fleming as to the remarkable value of the patent and the analysis Dowler had allegedly committed to investigating the patent, Coverstone expressed his interest in Guardian possibly buying the patent for the $1,000,000.00 asking price, subject to Coverstone's review of the due diligence materials. Dowler then told Coverstone that he personally was demanding 50% of the net profits that Guardian would derive from the patent. When Coverstone asked Dowler what his contribution would be to the joint venture, Dowler replied that his investment of some $600,000.00 in due diligence investigating the patent and his bringing the patent to Guardian was his contribution.

15. Again based on the representations of Dowler and Fleming as to the remarkable value of the patent, Coverstone continued to express his interest in Guardian potentially buying the patent. Coverstone then asked Dowler about Guardian and Dowler entering into a written agreement memorializing the profit division, to which request Dowler responded that he did not desire to enter into a written agreement because such a document would be discoverable in any subsequent litigation involving the patent. Dowler stated to Coverstone that he wanted an oral agreement instead. Dowler told Coverstone that he wanted no evidence created of any such profits coming to him and that his involvement had to be kept "under the radar." Coverstone thereafter responded that Guardian, if it were

to purchase the patent at all and were to pay Dowler 50% of any profits, would file an I.R.S. Form 1099 declaration of income paid, to which concept Dowler very reluctantly acquiesced.

16. Both Fleming and Dowler pressured Coverstone to commit to purchase the patent. While in the course of traveling and at the insistence and urging of Dowler and Fleming, Coverstone was convinced to rush a $10,000.00 wire transfer to Fleming as earnest money on behalf of Guardian.

17. Coverstone on behalf of Guardian thereafter made his own inquiry as to the validity and value of the patent, unfortunately learning that the patent did not in fact, contrary to what had been represented by Dowler and Fleming, provide protection from the potential commercial competitors in the marketplace for the product envisioned by the patent and actually had little to no value. Coverstone learned that the principal makers of radar detectors were familiar with and not concerned about infringing the patent that Dowler had so highly touted. Contrary to the representations of Dowler and Fleming, Coverstone discovered that the principal makers of radar detectors were able to market and were already marketing, GPS enabled radar detectors without fear of illegally infringing the patent Dowler had been fawning over.

18. After learning that Dowler and Fleming had misrepresented the value of the patent, Coverstone told Fleming that he had discovered the misrepresentations and the true value of the patent, and that the sale would therefore not go through. Consequent to the actions of Defendants, Fleming has filed lawsuits in federal district courts against Coverstone individually, erroneously claiming that he personally agreed to pay Fleming $1,000,000.00 for the patent.

### III. CAUSES OF ACTION

19. Plaintiffs bring the following causes of action against Defendants, incorporating the foregoing and all other paragraphs herein as if set out in full into each of the following causes of action. Plaintiffs bring each of these causes of action in the alternative and without waiving any other cause of action.

### A. FEE FORFEITURE FOR BREACH OF FIDUCIARY DUTY

20. The attorney-client relationship is a fiduciary relationship as matter of law. A fiduciary relationship is one of special trust and confidence. The law requires that all dealings between an attorney and client be characterized by the utmost loyalty, good faith,

candor and honesty. An attorney must affirmatively disclose to his client all material facts bearing on the client, as well as the legal consequences flowing from the facts. Dowler and Howrey committed breaches of fiduciary duties owed Plaintiffs by him and Howrey, as described hereinfore. As fiduciaries, Defendants bear the burden of proof to establish that they did not breach their fiduciary duties to Plaintiffs.

21. Defendants committed clear and serious breaches of their fiduciary and other duties owed Plaintiffs. Such breaches command fee disgorgement. Dowler, and hence Howrey, breached their fiduciary duties owed to Guardian. Instead of looking out for the best interests of his clients, Dowler misrepresented the value of the patent to the advantage of his self and his "personal friend," Hoyt Fleming. Dowler never disclosed, fully or otherwise, to Coverstone or Guardian, Dowler's true interests, or of the nature and effect of the conflicts of interests engendered by the ongoing representation and the patent transaction. Dowler's personal interests and conflict with Guardian thereafter escalated when Dowler demanded a 50% cut in profits derived from the patent "under the radar."

