1  John D. Klinedinst, Bar No. 86254
   Gregor A. Hensrude, Bar No. 226660
2  Daniel S. Agle, Bar No. 251090
   KLINEDINST PC
3  501 West Broadway, Suite 600
   San Diego, California 92101
4  (619) 239-8131/FAX (619) 238-8707
   ghensrude@klinedinstlaw.com
5
   Attorneys for Defendant
6  TOM COVERSTONE

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10 | HOYT A. FLEMING,           | Case No.  3:08-cv-00355 WQH-NLS
11 |         Plaintiff,          | **REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
12 |    v.                       |
   |                             | Date           July 21, 2008
13 | TOM COVERSTONE,             | Time:          11:00 a.m.
   |                             | Courtroom:     4
14 |         Defendant.          | Judge:         William Q. Hayes
   |                             | Magistrate Judge: Nita L. Stormes
15 |                             | Complaint Filed: February 22, 2008
   |                             | Trial Date:    None set
16

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## I. INTRODUCTION

Recognizing that his First Amended Complaint ("FAC") is inadequate, Fleming has sought leave to amend the FAC to remedy the issues presented in this motion by removing factual allegations that demonstrate his action fails as a matter of law, and adding others that do nothing more than allege that the defenses are inapplicable. However, both the FAC, to which this motion is directed, and the proposed Second Amended Complaint suffer from flaws governed by what actually happened, meaning not only do both of them fail, but no amendment could ever cure the defects. Therefore, this motion should be granted in its entirety, and this action dismissed.

## II. LEGAL STANDARD

The parties agree, as they must, that the court is limited to review of the allegations in the FAC for the purposes of this motion. However, Fleming further asserts, seeing the detriment caused by the allegations in the FAC, that the court "is not permitted to consider extrinsic evidence, such as e-mail communications subsequent to the parties entering into the contract, *even if those emails are referenced in the complaint*." [Opposition at 6:14-16] That assertion, set forth without authority, is patently false. The court can, and should, consider the allegations in the FAC, as Fleming even admits elsewhere in the opposition. [Opposition at 3:8-12] In fact, the averments in Fleming's FAC are judicial admissions of the facts stated therein. *Hall v. United States*, 314 F.Supp. 1135, 1137-38 (N.D. Cal 1970).

As a consequence, if Fleming is to defeat this motion, he must demonstrate that there was an enforceable contract in light of the subsequent e-mails evincing *his intent that it was not* a binding contract.

## III. ARGUMENT

There are three causes of action in the FAC, and none of them state a claim for which relief can be granted. The breach of contract claim fails for there is no enforceable contract. The defamation and extortion claims fail not only because the elements of those torts are not pled, but because both are barred by the *absolute* litigation privilege contained in Civil Code section 47.

///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

### A. The "contract" was never an enforceable agreement

In order to demonstrate that his contract claim has merit, Fleming sets up a straw man. But Fleming's straw man, like most, cannot withstand even the faintest breeze. Fleming's central premise is that he meets the four-part test in Civil Code section 1550, which lists *some* of the essential elements of a contract. But that argument ignores the subsequent requirements, like Civil Code section 1558, for example, which states "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." And it is in these other provisions that it becomes obvious that the "contract" is lacking in sufficient certainty to be an actual, enforceable, contract.

#### 1. Fleming still does not allege that his wife agreed to the contract terms, nor has he named her as a party

As demonstrated in the moving papers, Coverstone agreed to the terms presented by Fleming, with the caveat that the remaining terms be worked out, and the *express condition* that Fleming's wife sign the contract. Fleming admits that it was a condition imposed and necessary to make the contract viable, but argues that the contract is enforceable because: (1) Fleming did agree to have his wife sign; and (2) Fleming's wife was never a party to the contract. And these points illustrate exactly why the contract was never binding.

