1   John D. Klinedinst, Bar No. 86254
    Gregor A. Hensrude, Bar No. 226660
2   Daniel S. Agle, Bar No. 251090
    KLINEDINST PC
3   501 West Broadway, Suite 600
    San Diego, California 92101
4   (619) 239-8131/FAX (619) 238-8707
    jklinedinst@klinedinstlaw.com
5   ghensrude@klinedinstlaw.com
    dagle@klinedinstlaw.com
6
    Attorneys for Defendant
7   TOM COVERSTONE

8                   UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10  HOYT A. FLEMING,                    Case No.    3:08-cv-00355 WQH-NLS

11              Plaintiff,              REPLY TO PLAINTIFF'S OPPOSITION
                                        TO DEFENDANT'S SPECIAL MOTION
12      v.                              TO STRIKE

13  TOM COVERSTONE,                     Date            July 21, 2008
                                        Time:           11:00 a.m.
14              Defendant.              Courtroom:      4
                                        Judge:          William Q. Hayes
15                                      Magistrate Judge: Nita L. Stormes
                                        Complaint Filed: February 22, 2008
16                                      Trial Date:     None set

17

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   SECTION 425.16 APPLIES TO FLEMING'S SECOND AND THIRD
      CAUSES OF ACTION ......................................................................................... 2

      A.    The Defamation Cause of Action is Subject to Section 425.16 ................. 2

            1.    The defamation claim set forth in the FAC is subject to anti-
                  SLAPP .............................................................................................. 2

            2.    Even the new allegations are subject to anti-SLAPP ....................... 3

      B.    The "Civil Extortion" Cause of Action is Subject to Section 425.16 ........ 4

III.  FLEMING HAS NOT ESTABLISHED A PROBABILITY OF
      PREVAILING ON EITHER CAUSE OF ACTION .............................................. 7

      A.    Fleming Has Not Demonstrated a Probability of Prevailing for
            Defamation .................................................................................................. 7

            1.    The defamation cause of action is barred by section 47 .................. 7

            2.    Fleming also has not presented sufficient evidence to make a
                  prima facie showing for defamation ................................................. 9

                  a.    Fleming does not show that Coverstone's attorney sent
                        the fax ..................................................................................... 9

                  b.    Fleming cannot show that the statements in the
                        complaint were false ............................................................ 10

      B.    Fleming Has Not Demonstrated any Probability of Prevailing under
            "Civil Extortion" ....................................................................................... 11

            1.    The "civil extortion" cause of action is barred by section 47 ......... 11

            2.    Fleming has not presented sufficient evidence to make a
                  prima facie showing for "civil extortion" ...................................... 12

                  a.    There is no evidence that Fleming suffered harm ............... 12

                  b.    There is no evidence that Coverstone knew his claims
                        were false ............................................................................. 13

IV.   CONCLUSION ................................................................................................... 14

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE
3:08-cv-00355-WQH-NLS

1

**I.    INTRODUCTION**

2        Fleming's opposition has presented no argument or admissible evidence sufficient to

3    overcome Coverstone's anti-SLAPP motion.  In his attempt to do so, Fleming bases his

4    arguments on one judicial opinion that has been completely abrogated and another judicial

5    opinion that is completely inapplicable to the facts of this case.

6        The anti-SLAPP statute necessarily applies to the second and third causes of action

7    because they both directly relate to, and are therefore in connection with, a judicial action.  There

8    is ample and controlling precedent applying the statute to allegations just like the ones at bar.

9        And because it applies, Fleming has the burden of demonstrating that he has a likelihood

10    of prevailing on both causes of action, which he does not, and cannot, do.  The litigation

11    privilege prevents Fleming from ever prevailing on either cause of action *as a matter of law*.

12    The authority for this proposition is even more voluminous than the related question of whether

13    the anti-SLAPP provisions apply.  In response, Fleming provides nothing more than a case

14    abrogated by Code a dozen years ago.  This is an independent reason the motion should be

15    granted.

16        Last but not least, this motion should also be granted because Fleming fails to set forth

17    evidence stating a prima facie showing the elements of the causes of action.  The claimed

18    defamatory statements were in fact true, and there is no admissible evidence that they were

19    published by Coverstone anyway.  Similarly, Fleming has not made the requisite prima facie

20    showing of two critical elements of his "civil extortion" cause of action because (1) Fleming

21    never paid any money as a result of the demand that Fleming return Coverstone's deposit and (2)

22    he failed to show that Coverstone knew his claims against Fleming were false.

