**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOYT A. FLEMING,<br><br>                Plaintiff,<br>vs.<br>TOM COVERSTONE,<br><br>                Defendant. | CASE NO. 08cv355 WQH (NLS)<br><br>**ORDER** |

HAYES, Judge:

    The matters before the Court are the (1) Ex Parte Motion for Leave to File Excess Pages (Doc. # 43) filed by Defendant Tom Coverstone; (2) Motion to Strike (Doc. # 33) filed by Defendant Tom Coverstone; and (3) Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) filed by Defendant Tom Coverstone.

**Background**

    On February 22, 2008, Plaintiff Hoyt A. Fleming initiated this action by filing a complaint (Doc. # 1). On October 21, 2008, Plaintiff filed the "Second Amended Complaint for Breach of Contract and Extortion" ("SAC"), which is the operative pleading in this case (Doc. # 29). The SAC alleges that on January 22, 2008, Plaintiff sent Defendant an email that stated in part:

    Tom,

    This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and

applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you, or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.

. . .

If you agree to the above, then please confirm via email.

Thank you,
Hoyt Fleming

*SAC,* ¶ 10.

The SAC alleges that on January 22, 2008, Defendant sent Plaintiff an email that stated in part:

Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed. . . .

Best regards,
Tom

*Id.,* ¶ 11.[1] The SAC alleges that "[t]he [January 22 Email Exchange] constitutes a binding and enforceable contract. . . . not merely an agreement to agree." *Id.,* ¶ 12. The SAC alleges that on January 23, 2008, Defendant wired Plaintiff $10,000.00. *Id.,* ¶ 13.

---

[1] The Court will refer to the parties' January 22, 2008 emails as the "January 22 Email Exchange."

The SAC alleges that on February 15, 2008, Defendant sent Plaintiff an email which stated: "You mischaracterized your patents, the prior art and the file histories. You also did not disclose material facts relating to same. . . . Please send my $10,000 to the address below by February 20th. If you agree to return the $10,000, I will agree to release and waive my potential claims against you." *Id., ¶* 19. The SAC alleges that on February 15, 2008, Plaintiff sent Defendant an email that stated: "Your position is you would like me to return your deposit even though you agreed that the deposit would not be refunded. My position is that you owe me specific performance." *Id., ¶* 20. The SAC alleges that on February 15, 2008, Defendant sent Plaintiff another email that stated that "[t]here was not an agreement, there never was" because "[w]e did not agree on key material terms;" and that even if there was an agreement, "you committed fraud" in the inducement because you "materially misrepresented key facts relating to your patents and competing patents." *Id., ¶* 21. The SAC alleges that on February 15, 2008, Defendant sent Plaintiff another email that stated that Plaintiff breached his fiduciary responsibilities and duty of loyalty in dealing with Defendant. The email further stated that any contract would be unenforceable because one of the material elements of the proposal included an illegal tax scheme with Vineyard Boise, Plaintiff's church. *Id., ¶* 22. The SAC alleges that Defendant threatened to publicly accuse Plaintiff of "serious ethics violations," including publicly accusing Plaintiff of an "illegal tax scam" unless Plaintiff paid Defendant $10,000.00. *Id., ¶¶* 23-26. The SAC alleges that "Defendant's blackmail threats were made with malice in fact." *Id., ¶* 27. The SAC alleges that "[a]lthough [Plaintiff] was being blackmailed by Defendant, [Plaintiff] did not pay Defendant the demanded $10,000." *Id., ¶* 30.

The SAC alleges causes of action for (1) breach of contract; and (2) extortion in violation of sections 518-527 of the California Penal Code.

On October 31, 2008, Defendant filed the Motion to Dismiss the SAC, and the Motion to Strike. On November 17, 2008, Plaintiff filed the Response in Opposition to the Motion to Dismiss the SAC (Doc. # 37), and the Response in Opposition to Defendant's Motion to Strike (Doc. # 34). On November 20, the Reply to the Motion to Dismiss (Doc. # 41), and the Reply to Defendant's Motion to Strike (Doc. # 40). On November 21, 2008, Defendant filed the Ex

Parte Motion for Leave to File Excess Pages. Plaintiff did not file an opposition to the Ex Parte Motion for Leave to File Excess Pages.

## **Analysis**

### I.     **Ex Parte Motion for Leave to File Excess Pages**

Defendant requests "leave to file an over-length brief in reply to Plaintiff's Response in Opposition to Defendant's Motion to Strike." *Ex Parte Request,* p. 1. Defendant requests that the Court grant leave to file an eleven (11) page brief because "he is unable to adequately reply to the issues raised in Plaintiff's opposition within the ten (10) page limit." *Id.* Plaintiff has not filed any opposition to the Ex Parte Motion. In light of the foregoing, the Court grants the Ex Parte Motion for Leave to File Excess Pages, and will consider Defendant's Reply in its entirety when considering the Motion to Strike.

