1   John D. Klinedinst, Bar No. 86254
    Gregor A. Hensrude, Bar No. 226660
2   Daniel S. Agle, Bar No. 251090
    KLINEDINST PC
3   501 West Broadway, Suite 600
    San Diego, California  92101
4   (619) 239-8131/FAX (619) 238-8707
    ghensrude@klinedinstlaw.com
5
    Attorneys for Defendant/Counterclaimant
6   TOM COVERSTONE

7

8                   **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   HOYT A. FLEMING, | Case No.    3:08-cv-00355 WQH-NLS |
| 12            Plaintiff, | **DEFENDANT TOM COVERSTONE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 13       v. | |
| 14   TOM COVERSTONE, | Date          May 26, 2009 |
| 15            Defendant. | Time:          11:00 a.m. |
| 16   TOM COVERSTONE, | Courtroom:     4 |
| 17            Counterclaimant, | Judge:          William Q. Hayes |
| 18       v. | Magistrate Judge: Nita L. Stormes |
| 19   HOYT A. FLEMING; TERESA A. FLEMING and PARK, VAUGHAN & FLEMING, LLP, | Complaint Filed: February 22, 2008 |
| 20 | Trial Date:     None set |
| 21 | |
| 22            Counterdefendants. | |

23

24   ///

25   ///

26   ///

27   ///

28   ///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 0

II.     LEGAL STANDARD ............................................................................ 1

III.    ARGUMENT....................................................................................... 1

        A.    Plaintiff's Claim that the Two E-mails Are Sufficient to Form a
              Binding Contract Fails................................................................. 2

              1.    Defendant's Janaury 22, 2008 E-mail Was a Counteroffer and
                    Not an Acceptance............................................................... 2

              2.    The Purported Contract is Completely Lacking in Mutuality ........... 3

              3.    The parties did not intend to create an enforceable purchase
                    and sale contract through the e-mail exchange ........................... 5

                    a.    Coverstone did not intend to reach a binding
                          agreement ................................................................. 5

                    b.    Fleming did not intend to reach a binding agreement ........... 5

                    c.    The actions of the parties *before* this dispute shows
                          that they did not intend to have a binding agreement............ 7

              4.    The parties to the contract had not been determined...................... 10

        B.    The Purported Contract Would Also Be Unenforceable Based on
              Fraud in the Inducement .............................................................. 10

IV.     CONCLUSION.................................................................................. 13

**DEFENDANT TOM COVERSTONE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
3:08-cv-00355-WQH-NLS**

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Beck v. American Health Group, Intl.,*
    211 Cal.App.3d 1555 (1989) .................................................................. 7

5

*Bullock v. McKeon*
    (1930) 104 Cal.App.72 ............................................................................ 2

6

7

*Bustamante v. Intuit, Inc.,*
    141 Cal.App.4th 199, 213 (2006) .......................................................... 5

8

*Crestview Cemetery Assn. v. Dieden*
    (1960) 54 Cal.2d 744 .............................................................................. 8

9

*Delta Dynamics, Inc. v. Arioto,*
    69 Cal.2d 525, 528 (1968) ...................................................................... 5

10

11

*Delucchi v. County of Santa Cruz,*
    179 Cal.App.3d 814 .............................................................................. 12

12

*Major v. Miraverde Homeowners Ass'n,*
    7 Cal.App.4th 618 .................................................................................. 4

13

14

*Rosenthal v. Great Western Fin. Securities Corp.,*
    14 Cal.4th 394, 415 (1996) .................................................................. 11

15

**Statutes**

16

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 225, pp. 260-261 .............. 3

17

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 749, p. 839 ...................... 8

18

2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, § 79, p. 198 .................. 5

19

Civil Code section 1558 ................................................................................................ 10

20

Civil Code section 1636 .................................................................................................. 5

21

Civil Code section 1654 .................................................................................................. 7

22

FED. R. CIV. P. 56(c). ...................................................................................................... 1

