1  Steven F. Schossberger, California Bar No. 178494
2  John Ashby, ISB No. 7228 (*Admitted Pro Hac Vice*)
   HAWLEY TROXELL ENNIS & HAWLEY, LLP
3  877 W. Main Street, Suite 1000
   Boise, ID 83702
4  (208) 344-6000
   (208) 342-3529 (facsimile)
5
6  Attorneys for Plaintiff
7
8           IN THE UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT A. FLEMING,<br><br>    Plaintiff,<br><br>vs.<br><br>TOM COVERSTONE,<br><br>    Defendant | Case No.: 3:08 CV 355 WQH-NLS<br><br>REPLY TO DEFENDANT'S OPPOSITION TO FLEMING'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| TOM COVERSTONE,<br><br>    Counterclaimant,<br><br>vs.<br><br>HOYT A. FLEMING,<br><br>    Counterdefendant. | Hearing Date: May 26, 2009<br>Hearing Time: 11:00 AM<br>Courtroom: 4<br><br>Judge: William Q. Hayes<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: February 22, 2008<br>Trial Date: None set |
| TOM COVERSTONE,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>TERESA A. FLEMING and PARK VAUGHAN FLEMING LLP,<br><br>    Third-Party Defendants. | ORAL ARGUMENT NOT REQUIRED |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ANALYSIS ........................................................................................................... 1

   A. Parties Capable of Contracting ....................................................................... 1

   B. Consent ........................................................................................................... 1

   C. Sufficient Consideration ................................................................................. 3

   D. Fraud in the Inducement ................................................................................. 4

      1. Defendant's Has Produced No Evidence That He Knew He Was Signing a Patent Purchase Agreement ................................................................... 6

      2. Defendant's Consent Was Not Induced by Fraud .................................. 10

III. CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ................................................................................ 2

*Banco do Brasil, S.A., v. Latian, Inc.*,
    234 Cal.App.3d 973 (1991) .................................................................................... 3

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ............................................................................... 4

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,
    971 F.2d 272 (9th Cir. 1992) ................................................................................. 3

*Edwards v. Comstock Insurance Co.*,
    205 Cal.App.3d 1164, 252 Cal.Rptr. 807 (Cal. App. 1988) ................................... 6

*Ford v. Shearson Lehman American Express*,
    180 Cal.App.3d 1011 (Cal. App. 1986) ................................................................. 4

*Hinesley v. Oakshade Town Center*,
    135 Cal.App.4th 289, 37 Cal.Rptr.3d 364 (Cal. App. 2005) .................................. 4

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F.2d 262 (9th Cir. 1991) ................................................................................. 9

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F.Supp.2d 1200 (S.D. Cal. 2007) .................................................................... 4

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
    69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (Cal. 1968) .................................... 6

*Radobenko v. Automated Equip. Corp.*,
    520 F.2d 540 (9th Cir. 1975) ................................................................................. 9

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal.4th 979 (2004) ............................................................................................ 4

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 4

*Winet v. Price*,
    4 Cal.App.4th 1159 (Cal. App. 1992) ................................................................ 2, 6

**Other Authorities**

5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL
    § 1297 n.28 (3d ed. 2004) ...................................................................................... 4

CAL. CIV. CODE § 1550 ................................................................................................ 1, 11

CAL. CIV. CODE § 1556 ..................................................................................................... 1

| | |
|---|---|
| CAL. CIV. CODE §§ 1636-1639 | 3 |
| FED. R. CIV. P. 12(f) | 5, 8, 10 |
| FED. R. CIV. P. 56(g) | 9 |
| FED. R. CIV. P. 9(b) | 4 |

## I. INTRODUCTION

The specific issue before the court is whether the January 22, 2008 email exchange between Plaintiff and Defendant ("the Exchange") is a valid contract pursuant to California Civil Code § 1550.