B. DECLARATORY JUDGMENT

22. Howrey claims that Guardian owes it nearly $400,000.00 in legal fees for services rendered while Howrey and Dowler and Guardian suffered severe conflicts of interests.

23. Again, Defendants committed clear and serious breaches of their fiduciary and other duties owed Plaintiffs as heretofore set forth. Consequently, Plaintiffs do not and should not owe Defendants any more legal fees, which Plaintiffs request that the Court so declare.

24. Plaintiffs therefore seek a declaration from the Court that such fees that Defendants currently claim are due are not due.

IV. PRAYER

Plaintiffs pray that upon final trial they have judgment against Defendants declaring that they owe Defendants no more legal fees, for forfeiture of legal fees previously paid Defendants, along with reasonable and necessary attorney's fees, prejudgment and postjudgment interest as allowed by law, costs of court, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

SMOOT LAW FIRM, P.C.

By: _____
    Steven M. Smoot
    S.B.N. 18774300
1301 McKinney, Suite 2900
Houston, Texas 77010
Telephone (713) 654-0708
Telecopier (713) 654-0708
ssmoot@smootlawfirm.com





# LAW.COM

Select '**Print**' in your browser menu to print this document

**Copyright 2008 ALM Properties, Inc. All rights reserved.**

Page printed from: http://www.law.com

Back to Article

## Former Clients Sue Howrey After Alleged Patent Deal Sours

Jonathan Fox
04-21-2008

Two former clients have sued Howrey partner Michael S. Dowler and the firm, alleging breach of fiduciary duty after an alleged deal to buy a patent for $1 million went sour.

On April 2, the plaintiffs filed *Guardian Media Technologies Ltd., et al. v. Howrey LLP, et al.* in Harris County, Texas' 234th District Court. Guardian, a Texas limited partnership, and GMT Management Co., a Texas corporation that is the general partner in Guardian, acquire and license patents. They allege in their petition that Dowler, a partner in Howrey's Houston office, was their lawyer in a variety of patent matters and that he brought a patent to them for potential purchase, demanded an "under the radar" verbal deal for 50 percent of net profits to be derived from the patent and breached his fiduciary duty by "misrepresent[ing] the value of the patent."

"It's improper for a lawyer to bring a prospect to a client and then ask for 50 percent," says Steven M. Smoot, a Houston solo who represents Guardian and GMT in the suit.

Stephen H. Cagle, managing partner of Howrey's Houston office, denies the allegations against the firm and Dowler. "I think they're categorically false," Cagle says.

Cagle says the dispute is really between Tom Coverstone, principal of Guardian and GMT, and California attorney Hoyt A. Fleming, owner of the patent in question.

Coverstone recently moved to California from Texas, Smoot says.

Dowler did not return two telephone calls seeking comment before presstime on April 17. Chris Reynolds, a partner in





Gibbs & Bruns in Houston who is representing Howrey and Dowler in the suit, says he is investigating the claims, but "so far as I'm aware, they're without merit."

Fleming, a resident of Idaho, declines comment. From 1994 to 1997, he was an associate with Arnold, White & Durkee, which merged with Howrey & Simon in 2000 to form Howrey Simon Arnold & White. The firm is now known as Howrey.

Austin, Texas-based Guardian and GMT (both referred to "Guardian" in the petition) allege the following: Coverstone

**EXHIBIT H**

hired Howrey in 2003 to represent Guardian in patent matters that included "patent investigation, acquisition, licensing, validity, infringement, enforceability and litigation" and continued to use Howrey's services until February 2008 Early in the relationship, Dowler became the principal Howrey partner in charge of the Guardian representation

Dowler told Coverstone in an e-mail dated Oct 8, 2007, that he had been studying a patent for global positioning system-enabled radar detectors owned by Fleming, a friend of Dowler's. Dowler told Coverstone that "the patent looks about as good as I've seen" and that "he was 'putting together an investment group to buy the patent '" He asked Coverstone if he "'might be interested in this opportunity '"

Coverstone expressed interest on Guardian's behalf Dowler then told Coverstone that the selling price was a non-negotiable $1 million "Coverstone justifiably assumed however that as the lawyer for Guardian, Dowler would look out for the best interests of Guardian," the plaintiffs allege in the petition

Dowler, Fleming and Coverstone met at a Las Vegas trade show, where Dowler allegedly demanded 50 percent of the net profits that Guardian would eventually derive from the patent. "When Coverstone asked Dowler what his contribution would be to the joint venture, Dowler replied that his investment of some $600,000 in due diligence investigating the patent and his bringing the patent to Guardian was his contribution."