Starting with the latter, Coverstone concedes without reservation that Fleming's wife was never a party to the contract. [Opposition at 8:12] And that is exactly the problem—being a party to the contract was required, as *she had to give up her community property interest in the patent*. Fleming does not dispute that she has a community property interest in the patent. Therefore, because she never agreed to give up her interest, the contract never became binding. Coverstone did not contract for part of the patent—indeed such a part is useless because a part-owner of a patent can license the patent in full. And this is not an idle concern. What if, as argued by Fleming, this contract was enforceable and the court ordered Coverstone to pay Fleming for the patent and for Fleming to provide the patent to Coverstone? *The court could not grant Coverstone complete relief because his wife is not a party to this proceeding.* The reason
///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  she is not a party, of course, is because she did not agree to the contract, and never consented to
2  give up her legal rights.
3       Fleming next argues that he agreed to have his wife sign. Setting aside the proposition
4  that a husband can form a binding agreement with respect to his wife's property, this argument
5  (as well as Fleming's papers entirely) ignores the fact the complaint *never alleges that Fleming*
6  *agreed to this*. Coverstone's e-mail does not say that they agreed, but that they discussed making
7  it a condition. Certainly Fleming does not admit that everything asserted in Coverstone's e-mails
8  is true.[1] Even an allegation would be sufficient, but *notably Fleming does not ever allege, in his*
9  *motion to amend or otherwise, that his wife agreed to sign the documents*.
10      He argues instead that it was his promise, and that if she had not signed it would have
11 been his breach. But regardless of whether that is couched as a necessary precondition or a
12 promise by Fleming, the fact is that Fleming's wife had to have agreed to release her share of the
13 patent before Coverstone can be liable for breach.[2] And her agreement is never alleged.

### 2. The FAC does not contain sufficient facts to demonstrate that Coverstone is a party *individually*

16      Fleming argues that he thought he was dealing with Coverstone as an individual (an
17 allegation not in the FAC) and that he had never heard of GMT Management Co. before the
18 "contract" was rendered enforceable. Setting aside the fact that the e-mails in question were sent
19 to Coverstone at "Guardian Media Tech," the facts *alleged in the complaint* speak for
20 themselves: Fleming, in his own words, took into account the fact that Coverstone was not
21 negotiating on behalf of himself, and *agreed* that the contract could be formed on behalf of an
22 entity designated by Coverstone. That is his agreement, in a document he says constituted the
23 ///

---

[1] For example, certainly Fleming would admit that if Coverstone had set forth another condition in an e-mail, stating that they had just "discussed" it, it does not become a binding part of the agreement on that basis alone.

[2] A fact that Fleming admits: "if Fleming did not *have his wife* execute the patent assignment documents, then Fleming would have broken his promise to Coverstone." [Opposition at 8:25-27 (emphasis added)] Even assuming that the proposition that this was Fleming's promise is right, which ignores his wife's autonomy entirely, Fleming has no right to recover for breach unless he performed; he does not allege that he performed by his wife signing or that she was ready, willing, and able to.

- 3 -

**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
3:08-cv-00355-WQH-NLS

"contract." Yet he never alleges that Coverstone decided to buy the patent as an individual (because, of course, he did not).

The issue here is not so much the entity versus individual, though that is important, but the fact that Fleming does not even know for whom the agreement he alleges to be a contract was reached. And that is because the "contract" is uncertain, at best. Using the same chapter of the Code cited by Fleming, it is axiomatic that "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." Civil Code section 1558. It would be a grave injustice if an officer was held personally liable for *an unsigned contract* merely because the parties had not yet agreed upon who the purchaser would be.

### 3. Fleming has no explanation for the omission of Vineyard Boise, who was to have rights *and obligations* under the contract

Fleming admits, as he must, that the "contract" he deems enforceable required Vineyard Boise to provide Coverstone 10% of the patent in exchange for $100,000. He cannot dispute that, as he himself alleged it in the FAC.

Fleming also does not, and cannot, allege that Vineyard Boise, who had rights *and obligations* under the contract, is not a party to it. He also does not dispute, or even address, the clear authority that someone who was to sign the agreement must be a party to the proceedings arising out of the breach. See *Rojas v. Loewen Group Int'l* (D.P.R. 1998) 178 F.R.D. 356, 361 ("generally, in breach of contract actions, all parties to the contract are necessary ones.").