23        Section 425.16 applies to both causes of action and because Fleming has not, and cannot,

24    demonstrate a probability of prevailing for a multitude of reasons, the court should grant this

25    motion in its entirety, and award attorneys' fees to Coverstone in an amount to be determined on

26    subsequent motion.

27    ///

28    ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
**3:08-cv-00355 WQH-NLS**

II.    **SECTION 425.16 APPLIES TO FLEMING'S SECOND AND THIRD CAUSES OF ACTION**

The anti-SLAPP statute unquestionably applies to both the second and third causes of action.  With reference to the defamation cause of action, California courts have repeatedly explained that the anti-SLAPP statue applies under the circumstances presented here because all of the alleged statements were directly related to an anticipated judicial proceeding.  And the only support presented by Fleming to contradict the overwhelming authority has been expressly abrogated by the California legislature.

With reference to the "civil extortion" cause of action, all of the e-mails sent by Coverstone constitute pre-litigation negotiations, and case law is clear that such communications are subject to the anti-SLAPP statute.  Fleming's attempt to demonstrate otherwise fails because it is based on a judicial opinion that is inapposite.

A.    **The Defamation Cause of Action is Subject to Section 425.16**

Both the allegations of the FAC and Fleming's newer theory of defamation are barred by Code of Civil Procedure section 425.16.

1.    **The defamation claim set forth in the FAC is subject to anti-SLAPP**

The allegations set forth in Fleming's FAC are subject to anti-SLAPP because all are based on statements that were made in anticipation of litigation and directly related to substantive issues of that dispute.  Code of Civil Procedure section 425.16(e)(2) (SLAPP applies to issues "under consideration or review by a . . . judicial body."); See *Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1262 (2008) (statements made in connection with <u>anticipated</u> litigation are considered to be "under consideration or review by a . . . judicial body" and are subject to a special motion to strike).

In fact, Fleming does not seriously argue that anti-SLAPP does not apply to the allegations *currently in the FAC*.  And he cannot—all of Coverstone's references to Fleming's conduct set forth in the e-mails are directly related to the enforceability of the agreement that is the subject of this litigation.  [See Coverstone's Exs. G and H; Fleming's Ex. F]  Therefore, the defamation cause of action in the FAC is subject to the anti-SLAPP statute because the

- 2 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  statements are related to issues that were anticipated to be, and in fact now are, the subject of

2  litigation.

3  **2.    Even the new allegations are subject to anti-SLAPP**

4  And even the new allegation of defamation proposed in the Second Amended Complaint

5  (SAC), the publication of a Texas civil complaint to the newspaper *Texas Lawyer*, is still

6  unequivocally subject to anti-SLAPP scrutiny.  The court has repeatedly held that where parties

7  and their lawyers are alleged to have made defamatory statements in the press regarding the

8  lawsuit and the allegations contained therein, such conduct is subject to the anti-SLAPP statute.

9  *Shekhter v. Financial Indemnity Co.*, 89 Cal.App.4th 141, 151-52 (2001) (finding allegations that

10 "relate to the filing and prosecution of those actions *as well as statements made to the press* and

11 government agencies in relation to those lawsuits" are subject to anti-SLAPP); *Monterey Plaza*

12 *Hotel v. Hotel Employees & Restaurant Employees Local 483*, 69 Cal.App.4th 1057 (1999)

13 (providing copy of complaint and discussing allegations with news media are protected by anti-

14 SLAPP).

15 Even in the absence of clear statutory language, this would be the required result.  There

16 can be no doubt that filing a complaint is petitioning activity.  And no doubt that reporting about

17 that complaint is free speech.  Fleming concedes both points.  So it makes no sense to argue that

18 the publicly-filed complaint cannot be *provided to* the newspaper for publication.  In the Civil

19 Code section 47 analysis the court aptly described why:

20 
> Since the pleadings in the federal court and publication in the press
> of a fair and true report of the pleadings are absolutely privileged,
21 > it would defeat the purpose of section 47, subdivisions 2 and 4 to
> punish the transmittal of the privileged pleadings to the press.
22

23 *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796, 823 (1990).[1]

24 Setting aside the applicability of 425.16(e)(2), the fax sent to *Texas Lawyer* would also be

25 subject to section 425.16(b)(1) as the exercise of "free speech . . . in connection with a public

26 issue" because it was directly related to the Texas lawsuit.  The California Supreme Court has

27

28 ───────────────
[1] And as cited by Plaintiff in *Flatley v. Mauro*, while section 47 and section 425.16 are far from co-existent, the analysis with respect to one can inform another.