### II.    **Motion to Strike Second Cause of Action (Anti-SLAPP Motion)**

The communications underlying the SAC's civil extortion claim are Defendant's email references to Plaintiff's allegedly illegal tax scheme with Plaintiff's church, Vineyard Boise, and to Plaintiff's allegedly serious ethical violations, including breach of his fiduciary responsibilities and duty of loyalty in dealing with Defendant. Defendant contends that the SAC's extortion claim is subject to a special motion to strike pursuant to California's anti-SLAPP statute, section 425.16 of the California Civil Code, because the communications underlying the claim "(1) were made in anticipation of litigation and (2) are directly related to the substantive issues of the dispute." *Mot. to Dismiss,* p. 6. Defendant contends that Plaintiff cannot establish a probability of prevailing on his extortion claim because civil extortion is not a valid cause of action in California. Defendant contends that Defendant's statements underlying the extortion claim cannot support a claim for extortion because they are absolutely privileged as being pre-litigation settlement discussions. Defendant contends that the SAC "has not set forth the requisite factual allegations, much less the existence of proof sufficient to demonstrate a probability of prevailing" on the extortion claim. *Id.* at 9. Defendant "respectfully requests that this special motion to strike be granted and that he be awarded reasonable attorneys' fees and costs." *Id.* at 16.

Plaintiff contends that the communications underlying the extortion claim were not "in connection with protected petitioning" within the meaning of California's anti-SLAPP statute because Defendant's threat to expose Plaintiff's participation in an alleged illegal tax scam and to expose Plaintiff's unethical conduct "had absolutely no connection to the contract dispute" between Plaintiff and Defendant. *Opposition,* p. 9. Plaintiff contends that Defendant's emails constitute criminal extortion as a matter of law, and are therefore not protected under the anti-SLAPP statute, which only extends to speech that is constitutionally protected. Plaintiff contends that civil extortion is a valid cause of action in California. Plaintiff contends that he is likely to prevail on his extortion cause of action because Defendant's communications underlying the extortion claim are not protected by the litigation privilege because they do not have "reasonable relevance to the subject matter of the action." *Id.* at 19 (internal quotations omitted). Plaintiff contends that the allegations underlying the SAC's extortion claim are sufficient to demonstrate that Plaintiff is likely to prevail on the extortion claim.

A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Wilcox v. Superior Court,* 27 Cal. App. 4th 809, 815 (1994). In response to the threat such lawsuits posed to the important public policy of open and free participation in the democratic process, the California Legislature adopted the anti-SLAPP statute.

> Resolution of an anti-SLAPP motion requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the statute. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

*Haneline Pacific Properties, LLC v. May,* 167 Cal. App. 4th 311, 318 (2008).

A. <u>Defendant's Conduct Arises from Protected Activity</u>

The anti-SLAPP statute allows a court to strike any cause of action that arises from the defendant's exercise of constitutionally protected speech. Cal. Civ. Code § 425.16. Section 425.16(e)(2) of the California Civil Code protects "any written or oral statement or writing

1 made in connection with an issue under consideration or review by a . . . judicial body." Cal.
2 Civ. Code § 425.16(e)(2). Statements made in connection with anticipated litigation constitute
3 protected activity within the definition of section 425.16(e)(2). *Neville v. Chudacoff,* 160 Cal.
4 App. 4th 1255, 1262 (2008). Litigation-related communications need not involve a public
5 issue in order to be protected by the anti-SLAPP statute. *Flatley v. Mauro,* 39 Cal. 4th 299,
6 323 (2006) ("imposing a public issue requirement as a condition to protecting litigation-related
7 communications under the anti-SLAPP statute would produce an anomalous result").