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

**DEFENDANT TOM COVERSTONE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
3:08-cv-00355-WQH-NLS**

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

I.    **INTRODUCTION**

The fact of the matter is this—the parties before the court exchanged a series of informal e-mails that neither thought would document their proposed million dollar agreement.  That is why they said, in those e-mails, that the "necessary agreements" would be drawn up by their attorneys.  That is why they only exchanged a $10,000 deposit based on the e-mails, and opened their due diligence period for a potential $1,000,000 deal.  So it is no surprise that those e-mails are unenforceable as a contract for not just one, but many, reasons.

Plaintiff's motion for partial summary judgment completely ignores the myriad reasons why the "contract" he asserts cannot be enforced on summary judgment.  As demonstrated below, there is substantial admissible evidence showing multiple triable issues of fact precluding summary judgment, but also authority demonstrating that his interpretation fails as a matter of law for two reasons.  Based on those numerous bars to his theory, Defendant Tom Coverstone requests that this court deny Plaintiff's motion for summary judgment.

II.   **LEGAL STANDARD**

Summary Judgment must be denied where either the moving party fails to demonstrate that there are no genuine issues of material fact or where the non-moving party presents evidence that establishes a genuine issue of material fact.  FED. R. CIV. P. 56(c).

III.  **ARGUMENT**

This motion should be denied for two independent reasons.  First, the two e-mails cited by Plaintiff as representing the "contract" are insufficient to meet the formation requirements of a valid contract.  They lack the requisite specificity, fail to include parties, contain terms that render the contract illusory, are lacking any intent on behalf of the parties, and themselves contemplate that they do not constitute a binding agreement.  Second, the parties agree (as they must) that Plaintiff made a representation about the patent that was untrue, and material, and later admitted it was wrong.  The issues about

- 1 -

1   which the parties disagree, when that misrepresentation occurred and whether there was a

2   second misrepresentation, constitute questions of fact to be determined by the jury when

3   evaluating which of the two is more likely telling the truth.  At any rate, even based upon

4   the first misrepresentation alone (regarding Uniden) there was fraud in the inducement as

5   Coverstone would not have agreed to proceed but for the representation.[1]

6       Thus, because no contract was ever formed and it would be void due to the

7   misrepresentation if it had, summary judgment should be denied.

8       **A.**    **Plaintiff's Claim that the Two E-mails Are Sufficient to Form a**

9            **Binding Contract Fails**

10      Numerous requirements for the formation of valid contracts demonstrate that the

11  two January 22, 2008 e-mails cannot be the basis of a valid and enforceable contract.

12  The material defects are based on the lack of a valid acceptance, the lack of mutuality, the

13  fact that the e-mails themselves state that there is no contract until later documents were

14  prepared and executed, and a factual dispute as to whom the parties to the contract are.

15  Any *one* of these reasons would preclude summary judgment, but together they leave no

16  doubt.

17      **1.**    **Defendant's Janaury 22, 2008 E-mail Was a Counteroffer and**

18            **Not an Acceptance**

19      There can be no enforceable contract based on the January 22 e-mails because the

20  purported offer was countered rather than accepted.  Under California law, an acceptance

21  of an offer that imposes additional conditions not included in the offer is a counter-offer

22  rather than an acceptance that must itself be accepted prior to the formation of a binding

23  contract.  *Bullock v. McKeon* (1930) 104 Cal.App. 72, 79.

24      There can be no dispute that Defendant included an additional term that was not

25  included in the original e-mail:  "your wife Teresa will sign the assignment documents or

26  whatever is needed."  [Second Amended Complaint (SAC) ¶ 11]  Therefore, Defendant's

27  e-mail cannot be interpreted as an acceptance as a matter of law.  And because the

28

---

[1]    Fleming contends it was after, and thus a triable issue of fact was born.