## II. ANALYSIS

### A. Parties Capable of Contracting

Once again, Defendant asserts that the parties to the Exchange had not been determined on January 22, 2008. (Doc. #69, at 10) The Court has previously rejected Defendant's identical assertion:

> "the January 22 Email Exchange contemplates that Plaintiff would sell and Defendant would purchase specified patents, and does not indicate that Defendant was not negotiating on his behalf, or that parties other than Plaintiff and Defendant would be bound by the agreement."

(Doc. #47, at 11).

There are two and only two parties to the Exchange, Plaintiff and Defendant. Contrary to Defendant's repeated fallacious assertions, both of these parties were capable of contracting and can be determined from the face of the Exchange. CAL. CIV. CODE § 1556.

### B. Consent

Despite the unequivocal consent evidenced in the Exchange, Defendant once again argues that the "purported offer was countered rather than accepted". (Doc. #69, at 2). This identical assertion has been rejected by the Court:

> "Defendant's January 22, 2008 email to Plaintiff stated that Plaintiff's wife would sign the assignment documents '[a]s we discussed on the phone.' *Complaint*, ¶ 11 Contrary to Defendant's assertion, this email does not constitute a counter-offer because the email states that the parties had already reached an agreement that Plaintiff's wife would sign the documents."

(Doc. #47, at 11).

Defendant further asserts, exactly like he did in his Motion to Dismiss (Doc #32, at 5-8) that the Exchange is not a purchase and sale contract, but an "option agreement" with a "due

diligence period", and because further documentation was "necessary" the emails did not evince a final and binding contract but an agreement to agree [1] (Doc. #69, at 5-10); *cf* (Doc #32, at 5-8). In addressing these arguments, the Court previously provided:

> "The January 22 Email Exchange does not contemplate future negotiations, does not contemplate that a formal contract would be drafted at some future date, does not indicate that the parties had only reached a general understanding of their agreement, and does not otherwise evidence the parties' intent that the January 22, 2008 email Exchange [does] not constitute a binding agreement."

(Doc. #47, at 11)

In opposing Plaintiff's motion for partial summary judgment, Defendant improperly invites the Court to consider various extrinsic evidence. "Under California law, extrinsic evidence is admissible if the language of the contract is "reasonably susceptible" of the meaning urged by the parties." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. 2005); *see Winet v. Price*, 4 Cal App.4th 1159, 1167 (Cal. App. 1992) ("[P]arole evidence is admissible only to prove a meaning to which the language is 'reasonable susceptible' (citation omitted) not to flatly contradict the express terms of the agreement (citation omitted)"). Even if the language appears unambiguous on its face, the court must make a preliminary determination whether the

---

[1] In support of Defendant's tenuous assertions, Defendant makes a blatant misrepresentation to the Court:

> "He admitted, however, that at the time he wrote "agreements," he was not contemplating them as assignments. [Exhibit A: Depo. of H. Fleming at 88:4-19]."

(Doc. #69, at 6, LL. 22-26).

Plaintiff's deposition testimony exposes Defendant's fabrication as follows:

> The Witness: **The reference to "necessary agreements," when I drafted that, was intended to be the documents that would assign the patents from me to Mr. Coverstone either directly or through my church.**
>
> By Mr. Hensrude: Q And anything else other than what you deemed the assignment documents.
>
> A. **No**. (Fleming Depo., at 88, LL. 1-16).

- 2 -

evidence is relevant to prove a meaning of which the instrument is reasonably susceptible. *Altera Corp.*, *supra*, 424 F.3d at 1091; *Banco do Brasil, S.A., v. Latian, Inc.*, 234 Cal.App.3d 973 (1991). Thus, "the parties may introduce evidence to explain the terms of the contract, but they may not introduce evidence of terms not specifically included in the contract or evidence that contradicts the terms of the contract." *Altera Corp.*, *supra*, 424 F.3d at 1091; *see also Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992).