When Coverstone sought a written agreement memorializing the profit division, Dowler allegedly responded "that he did not desire to enter into a written agreement because such a document would be discoverable in any subsequent litigation involving the patent." Instead, the plaintiffs allege, he wanted his involvement to be kept "under the radar."

Coverstone made a $10,000 wire transfer to Fleming as earnest money. Coverstone, the plaintiffs allege, then investigated the patent, "unfortunately learning that the patent did not in fact, contrary to what had been represented by Dowler and Fleming, provide protection from the potential commercial competitors in the marketplace for the product envisioned by the patent and actually had little to no value "

Coverstone discovered that the principal makers of radar detectors already were marketing GPS-enabled radar detectors and were "not concerned about infringing the patent that Dowler had so highly touted " Coverstone then backed out of the deal.

Guardian alleges in the petition that Howrey and Dowler breached their fiduciary duties owed to the plaintiffs. "Dowler misrepresented the value of the patent to the advantage of his self and his 'personal friend' Hoyt Fleming," the plaintiffs allege. "Dowler never disclosed ... to Coverstone or Guardian, Dowler's true interests, or of the nature and effect of the conflicts of interests engendered by the ongoing representation and the patent transaction."

After the deal broke down, court records show that Fleming sued Coverstone individually for breach of contract and other causes of action in the U S District Court for the District of Idaho and the U.S District Court for the Southern District of California.

Fleming, a partner in Davis, Calif., firm Park, Vaughan & Fleming, declines comment on those suits One of Fleming's attorneys, Brad Frazer, of counsel at Hawley Troxell Ennis & Hawley in Boise, Idaho, says that the Idaho suit likely will be dismissed in favor of the California suit, but he otherwise declines comment.

Carey L Cooper, a shareholder in the San Diego and Los Angeles offices of the firm Klinedinst who represents Coverstone in the Fleming litigation, denies that Fleming's allegations have merit. "There was no contract for purchase" of the patents, she says. A message left at a telephone listing for Coverstone found on the State Bar of California's Web site was not returned

As alleged in the suit, the plaintiffs, who no longer are Howrey clients, seek the return of fees previously paid to Howrey and a declaration that they need not pay $400,000 in outstanding fees billed by Howrey "for services rendered while Howrey and Dowler and Guardian suffered severe conflicts of interest."

Smoot says that Guardian plaintiffs seek the disgorgement of up to $5 million in fees paid over five years to Howrey.

A successful breach of fiduciary duty claim makes an attorney vulnerable to fee disgorgement under the 1999 Texas Supreme Court opinion *Burrow v. Arce, et al.*, says James A. "Sandy" McCorquodale, a partner in Kleiman Lawrence Baskind Fitzgerald in Dallas whose practice includes legal ethics matters.

*Arce* allows a trial judge to require fee forfeiture when attorneys breach duties to their clients, even if the clients suffer no damages Smoot represented the plaintiffs in that case

*Arce* claims "are very attractive to plaintiffs attorneys," McCorquodale says.

# TEXAS LAWYER

Select '**Print**' in your browser menu to print this document.

**©2008 Texas Lawyer Online**
Page printed from: http://www.texaslawyer.com

Back to Article

---

## Petition in *Guardian Media Technologies Ltd v. Howrey LLP*

Texas Lawyer
04-18-2008

### No. 2008-20263

IN THE DISTRICT COURT
HARRIS COUNTY, TEXAS
234 JUDICIAL DISTRICT

GUARDIAN MEDIA TECHNOLOGIES, LTD. AND GMT MANAGEMENT CO.

v.