His sole argument to keep this sinking ship afloat is that Vineyard Boise is a beneficiary of the contract, not a party to it. *But this argument completely ignores the contract*, which states "Vineyard Boise a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you." [FAC ¶ 10] Therefore, Vineyard Boise had an *obligation* under the contract, removing them from third party beneficiary and making them a party. Yet they are not named herein, meaning the contract is uncertain, or the case cannot proceed without them under Federal Rules of Civil Procedure 19(a)(1).[3]

---

[3] Of course, the reason that Fleming does not name them is because he learned that the scheme as he set it up would not derive a tax benefit, and he therefore tried to make them a third

- 4 -

**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
3:08-cv-00355-WQH-NLS

### 4. Fleming concedes through his attempted amendment that the facts alleged in the FAC bar this cause of action

Fleming concedes, in his own authority, that in order for the contract to be formed, the parties must agree on "*all* of the terms and conditions." [Opposition at 13:20-22 citing *Columbia Pictures Corp. v. De Toth*, 87 Cal.App.620, 628-29 (1948)]  Here, of course, they did not.  In fact, they explicitly stated that they would have to draft "necessary agreements" in the future in order to effect this transaction.  [FAC ¶ 10]

Plaintiff also concedes in silence that his e-mail of February 15, 2008 demonstrates his intent that this was not an enforceable contract yet, but an option agreement:

> As you are well aware, the deposit was consideration for me taking my patent portfolio off the market in general and more specifically, not negotiating with a patent broker that contacted me regarding purchasing my patent portfolio.

[FAC ¶ 17]  Plaintiff does not dispute this; in fact, his methodology for dealing with the unequivocal statement is to request leave to amend *so that he can remove it from the FAC*.  But the court will allow no such gamesmanship (*Edwards v. Wyeth, Inc.*, 2008 U.S. Dist. LEXIS 34386, *14-16 (D. Minn. 2008)), meaning his claim not only fails now, the proposed amendment also fails.

And as if that were not sufficient, Fleming has failed to negate the controlling nature of the *Beck* case, which is remarkably similar to the facts at bar.  In fact, Fleming's attempts to distinguish the *Beck* case only further demonstrate its applicability.  As Fleming highlights, in *Beck* a future written agreement was contemplated (as here).  As Fleming underlines, in *Beck* the parties agreed to try to have a completed contract and closing by a future date.  As in *Beck*, here the parties contemplated forwarding the "deal points" to counsel in order to put them into a binding agreement.  Fleming tries to distinguish *Beck* by acting as though they had not agreed upon deal points in that case, but omitting that part of the letter agreement does not make it go

---

party beneficiary where they would not have an obligation to assign the patent.  This did not work for Coverstone, and was part of the downward spiral of this transaction.  But they do not allege this, and the facts that they do allege demonstrate that Vineyard Boise is a necessary and indispensable party.

- 5 -
**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
3:08-cv-00355-WQH-NLS

away. In fact, the alleged deal points (not in the contingent, written as "you must" and we "will pay you") were far more specific than these. But the premise remains—writing down deal points, even those more detailed than those presented here, does not mean there is an enforceable contract if the parties agree that the enforceable contract will be contained in a subsequent, written document. Here, such an agreement was not only contemplated, it was deemed "necessary" to the transaction *by Fleming*. [FAC ¶ 10]

Fleming's assertion that these facts, even if true, cannot be resolved in a 12(b)(6) motion is categorically inaccurate. Where the facts *alleged in the complaint* demonstrate that relief cannot be granted, a 12(b)(6) dismissal is appropriate. And here, they are asserted—the alleged inclusion of Vineyard is in the FAC (in fact, it is even in the e-mail alleged to be a contract), the fact that the money was paid to hold open an option is asserted in the FAC, the e-mail stating that a written agreement is "necessary" to conclude the transaction is not only in the FAC, it is written by Fleming. For all of these reasons, the contract cause of action cannot stand.

### B. The defamation claim also fails as a matter of law

Fleming does not even make a serious attempt to argue that the FAC meets the standards of demonstrating a false publication, probably because it does not plead, ever, a publication to any person. Nor does it plead the defamatory statements made in that publication.[4] Fleming instead states that his proposed amendment resolves the problem, which it does not. But more importantly, this motion must rise and fall on what is pled in the FAC as it is currently written.