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
**3:08-cv-00355-WQH-NLS**

1  explained that official proceedings as described in section 425.16, such as Coverstone's Texas

2  lawsuit, constitute "public issues." *Briggs v. Eden Council for Hope & Opportunity* (1999) 19

3  Cal.4th 1106, 1122.

4      And Plaintiff provides absolutely no authority suggesting otherwise.  He lodges not a

5  single case holding that anti-SLAPP does not apply to defamation actions like this one, or

6  disclosure to newspapers, or any even roughly analogous circumstance.  The best he can do is a

7  citation to a case that *never even mentions the anti-SLAPP standard*, *Shahvar v. Superior Court*,

8  25 Cal.App.4th 653 (1994), which has been *explicitly abrogated* by the legislature.  Coverstone's

9  authority is on point, controlling, and unrefuted—section 425.16 applies to this complaint and

10  the proposed amendment.

11      **B.    The "Civil Extortion" Cause of Action is Subject to Section 425.16**

12      Fleming concedes in silence that pre-litigation negotiations, including those that set forth

13  threats, are covered by section 425.16.  Of course, he cannot argue otherwise in light of the clear

14  precedent so holding.  See *Rohde v. Wolf*, 154 Cal.App.4th 28, 37 (2007); *Blanchard v.*

15  *DIRECTV, Inc.*, 123 Cal.App.4th 903, 918-919 (2004).

16      A review of the e-mails cited in the complaint illustrates that Coverstone's e-mails were,

17  in their entirety, pre-litigation negotiations.  [See Coverstone's Exs. G and H]  Therefore,

18  pursuant to established and unequivocal authority, the anti-SLAPP provisions apply to this cause

19  of action.

20      Fleming's one purported exception, that Coverstone would bring to light Fleming's

21  attempted illegal tax scam, was not only related to Coverstone's analysis of why the transaction

22  failed[2] and his deposit must me returned, *it was in response to a direct request by Fleming* for "a

23  legal analysis that indicates [why he] should refund the deposit."  [Coverstone's Ex. H: 2/15/08

24  e-mail (10:31 a.m.)]  To now assert that it had nothing to do with the proposed litigation, or the

---

25      [2]  If the sentence is read in its entirety, it clearly states, "Any contract—not that there was
26  one—would be void and null anyway *since one of the material elements of your proposal
   included the illegal tax scam with the church*."  [Fleming's Ex. F: 2/15/08 e-mail (10:44
27  p.m.)(emphasis added)]  It is axiomatic that an illegal provision of a contract is unenforceable.
   See e.g. *Berka v. Woodward*, 125 Cal. 119 (1899).  If the illegal provision at issue here were not
28  enforced, and it accounts for the value of the patent (owning 99% of a patent is insufficient as the
   remaining owner could license the entirety), the purpose of the contract is defeated.

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
3:08-cv-00355-WQH-NLS

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    parties' defenses, is, quite simply, ludicrous.  In light of the fact that it is a pre-litigation

2    settlement communication, anti-SLAPP applies.

3          The sole legal basis for Fleming's position is *Flatley v. Mauro*, 39 Cal.4th 299 (2006).

4    *Flatley* presents one of the only exceptions to the application of section 425.16—conduct that is

5    unquestionably illegal.  *Id.* at 320.[3]  However, plaintiffs carry a heavy burden when trying to

6    invoke the exception set forth in *Flatley*.  In fact, the *Flatley* court cautioned:

7                    [O]ur opinion should not be read to imply that rude, aggressive, or
                     even belligerent prelitigation negotiations, whether verbal or
8                    written, that may include threats to file a lawsuit, report criminal
                     behavior to authorities or publicize allegations of wrongdoing,
9                    necessarily constitute extortion.

10   *Id.* at 332 fn. 16 (emphasis added).  The court explicitly explained that its decision in *Flatley* was

11   based on the "special and extreme circumstances" of the case.  *Id.* at 332 fn. 16.  In fact, recent

12   authority has refused to apply *Flatley*'s narrow exception.  *Birkner v. Lam*, 156 Cal. App. 4th

13   275, 285 (2007).

14         *Flatley* does not apply here for three reasons.  First, none of those special and extreme

15   circumstances are present in this case.  In *Flatley*, the defendant demanded that Mr. Flatley pay

16   him in excess of $1,000,000—an amount that was unrelated to the harm he was alleging.  In this

17   case, Coverstone did no such thing.  He merely demanded the *return* of his $10,000 deposit

18   because he believed the alleged agreement was unenforceable based on Fleming's

19   misrepresentations, and their ongoing negotiations to finalize its terms.  [See Coverstone's Exs.