8 "Extortion is not a constitutionally protected form of speech." *Flatley,* 39 Cal. 4th at
9 328. However, "rude, aggressive, or even belligerent prelitigation negotiations, whether verbal
10 or written, that may include threats to file a lawsuit, report criminal behavior to authorities or
11 publicize allegations of wrongdoing [do not] necessarily constitute extortion." *Id.* at 332.
12 *Flatley* held that the defendant's conduct (threatening to publicize that the plaintiff, a well-
13 known entertainer, raped the defendant unless the plaintiff paid plaintiff a seven-figure
14 payment) constituted extortion as a matter of law such that the defendant's conduct was not
15 protected under section 425.16. *Id.* In so holding, the California Supreme Court emphasized
16 that its conclusion was "based on the specific and extreme circumstances of this case." *Id.*

17 As alleged in the Complaint, Defendant threatened to expose Plaintiff's allegedly illegal
18 tax scheme and Plaintiff's unethical conduct unless Defendant returned Plaintiff's $10,000
19 deposit. Defendant's statements underlying the extortion cause of action may constitute threats
20 to "report criminal behavior to authorities or publicize allegations of wrongdoing." *Flatley,*
21 39 Cal. 4th at 332. However, Defendant's conduct does not amount to the "extreme
22 circumstances" contemplated in *Flatley* that justify a holding that Defendant's conduct
23 constituted extortion as a matter of law such that Defendant's conduct falls outside of the
24 protections contemplated by section 425.16. *See id.*

25 Defendant's statements with respect to the tax scheme are relevant to whether the
26 parties' had binding contract because the January 22 Email Exchange could be unenforceable
27 as illegal if one of the material elements of the agreement included an illegal tax scheme
28 between Plaintiff and Vineyard Boise. Similarly, Defendant's statements with respect to

1 Plaintiff's alleged ethical violations are relevant to whether the parties had a binding contract; 2 if Plaintiff breached his fiduciary duties in dealing with Defendant, any agreement could be 3 unenforceable as violating the parties' ethical obligations.  The central issue in the instant 4 lawsuit is whether the January 22 Email Exchange constitutes an enforceable contract, and 5 Defendant's statements underlying the extortion cause of action relate to whether the January 6 22 Email Exchange constitutes an enforceable contract.  In light of the foregoing, the Court 7 concludes that the statements were made in connection with anticipated litigation and therefore 8 constitute protected conduct within the meaning of California's anti-SLAPP statute.  *See* 9 *Neville,* 160 Cal. App. 4th at 1262.

10           B.      Plaintiff is Not Likely to Prevail on His Extortion Claim

11           "[C]ommunications with 'some relation' to judicial proceedings have been absolutely 12 immune from tort liability by" California's litigation privilege, codified as section 47(b) of the 13 California Civil Code.  *Rubin v. Green,* 4 Cal. 4th 1187, 1193 (1993).  "The privilege has been 14 broadly applied to demand letters and other prelitigation communications by attorneys." 15 *Blanchard v. DIRECTV. Inc.,* 123 Cal. App. 4th 903, 919 (2004).  A "prelitigation statement 16 is protected by the litigation privilege . . . when the statement is made in connection with a 17 proposed litigation that is contemplated in good faith and under serious consideration."  *Id.* 18 (internal quotations omitted).  The "good faith, serious consideration of litigation test" is 19 "addressed to the requirement the statements have some connection or logical relation to the 20 action."  *Id.*

21           The communications underlying the SAC's extortion claim relate to Defendant's 22 request that Plaintiff return the $10,000 deposit, which Defendant paid pursuant to the January 23 22 Email Exchange.  The SAC alleges that Defendant demanded return of the deposit on 24 grounds that the January 22 Email Exchange was not enforceable because the parties did not 25 agree on the material terms and, even if they did, the agreement was void as illegal and due to 26 ethical violations.  The parties' communications indicate that a lawsuit regarding the 27 enforceability of the January 22 Email Exchange was on the horizon, and constitute 28 preliminary negotiations between the parties to settle their dispute arising out of the January

22 Email Exchange. Defendant's statements with respect to the illegal tax scheme and Plaintiff's allegedly unethical conduct satisfy the requirement that communications have "some relation" to judicial proceedings to be protected by the litigation privilege because they relate to whether the January 22 Email Exchange constitutes a binding agreement. *Rubin,* 4 Cal. 4th at 93. There is no indication that Defendant's communications were not made with a good faith belief that the January 22 Email Exchange was unenforceable and that Defendant had a legally viable claim to recover his $10,000 deposit.

The Court concludes that at the time the alleged communications underlying the SAC's extortion claim were made, the parties were seriously contemplating litigation with respect to the enforceability of the January 22 Email Exchange, and that the communications were sufficiently related to the litigation to fall within the litigation privilege articulated in section 47(b) of the California Civil Code. The Court therefore concludes that Plaintiff has failed to demonstrate a probability of prevailing on his extortion claim because the statements underlying the claim are absolutely immune from tort liability under the litigation privilege, California Civil Code section 47(b).

C.    Conclusion

Defendant's communications with respect to the alleged illegal tax scheme and the alleged ethical violations underlying the SAC's extortion claim constitute protected communications within the meaning of California's anti-SLAPP statute. Plaintiff has failed to demonstrate a probability of prevailing on his extortion claim because the communications underlying the claim are protected by the litigation privilege and therefore cannot serve as a basis for Defendant's tort liability. In light of the foregoing, the Court grants the Motion to Strike, and strikes the SAC's second cause of action for extortion.