**DEFENDANT TOM COVERSTONE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**
**3:08-cv-00355-WQH-NLS**

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

1    additional term was not accepted in the January 22, 2008 e-mail exchange, those e-mails

2    cannot form the basis of an enforceable contract as they are lacking the basics of offer

3    and acceptance.[2]

4       While Plaintiff has taken the position that Defendant's e-mail explains that they

5    had discussed this term over the phone, that does not change the fact that it is a new term

6    that was not included in the offer.  Because Plaintiff has presented no *evidence* in support

7    of the motion that he did accept Defendant's counteroffer, no enforceable contract was

8    formed by way of the January 22 e-mails.  In fact, Plaintiff himself testified that he had

9    *not* spoken with his wife to ensure that she would sign.  [Exhibit A: Deposition of Hoyt

10   Fleming (Depo. of H. Fleming) at 113:9-114:4]  Therefore, there was no contract.

11          **2.       The Purported Contract is Completely Lacking in Mutuality**

12      Mutuality is a required element of a valid and enforceable bilateral contract.  "The

13   doctrine of mutuality of obligation requires that the promises on each side be *binding*

14   *obligations* in order to be consideration for each other. The doctrine applies to *bilateral*

15   *contracts*, where there are mutual promises. [Citations]"  1 Witkin, Summary of Cal. Law

16   (10th ed. 2005) Contracts, § 225, pp. 260-261.

17      Plaintiff has made clear that he believes the January 22, 2008 e-mail exchange to

18   be the "contract" upon which this case is based.  [SAC ¶ 12; Exhibit A: Depo. of H.

19   Fleming at 112:2-9, 115:10-23]  He has also made clear that *every term* of those e-mails

20   is a part of the "contract."  [Exhibit A: Depo. of H. Fleming at 112:2-9, 115:10-23]  Thus,

21   there are only two ways to interpret the Vineyard Boise inclusion—they are parties to the

22   contract, who have a duty (to assign 10% of the patent) and a right (to receive $100,000)

23   or they are not a party, in which case they have no obligations under the contract.

24   Plaintiff contends it is the latter.  [Exhibit A: Depo. of H. Fleming at 165:2-20, 169:19-

25   ///

26   ///

501 West Broadway, Ste. 600
San Diego, California 92101
Klinedinst PC

27 ―――――――――――
28   [2]    Notably, Fleming *admits* that it was a term that should have been included in the documents making up the contract.  [Ex. A: Depo. of H. Fleming at 113:8-15]  But it was not, and there is no evidence before the court that he accepted that condition.

- 3 -

23] There is no evidence in the record suggesting that they assented to these terms, so they are not a party and have no obligations on this record.[3]

And that is where Fleming's case ends. If Vineyard Boise did not have an obligation to assign 10% of the patent, their promise was illusory and the contract is not enforceable. *See, e.g. Major v. Miraverde Homeowners Ass'n*, 7 Cal.App.4th 618, 626. Fleming's assertion that they were a third party beneficiary to the contract (Fleming's Opposition to 12(b)(6) at 9:22-10:6) is baseless given that he himself asserts that they would have to provide the patent share prior to receiving the $100,000 ([Exhibit A: Depo. of H. Fleming at 169:19-170:17), and "it is fundamental that the right of a third party beneficiary to enforce a promise made for his benefit *does not depend on his having given consideration therefore*." *Northwestern Mutual Ins. Co. v. Famers Ins. Group*, 76 Cal.App.3d 1031, 1044 (1978) (emphasis added).

Plaintiff attempts to circumvent this clear law by stating that *he* had an obligation to ensure that Vineyard Boise performed. [Exhibit A: Depo. of H. Fleming at 170:18-171:13] But notably the contract never says that (nor does the complaint, for that matter). Second, this is merely an attempt to avoid the illusory nature of Vineyard Boise's performance—it is clear that if the contract held that Coverstone would pay $100,000 and Vineyard Boise would assign 10% of the patent to him at their option, it would be illusory. Adding an additional person, and more uncertainty, by Fleming stating that it would amount to a breach by him if Vineyard Boise did not do what they are still not obligated to do renders the contract more illusory, not less. The court has held that where the parties anticipate obtaining the agreement and performance of third parties to their endeavor, but said acceptance has not yet been received, there is no contract. *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 213 (2006).