The Exchange unambiguously states that Plaintiff "agreed to sell" and Defendant "agreed to purchase" certain specified patents and patent applications; that the purchase price would be one million dollars; that the parties would strive to close the sale by February 1, 2008 and would close the sale by February 15, 2008; and that Defendant would pay a nonrefundable ten thousand dollar deposit. (Complaint, ¶¶ 10-11); (Doc. #47, at 11). Plaintiff's January 22, 2008 email requested Defendant to confirm "[i]f you agree to the above," and Defendant responded unequivocally: "Agreed." (*Id.* at 11; *see id.*).

Defendant's reference to extrinsic evidence is an improper attempt to introduce evidence of terms not specifically included in the contract and to flatly contradict the express terms of the Exchange.[2] Most notably, Defendant does not contend that a single term in the Exchange is ambiguous and needs to be interpreted by the Court. Thus, the Court should construe the language of the Exchange on its face, and conclude that it is an valid contract as a matter of law. *See* CAL. CIV. CODE §§ 1636-1639; (Doc. #47, at 11, LL. 11-20).

C. **Sufficient Consideration**

Defendant asserts "The Purported Contract is Completely Lacking in Mutuality." (Doc. #69, at 3). Defendant does not, however, assert that the parties to the contract, Plaintiff and Defendant, made illusory promises. Instead, Defendant contends that (1) the Vineyard Boise church is not a party to the Exchange, and (2) the Vineyard Boise church's "promise was

---

[2] Defendant's attempted insertion of the terms "option" and "due diligence" must be disregarded.

- 3 -

1  illusory". (Doc. #69, at 4). Defendant's argument is a *red herring*, and should be discarded

2  because the Vineyard Boise church was not a party to the Exchange, and made no promise at all.

### D. Fraud in the Inducement

Following Plaintiff's motion to strike/dismiss Defendant's Ninth Affirmative Defense (Fraud in the Inducement) (Doc #54), Defendant filed his First Amended Answer in a failed attempt to properly plead a fraud in the inducement defense. (Doc. #58, at 6-7).

It is established law in the Ninth Circuit that Rule 9(b)'s particularity requirement applies to state-law causes of action. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally-imposed rule." *Id.* If a claim is not pled with sufficient particularity, a court may dismiss it for failure to state a claim for which relief can be granted. *Vess, supra*, 317 F.3d at 1107; *see Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *see Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1210 (S.D. Cal. 2007).

In all averments of fraud, including ***affirmative defenses***, the circumstances constituting the fraud must be stated with particularity. *Multimedia Patent Trust, supra*, 525 F.Supp.2d at 1210-11; *see* FED. R. CIV. P. 9(b); *see also* 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1297 n.28 (3d ed. 2004). This pleading requirement is strictly enforced by California courts. *See Robinson Helicopter Co., Inc v. Dana Corp.*, 34 Cal.4th 979, 993 (2004).

"Fraud in the inducement is a subset of the tort of fraud, and it occurs when 'the **promissor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed**, which, by reason of the fraud, is voidable.'" *See Hinesley v. Oakshade Town Center*, 135 Cal.App.4th 289, 294-95, 37 Cal.Rptr.3d 364, 367 (Cal. App. 2005) (emphasis added); *see Ford v. Shearson Lehman American Express*, 180 Cal.App.3d 1011, 1028 (Cal. App. 1986).

- 4 -

REPLY TO DEFENDANT OPPOSITION TO FLEMING'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3:08 CV 355 WQH-NLS

Defendant's Ninth Affirmative Defense is insufficient, and should be stricken *sua sponte* by the Court pursuant to Federal Rule of Civil Procedure 12(f), because Defendant fails to plead that mutual assent was present and a contract was formed by reason of the Exchange, but that his consent was induced by fraud. (*See* Doc #58, at 6-7) Defendant never alleges his acknowledgement of the contract as pled in Plaintiff's Second Amended Complaint. (*See id* and compare to Doc. #29, at ¶¶ 9-18). Instead, Defendant dances around this mandatory pleading requirement, and without making a single reference to the Exchange:

> "In early 2008, Plaintiff and Defendant had telephonic discussions and an in-person meeting regarding the **possibility of entering into an agreement** whereby Defendant would purchase Plaintiff's patent portfolio related to GPS-enabled radar detectors. The parties **discussed** entering into an option agreement that would allow for due diligence to be done with respect to the patents ….
>
> Plaintiff made the misrepresentations regarding Uniden and Escort in order to induce Defendant to pay a $10,000 deposit as an option to purchase the patents subject to due diligence and potentially go forward with the purchase of the portfolio.
>
> In reliance on Plaintiff's representations, Defendant agreed to go forward with an option period and provided Plaintiff with a $10,000 deposit. The deposit was provided and then Defendant proceeded to conduct due diligence associated with the portfolio."