HOWREY L.L.P. and MICHAEL S. DOWLER

### PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, GUARDIAN MEDIA TECHNOLOGIES, LTD. and GMT MANAGEMENT COMPANY, complaint of Defendants, HOWREY L.L.P. and MICHAEL S. DOWLER, as follows:

I. PARTIES, JURSIDICTION AND VENUE

1. Plaintiffs request a Level 3 discovery control plan under Tex.R.Civ.Proc. 190.3.

2. Plaintiffs bring this action based on Defendants' clear and serious breaches of fiduciary duty to secure the forfeiture of legal fees previously paid Defendants and to secure a declaration that legal fees Defendants claim as currently due are not in fact due or owing. All conditions precedent have occurred.

**EXHIBIT I**

3. Plaintiff GUARDIAN MEDIA TECHNOLOGIES, LTD. is a Texas limited liability partnership. Plaintiff GMT MANAGEMENT COMPANY is a Texas corporation. Collectively, Plaintiffs will be referred to herein as Guardian. At all times relevant, Tom Coverstone was acting as the principal for and entirely within the course and scope of his duties and responsibilities with Guardian.

4. Defendant HOWREY L.L.P. ("Howrey" or "the law firm") is a Texas professional limited liability partnership. Citation may be served on this Defendant by serving its registered agent, Thomas Miller, at its registered address, 111 Louisiana, 25th Floor, Houston, Texas 77002.

5. Defendant MICHAEL S. DOWLER ("Dowler" or "the lawyer") is an individual. At all relevant times and for all relevant acts and omissions, Dowler was a partner and employee of Howrey acting within the course and scope of his duties and employment with the law firm. Citation may be served on this Defendant at 1111 Louisiana, 25th Floor, Houston, Texas 77002.

6. Howrey maintained its principal office in Harris County, Texas at the time these causes of action accrued; Dowler was a resident of Harris County, Texas at the time these causes of action accrued; and all or substantial part of the events or omissions giving rise to Guardian's claims occurred in Harris County, Texas; making venue proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code §15.002(a)(1)(2)(3). The amount in controversy exceeds the minimal jurisdictional limits of this Court.

7. Limitations do not bar any causes of action herein, but to the extent that Defendants may so allege, the discovery rule applies to toll accrual of Plaintiffs' causes of action because Plaintiffs did not discover, and should not have discovered in the exercise of reasonable care and diligence, the facts establishing the elements of Plaintiffs' causes of action alleged herein against Defendants, until such a time so that no applicable statute of limitations now prohibits the bringing of this action against Defendants. Further, the continuous representation rule tolls limitations to February of 2008.

II. FACTS

8. Howrey is a global law firm which prides itself on its antitrust, global litigation and intellectual property practice. Howrey has been "[n]amed Global Patent Law Firm of the Year in 2005, 2006 and 2007 by Who's Who Legal" and "Howrey's Houston IP practice is the largest and most prominent in the city," according to the firm website.

9. Guardian has acquired and is licensing patents. Based on the law firm's expertise in patent matters, Guardian through its principals, Tom Coverstone, hired Howrey in 2003 to represent Guardian in its patent matters. Howrey's representation of Guardian thereafter included patent investigation, acquisition, licensing, validity, infringement,

enforceability, and litigation. Guardian has paid Howrey several millions of dollars in legal fees since 2003.

10. Early in the relationship, Dowler came to the principal partner in charge of the Howrey representation of Guardian. "Dowler was recognized by his peers as one of the best attorneys in Texas, having been named a Texas Rising Star in 2004 and a Texas Super Lawyer from 2005-2007," again according to the firm website as of the filing of this lawsuit.

11. By e-mail dated October 8, 2007, Dowler advised Guardian through Coverstone that he had been studying a patent, having "worked very hard doing the due diligence," which was owned by a personal friend of his, Hoyt Fleming, who was interested in selling the patent. The patent involved the coupling of GPS capability with radar detector used in automobiles to detect law enforcement speed detecting radar guns. Dowler also told Coverstone that "the patent looks about as good as I've seen." Dowler further advised that he was "putting together an investment group to buy the patent," asking whether Coverstone "might be interested in this opportunity" and declaring that he hoped so "since we work so well together."