#### 1. The defamation cause of action in the FAC is barred by section 47

Notably, Fleming failed to argue that the defamation claim as set forth in the FAC could survive the section 47 privilege. That is likely because the only factual allegations it can be based upon are pre-litigation negotiations that are strictly privileged. *Rubin v. Green*, 4 Cal.4th 1187, 1193 (Cal. 1993) ("For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as *section 47(b)*.") As long as the communication has "some connection or logical relation to the

---

[4] Fleming's underlying premise, that you can file a lawsuit against someone for an act you are not even aware of (and in fact has not even occurred) is an incredible one, but review of that premise must wait for another day.

action" it is privileged. *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990). The privilege "should be denied only where [the communication] is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt its irrelevancy." *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal.App.4th 1082, 1089 (1999). The privilege also applies to communications made in a pre-litigation context. See *Rubin*, 4 Cal.4th at 1194 (1993).

There can be no question that Coverstone's statements included in the FAC are demands for the return of his deposit in exchange for a mutual release. [FAC ¶¶ 14, 16-21] And the e-mails cited in the FAC were made in conjunction with the proposed settlement of the case that is now before the court. The language used in that correspondence makes clear that litigation was contemplated by both sides. In such circumstances, as noted in the cases cited in the moving papers, the federal and state courts have uniformly applied the litigation privilege to bar the action.

By not addressing the arguments of this motion or the allegations in the FAC, and instead arguing that a *post*-FAC fax to the *Texas Lawyer* provides sufficient grounds to overcome the litigation privilege, Fleming has confirmed that nothing in the FAC supports a cognizable cause of action for defamation. Therefore, his FAC *as it is currently written*, must fail.

**2.    The proposed amendment to the defamation cause of action is also barred by section 47[5]**

Fleming's proposed amendment to the defamation claim, based solely on the fax of the Texas complaint to the *Texas Lawyer*, also fails. Fleming's entire argument is that Civil Code section 47 does not apply to the provision of a complaint to a reporter. However, the one case he cites in support of this proposition is *Shahvar*, which is no longer good law. It is absolutely true that *Shahvar* held, fourteen years ago, that faxing a complaint to a newspaper was not a privileged act under California Civil Code section 47. See *Shahvar v. Superior Court,* 25 Cal.App.4th 653 (1994).

---

[5]    In order to make both motions self-contained, and in an attempt to make the briefing easier for the court, Coverstone has repeated some authority and argument in both this motion and the anti-SLAPP reply brief where necessary. This inclusion makes both papers exceed the 10-page limit slightly, for which Coverstone respectfully requests the court make allowance.

- 7 -

**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
3:08-cv-00355-WQH-NLS

And had Fleming made this argument fourteen years ago, he might have succeeded;[6] however, the California legislature *expressly abrogated the holding* in *Shahvar* when it amended Civil Code section 47 in 1996:

> In amending section 47 of the Civil Code by this act, it is the intent of the legislature to abrogate the decision in *Shahvar v. Superior Court* (1994) 25 Cal.App.4th 653. . .

Cal. Stats 1996, ch. 1055, sec. 1. The legislature could not have been more clear—sending a complaint to newspaper is privileged. After the amendment, Civil Code section 47 now includes the following:

> A privileged publication or broadcast is one made:
>
> . . .
>
> (d)(1) <u>by</u> a fair and true report in, or a communication to, a public journal, of (A) a judicial . . . proceeding . . . or (D) anything said in the course thereof.

Cal. Civil Code section 47. Consequently, Civil Code section 47 applies to bar this cause of action.

And even if the "fair and true" reporting requirement could apply to "communications to" journals[7] (*See Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F.Supp. 782, 784 n. 3 (1999)), the privilege would apply here even if this court applied that standard. A "fair and true" report is one that accurately describes the court proceedings at issue. *Colt v. Freedom Communications, Inc.*, 109 Cal.App.4th 1551, 1558 (2003). In this case, the fax is alleged not just to have "accurately described" the complaint, it transmitted an actual copy of the complaint on to the *Texas Lawyer*. As a consequence, Fleming's defamation cause of action is barred by the privilege contained in Civil Code section 47.

---

[6] Even at the time it was decided, the *Shahvar* court was contrary to established authority. See *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796, 823 (1990) (holding exactly the opposite).