20   G and H]

21         Second, the defendant in *Flatley* imputed to Mr. Flatley "unspecified violations of

22   various criminal offenses involving immigration and tax law as well as violations of the Social

23   Security Act." *Id.* at 330.  The court emphasized that the defendant's conduct was

24   unquestionably illegal because most of the threats were "entirely unrelated" to any alleged injury

25   suffered by the victim of the rape.  *Id.*  In this case, all of Coverstone's statements were *directly

26   related to the damages he was planning to recover in the anticipated litigation*.  Namely, he

27 _____

28        [3]  The court explained that section 425.16 will not apply where (1) the defendant
     concedes that his conduct was illegal, or (2) the evidence conclusively establishes that the
     defendant's conduct is illegal as a matter of law.  *Id.* at 320.

- 5-

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**

1    wanted the $10,000 deposit returned.

2         Third, Fleming concedes that statements related to the enforceability of the contract are

3    subject to the protection of section 425.16.  [Opposition at 14:19-20]  He argues that

4    Coverstone's reference to the tax scheme arising out of the Vineyard Boise inclusion in the deal

5    was unlawful.  But Coverstone referenced the tax scheme to show that there was no binding

6    contract because he and Fleming were in negotiations over material terms.  [Coverstone's Ex. H:

7    2/15/08 e-mail (7:30 p.m.); Fleming's Ex. F: 2/15/08 e-mail (10:44 p.m.)][4]  He also referenced

8    the tax scheme to argue that even if they had entered into a binding agreement, it would be

9    unenforceable because the tax scheme and the related assignment to the church were illegal.

10   [Fleming's Ex. F: 2/15/08 e-mail (10:44 p.m.)]  A review of the e-mails illustrates that they are

11   directly related to the enforceability of the alleged contract.  In fact, in Fleming's declaration *he*

12   *even admits that removing the tax scheme was one of the points the parties negotiated*.  [Decl. of

13   Fleming ¶ 34]  Therefore, the *Flatley* exception is not invoked, and the general rule that such

14   communications are subject to anti-SLAPP applies.

15        Because of the material factual differences between *Flatley* and this case, the narrow

16   exception of *Flatley* cannot apply.  It is worthy of note that if the court accepted the strained

17   interpretation Fleming seeks to put on *Flatley*, literally every litigation settlement demand would

18   be removed from anti-SLAPP protection.  For example, what if, during a settlement negotiation

19   involving ongoing litigation, a plaintiff detailed, as one of his grounds for demanding a certain

20   settlement amount, the evidence he was going to present at trial?  And suppose that evidence

21   would be very negative for the defendant, personally and professionally.  Has that person just

22   committed criminal extortion because he demanded money, and pointed out that he would

23   introduce very bad evidence of the defendant at trial if a settlement was not reached?  Of course

24   not.  That is, to be blunt, an untenable interpretation that finds no support in existing law.  And

25   because it is literally the *only* rationale forwarded by Fleming—in contravention of every known

26   case interpreting Code of Civil Procedure section 425.16—there can be no real dispute that the

27

28        [4]  The court will note that these are not after-constructed theories, but exactly what
     Coverstone was arguing in contemporaneous e-mails.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
**3:08-cv-00355-WQH-NLS**

1   statute applies here as to the "extortion" claims as well.  But even if it was in dispute, *Flatley*

2   teaches that the dispute must be resolved in favor of Coverstone.  *Flatley*, 39 Cal.4th at 315 (if

3   there is any dispute as to whether the conduct in question is unquestionably illegal, the exception

4   cannot apply and section 425.16 applies).

5   **III.     FLEMING HAS NOT ESTABLISHED A PROBABILITY OF PREVAILING ON**

6   **EITHER CAUSE OF ACTION**

7          Because the anti-SLAPP provisions apply to this complaint, Fleming must demonstrate a

8   probability of prevailing, a burden that he falls far short of meeting.  *See Taus v. Loftus*, 40

9   Cal.4th 683, 703 (2007).  Fleming's assertion that he can meet this burden by simply refuting

10  Coverstone's defenses is misplaced, not only because he cannot refute the defenses, but because

11  he must also "demonstrate that the complaint is both legally sufficient and supported by a

12  sufficient prima facie showing of facts to sustain a favorable judgment" in order to carry his

13  burden.  *Wilson v. Parker, Covert & Chidester*, 28 Cal.4th 811, 821 (2002).  He cannot do so,

14  nor has he done so.  Therefore, the second and third causes of action should be stricken.