**III    Motion to Dismiss**

A.    Cause of Action for Breach of Contract

Defendant moves to dismiss the SAC's cause of action for breach of contract for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to join a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of

Civil Procedure.

### i. The SAC Alleges an Enforceable Contract

Defendant contends that the January 22 Email Exchange underlying Plaintiff's breach of contract claim "was an agreement to deal, together with earnest money, and like all patent transactions, a due diligence period." *Mot. to Dismiss,* p. 5. Defendant contends that the January 22 Email Exchange indicated that further documentation was "necessary" and that the parties would "strive to close the deal" by February 15, 2008, which "evinces a clear intention that the electronic mails were not intended to be the final and binding contract, but an agreement to agree." *Id.* at 8. Defendant further contends that January 22 Email Exchange does not constitute an enforceable contract because Defendant added an express condition - that Plaintiff's wife sign off on the transaction - but Plaintiff never accepted this counter-offer; and because Plaintiff knew that Defendant was negotiating on behalf of an unnamed entity such that the Court would be unable to determine against whom to enforce the contract. *Id.* at 7-8.

Plaintiff contends that the "clear terms of the Contract evidence an intent by both parties to enter into a binding contractual relationship. As alleged in the SAC, the parties reached an agreement over the phone whereby [Defendant] would purchase the patent portfolio from [Plaintiff] for $1,000,000. The parties memorialized this agreement by email." *Opposition,* p. 13-14. Plaintiff contends that Defendant's email which addresses the requirement that Plaintiff's wife sign off on the agreement "makes clear that it is not adding a new condition, but instead specifically states that the agreement that [Plaintiff's] wife would sign the assignment documents was reached over the phone." *Id.* at 10-11. Plaintiff contends that, as alleged in the SAC, "[i]n all negotiations occurring on or before January 22, 2008, Defendant was negotiating and entered into the January 22, 2008 contract as an individual," not on behalf of an unknown entity. *Id.*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where

the factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See id.* (citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

To state a claim for breach of contract, the plaintiff must allege: (1) a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App. 3d 1371, 1388 (1990). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "When a contract is reduced to a writing, the intention of the parties is to be ascertained from the writing alone, if possible." *Id.,* § 1639. When a plaintiff does not allege that a writing is ambiguous and subject to interpretation, the court construes the language of the contract on its face to determine whether the "contract is reasonably subject to a construction sufficient to sustain a cause of action for breach." *Beck v. American Health Group International, Inc.,* 211 Cal. App. 3d 1555, 1561-62 (internal quotations omitted).

California law "provides no remedy for breach of an agreement to agree in the future." *Copeland v. Baskin Robbins U.S.A.,* 96 Cal. App. 4th 1251, 1256-57 (2002). "[W]here any of the essential elements of a promise are reserved for the future agreement of both parties, no legal obligation arises until such agreement is made." *Id.* at 1256 (internal quotations omitted). Preliminary negotiations or an agreement for future negotiations do not constitute a binding contract. *Beck,* 211 Cal. App. 3d at 1562. "[W]here it is part of the understanding between the parties that the terms of their contract are to be reduced to writing and signed by the parties, the assent to its terms must be evidenced in the manner agreed upon or it does not become a binding or completed contract." *Id.* "A manifestation of willingness to enter into a bargain

is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.*

As alleged in the SAC, the January 22 Email Exchange states that Plaintiff "agreed to sell" and Defendant "agreed to purchase" three specified patents; that the purchase price for the patents would be one million dollars; that the parties would strive to close the sale by February 1, 2008 and would close the sale by February 15, 2008; and that Defendant would pay a ten thousand dollar deposit. *Complaint,* ¶¶ 10-11. Plaintiff's January 22, 2008 email requested Defendant to confirm "[i]f you agree to the above," and Defendant responded unequivocally: "Agreed." *Id.,* ¶ 11.