This lack of mutuality is significant in that Plaintiff knew that Defendant was planning on asserting the rights of the portfolio if he had exercised the right to purchase

---

[3] Moreover, given the summary judgment requested, even if the court held that Vineyard Boise *was* a party, nearly impossible on this record, that would still result in denial of the summary judgment requested by Plaintiff.

- 4 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

(Exhibit A: Depo. of H. Fleming at 45:16-46:12) and, thus, Plaintiff also knew that owning only 90% of the portfolio was useless to Defendant's plan as an entity with *any* percentage ownership interest in a patent can independently license the patent.

>    **3.    The parties did not intend to create an enforceable purchase and sale contract through the e-mail exchange**

It is axiomatic that in determining the enforceability of a contract, the court looks first to the parties' intent.  California Civil Code section 1636.  Here, the intent of the parties, as demonstrated through their own words and the documents,[4] demonstrate that they did not intend to enter into a binding agreement through the January 22, 2008 e-mail exchange.

>    **a.    Coverstone did not intend to reach a binding agreement**

First, it should be made clear that Coverstone did not intend to be bound on January 22, 2008 e-mail exchange, and instead intended to agree to pay a $10,000 deposit to conduct exclusive due diligence on the patent.  [Aff. of T. Coverstone at ¶ 6]  This is the custom and practice of the industry in the purchase and sale of patents.  [Aff. of T. Coverstone at ¶ 6]  Had the due diligence panned out, he would have entered into a formal written contract for a purchase and sale of this size.

>    **b.    Fleming did not intend to reach a binding agreement**

Despite his later-acquired characterizations, Fleming clearly did not intend to create a binding agreement during the due diligence period.  In fact, in currently-pending

---

[4]    Despite Plaintiff's arguments to the contrary, extrinsic evidence is routinely admitted to allow the court to determine the parties' intent.  "'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'  To determine whether offered evidence is relevant to prove such a meaning the court must consider all credible evidence offered to prove the intention of the parties. 'If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, is 'fairly susceptible of either one of the two interpretations contended for.' [Citations], extrinsic evidence to prove either of such meanings is admissible.' [Citation]"  *Delta Dynamics, Inc. v. Arioto*,  69 Cal.2d 525, 528 (1968).  "[T]he modern tendency is to hold that evidence is admissible to show the meaning of words used even though no ambiguity is asserted. [Citations]."  2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, § 79, p. 198.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  litigation where Fleming is alleging infringement of the patent portfolio at issue, he

2  contends:

3      Plaintiff may have *attempted to sell the patents-in-suit, but no
        sale ever occurred* and, accordingly, no interest in the

4      patents-in-suit was ever transferred. Accordingly, Coverstone
        cannot be a necessary party and Defendants' Motion to

5      Dismiss must be denied.

6  [Opposition to Motion to Dismiss in 1:09-cv-00105-BLW (Dist. Idaho).]

7      Likewise, during the due diligence period, he told people that he was "in the

8  process" of selling his patents, not that they had been sold.  [Exhibit B: January 29, 2008

9  e-mail]  Of course, were there an enforceable agreement, a "sale" would have already

10  taken place.

11      Next, Fleming himself characterized the agreement *exactly as Coverstone*

12  *understood it*—as an option agreement whereby he would take the deposit in exchange

13  for removing his patents from the market.  [Exhibit C: February 15, 2008 e-mail]  If it

14  had truly been a sale, the $10,000 would be part of the purchase price.  Notably, he so

15  stated before this litigation began, when his motivations were different.  A jury should

16  have the ability to evaluate his credibility.

17      Moreover, Fleming's argument that this was a purchase and sale transaction was

18  subject to question in light of his inability to explain how that interpretation is consistent

19  with what he purports to be the "contract."  Those inconsistencies place the entirety of his

20  intent testimony in question.  The "contract" notes that the parties will need to prepare the

21  "necessary agreements."  "Necessary" in and of itself is an important word, implying that

22  they understand agreements must be prepared in order to effect a transaction.[5]  But

23  Fleming alleges that by "agreements" he meant the assignments (when he said

24  agreements).  [Exhibit A: Depo. of H. Fleming at 83:11-84:10]  He admitted, however,

25  that at the time he wrote "agreements," he was not contemplating them as assignments.

26  [Exhibit A: Depo. of H. Fleming at 88:4-19]  At best, then, there is ambiguity (at worst,

27

28  —————————
[5]   Even if Fleming denied that was his interpretation, it would certainly provide
ample rationale for Coverstone to believe that this was *not* the contract.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

1  he is now providing explanation to serve his litigation purposes).  It is axiomatic that this

2  ambiguity should be construed against Fleming, as the drafter of the alleged agreement.

3  California Civil Code section 1654.

4  　　　As if that were insufficient, a few days before Fleming asserts that the sale was

5  supposed to be finalized and documented, he was requesting copies of the agreements so

6  that he could have them with a few days to work out any remaining details with the

7  terms.  [Exhibit D: February 11, 2008 e-mail]  If the agreements were to be straight

8  assignment agreements, and if the contract had already been reached, there would have

9  been no further terms to "work out."  This adds one more piece to the puzzle illustrating

10  that the parties did not intend an enforceable agreement.

11  　　　In light of those admissions, there can be no question that there is a triable issue of

12  fact with respect to what Fleming's true intent was.[6]  Given the significant questions

13  raised by his own words, a jury should be able to analyze whether he indeed agreed to a

14  deposit-based agreement, or an actual agreement to purchase and sell.

15  　　　The case is analogous to *Beck v. American Health Group, Intl.*, 211 Cal.App.3d

16  1555 (1989).  In *Beck*, the parties both affirmatively signed an agreement with the terms

17  specified, but also stated that they would forward the agreement to counsel in order to

18  have the documents drawn up, and that hopefully they would have a completed contract

19  in the near future.  The *Beck* court found that the original agreement was not enforceable.

20  That is exactly the same as the electronic e-mails in this case, except that Fleming himself

21  characterized the further documentation as "necessary."  The parties did not agree to the

22  sale through that e-mail, and at best agreed to make a deposit to allow due diligence to

23  occur.

24  ///

25  ///

26

27  [6]　　Though if the court (or jury) believes Coverstone's intent, which is certainly
reasonable in light of the other facts, there also remains the possibility that there was no
28  contract because the two had different intentions with respect to the ambiguous January
22, 2008 e-mail.

- 7 -

**c.** The actions of the parties *before* this dispute shows that they did not intend to have a binding agreement

Under California law, the court may look to the actions of Plaintiff and Defendant prior to the current controversy arose to ascertain their intent:

> Acts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning. The conduct of the parties may be, in effect, a *practical construction* thereof, for they are probably least likely to be mistaken as to the intent. "This rule of practical construction is predicated on the common sense concept that 'actions speak louder than words.' Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754.

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 749, p. 839.

And this principle is confirmed by the California Code of Civil Procedure:

> "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (C.C. 1647.) "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." (C.C.P. 1860.)

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 748, pp. 836-837.

Significantly, after the January 22, 2008, exchange of e-mails, Plaintiff continued to provide Defendant with the information he had requested at their January 9, 2008 meeting that was necessary for him to complete the necessary due diligence prior to agreeing to pay Plaintiff $1,000,000. [Aff. of T. Coverstone at ¶ 10]  The following list demonstrates the pieces of information that were requested by defendant at the initial meeting and the date that they were provided by Plaintiff:

- In the meeting, Plaintiff also explained that he had prepared a chart the correlation between his portfolio's claims and the Escort's newest GPS enabled radar detector.  Defendant asked for a copy so that he could confirm the correlation for himself and Plaintiff provided the chart on 1/29/08—seven days after the purported agreement to purchase.  [Aff. of T.

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

Coverstone at ¶ 10; Exhibit E: January 29, 2008 e-mail from Plaintiff to Defendant]

- They also discussed the fact that Plaintiff has corresponded with Cobra Electronics related to Cobra's GPS enabled detectors and potential infringement issues. Defendant asked for that correspondence to better understand Cobra's position and Plaintiff provided those letter to him on 1/29/08—seven days after the purported agreement to purchase. [Aff. of T. Coverstone at ¶ 10; Exhibit F: January 29, 2008 e-mail from Plaintiff to Defendant]

- Plaintiff also claimed that some patent infringement attorneys had taken a look at the claims and potential infringing products and expressed interest in taking the case on a reduced contingency fee agreement. Defendant asked for contact information for those attorneys in order to ascertain the basis for their confidence in the potential suit. Plaintiff provided that contact information on 1/29/08—seven days after the purported contract. [Aff. of T. Coverstone at ¶ 10; Exhibit G: January 29, 2008 e-mail from Plaintiff to Defendant]

- Plaintiff also sent Defendant a draft response to an office action related to one of the pending applications on 1/29/08—seven days after the purported contract. [Exhibit H: January 29, 2008 e-mail from Plaintiff to Defendant]

- Plaintiff also claimed that Uniden was unable to obtain a GPS-enabled radar detector due to his patent portfolio. Defendant requested information related to the failed Uniden patent and Plaintiff sent a patent number on 2/5/08—fourteen days after the purported agreement to purchase. Plaintiff also said that he was available to discuss the Uniden patent at that time. [Aff. of T. Coverstone at ¶ 10; Exhibit I: e-mail from Plaintiff to Defendant]

- Plaintiff also sent draft of the patent to Defendant on 2/6/08—fifteen days after the purported agreement to purchase. [Exhibit J: February 6, 2008 e-mail from Plaintiff to Defendant]

- Plaintiff also sent the invention disclosure form to Defendant, at Defendant's request on 2/6/08—fifteen days after the purported agreement to purchase [Aff. of T. Coverstone at ¶ 10; Exhibits K and L: February 6, 2008 e-mails between Plaintiff and Defendant]

All of these exchanges of information show that Defendant was still in the process of conducting due diligence to determine whether to proceed with a purchase. [Aff. of T. Coverstone at ¶ 10]  It is notable that the parties exchanged approximately five e-mails prior to the "agreement," but that in the two weeks afterward they exchanged dozens of e-mails asking and answering questions and seeking relevant documents. Plaintiff knew Defendant was still performing his analysis of the portfolio and was actively providing him with the information necessary to do so. [Aff. of T. Coverstone at ¶ 10]  These

- 9 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

actions show that this was an option contract and nothing more.  The court will note that *never once* did Fleming question the due diligence or why Coverstone was asking so many questions and conducting so much research when he allegedly believed that the contract had already been reached.

In light of Coverstone's unequivocal statement that he did *not* intend to have a binding purchase and sale contract, evidence of Fleming's own words showing that he too had a different intent, and the parties subsequent actions, the agreement was an option agreement, whereby Coverstone would complete his due diligence and, if it showed what he had hoped, purchase the patent for $900,000 to Fleming and $100,000 to Vineyard Boise.  But even if there is some dispute as to that point, there can be no question that the evidence of the parties' intent raises a triable issue of fact on the record presented.

### 4.  The parties to the contract had not been determined

As is noted in the "contract" e-mails, the parties had discussed the fact that Coverstone himself did not intend to purchase, nor to be bound, to buy the patents as an individual.  [Aff. of T. Coverstone at ¶ 7]  Coverstone has never purchased patents as an individual, and does so on behalf of a business entity he is associated with.  [Aff. of T. Coverstone at ¶ 7]  Fleming knew this, and admitted that it was discussed between them prior to the "contract."  Yet that entity was never named, nor is it sued here.  The failure to include and identify that entity demonstrates that there is no enforceable contract.  Civil Code section 1558.

### B.  The Purported Contract Would Also Be Unenforceable Based on Fraud in the Inducement

In the event that this court finds the January 22, 2008 e-mails sufficient to form a contract, the resulting contract would be void based on fraud in the inducement.  Fraud in the inducement occurs when """"the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of

///

///

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

- 10 -

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

1  the fraud, is *voidable*.""""  *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th

2  394, 415 (1996).[7]

3      In early 2008, Plaintiff and Defendant had telephonic discussions and an in-

4  person meeting regarding the potential sale of Plaintiff's portfolio.  [Aff. of T.

5  Coverstone at ¶¶ 3,4,5]  During those discussions, on or about January 9th of 2008,

6  Plaintiff told Defendant that a specific Uniden patent application had been rejected

7  because of claims made in Plaintiff's patent portfolio.  [Aff. of T. Coverstone at ¶ 4]

8  Plaintiff reiterated this on February 6, 2008.  [Exhibit M: February 6, 2008 e-mail from

9  Plaintiff to Defendant]  Plaintiff also told Coverstone that both Uniden and another

10  company, Escort, had been blocked from getting patents in the area of GPS-enabled radar

11  detectors due to Plaintiff's portfolio.  [Aff. of T. Coverstone at ¶ 4]

12      The statements regarding Uniden and Escort constituted material representations

13  as the value of Plaintiff's portfolio was directly affected by its ability to prevent Uniden

14  and Escort (two of the largest manufacturers/distributors of radar detectors) from

15  obtaining patents for similar technology.  Coverstone was, as Fleming admits, interested

16  in the patents for the sole purpose of asserting and licensing the patents.  [Exhibit A:

17  Depo. of H. Fleming at 45:16-46:12; Aff. of T. Coverstone at ¶ 3]  Thus, the impact on

18  two of the largest producers of radar detectors was not insignificant.  Coverstone would

19  not have even entered into the option agreement, or even written "agree" in response to

20  the January 22, 2008 e-mail without the representations about Uniden and Escort.  [Aff.

21  of T. Coverstone at ¶ 4]

22      Fleming later admitted that he had represented that the Uniden patent was forced

23  to amend around his and that *this representation was inaccurate*[8]:

24

25      [7] Again, Defendant denies that the requisite formation requirements are present to
    forma  contract; however, to the extent the court finds that any contract was formed—
26  option to purchase or otherwise—the contract would be void based on this defense.
        [8] For the first time in his deposition, Plaintiff contends that he was mistaken with
27  this e-mail, and in fact there *was* a patent that was forced to revise its claims around his
    patent.  Uniden Patent No. 6,483,452.  That too is untrue—the '452 patent made very
28  minor amendments that in no way prevented Uniden from producing technology similar
    to that patented by Plaintiff.  The file history of '452 available on the USPTO's website

-11-

*February 5, 2008 e-mail from Tom Coverstone to H. Fleming:*

Hoyt:  Do you have time to talk this morning?  Did you send me the Unident patent application or number?  Also, I have an update on the agreement.  Tom.

*February 5, 2008 e-mail from Hoyt Fleming to Tom Coverstone:*

Tom: Just got back into the office.  I am available to talk at your convenience.  The Unident patent number is 6,469,653.  I do not know the identity of Malin's GPS cases.  Hoyt.

*February 6, 2008 e-mail from Tom Coverstone to Hoyt Fleming:*

Hoyt:  Do you have the file history for this patent?  I thought this was the one that they had to avoid your reference, but it looks like it sailed through the office.  Am I thinking of a different patent or application?  Tom.

*February 6, 2008 e-mail from Hoyt Fleming to Tom Coverstone:*

Tom: I do not seem to have the file history for that patent.  However, I do recall reviewing it.  I tried to check PAIR, however, but I cannot get paid PAIR's new challenge/response.  Hoyt.

*February 6, 2008 e-mail from Tom Coverstone to Hoyt Fleming:*

Here is the transaction history on that patent.  It looks like it was allowed from the get go. . . . [enclosing history]

*February 6, 2008 e-mail from Hoyt Fleming to Tom Coverstone:*

Strange.  I still recall that Uniden had to revise their claims to overcome my patent.  Hf

*February 7, 2008 e-mail from Hoyt Fleming to Tom Coverstone:*

Very strange regarding the email.  I searched the other Uniden patents with the same inventor yesterday.  However, no other patents were located.  I must have mentally merged

---

demonstrates that it retained the ability to provide the same function of Plaintiff's portfolio over the referenced claims of Plaintiff's patent.  But even if the representation in January, 2008 conversation were accurate, the fact that Plaintiff admitted it was not accurate in his e-mail presented reasonable grounds to excuse Coverstone for not performing pursuant to the doctrine of mutual mistake.  [*Delucchi v. County of Santa Cruz*, 179 Cal.App.3d 814, 827 (citing concurring opinion)]

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

1   the Escort patent and the Uniden patent.  Thus, it looks like
2   only the Escort patent was rejected based upon my patent.
    Hoyt Fleming.

3   [Exhibits M, N, O, P, Q: E-mails between Coverstone and Fleming]

4          As Fleming admits, Uniden was not blocked from obtaining patents for GPS-

5   enabled radar detectors due to Plaintiff's portfolio.[9]  His specific representation as to the

6   '653 patent was also false.  The Uniden '653 patent sailed through the United States

7   Patent and Trademark Office (USPTO) without any problem from the Fleming patent.

8          Escort also had not been blocked as represented by Fleming, and had achieved

9   patents in the space.  The one patent application Escort had not pursued involving

10  Fleming's claims was simply because they filed a divisional.  Fleming has not admitted

11  this allegation, though it will be proved to the jury given the undeniable facts as shown in

12  the public record.

13         At the time Plaintiff made the above mentioned representations to Defendant,

14  Plaintiff knew the claims being made by the patents in his portfolio as he was the

15  inventor of that technology.  He also knew that his patent did not cause Uniden's patent

16  application to be rejected, or if he had not reviewed those histories was making reckless

17  assertions as though they were fact.  Therefore, there can be no question that he made

18  material misrepresentations in order to induce Defendant to send his January 22 e-mail,

19  pay the $10,000 deposit, and potentially go forward with the purchase of the portfolio

20  subject to the results of Defendant's due diligence.  Based on that fraud, the purported

21  contract is void.

22  ///

23  ///

24  ///

25  ///

26  _____

[9]    The court can see this demonstrated in the history of patent No. 6,469,653, but
27  given that both sides agree the patent did not have any issues due to Fleming's patent, it
    is not attached here.  To the extent the court wishes to review the patent in its entirety,
28  Coverstone is happy to provide the history or it is available on the USPTO's public
    records section.

1

**IV.**  <u>**CONCLUSION**</u>

2          Based on the evidence establishing a genuine issue in dispute and the legal bars

3  Plaintiff's ability to show that he is entitled to judgment as a matter of law, this motion

4  for summary judgment must be denied.  Therefore, Defendant respectfully requests that

5  this court deny the motion based on any of the independent bases for the denial thereof.

6

7                                        KLINEDINST PC

8

9  DATED: May 12, 2009               By:  /s Gregor A. Hensrude

10                                        Gregor A. Hensrude
                                          Attorneys for Defendant/Counterclaimant
11                                        TOM COVERSTONE

779680v1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA  92101

**DEFENDANT TOM COVERSTONE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
3:08-cv-00355-WQH-NLS**