(Doc. #58, at 6, LL. 24-28; at 7, LL. 18-23)[3] (emphasis added)

Therefore, because Defendant's Ninth Affirmative Defense completely misses the mark of the Exchange, i.e., the contract, the Court should exercise its discretion and strike it from the First Amended Answer. (Doc #58); FED. R. CIV. P. 12(f).

Albeit the Court should disregard Defendant's fraud in the inducement defense, Plaintiff will address the additional fallacies presented. In providing this discussion to the Court, Plaintiff

---

[3] Defendant cut and pasted the language of the Ninth Affirmative Defense word for word from the Counterclaim (Count One – Fraudulent Misrepresentation) (Doc. #58, at 11, ¶¶ 8-15).

is strictly demonstrating the specious nature of Defendant's ninth affirmative defense; this discussion does not affect any of the contract analysis discussed above.[4]

Two of the essential elements of Defendant's fraud in the inducement defense are (1) that Defendant knew that he was signing the Exchange, a patent purchase agreement, and (2) that Defendant's consent to the patent purchase agreement was induced by fraud.

### 1. Defendant's Has Produced No Evidence That He Knew He Was Signing a Patent Purchase Agreement

On February 13, 2008 just two days before the last possible closing date specified in the Exchange, Defendant sent Plaintiff an email. The relevant portion of that email reads:

> "My understanding is that our exchange of emails and our conversations is only an outline of a potential, future agreement, and we have since been engaged in communications and assessment of the price and terms, particularly related to the 10% interest. Therefore, there is no current legal obligation. The prospective agreement is incomplete until it is reduced to writing, finalized by attorneys and signed at closing. I don't intend a contract until this is done. ... Because this third party assignment for your tax purposes is not only a material term, but is a troublesome and unconventional term, a binding agreement has not been formed. Even if any contract had been entered, which I don't believe there has, there is no severability provision."

(Fleming Depo., Exh. 46)

Defendant's February 13, 2008 email provides the first indication of Defendant's state of mind on January 22, 2008. On that date, Defendant harbored an unexpressed intention that the Exchange was not a contract. For example, Defendant's email states: "My understanding is that our exchange of emails ... is only an outline of a potential, future agreement"; "there is no

---

[4] In most contract analyses, a party's unexpressed intentions are irrelevant. "Our objective in construction of the language used in the contract is to determine and to effectuate the intention of the parties. (*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 38, 69 Cal.Rptr. 561, 442 P.2d 641 (Cal. 1968).) It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. (*See, e.g., Edwards v. Comstock Insurance Co.*, 205 Cal.App.3d 1164, 1169, 252 Cal.Rptr. 807 (Cal. App. 1988).)" *Winet v. Price*, 4 Cal. App. 4th, 1159, 1166 (1992) However, a party's secretly held intentions are relevant to a fraud in the inducement analysis because the party's state of mind, *i.e.*, what he knew and why he consented, are essential elements of a fraud in the inducement defense.

- 6 -

REPLY TO DEFENDANT OPPOSITION TO FLEMING'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3:08 CV 355 WQH-NLS

current legal obligation"; "I don't intend a contract"; "a binding agreement has not been formed"; and "Even if any contract had been entered, which I don't believe there has ...."

On the next day, February 14, 2008, Defendant sent Plaintiff another email. A portion of that email follows:

> "There is and never was any agreement on the key, material terms for this potential contract."

(*Id.* at Exh. 48)

Defendant's February 14 email again makes it very clear, Defendant harbored a secret and unexpressed intention that the Exchange was not a contract. The Exchange, according to Defendant, was only a "potential contract", whatever that means.

On February 15, 2008, Defendant sent Plaintiff yet another email. A portion of that email follows:

> "Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there was an agreement. There was not an agreement, there never was.
>
> In addition, you committed fraud – even if there was an agreement – which there was not – it would have been based on fraud in the inducement."

(*Id.* at Exh. 51)

Defendant's February 15, 2008 email states "there was not an agreement, there never was" and "even if there was an agreement -- which there was not -- it would have been based on fraud in the inducement." Defendant's statements once again make it clear, Defendant held a secret and unexpressed belief that the Exchange was not a contract.

Emails are not the only evidence of Defendant's purported state of mind on January 22, 2008. On at least two occasions Defendant, a California attorney, declared he did not know that he was signing a contract when he sent Plaintiff the second half of the Exchange.

> "At the time I sent Exhibit 'B' [the second half of the Exchange], I did not intend to formulate a binding contract. In fact, I was traveling that day and simply typed a few words into my Blackberry as part of the continuing discussions."

- 7 -

(Declaration of Tom Coverstone, Doc. #11-3, ¶ 6).

> "At the time I sent Exhibit 'B' [the second half of the Exchange], I did not intend to formulate a binding contract. In fact, I was traveling that day and simply typed a few words into my Blackberry as part of the continuing discussions."

(Declaration of Tom Coverstone, Doc. #33-3, ¶ 6)

Defendant's two declarations both state when he sent his January 22, 2008 email to Plaintiff, Defendant "did not intend to formulate a binding contract" and "I ... simply typed a few words into my Blackberry as part of the continuing discussions". In other words, Defendant declared that he did not know that he was signing a contract when he typed "Agreed" in an email and sent the email to Plaintiff on January 22, 2008. To the contrary, Defendant declared that he was simply typing into his Blackberry "as part of the continuing discussions."

Although incredulous, Defendant's **two declarations** and Defendant's emails negate an essential element of his fraud in the inducement defense, i.e., that Defendant knew what he was signing, a contract generally and a patent purchase contract specifically.

Defendant's most recently revised affidavit tells a different, but still insufficient, story:

> "On January 22, 2008 Mr. Fleming and I exchanged some e-mails evidencing our intention to put a transaction together wherein my company would purchase the patents for $1 million if they checked out after a due diligence period. It was my intention and understanding that this was an option agreement whereby my company had the sole right to purchase the portfolio prior to February 15, 2008. ... I did not intend to enter into a binding agreement to purchase the patents at that time. ..."

(Affidavit of Tom Coverstone, Doc. #69-2, ¶ 6).[5]

In this affidavit, Defendant declares that he had an "understanding" that the Exchange was an option agreement whereby his company had the sole right to purchase the portfolio prior to February 15, 2008. The words "option" and "due diligence" are not in the Exchange. In addition, the "company" to which Defendant is referring is GMT Management Co. (See

---

[5] This specific averment is not alleged in Defendant's Ninth Affirmative Defense, and it should be stricken and disregarded by the Court. (Doc. #58, at 6-7); FED. R. CIV. P. 12(f).

Doc. #69-2, ¶ 2) is likewise not mentioned in the Exchange. It is not relevant if Defendant believed that he was signing an option agreement in which GMT Management Co. was a party. What matters is whether Defendant knew that he was signing a patent purchase agreement in which he was a party. Defendant has not submitted any evidence that he knew what he was actually signing.

Defendant's most recent affidavit is a sham. It flatly contradicts Defendant's two prior declarations

| Prior Declarations (Doc. #11-3, ¶ 6; Doc. #33-3, ¶ 6) | Affidavit (Doc. #69-2) |
|---|---|
| "At the time I sent Exhibit 'B' [the second half of the Exchange], I did not intend to formulate a binding contract" | "It was my intention and understanding that this was an option agreement whereby my company had the sole right to purchase the portfolio prior to February 15, 2008 ... I did not intend to enter into a binding agreement to purchase the patents at that time" |

In Defendant's two prior declarations, Defendant declares that he "did not intend to formulate a binding contract". However, in Defendant's recent affidavit, Defendant declared that he intended an "option agreement" that provided Defendant's company, GMT Management Co. with the sole right to purchase Plaintiff's patent portfolio until February 15, 2008. The option agreement of Defendant's recent affidavit is a "binding contract" as it provides GMT Management Co "with the sole right to purchase the portfolio" (Doc. #69-2, ¶ 6). Thus, Defendant's affidavit directly contradicts his two earlier declarations.

As is well known, a sham affidavit that flatly contradicts earlier testimony cannot be used to create an issue of fact and avoid summary judgment. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Thus, Defendant's most recent affidavit should be stricken and disregarded by the Court. *See also* FED. R. CIV. P. 56(g). However, as discussed above, even if Defendant's affidavit is not stricken, it is irrelevant.[6]

---

[6] *See* Plaintiff's Evidence Objections filed concurrently herewith

- 9 -

REPLY TO DEFENDANT OPPOSITION TO FLEMING'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3:08 CV 355 WQH-NLS

## 2. Defendant's Consent Was Not Induced by Fraud

A second essential element of Defendant's fraud in the inducement defense is that Defendant's consent to the Exchange, a patent purchase agreement, was induced by fraud.

In Defendant's above-discussed declarations and emails, Defendant has made it clear that his unexpressed intent was <u>not</u> to formulate a contract on January 22, 2008. Thus, there is no dispute that on January 22, 2008 Defendant harbored an unexpressed intent not to consent to a contract. The fact that Defendant, a California attorney, sent Plaintiff an email stating that he "Agreed" to purchase Plaintiff's patent portfolio for one million dollars, while apparently harboring an unexpressed intent not to formulate a contract, makes Defendant's litigation position quite dubious. Nonetheless, according to Defendant's testimony, he never consented to the terms of the Exchange, and absent such consent, his consent was not induced by fraud.

Defendant's recent affidavit avers:

> "I would not have agreed to an option period, paid the deposit, or even typed 'agree' in my January 22, 2008 email without those representations."

(Doc. #69-2, ¶ 4).

> "I did not intend to enter into a binding agreement to purchase the patents at that time. ..."

(*Id.* at ¶ 6).[7]

Paragraph 4 of Defendant's affidavit does not establish that Defendant consented to the Exchange based on fraud. It is irrelevant if Defendant would have agreed to an option period, paid a deposit or typed anything into his Blackberry. What is relevant is whether Defendant consented to the Exchange, a patent purchase agreement, based upon fraud. There is no dispute. Defendant did not

Moreover, to the extent that paragraph 4 of Defendant's affidavit indicates that he consented to any agreement on January 22, 2008, it should be stricken as the affidavit flatly

---

[7] This specific averment is not alleged in Defendant's Ninth Affirmative Defense, and it should be stricken and disregarded by the Court. (Doc. #58, at 6-7); FED. R. CIV. P. 12(f).

- 10 -

REPLY TO DEFENDANT OPPOSITION TO FLEMING'S MOTION FOR PARTIAL SUMMARY JUDGMENT
3:08 CV 355 WQH-NLS

contradicts his two prior declarations, e.g., ("At the time I sent Exhibit 'B' [the second half of the Exchange], I did not intend to formulate a binding contract"), and it is outside of the pleading of the Ninth Affirmative Defense.

### III.  CONCLUSION

For each of the above and foregoing reasons, Defendant most respectfully requests a ruling from that Court that the Exchange is a valid contract under California Civil Code § 1550

Dated this 19th day of May, 2009.

>   Respectfully Submitted,
>
>   HAWLEY TROXELL ENNIS & HAWLEY LLP
>
>
>   By: ____/s/ Steven F. Schossberger_____
>   Attorneys for Plaintiff
>   E-mail: sfs@hteh.com

- 11 -