12. Based on the trust Dowler had engendered over the course of representing Guardian, Coverstone responded to the solicitation of Dowler by expressing his feeling hat his companies would be potentially interested in buying the patent. Dowler proceeded to tell Coverstone that the patent was "very clean," as well as the best patent he had ever seen. Dowler told Coverstone that the selling price of $1,000,000.00 was non-negotiable. Coverstone justifiably assumed however that as the lawyer for Guardian, Dowler would look out for the best interests of Guardian.

13. Coverstone and Dowler thereafter met with Fleming at the Consumer Electronics Symposium in Las Vegas, Nevada. Both Dowler and Fleming further puffed up the value of the patent. Dowler told Coverstone that he had some "$600,000 in time" conducting due diligence into the patent.

14. Based on the representations of Dowler and Fleming as to the remarkable value of the patent and the analysis Dowler had allegedly committed to investigating the patent, Coverstone expressed his interest in Guardian possibly buying the patent for the $1,000,000.00 asking price, subject to Coverstone's review of the due diligence materials. Dowler then told Coverstone that he personally was demanding 50% of the net profits that Guardian would derive from the patent. When Coverstone asked Dowler what his contribution would be to the joint venture, Dowler replied that his investment of some $600,000.00 in due diligence investigating the patent and his bringing the patent to Guardian was his contribution.

15. Again based on the representations of Dowler and Fleming as to the remarkable value of the patent, Coverstone continued to express his interest in Guardian potentially buying the patent. Coverstone then asked Dowler about Guardian and

Dowler entering into a written agreement memorializing the profit division, to which request Dowler responded that he did not desire to enter into a written agreement because such a document would be discoverable in any subsequent litigation involving the patent. Dowler stated to Coverstone that he wanted an oral agreement instead. Dowler told Coverstoner that he wanted no evidence created of any such profits coming to him and that his involvement had to be kept "under the radar." Coverstone thereafter responded that Guardian, if it were to purchase the patent at all and were to pay Dowler 50% of any profits, would file an I.R.S. Form 1099 declaration of income paid, to which Dowler very reluctantly acquiesced.

16. Both Fleming and Dowler pressured Coverstone to commit to purchase the patent. While in the course of traveling and at the insistence and urging of Dowler and Fleming, Coverstone was convinced to rush a $10,000 wire transfer to Fleming as earnest money on behalf of Guardian.

17. Coverstone on behalf of Guardian thereafter made his own inquiry as to the validity and value of the patent, unfortunately learning that the patent did not in fact, contrary to what had been represented by Dowler and Fleming, provide protection from the potential commercial competitors in the marketplace for the product envisioned by the patent and actually had little to no value. Coverstone learned that the principal makers of radar detectors were familiar with and not concerned about infringing the patent that Dowler had so highly touted. Contrary to the representations of Dowler and Fleming, Coverstone discovered that the principal makers of radar detectors were able to market, and were already marketing, GPS enabled radar detectors without fear of illegally infringing the patent Dowler had been fawning over.

18. After learning that Dowler and Fleming had misrepresented the value of the patent, Coverstone told Fleming that he had discovered the misrepresentations and the true value of the patent, and that the sale would therefore not go through. Consequent to the actions of Defendants, Fleming has filed lawsuits in federal district courts against Coverstone Individually, erroneously claiming that he personally agreed to pay Fleming $1,000,000.00 for the patent.

## III. CAUSES OF ACTION

19. Plaintiffs bring the following causes of action against Defendants, incorporating the foregoing and all other paragraphs herein as if set out in full into each of the following causes of action. Plaintiffs being each of these causes of action in the alternative and without waiving any other cause of action.

## A. FEE FORFEITURE FOR BREACH OF FIDUCIARY DUTY

20. The attorney-client relationship is a fiduciary relationship as matter of law. A fiduciary relationship is one of special trust and confidence. The law requires that all dealings between an attorney and client be characterized by the utmost loyalty, good

faith, candor and honesty. An attorney must affirmatively disclose to his client all material facts bearing on the client, as well as the legal consequences flowing from the facts. Dowler and Howrey committed breaches of fiduciary duties owed Plaintiffs by him and Howrey, as described hereinfore. As fiduciaries, Defendants bear the burden of proof to establish that they did not breach their fiduciary duties to Plaintiffs.

21. Defendants committed clear and serious breaches of their fiduciary and other duties owed Plaintiffs. Such breaches command fee disgorgement. Dowler, and hence Howrey, breached their fiduciary duties owed to Guardian. Instead of looking out for the best interests of his clients, Dowler misrepresented the value of the patent to the advantage of his self and his "personal friend," Hoyt Fleming. Dowler never disclosed, fully or otherwise, to Coverstone or Guardian, Dowler's true interests, or of the nature and effect of the conflicts of interests engendered by the ongoing representation and the patent transaction. Dowler's personal interests and conflict with Guardian thereafter escalated when Dowler demanded a 50% cut in profits derived from the patent "under the radar."

B. DECLARATORY JUDGMENT

22. Howrey claims that Guardian owes it nearly $400,000.00 in legal fees for services rendered while Howrey and Dowler and Guardian suffered severe conflicts of interests.

23. Again, Defendants committed clear and serious breaches of their fiduciary and other duties owed Plaintiffs as heretofore set forth. Consequently, Plaintiffs do not and should not owe Defendants any more legal fees, which Plainitffs request that the Court so declare.

24. Plaintiffs therefore seek a declaration from the Court that such fees that Defendants currently claim are due are not due.

IV. PRAYER

Plaintiffs pray that upon final trial they have judgment against Defendants declaring that they owe Defendants no more legal fees, for forfeiture of legal fees previously paid Defendants, along with reasonable and necessary attorney's fees, prejudgment and postjudgment interest as allowed by law, costs of court, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

SMOOT LAW FIRM, P.C.

By:
Steven M. Smoot
S.B.N. 18774300

http://www.law.com/jsp/tx/PubArticleFriendlyTX.jsp?id=900005509185                                                6/29/08 4:22 PM

1301 McKinney, Suite 2900
Houston, Texas 77010
Telephone (713)654-0708
Telecopier (713)654-0706
ssmoot@smootlawfirm.com

terms & conditions    |    privacy    |    advertising    |    about texaslawyer.com

About ALM | About Law.com | Customer Support

Copyright 2008 ALM Properties, Inc. All rights reserved.



to Guardian's claims occurred in Harris County, Texas; making venue proper in Harris County, Texas pursuant to Texas Civil Practices & Remedies Code §15.002(a)(1)(2)(3). The amount in controversy exceeds the minimal jurisdictional limits of this Court.

7. Limitations do not bar any causes of action herein, but to the extent that Defendants may so allege, the discovery rule applies to toll accrual of Plaintiffs' causes of action because Plaintiffs did not discover, and should not have discovered in the exercise of reasonable care and diligence, the facts establishing the elements of Plaintiffs' causes of action alleged herein against Defendants, until such a time so that no applicable statute of limitations now prohibits the bringing of this action against Defendants. Further, the continuous representation rule tolls limitations to February of 2008.

## II. FACTS

8. Howrey is a global law firm which prides itself on its antitrust, global litigation and intellectual property practice. Howrey has been "[n]amed Global Patent Law Firm of the Year in 2005, 2006 and 2007 by Who's Who Legal" and "Howrey's Houston IP practice is the largest and most prominent in the city," according to the firm website.

9. Guardian has acquired and is licensing patents. Based on the law firm's expertise in patent matters, Guardian through its principal, Tom Coverstone, hired Howrey in 2003 to represent Guardian in its patent matters. Howrey's representation of Guardian thereafter included patent investigation, acquisition, licensing, validity, infringement, enforceability, and litigation. Guardian has paid Howrey several millions of dollars in legal fees since 2003.

10. Early in the relationship, Dowler came to be the principal partner in charge of the Howrey representation of Guardian. "Dowler was recognized by his peers as one of the best attorneys in Texas, having been named a Texas Rising Star in 2004 and a Texas Super Lawyer from 2005-2007," again according to the firm website as of the filing of this lawsuit.

11. By e-mail dated October 8, 2007, Dowler advised Guardian through Coverstone that he had been studying a patent, having "worked very hard doing the due diligence," which was owned by a personal friend of his, Hoyt Fleming, who was interested in selling the patent. The patent involved the coupling of GPS capability with radar detector used in automobiles to detect law enforcement speed detecting radar guns. Dowler also told Coverstone that "the patent looks about as good as I've seen." Dowler further advised that

Plaintiffs' Original Petition    Page 2 of 8

Web    Images    Maps    News    Shopping    Gmail    more ▼                                    Sign in

```
┌─────────────────────────────────────────────┐  ┌────────┐   Advanced Search
│ "hoyt fleming" attorney                      │  │ Search │   Preferences
└─────────────────────────────────────────────┘  └────────┘
```

---

**Web**                                          Results **1** - **7** of 7 for **"hoyt fleming"** **attorney**. (**0.08** seconds)

### Law.com - Former Clients Sue Howrey After Alleged Patent Deal Sours
Apr 21, 2008 .... self and his 'personal friend' **Hoyt Fleming**," the plaintiffs allege. ... A
successful breach of fiduciary duty claim makes an **attorney** ...
www.law.com/jsp/article.jsp?id=1208515559011 - 24k - Cached - Similar pages

#### Texas Lawyer - Petition in <i>Guardian Media Technologies Ltd v ...
The **attorney**-client relationship is a fiduciary relationship as matter of law. ... to the
advantage of his self and his "personal friend," **Hoyt Fleming**. ...
www.law.com/jsp/tx/PubArticleTX.jsp?id=900005509185 - 36k - Cached - Similar pages

### Docket Search: "carney" - Justia Federal District Court Filings ...
... DOCK S FARRIS, **HOYT FLEMING** and others...; Defendant: COOPER INDUSTRIES, ...
Petitioner: JAN F. BECKER, Respondent: THE **ATTORNEY** GENERAL OF THE STATE OF
...
dockets.justia.com/search?q=Carney - 130k - Cached - Similar pages

#### Docket Search: "thomas d. davis" - Justia Federal District Court ...
... Michigan **Attorney** General's Office, Mike Cox, Gary Gordon, Jennifer Esch .... DOCK S
FARRIS, **HOYT FLEMING** and others...; Defendant: COOPER INDUSTRIES, ...
dockets.justia.com/search?q=Thomas+D+Davis - 137k - Cached - Similar pages
More results from dockets.justia.com »

### [PDF] United States District Court
File Format: PDF/Adobe Acrobat - View as HTML
counsel into a case waives the **attorney**-client privilege as to ... sent the documents to its
willfulness opinion counsel, **Hoyt Fleming**, who considered the ...
emerginglitigation.shb.com/Portals/ f81bfc4f-cc59-46fe-9ed5-
7795e6eea5b5/collaboration_v_polycom.pdf - Similar pages

### Park Vaughan & Fleming, LLP, Boise, Idaho, United States of ...
IP **Attorney** Quick Search Quick Search ... Contact Person, **Hoyt Fleming**. Designation.
Physical Address, P O Box 140678. Postal Address ...
www.parkerip.com/ip**attorney**s/ MemberDetails.aspx?MemberID=9812 - 36k -
Cached - Similar pages

### Park, Vaughan & Fleming LLP
**Hoyt Fleming**. Associates Anthony "Tony" Jones - Shun Yao. Agents/Engineers ... Speed
skating and cycling. Patent **Attorney** shun@parklegal.com 530-759-1667 ...
www.parklegal.com/yao.html - 18k - Cached - Similar pages

*In order to show you the most relevant results, we have omitted some entries very similar to the 7
already displayed.*
*If you like, you can repeat the search with the omitted results included.*

---

**EXHIBIT K**

--------------------------------------------------------------------

"hoyt fleming" attorney    ( Search )

Search within results | Language Tools | Search Tips | Dissatisfied? Help us improve | Try Google Experimental

--------------------------------------------------------------------

©2008 Google - Google Home - Advertising Programs - Business Solutions - About Google