[7] The better view would *not* apply that rationale to the "communications to" journals, for two reasons. First, using simple statutory construction, it is clear that the "a" before "communications to" means that it is a stand-alone clause. In other words, one could not use the two together grammatically unless they were separate (compare "by a fair and true . . . a communication to" to "by . . . a communication to . . .") Second, it does not make sense to imply the fair and accurate portion to litigants, as opposed to investigative reporters. The parties with an interest in the proceeding can both report those facts beneficial to them, and the journal can then ensure that their report is "fair and accurate."

### 3. Fleming has not plead the requisite factual allegations for defamation in the FAC

Fleming never pleads factual allegations in the FAC supporting a conclusion (1) that the alleged defamation was ever published by Coverstone; or (2) that it was false. Both are requisite elements of a defamation cause of action. See *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). In not pleading these elements with factual allegations, Fleming has failed to state a cause of action.

## C. The extortion claim also fails as a matter of law

Fleming has also provided absolutely no basis for his extortion claim to continue, relying instead on a case that never reached the issues presented here.

### 1. The "civil extortion" cause of action is barred by section 47

Coverstone's e-mails clearly constitute pre-litigation negotiations to settle the contract dispute. To be protected, the e-mails must have "some connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 212 (1990). The privilege has been applied quite expansively and "should be denied only where [the communication] is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt its irrelevancy." *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal.App.4th 1082, 1089 (1999).

Fleming admits that he and Coverstone were involved in a contract dispute at the time the e-mails were sent and that those e-mails set forth numerous grounds to support Coverstone's position that the contract could not be enforced against him. One of those enforceability arguments related directly to the assignment to Fleming's church and the associated illegal tax scheme. Coverstone's e-mail reads: "Any contract—not that there was one—would be void and null anyway since one of the material elements of your proposal included the illegal tax scam with the church." [FAC ¶ 21]

Because the e-mails constitute pre-litigation demands that are directly related to the contract dispute, they are necessarily directly related to the subject matter of this lawsuit, and the third cause of action is barred by the litigation privilege of Civil Code section 47. See e.g. *Eye Laser Care Center, LLC v. MDTV Medical News Now, Inc.*, 2007 U.S. Dist. LEXIS 4844 at *12-14 (S.D. Cal. 2007); *Rohde v. Wolf,* 154 Cal.App.4th 28, 37 (2007); *Blanchard v. DIRECTV,*

- 9 -
**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO 12(B)**
3:08-cv-00355-WQH-NLS

1  *Inc.*, 123 Cal.App.4th 903, 918-919 (2004); *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270
2  (1997).
3        In fact, courts have recognized that prelitigation negotiations that allege criminal conduct
4  are protected by the litigation privilege (See *Knoell v. Petrovich*, 76 Cal.App.4th 164, 169 (1999)
5  (demand letter that included allegation of forgery was subject to section 47 privilege)), as are
6  communications that are themselves, or alleged to be, "fraudulent, perjurious, unethical, or even
7  illegal." *Kashian v. Harriman*, 98 Cal.App.4th 892, 920 (2002). The alternative would lead to
8  extraordinary results, wherein a person articulating prior illegal conduct that presents a defense
9  in a civil cause of action would automatically be susceptible to subsequent tort liability, the exact
10 opposite of the legislative intent of Civil Code section 47.
11       Fleming relies on *Flatley v. Mauro*, 39 Cal.4th 299 (2006) to support his contention that
12 the litigation privilege is inapplicable, but *Flatley* clearly explains that settlement demands are
13 privileged under section 47 *regardless of their content*. *Flatley*, 39 Cal.4th at 325. There should
14 be no question that Coverstone's e-mails are strictly privileged under section 47.
15       Because section 47 is a legal bar to this cause of action, it must be dismissed without
16 leave to amend.

      **2.    Fleming has not demonstrated that he has sufficiently plead "civil extortion"**

19       Not only is the "civil extortion" cause of action barred by the litigation privilege, it also
20 fails because Fleming has not stated a valid claim by failing to allege that he suffered harm and
21 that Coverstone knew his claims were false.

      **a.    <u>There are no allegations that he suffered harm</u>**

23       The analogous holding in *Furhman v. California Satellite Systems, Inc.*, 179 Cal.App.3d
24 408 (1986), is clear and on point—to state a cause of action *in tort* like the one asserted by
25 Fleming, one must demonstrate actual injury. And *Furhman* was most recently confirmed in
26 *Padgett v. City of Monte Sereno*, 2007 U.S. Dist. LEXIS 24309 (N.D. Cal. Mar. 20, 2007), so
27 there is no dispute that it is controlling law.
28 ///

In *Furhman*, the court explained that a cause of action for civil extortion is really a cause of action for moneys obtained through duress. *Furhman*, 179 Cal.App.3d at 426. Ms. Furhman's extortion cause of action alleged that California Satellite Systems ("CSS") "have, through outrageous conduct, demanded, among other things, sums of money under a threat of apparent civil and criminal prosecution amounting to extortion and blackmail." *Id*. at 425-426. Because this was really a cause of action for moneys obtained through duress, the court held that in order for Ms. Furhman to prevail, she had to show she suffered some damage by paying the money CSS demanded in its letters. *Id*. at 426.[8]

This case is identical to *Furhman* in all material aspects. Coverstone demanded that Fleming return the $10,000 deposit or he would file a lawsuit against Fleming. Fleming now claims that those demands equate to extortion and blackmail just as Ms. Furhman did. And just as in *Furhman*, Fleming does not allege that he ever suffered any harm by returning the $10,000 deposit to Coverstone. Without pleading this harm, Fleming cannot adequately state a cause of action.

The only argument offered by Fleming in response is that *Flatley* has established a private right of action based on the criminal extortion section of the Penal Code. That is categorically false, as is demonstrated by even a cursory reading of *Flatley*. *Flatley* never addressed the issue of whether "civil extortion" can be based on California Penal Code sections 518-527, nor did it address any standard for such a cause of action. Instead, *Flatley* interpreted sections of the Penal Code in its analysis of the anti-SLAPP statute to determine whether the anti-SLAPP statute applied to the defendant's conduct. See *Flatley*, 39 Cal.4th at 305. And because *Flatley* refused to apply the anti-SLAPP statute, the court *never even addressed the merits of the civil extortion claim*. Because it did not address the elements or merits of the claim, it has no applicability to the issue presented in this motion. *Nolan v. City of Anaheim*, 33 Cal.4th

///

---

[8] The rationale for this decision is obvious. While in a criminal proceeding it makes sense to punish people for wrongdoing, even if only attempted, the tort system is set up to *compensate persons for harm incurred* by way of money. If no harm was incurred, there is nothing the tort system can do.

335, 343 (2004) ("A decision, of course, does not stand for a proposition not considered by the court.").

### b. There are no allegations that Coverstone knew his claims were false

*Furhman* also held that the plaintiff must show that the defendant knew his claims were false at the time they were asserted in order to be actionable. *Furhman*, 179 Cal.App.3d at 426. This is consistent with *United Professional Planning, Inc. v. Superior Court*, which held that "[t]here is no impropriety in a party to a transaction threatening to enforce his legal rights and remedies and in pointing out to the other party the consequences thereof, so long as he believes in good faith that he is entitled to the rights and remedies asserted." *United Professional Planning, Inc. v. Superior Court*, 9 Cal.App.3d 377, 395 (1970). Fleming does not allege that Coverstone knew his claims were false when he asserted them in his e-mails and, therefore, Fleming has failed to state a cause of action.

Plaintiff's only contrary argument is, again, *Flatley*. And again, *Flatley* does not provide any guidance as to the elements of a prima facie case for "civil extortion" because it never reached that issue and, therefore, has no bearing on what Fleming does and does not have to plead to state a valid cause of action.

## IV. CONCLUSION

Fleming's FAC fails as a matter of law, a point that is effectively conceded through the pending motion to amend to add and remove allegations from all three causes of action. But, as set forth above, the amendment is not able to overcome the *legal* bar to this cause of action and, as a consequence, leave to amend would be a futile exercise. Consequently, Coverstone respectfully requests that his motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b) be granted without leave to amend.

KLINEDINST PC

DATED: July 14, 2008         By: /s/ Gregor A. Hensrude
                                 GREGOR A. HENSRUDE
                                 Attorneys for Defendant
                                 TOM COVERSTONE