15         **A.     Fleming Has Not Demonstrated a Probability of Prevailing for Defamation**

16         Fleming has not, and cannot, show a probability of prevailing under his defamation cause

17  of action because (1) it is unquestionably barred by the litigation privilege and (2) he has not

18  presented any evidence to make a prima facie showing that he can establish the elements of the

19  tort.

20                  **1.     The defamation cause of action is barred by section 47**

21         By not addressing the arguments of this motion or the allegations in the FAC, and instead

22  arguing that a post-FAC fax to the *Texas Lawyer* provides sufficient grounds to overcome the

23  litigation privilege, Fleming has confirmed that nothing in the FAC supports a cognizable cause

24  of action for defamation.  Therefore, his complaint *as it is currently written*, must fail.

25         His proposed amendment to the defamation claim, based solely on the fax to the *Texas*

26  *Lawyer*, also fails.  Fleming's entire argument is that Civil Code section 47 does not apply to the

27  provision of a complaint to a reporter.  However, the one case he cites in support of this

28  proposition is *Shahvar*, which is no longer good law.  It is absolutely true that *Shahvar* held,

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 7 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  fourteen years ago, that faxing a complaint to a newspaper was not a privileged act under

2  California Civil Code section 47.  See *Shahvar v. Superior Court* 25 Cal.App.4th 653 (1994).

3  And had Fleming made this argument fourteen years ago, he might have succeeded;[5]

4  however, the California legislature *expressly abrogated the holding* in *Shahvar* when it amended

5  Civil Code section 47 in 1996:

6  In amending section 47 of the Civil Code by this act, it is the intent
   of the legislature to abrogate the decision in *Shahvar v. Superior*

7  *Court* (1994) 25 Cal.App.4th 653. . .

8  Cal. Stats 1996, ch. 1055, sec. 1.  The legislature could not have been more clear—sending a

9  complaint to newspaper is privileged.  After the amendment, Civil Code section 47 now includes

10 the following:

11 A privileged publication or broadcast is one made:

12 . . .

13 (d)(1) <u>by</u> a fair and true report in, or a communication to, a public
   journal, of (A) a judicial . . . proceeding . . . or (D) anything said in

14 the course thereof.

15 Cal. Civil Code section 47.  Consequently, Civil Code section 47 applies to bar this cause of

16 action.

17 And even if the "fair and true" reporting requirement could apply to "communications to"

18 journals [6] (*See Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F.Supp. 782, 784 n. 3 (1999)),

19 the privilege would apply here even if this court applied that standard.  A "fair and true" report is

20 one that accurately describes the court proceedings at issue.  *Colt v. Freedom Communications,*

21 *Inc.*, 109 Cal.App.4th 1551, 1558 (2003).  In this case, the fax is alleged not just to have

22 "accurately described" the complaint, it transmitted an actual copy of the complaint on to the

23
24 [5] Even at the time it was decided, the *Shahvar* court was contrary to established authority. See *Abraham v. Lancaster Community Hospital*, 217 Cal.App.3d 796, 823 (1990) (holding exactly the opposite).
25 [6] The better view would *not* apply that rationale to the "communications to" journals, for two reasons.  First, using simple statutory construction, it is clear that the "a" before
26 "communications to" means that it is a stand-alone clause.  In other words, one could not use the two together grammatically unless they were separate (compare "by a fair and true . . . a communication to" to "by . . . a communication to . . .")  Second, it does not make sense to imply
27 the fair and accurate portion to litigants, as opposed to investigative reporters.  The parties with an interest in the proceeding can both report those facts beneficial to them, and the journal can
28 then ensure that their report is "fair and accurate."

- 8 -

1   *Texas Lawyer.*  As a consequence, Fleming's defamation cause of action is barred by the

2   privilege contained in Civil Code section 47.

3           **2.**      **Fleming also has not presented sufficient evidence to make a prima**

4                       **facie showing for defamation**

5         Fleming fails to meet his burden of setting forth evidence demonstrating a prima facie

6   cause of action for defamation because he does not show: (1) that the alleged defamation was

7   ever published by Coverstone; and (2) that it was false.  Both are requisite elements of a

8   defamation cause of action.  See *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007).

9           **a.**      Fleming does not show that Coverstone's attorney sent the fax

10         For Fleming to defeat this anti-SLAPP motion, he must present competent, admissible

11   evidence to make a prima facie showing of his causes of action.  See *Roberts v. Los Angeles Cty*

12   *Bar Ass'n*, 105 Cal.App.4th 604, 613-14 (2003).  Despite this requirement, Fleming presents no

13   admissible evidence to show that the fax was sent to the *Texas Lawyer* by Coverstone's attorney.

14         Even if his evidence were admissible, it does not matter because the evidence offered is

15   unclear and, therefore, irrelevant:

16       •     Coverstone's attorney is not an LLC—it is a PC (as Fleming admits in his
opposition).  Therefore, the purported reference to "LAW LLC" on the fax header demonstrates

17   that the purported facsimile was *not* sent from Mr. Smoot's fax.

18       •     There is no way to know whether the last five characters are -0706 or -0708.  The
fax header is distorted and does not show enough of the characters to illustrate that they are

19   limited to these two sets of characters.  From what is visible, the second, fourth, and fifth
characters could be 3, 5, 6, 8, 9, or 0.

20

21       •     The fax header shows enough of the characters to show that if Fleming's
contention regarding the last five characters is true, then the preceding characters could not be
854.  There is no visual interpretation that could conclude that the character immediately

22   preceding the purported -0706 is a 4.  Thus, even if the last five characters were -0708, there is
no way this fax could have been sent from Mr. Smoot's fax because his fax line is (713) 85*4*-

23   0706 and his telephone line is (713) 85*4*-0708.

24       •     The fax header does not show if this number sent or received the fax.

25         Because Fleming cannot establish publication, his defamation claim fails.

26   ///

27   ///

28   ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

- 9-

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1           **b.**     <u>Fleming cannot show that the statements in the complaint were</u>

2           <u>false</u>

3        Fleming presents no argument in his opposition to establish that the statements contained

4 in the Texas complaint were false. Coverstone is alleged to have accused Fleming of

5 misrepresentation and unethical conduct. *Every word of it is true*, and Fleming provides no

6 explanation for why it is false:[7]

7       •      Coverstone suggested (and still maintains) that Fleming engaged in unethical

8 conduct by: (1) entering into a business transaction with a client without full disclosure, which is not disputed by Fleming anywhere in his papers; and (2) practicing law in Idaho, though he is not licensed to practice there (the court will note that Fleming

9 alleges in his declaration that he is barred in California, but never mentions Idaho, from where he was allegedly representing Coverstone's entity);[8]

10
11       •      Misrepresenting the effect of the Fleming patent on Escort and Uniden, two of the largest radar detector manufacturers in the world. He admitted that he misrepresented with

12 respect to Uniden, as evidenced in Exhibits C and D. Fleming's revisionist history aside, he even admits that he made a misrepresentation,[9] though he characterizes said misrepresentation as "inadvertent."[10] Inadvertent or not, a misrepresentation about the patent history impacts its

13 value. If one misrepresents the value of the patent, he or she cannot expect that price to be paid.

14       •      Fleming also continues the inflationary comments that occasioned this whole dispute. He now contends that the Escort patent had to overcome his, and he alleges that it was

15 rejected on account of his patent. But it was not. Attached as Exhibit K is the notice of office action *allowing the patent over Fleming's claims*. The "rejection" he lodges occurred because

16 Escort decided not to begin an interference proceeding *after their patent had already been allowed citing Fleming's*. Why did they not do so? Because by then they had the GPS-enabled

17 radar detector they needed in patent 6,670,905. [See Exhibit L: Escort Patent] With the allowability determination, and an issued patent, they had everything they needed. It was this

18 information that Coverstone uncovered during the due diligence period that made it obvious that Fleming had oversold the patent.

19

20      [7] Instead, he simply asserts that the prima facie elements of defamation are "discussed above," but they are not.

21      [8]. And it is crystal clear that practicing law *in* Idaho, and holding oneself out as practicing law in Idaho, is unethical under all applicable codes. *See, e.g.,* Idaho Code § 3-104. And

22 Fleming did so—he entered into a retention agreement with Coverstone, to perform services *in* Idaho, from a law office *in* Idaho. At the time he signed the agreement, Coverstone believed

23 Fleming was licensed to practice where he was practicing. But, as Fleming now admits, he was not (and is not).

24      [9] His admission is another attempt to obfuscate the truth. He did not represent that it was "cited by a patent examiner" as he now contends (Decl. of Fleming ¶ 31). His own e-mails

25 demonstrate his story is patently (pardon the pun) false; the e-mails clearly indicate his statement, in his words, that "Uniden had to revise their claims to overcome my patent"

26 [Coverstone's Ex. D: 2/7/08 e-mail] That is a significant difference when it comes to later enforcement litigation.

27      [10] And his after-constructed explanation (found nowhere in any of the e-mails lodged by either party) is that an attorney cited it, not the examiner. The difference between an examiner

28 citing a patent to block another patent and an attorney putting it in papers is the difference between a valuable patent and a worthless one.

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
3:08-cv-00355-WQH-NLS

1    As a consequence, and particularly in light of the fact that *Fleming admits he made a*

2    *misrepresentation about the Uniden patent*, it is clear that Coverstone's allegations in the Texas

3    complaint about Fleming misrepresenting the patent *are true. Fleming even admits it*. There is

4    no dispute that if Coverstone's representations were true, no defamation claim can lie.

5    Therefore, for a separate and independent reason, Fleming has zero *possibility* of prevailing,

6    much less a probability of prevailing, on the defamation cause of action.

**B.    Fleming Has Not Demonstrated any Probability of Prevailing under "Civil**

**Extortion"**

9    Fleming has not, and cannot, show a probability of prevailing under his extortion cause of

10   action because it is unquestionably barred by the litigation privilege and he has not presented any

11   evidence to make a prima facie showing that Fleming suffered harm, or that Coverstone knew his

12   claims were false.

**1.    The "civil extortion" cause of action is barred by section 47**

14   As set forth above and in the moving papers, Coverstone's e-mails clearly constitute pre-

15   litigation negotiations to settle the contract dispute.  To be protected, the e-mails must have

16   "some connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal.3d 205, 212

17   (1990).  The privilege has been applied quite expansively and "should be denied only where [the

18   communication] is so palpably irrelevant to the subject matter of the action that no reasonable

19   person can doubt its irrelevancy." *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75

20   Cal.App.4th 1082, 1089 (1999).

21   Fleming admits that he and Coverstone were involved in a contract dispute at the time the

22   e-mails were sent and the e-mails set forth numerous grounds to support Coverstone's position

23   that the contract could not be enforced against him.  One of those enforceability arguments

24   related directly to the assignment to Fleming's church and the associated illegal tax scheme.

25   Coverstone's e-mail reads: "Any contract—not that there was one—would be void and null

26   anyway since one of the material elements of your proposal included the illegal tax scam with

27   the church."  [Fleming's Ex. F: 2/15/08 e-mail (10:44 p.m.)]

28   As noted in the moving papers, and undisputed by Fleming, because the e-mails

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

- 11-

constitute pre-litigation demands that are directly related to the contract dispute, they are necessarily directly related to the subject matter of this lawsuit and the third cause of action is barred by the litigation privilege of Civil Code section 47. And courts have recognized that pre-litigation negotiations that allege criminal conduct are protected by the litigation privilege (See *Knoell v. Petrovich*, 76 Cal.App.4th 164, 169 (1999) (demand letter that included allegation of forgery was subject to section 47 privilege)), as are communications that are themselves, or alleged to be, "fraudulent, perjurious, unethical, or even illegal." *Kashian v. Harriman*, 98 Cal.App.4th 892, 920 (2002). The alternative would lead to extraordinary results, wherein a person articulating prior illegal conduct that presents a defense in a civil cause of action would automatically be susceptible to subsequent tort liability, the exact opposite of the legislative intent of Civil Code section 47.

Fleming relies solely on *Flatley* to support his contention that the litigation privilege is inapplicable, but while *Flatley* concedes that an unlawful communication might not be subject to anti-SLAPP scrutiny, the court clearly explains that settlement demands are privileged under section 47 *regardless of their content*. *Flatley*, 39 Cal.4th at 325. There should be no question that Coverstone's e-mails are strictly privileged under section 47.

**2.    Fleming has not presented sufficient evidence to make a prima facie showing for "civil extortion"**

Fleming cannot prevail on the "extortion" cause of action because he failed to present admissible evidence that he suffered harm and that Coverstone knew his claims were false.

**a.    There is no evidence that Fleming suffered harm**

The analogous holding in *Furhman v. California Satellite Systems, Inc.*, 179 Cal.App.3d 408 (1986), is clear and on point—to state a cause of action *in tort* like the one asserted by Fleming, one must demonstrate actual injury. And *Furhman* was most recently confirmed in *Padgett v. City of Monte Sereno*, 2007 U.S. Dist. LEXIS 24309 (N.D. Cal. Mar. 20, 2007), so there is no dispute that it is controlling law.

In *Furhman*, the court explained that a cause of action for civil extortion is really a cause of action for moneys obtained through duress. *Furhman*, 179 Cal.App.3d at 426. Ms.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

- 12-

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  Furhman's extortion cause of action alleged that California Satellite Systems ("CSS") "have,

2  through outrageous conduct, demanded, among other things, sums of money under a threat of

3  apparent civil and criminal prosecution amounting to extortion and blackmail." *Id.* at 425-426.

4  Because this was really a cause of action for moneys obtained through duress, the court held that

5  in order for Ms. Furhman to prevail, she had to show she suffered some damage by paying the

6  money CSS demanded in its letters. *Id.* at 426.[11]

7          This case is identical to *Furhman* in all material aspects. Coverstone demanded that

8  Fleming return the $10,000 deposit or he would file a lawsuit against Fleming. Fleming now

9  claims that those demands equate to extortion and blackmail just as Ms. Furhman did. And just

10 as in *Furhman*, Fleming never suffered any harm because he never returned the $10,000 deposit

11 to Coverstone. [Decl. of Fleming ¶ 11] Without showing this harm, Fleming cannot establish a

12 probability of prevailing.

13         The only argument offered by Fleming in response is that *Flatley* has established a

14 private right of action based on the criminal extortion section of the Penal Code. That is

15 categorically false, as is demonstrated by even a cursory reading of *Flatley*. *Flatley* never

16 addressed the issue of whether "civil extortion" can be based on the California Penal Code

17 sections 518-527, nor did it address any standard for such a cause of action. Instead, *Flatley*

18 interpreted sections of the Penal Code in its analysis of the anti-SLAPP statute to determine

19 whether it applied to the defendant's conduct. See *Flatley*, 39 Cal.4th at 305. And, as pointed

20 out by Fleming, *Flatley* refused to apply the anti-SLAPP statute, meaning the court *never got to*

21 *a determination of whether Flatley had a probability of prevailing on the merits of his claim*. It

22 has no applicability here. *Nolan v. City of Anaheim*, 33 Cal.4th 335, 343 (2004) ("A decision, of

23 course, does not stand for a proposition not considered by the court.").

24         **b.**     There is no evidence that Coverstone knew his claims were false

25 *Furhman* also held that the plaintiff must show that the defendant knew his claims were

26

27 ───────────
        [11]  The rationale for this decision is obvious. While in a criminal proceeding it makes
28 sense to punish people for wrongdoing, even if only attempted, the tort system is set up to
   *compensate persons for harm incurred* by way of money. If no harm was incurred, there is
   nothing the tort system can do.

- 13-

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
3:08-cv-00355 WQH-NLS

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1    false at the time they were asserted in order to be actionable. *Furhman*, 179 Cal.App.3d at 426.

2    This is consistent with *United Professional Planning, Inc. v. Superior Court*, which held that

3    "[t]here is no impropriety in a party to a transaction threatening to enforce his legal rights and

4    remedies and in pointing out to the other party the consequences thererof, so long as he believes

5    in good faith that he is entitled to the rights and remedies asserted." *United Professional*

6    *Planning, Inc. v. Superior Court*, 9 Cal.App.3d 377, 395 (1970).

7         Fleming has presented no evidence that Coverstone knew his claims were false when he

8    asserted them in his e-mails and, therefore, Fleming has failed to meet his burden of proof.  As

9    set forth in Coverstone's declaration, he did believe them.  As set forth in the defamation section

10   above, he believed his assertions (and still does) *because they are true*.  Even Fleming concedes

11   that Coverstone's e-mails clearly show that Coverstone felt he had been wronged by Fleming.

12   [Coverstone's Ex. I]

13        Plaintiff's only contrary argument is, again, *Flatley*.  And again, *Flatley* does not provide

14   any guidance as to the elements of a prima facie case for "civil extortion" because it never

15   reached that issue and, therefore, has no bearing on what Fleming does and does not have to

16   show to overcome this motion.

17   **IV.    <u>CONCLUSION</u>**

18        The anti-SLAPP statute applies to the second and third causes of action because all of the

19   activity at issue was conducted in connection with a judicial proceeding.  And Fleming has failed

20   to meet his burden because Civil Code section 47 bars these causes of action.  He also cannot

21   provide evidence to establish a prima facie case for either claim.

22        Because Fleming has failed to meet his burden, and because an affirmative defense

23   conclusively bars these causes of action, Coverstone respectfully requests that Fleming's claims

24   be stricken and attorneys' fees be awarded to Coverstone.

25                                    KLINEDINST PC

26

27   DATED: July 14, 2008          By:   /s/ Gregor A. Hensrude
                                         GREGOR A. HENSRUDE
                                         Attorneys for Defendant
28                                       TOM COVERSTONE

- 14-

1    661629v1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S SPECIAL MOTION TO STRIKE**
**3:08-cv-00355-WQH-NLS**