The Court construes the language of the January 22 Email Exchange on its face because the SAC does not allege that it is ambiguous. *See Beck,* 211 Cal. App. 3d at 1561-62. The January 22 Email Exchange specifies the essential elements of the parties' agreement because, pursuant to the terms of the January 22 Email Exchange, Plaintiff and Defendant agreed on the patents to be sold, the dates on which the sale would close, the purchase price, and the parties. The January 22 Email Exchange does not contemplate future negotiations, does not contemplate that a formal contract would be drafted at some future date, does not indicate that the parties had only reached a general understanding of their agreement, and does not otherwise evidence the parties' intent that the January 22 Email Exchange not constitute a binding agreement. Defendant's January 22, 2008 email to Plaintiff stated that Plaintiff's wife would sign the assignment documents "[a]s we discussed on the phone." *Complaint,* ¶ 11. Contrary to Defendant's assertion, this email does not constitute a counter-offer because the email states that the parties had already reached an agreement that Plaintiff's wife would sign the documents. The January 22 Email Exchange contemplates that Plaintiff would sell and Defendant would purchase specified patents, and does not indicate that Defendant was not negotiating on his behalf, or that parties other than Plaintiff and Defendant would be bound by the agreement. Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint alleges sufficient facts to support a finding that the material terms of the

parties' agreement were reasonably certain and that the parties have manifested assent to the terms. The Court concludes that the SAC sufficiently alleges an enforceable contract. The Court concludes that dismissal of Plaintiff's breach of contract claim on grounds that the SAC fails to allege an enforceable contract is not proper.

> ii. Defendant Fails to Demonstrate Vineyard Boise is a Necessary and Indispensable Party

Defendant contends that according to the "contract" terms, "Vineyard Boise had rights and obligations under the contract (to sell 10% of the patent, which it ostensibly owned, in exchange for $100,000)." *Mot. to Dismiss,* p. 6. Defendant contends that even if the SAC alleged the existence of an enforceable contract, the case must be dismissed for failure to join Vineyard Boise, a necessary and indispensable party.

Plaintiff contends that Plaintiff and Defendant were the only two parties to the contract because "[i]t is clear from the Contract that Vineyard Boise is a beneficiary of the Contract, but not a party to it." *Opposition,* p. 10.

Rule 19 of the Federal Rules of Civil Procedure describes the circumstances when a person must be joined as a necessary party. Rule 19(a) provides that, if feasible, a person must be joined as a necessary party if, in the person's absence, the court cannot accord complete relief among existing parties; or if the person claims an interest in the subject matter of the action and the interest may be compromised by the person's absence, or the person's absence will expose the existing parties to the risk of inconsistent results. Fed. R. Civ. P. 19(a)(1). Rule 19(b) provides that when a party is necessary, but joinder is not feasible (for example when joinder would destroy diversity), "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The moving party has the burden of establishing that a person must be joined as a necessary party. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Id.* (citations omitted).

Defendant does not assert that the Court cannot accord complete relief among Plaintiff and Defendant absent Vineyard Boise's joinder, that Vineyard Boise claims an interest in the subject matter that may be compromised in Vineyard Boise's absence, or that Vineyard Boise's absence will expose Plaintiff and/or Defendant to the risk of inconsistent results. *See* Fed. R. Civ. P. 19(a). Defendant also does not assert that joinder of Vineyard Boise is not feasible. *See* Fed. R. Civ. P. 19(b). Instead, Defendant relies on his conclusory assertion that Vineyard Boise is a necessary party because Vineyard Boise "clearly has both benefits and obligations" under the parties' alleged agreement. *Mot. to Dismiss,* p. 6. Defendant has the burden to establish that Vineyard Boise must be joined as a necessary party. *See Makah Indian Tribe*, 910 F.2d at 558. The Court concludes that Defendant has failed to satisfy his burden because Defendant does not identify how complete relief cannot be afforded to Plaintiff and Defendant absent Vineyard Boise's joinder; that Vineyard Boise has an interest in the subject matter of the action that would be compromised if Vineyard Boise is not joined; that absent Vineyard Boise's joinder Plaintiff and/or Defendant would be exposed to multiple liability; or that joinder of Vineyard Boise is not feasible. The Court concludes that dismissal of the Plaintiff's breach of contract claim on grounds that Plaintiff failed to add a necessary and indispensable party is not proper.

        B.      <u>Cause of Action for Extortion</u>

As previously discussed, the communications underlying the SAC's civil extortion cause of action are absolutely immune from tort liability pursuant to California's litigation privilege, California Civil Code section 47(b). In light of the Court's decision striking the SAC's cause of action for extortion pursuant to the anti-SLAPP statute, the Court denies the Motion to Dismiss the cause of action for extortion as moot.

///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Conclusion**

IT IS HEREBY ORDERED that (1) the Ex Parte Motion for Leave to File Excess Pages (Doc. # 43) filed by Defendant Tom Coverstone is **GRANTED**; (2) the Motion to Strike (Doc. # 33) filed by Defendant Tom Coverstone is **GRANTED**; and (3) the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 32) filed by Defendant Tom Coverstone is **DENIED.**

DATED: March 18, 2009

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge