1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

HOYT A. FLEMING,                                          CASE NO. 08cv355 WQH (NLS)

12

Plaintiff,            **ORDER**

vs.

13

TOM COVERSTONE,

14

Defendant.

15

HAYES, Judge:

16

The matters before the Court are the (1) Motion for Partial Summary Judgment that the

17

January 22, 2008 Email Exchange is a Valid Contract (Doc. # 50), filed by Plaintiff Hoyt A.

18

Fleming, (2) Motion for Attorney Fees pursuant to California Code of Civil Procedure section

19

425.16(c) (Doc. # 51), filed by Defendant Tom Coverstone, and (3) Motion to Dismiss for

20

Lack of Jurisdiction (Doc. # 56), filed by Counter-Defendant Teresa A. Fleming.

21

**Background**

22

On February 22, 2008, Plaintiff Hoyt A. Fleming initiated this action by filing a

23

complaint (Doc. # 1).  On March 12, 2008, Plaintiff filed a first amended complaint, which

24

alleged causes of action for breach of contract, defamation, and civil extortion.  On June 18,

25

2008, Defendant filed a special motion to strike the first amended complaint's second and third

26

causes of action pursuant to California's Anti-SLAPP statute, section 425.16(c) of the

27

California Civil Code (Doc. # 11).  On June 30, 2008, Plaintiff filed a motion to amend

28

complaint (Docs. # 13, 14).  The proposed second amended complaint alleged causes of action

for breach of contract, defamation, and civil extortion.  However, on July 16, 2008, Plaintiff filed a notice of withdrawal of the motion to amend regarding the defamation claim, which gave "notice that [Plaintiff] withdraws the motion to amend complaint regarding Count Two (defamation) of the proposed second amended complaint" (Doc. # 24).

On October 21, 2008, Plaintiff filed the "Second Amended Complaint for Breach of Contract and Extortion" ("SAC"), which is the operative pleading in this case (Doc. # 29).  The SAC alleges causes of action for breach of contract, and extortion in violation of sections 518-527 of the California Penal Code.  The SAC alleges that on January 22, 2008, Plaintiff sent Defendant an email that stated in part:

> Tom,
>
> This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352.  The purchase price for the above patents and applications is one million dollars.
>
> You and I will strive to close the sale by February 1, 2008.  However, you and I will close the sale by February 15, 2008.
>
> Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you, or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.
>
> You and I agree that you and/or your attorneys will draft the necessary agreements.
>
> You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price.  This deposit will not be refunded if the above sale is not completed by February 15, 2008.  I agree to work with you and your attorneys to close the sale by February 15, 2008.
> . . .
>
> If you agree to the above, then please confirm via email.
>
> Thank you,
> Hoyt Fleming

*SAC,* ¶ 10.

The SAC alleges that on January 22, 2008, Defendant sent Plaintiff an email that stated in part:

Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed . . . .

Best regards,
Tom

*Id., ¶* 11.  The SAC alleges that "[t]he [January 22 Email Exchange] constitutes a binding and enforceable contract. . . . not merely an agreement to agree." *Id., ¶* 12.  The SAC alleges that on January 23, 2008, Defendant wired Plaintiff $10,000.00. *Id., ¶* 13.

The SAC alleges that on February 15, 2008, Defendant sent Plaintiff an email which stated: "You mischaracterized your patents, the prior art and the file histories.  You also did not disclose material facts relating to same. . . .  Please send my $10,000 to the address below by February 20th.  If you agree to return the $10,000, I will agree to release and waive my potential claims against you." *Id., ¶* 19.  The SAC alleges that on February 15, 2008, Plaintiff sent Defendant an email that stated: "Your position is you would like me to return your deposit even though you agreed that the deposit would not be refunded.  My position is that you owe me specific performance." *Id., ¶* 20.  The SAC alleges that on February 15, 2008, Defendant sent Plaintiff another email which stated that "[t]here was not an agreement, there never was" because "[w]e did not agree on key material terms;" and that even if there was an agreement, "you committed fraud" in the inducement because you "materially misrepresented key facts relating to your patents and competing patents." *Id., ¶* 21.  The SAC alleges that Defendant threatened to publicly accuse Plaintiff of "serious ethics violations," including publicly accusing Plaintiff of an "illegal tax scam" unless Plaintiff paid Defendant $10,000.00. *Id., ¶¶* 23-26.  The SAC alleges that "Defendant's blackmail threats were made with malice in fact." *Id., ¶* 27.  The SAC alleges that "[a]lthough [Plaintiff] was being blackmailed by Defendant, [Plaintiff] did not pay Defendant the demanded $10,000." *Id., ¶* 30.

On March 18, 2009, this Court issued an order (Doc. # 47) denying a motion to dismiss filed by Coverstone (Doc. # 32), and granting a special motion to strike pursuant to California's anti-SLAPP statute filed by Coverstone (Doc. # 33).  With respect to the motion to dismiss, the Court concluded that the SAC sufficiently alleged an enforceable contract because SAC alleged "sufficient facts to support a finding that the material terms of the parties' agreement were reasonably certain and that the parties have manifested assent to the terms." *Order Denying Mot. to Dismiss,* p. 11-12.  With respect to the motion to strike, the Court struck the SAC's second cause of action for extortion under California's anti-SLAPP statute, concluding that Plaintiff "failed to demonstrate a probability of prevailing on his extortion claim because the communications underlying the claim are protected by the litigation privilege and therefore cannot serve as a basis for Defendant's tort liability." *Id.,* at 8.

On March 18, 2009, this Court issued another order (Doc. # 48) granting a motion for attorney fees filed by Defendant.  The Court concluded that Defendant was entitled to attorney fees related to the defamation claim alleged in the first amended complaint under California's anti-SLAPP statute.  The Court found that Plaintiff's amendment of the first amended complaint to remove the defamation claim was tantamount to a voluntary dismissal of his defamation claim which was the subject of a pending anti-SLAPP motion such that Defendant was the prevailing party within the meaning of California's anti-SLAPP statute, and entitled to attorney fees.  The Court held that Plaintiff's requested fees of $15,790.50 were reasonable, and awarded Defendant $15,790.50 in attorney fees.

On March 30, 2009, Defendant filed the Answer to the SAC and Counterclaim (Doc. # 49).  The Counterclaim added Teresa A. Fleming ("Teresa Fleming") as a Counter-Defendant.  The Counterclaim alleges that Teresa Fleming is married to Plaintiff, and is believed to be a resident of the State of Idaho, a community property state, such that Teresa Fleming "held an interest in the patent portfolio that is the subject of the January 22 Email Exchange." *Id.,* at 14.  The Counterclaim alleges that the Court cannot award complete relief without Teresa Fleming's involvement in this lawsuit if the allegation in the SAC that Teresa

Fleming is a signator to a binding contract is found to be true.

On April 1, 2009, Plaintiff filed the Motion for Partial Summary Judgment. Plaintiff seeks summary judgment that the January 22 Email Exchange is a valid contract under section 1550 of the California Civil Code. On April 1, 2009, Defendant filed the Motion for Attorney Fees. Defendant seeks attorney fees in the amount of $20,588.00 incurred in connection with Defendant's successful anti-SLAPP motion of the extortion cause of action, pursuant to section 425.16(c) of the California Code of Civil Procedure. On April 13, 2009, Teresa Fleming filed the Motion to Dismiss for Lack of Jurisdiction. Teresa Fleming moves to dismiss the Counterclaim for declaratory relief against her for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. On April 24, 2009, Plaintiff filed the Opposition to the Motion for Attorney Fees (Doc. # 63). On May 4, 2009, Defendant filed the Reply to the Opposition to the Motion for Attorney Fees (Doc. # 66). On May 12, 2009, Defendant filed the Opposition to the Motion for Partial Summary Judgment (Doc. # 69), and the Opposition to the Motion to Dismiss for Lack of Jurisdiction (Doc. # 68). On May 19, 2009, Plaintiff filed the Reply to the Motion to Dismiss for Lack of Jurisdiction (Doc. # 73), and the Reply to the Opposition to the Motion for Partial Summary Judgment (Doc. # 74).

**Analysis**

**I.     Motion for Attorney Fees**

Defendant contends that on March 18, 2008, the Court held that Defendant was entitled to attorney fees incurred with respect to the defamation claim. Defendant contends that "[t]he award of attorneys' fees was effectively half of the attorneys' fees associated with the first anti-SLAPP motion because that motion related to both the defamation claim and the extortion claim." *Mot. for Fees,* p. 2. Defendant contends that the other half of attorney fees "could not be awarded at that time because the court had not yet determined that Defendant was the prevailing party as to the extortion claim." *Id.* Defendant contends that the Court "can now properly award the second half of the attorneys' fees associated with the first anti-SLAPP motion (the portion related to the extortion claim) and the fees incurred by Defendant in submitting his second anti-SLAPP motion after Plaintiff filed his second amended complaint"

because the Court has since granted the motion to strike the extortion claim. *Id.* Defendant requests a total fee award of $20,588.00, to be paid within 30 days.

Defendant requests an award of attorney fees based on an hourly rate of $425.00 for John Klinedinst, the shareholder on file; of $245.00 for Gregor Hensrude, the senior associate at the time he provided services in connection with the anti-SLAPP motions; and of $220.00 for Daniel Agle, the junior associate on file. Defendant contends that requested fees are reasonable "[i]n light of the court's prior order granting approximately $16,000 in attorneys fees associated with one-half of the first anti-SLAPP motion (related to the defamation claim), Plaintiff's position that $20,000 for the other half (extortion) *plus the entirety of the second motion.*" *Reply,* p. 1 (emphasis in original).

In support of the Motion for Attorney Fees, Defendant submitted the declaration of Hensrude. Hensrude attests that he has personal knowledge of the facts in his declaration, and that he has been able to determine the work associated with the anti-SLAPP motion based on "review of the bills and my involvement in the work." *Hensrude Decl.,* ¶ 3. Hensrude attests that Klinedinst, Hensrude and Agle "performed the following legal services that are associated with the anti-SLAPP motion of the defamation claim filed by Plaintiff:" *Hensrude Decl.,* ¶ 3.

| Category | Amount |
|---|---|
| Communication and conference with client regarding facts and strategy related to extortion claim | Klinedinst: $170.00 (0.4 hrs at $425/hr)<br>Hensrude: $1,249.50 (5.1hrs at $245/hr) |
| Legal and factual research in preparation for anti-SLAPP of extortion claim (both motions and replies) | Hensrude: $1,225.00 (5.0 hrs at $245/hr)<br>Agle: $1,342.00 (6.1 hrs at $220/hr) |
| Analysis of law and facts regarding anti-SLAPP of extortion claim | Klinedinst: $255.00 (0.6 hrs at $425/hr)<br>Hensrude: $392.00 (1.6 hrs at $245/hr)<br>Agle: $1,122.00 (5.1 hrs at $220/ hr) |
| Draft anti-SLAPP motions and supporting papers related to extortion claim | Klinedinst: $ 85.00 (0.2 hrs at $425/ hr)<br>Hensrude: $1,641.50 (6.7 hrs at $245/ hr)<br>Agle: $3,762.00 (17.1 hrs at $220/ hr) |
| Draft replies to anti-SLAPP motions as to extortion cause of action only | Hensrude: $2,352.00 (9.6 hrs at $245/ hr)<br>Agle: $3,828.00 (17.4 hrs at $220/ hr) |

| Preparation of this motion and supporting papers | Hensrude: $245.00 (1 hr at $245/ hr) Agle: $1,958.00 (8.9 hrs at $220/ hr) |
|---|---|
| Preparation of reply brief for this motion | Hensrude: $147.00 (0.6 hrs at $245/ hr) Agle: $814.00 (3.7 hrs at $ 220/ hr) |
| Total | $20,588.00 |

Plaintiff does not dispute that Defendant is entitled to an award of reasonable attorney fees incurred in connection with the anti-SLAPP motions related to the extortion claim, or the requested hourly rates of Defendant's counsel. Plaintiff does "challenge the amount of time claimed for certain tasks relating to the motion to strike and respectfully requests that the Court take a very hard look at the reasonableness of the hours expended in ruling on this motion." *Opposition,* p. 1. Plaintiff states: "Taking [Hensrude's] extensive experience with anti-SLAPP motions into consideration, which would certainly include legal research and brief writing, a review of the amount of hours expended on the tasks being requested in this motion should reveal the unreasonableness of the request." *Id.* at 4. Plaintiff contends that the request for 5.1 hours for Hensrude's communication and conference with Defendant regarding facts and strategy related to the extortion claim is excessive because the sole extent of the facts and legal basis for the extortion claim were based upon threats made by Plaintiff in a couple of email exchanges with Plaintiff. Plaintiff contends that the request for 11.1 hours for legal research and an additional 6.7 hours for analysis of law and facts regarding anti-SLAPP of extortion claim is excessive based on Hensrude's extensive experience dealing with anti-SLAPP motions and the "presumed brief depository of Klinedinst PC of its many litigated anti-SLAPP motions." *Id.* at 7. Plaintiff contends that the request for 23.8 hours for drafting the anti-SLAPP motions and supporting papers is excessive because the analysis presented by Defendant is not complex, the statement of facts is only three pages long, and the legal standard "undoubtedly was cut-and-pasted from an anti-SLAPP motion done in another case." *Id.* Plaintiff contends that the request for 27 hours for drafting the replies to the anti-SLAPP motions is excessive because "the approximately seven pages devoted to the extortion claim in the reply brief does not warrant 27 hours between two attorneys with claimed experience

in this subject area." *Id.* at 8.  Plaintiff contends that the request for 9.9 hours for preparing the instant Motion for Attorney Fees and 5.5 hours for preparing the reply is excessive because this Motion mirrors the prior motion for attorney fees such that "Defendant merely had to cut and paste for this motion." *Id.*  Plaintiff also contends that Defendant's request that the Court order Plaintiff to pay the fee award within thirty days is not supported by legal authority, and that "Defendant has not provided the Court with any factual basis which would show good cause why such an order should be imposed." *Id.* at 7-8.

An award of attorney fees to a prevailing defendant is mandatory under the anti-SLAPP statute. *Christian Research Institute v. Alnor,* 165 Cal, App. 4th 1315, 1321 (2008).  The court, however, has broad discretion in determining the reasonable amount of attorney fees and costs to award to a prevailing defendant. *Metabolife International, Inc. v. Wornick,* 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002) (citing *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App. 4th 777, 785 (1996).  The amount of reasonable fees to be awarded to the prevailing party are calculated according to a two part lodestar/multiplier approach.  Under the lodestar method, a court determines an initial estimate of fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.5 (9th Cir. 1987).  A court may then adjust the lodestar figure upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar.  There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in "rare and exceptional cases." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted).  The Court must have "substantial evidence" to support the fee award.  *Macias v. Hartwell,* 555 Cal. App. 4th 669. 676 (1997).

Defendant requests fees for over 5 hours for counsel's communications with Defendant regarding the facts and strategy related to the extortion claim.  The Court finds that the extortion claim is uncomplicated, and is based on threats made in a limited email exchange between the parties.  The Court has already awarded Defendant fees for over 5 hours client communications regarding the facts and strategy related to the defamation claim, which was

predicated on similar facts.  The Court reduces Defendant's requested fee award with respect to Hensrude's communication with Defendant regarding facts and strategy related to the extortion claim by four hours.  Defendant requests fees for over 60 hours of work related to the preparation of the anti-SLAPP motions of the extortion claim, and asserts that Agle spent more than 45 hours researching and drafting the anti-SLAPP motions related to the extortion claim.  The Court finds that the anti-SLAPP motions were straight-forward and uncomplicated. The Court has already awarded Defendant attorney fees for the portion of the first anti-SLAPP motion that was related to the defamation claim, and there is substantial overlap in the first anti-SLAPP motion of the extortion and defamation claims.  The Court reduces Defendant's requested fee award with respect to work performed by Agle in connection with the anti-SLAPP motions of the extortion claim by 30 hours.  Defendant also requests fees for over 15 hours of work related to the preparation of this Motion for Attorney Fees, and asserts that Agle spent almost 13 hours preparing this Motion.  The Court finds that this Motion for Attorney Fees is uncomplicated, routine, and very similar to the motion for attorney fees already submitted in this case with respect to the defamation claim.  The Court reduces Defendant's requested fee award with respect to work performed by Agle in connection with this Motion for Attorney Fees by ten hours.  In light of the foregoing, the Court finds that Defendant's requested fee award is excessive.  The Court reduces Defendant's requested fee award for services performed by Hensrude by 4 hours, or $980.00, and reduces the requested fee award for services performed by Agle by 40 hours, or $8,800.00.  The Court awards Defendant attorney fees totaling $10,808.00 for the anti-SLAPP motions of the extortion claim.  The attorney fees are granted for Plaintiff's baseless extortion claim filed against Defendant, and the Court finds that there is no reason for Defendant to wait until the remaining contract issues are resolved to recover fees related to the extortion claim.  Plaintiff shall pay Defendant the attorney fees within 30 days of the date of this Order.

///

///

///

1   **II.      Motion for Partial Summary Judgment**

2         A.      <u>Standard of Review</u>

3         Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

4   Procedure where the moving party demonstrates the absence of a genuine issue of material fact

5   and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex*

6   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing

7   substantive law, it could affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*,

8   477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine if "the evidence is such

9   that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

10        A party seeking summary judgment always bears the initial burden of establishing the

11  absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  If the moving party

12  satisfies its initial burden, the nonmoving party must "go beyond the pleadings and by her own

13  affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

14  specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ.

15  P. 56(e)).

16        In ruling on a motion for summary judgment, the Court must view all inferences drawn

17  from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*

18  *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Credibility

19  determinations [and] the weighing of evidence . . . are jury functions, not those of a judge,

20  [when] he is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

21        B.      <u>Analysis</u>

22        Plaintiff contends that the January 22 Email Exchange is "clear and unambiguous," and

23  that "the intentions of the parties should be ascertained from the January 22 Email Exchange

24  and not from any extrinsic evidence."  *Mot. for Summary Judgment,* p. 5.  Plaintiff contends

25  that the January 22 Email Exchange "evidences consent of both Plaintiff and Defendant;" that

26  the January 22 Email Exchange "has a lawful objective, namely to sell Plaintiff's patents and

27  patent applications to Defendant for one million dollars;" and that the January 22 Email

28  Exchange "demonstrates sufficient consideration, namely mutual promises Plaintiff promised

to sell his intellectual property in exchange for Defendant promising to pay $1,000,000." *Id.* at 6-7. Based on the foregoing, Plaintiff "requests that the Court rule that the January 22 Email Exchange was a valid contract." *Id.*

Defendant contends that extrinsic evidence is routinely admitted to allow courts to determine the parties' intent, and that the extrinsic evidence in this case demonstrates that the parties did not intend to create an enforceable contract for the purchase and sale of Plaintiff's patent portfolio through the January 22 Email Exchange. Instead, Defendant contends that the extrinsic evidence demonstrates that the parties intended the January 22 Email Exchange to constitute an option agreement whereby Plaintiff would take a deposit in exchange for removing his patents from the market during a due diligence period. In support of the Opposition, Defendant submitted his declaration, where he attests that he did not intend to be bound by the January 22 Email Exchange, but instead intended to agree to pay a $10,000 deposit to conduct exclusive due diligence on Plaintiff's patent portfolio; that this is the custom and practice of the industry in the purchase and sale of patents; and that had the due diligence panned out, he would have entered into a formal written contract. *Coverstone Decl.,* ¶ 6. Defendant also submitted a copy of a February 15, 2008 email from Plaintiff to Defendant, which supports Defendant's position that the meaning of the January 22 Email Exchange was susceptible to more than one interpretation. Plaintiff wrote: "Regardless of whether you or I agree that the [January 22 Email Exchange] create[s] a contractual requirement for you to purchase my patent portfolio, you agreed to the non-return of your deposit if the patent portfolio sale was not completed by February 15, 2008." *Mot. for Summary Judgment,* Exhibit 6. Defendant also submitted a series of emails that were exchanged between the parties, which demonstrate that Defendant was engaged in the process of conducting due diligence after the January 22 Email Exchange. *Id.,* Exhibits E-L. Defendant contends:

> In light of Coverstone's unequivocal statement that he did *not* intend to have a binding purchase and sale contract, evidence of Fleming's own words showing that he too had a different intent, and the parties' subsequent actions, the agreement was an option agreement, whereby Coverstone would complete his due diligence and, if it showed what he had hoped, purchase the patent for $900,000 to Fleming and $100,000 to Vineyard Boise. But even if there is some dispute as to that point, there can be no question that the evidence of the parties' intent raises a triable issue of fact on the record presented.

*Id.* at 10.  Defendant also contends that the January 22 Email Exchange is unenforceable because Defendant's January 22, 2008 email was a counteroffer and not an acceptance based on the additional term that was not included in the original email that Plaintiff's wife will sign assignment documents or whatever is needed.  Defendant also contends that the January 22 Email Exchange is enforceable because it is lacking in mutuality, and because it is based on fraud in the inducement.

"Under California law, extrinsic evidence is admissible if the language of the contract is 'reasonably susceptible' of the meaning urged by the parties." *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1091 (9th Cir. 2005) (citing *Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal. 2d 33 (1968)); *seel also Delta Dynamics, Inc. v. Edwin Arioto,* 69 Cal. 2d 525, 528 (1968) ("The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.").  "[E]ven if the language appears unambiguous on its face, the court must first make a preliminary determination whether the evidence is relevant to prove a meaning of which the instrument is reasonably susceptible." *Altera Corp.,* 424 F.3d at 1091 (citing *Banco do Brasil, S.A. v. Latian, Inc.,* 234 Cal. App. 3d 973 (1991)).  Courts consider all credible evidence offered to prove the intention of the parties in determining whether the offered evidence is relevant in determining the meaning of the writing. *Delta Dynamics, Inc.,* 69 Cal. 2d at 528.  "If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for . . . , extrinsic evidence to prove either of such meanings is admissible." *Id.* (internal quotations omitted).

Plaintiff has not submitted any extrinsic evidence, and instead relies on the assertion that the Court may not consider extrinsic evidence because meaning of the January 22 Email Exchange is unambiguous.  Plaintiff contends that January 22 Email Exchange constitutes an enforceable contract on its face because the January 22 Email Exchange identifies the parties, who are capable of contracting; evidences the consent of the parties to the terms; has a lawful

objective, namely to sell Plaintiff's patents and patent applications to Defendant for one million dollars; and demonstrates sufficient consideration.  Defendant, however, proposes a different interpretation of the January 22 Email Exchange.  Defendant contends that the parties "did not intend to enter into a binding agreement through the" January 22 Email Exchange, but instead that Defendant "intended to agree to pay a $10,000 deposit to conduct exclusive due diligence on the patent." *Opposition,* p. 5.  The evidence submitted by Defendant supports that Defendant did not intend that the January 22 Email Exchange constitute an enforceable contract for the purchase and sale of Plaintiff's patent portfolio; that Defendant intended that the January 22 Email Exchange constitute an option agreement, whereby Defendant would complete his due diligence and, if it showed what Defendant hoped, would purchase the patent for $900,000 to Fleming and $100,000 to Vineyard Boise; and that the parties' conduct supports that they engaged in a due diligence period following the January 22 Email Exchange. The Court has considered the evidence submitted by Defendant, the language in the January 22 Email Exchange, and the surrounding circumstances, and finds that the January 22 Email Exchange "is fairly susceptible of either one of the two interpretations contended for." *Delta Dynamics, Inc.,* 69 Cal. 2d at 528.  The Court therefore finds that the extrinsic evidence submitted by Defendant is admissible.  The evidence submitted by Defendant supports that January 22 Email Exchange was an option agreement, not a valid contract for the purchase and sale of Plaintiff's patent portfolio.  Viewing the facts in the light most favorable to Defendant, the Court concludes that there is a triable issue of fact with respect to whether the January 22 Email Exchange constitutes a binding contract for the purchase and sale of Plaintiff's patent portfolio.  The Motion for Partial Summary Judgment is denied.

## III.   Motion to Dismiss for Lack of Jurisdiction

### A.   Standard of Review

On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction.  *Farmers Ins. Exchange v. Portage La Prarie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990).  A district court has the discretion to take evidence at a preliminary hearing in order to resolve issues of credibility or disputed questions

of fact with regard to jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). Where the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to satisfy this burden. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002). While the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. *AT&T v. Campagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.; see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000). "[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

The exercise of personal jurisdiction over a nonresident defendant must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. *Pac. Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1327 (9th Cir. 1985). California's long-arm statute permits the exercise of personal jurisdiction "on any basis not inconsistent with the Constitution of the United States." Cal. Civ. Pro. Code § 410.10. Due process requires that the defendant have such "minimum contacts" with the forum state that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1954). Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

A court exercises specific personal jurisdiction[1] over a defendant where the cause of action arises out of or has a substantial connection to the defendant's contact with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007).

B.    <u>Analysis</u>

Teresa Fleming contends that the Counterclaim seeks to haul Teresa Fleming into Court based on assertions and allegations of Plaintiff's conduct and contacts with California, not Teresa Fleming's contacts with California. Teresa Fleming contends that Defendant "improperly alleges that Plaintiff's allegations subject Plaintiff's spouse, [Teresa Fleming], to jurisdiction in California," and that the "allegations and assertions of a spouse are not a proper basis for jurisdiction." *Mot. to Dismiss,* p. 3. In support of the Motion to Dismiss, Teresa Fleming submitted her declaration where she attests that she has never met or communicated with Defendant; that she is not a signator of the January 22 Email Exchange, or any contract with Defendant; that she has not done any act in California with respect to the January 22 Email Exchange between Plaintiff and Defendant; and that she has no other significant contact with California. *Teresa Fleming Decl.,* ¶¶ 2-14. Teresa Fleming also submitted a supplemental declaration where she attests that Plaintiff has never assigned any interest in any patent or patent application to her; that no written document exists or has every existed in

---

[1] A court can also exercise general personal jurisdiction if the defendant's contact with the forum is "substantial, continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15 (1984). Defendant, however, does not assert that the Court has general personal jurisdiction over Teresa Fleming or that Teresa Fleming has contacts with California are "substantial, continuous and systematic." *See id.*

which Plaintiff has assigned any interest in any patent or patent application to her; and that no court has ever divided any interest in any of Plaintiff's patents or patent applications between Plaintiff and herself.  *Teresa Fleming Supp. Decl.,* ¶¶ 8-10.  Based on the foregoing, Teresa Fleming contends that she "does not have minimum contacts with California sufficient for [Defendant] to fairly haul [her] into California to defend in this state."  *Mot. to Dismiss,* p. 4.

Defendant contends that, as alleged in the Counterclaim, Teresa Fleming holds an interest in the patent portfolio that is the subject of this litigation because the patent portfolio is the community property of Plaintiff and Teresa Fleming.  Defendant contends that "[a]lthough [Teresa Fleming] has asserted that she holds no interest in the portfolio because she is not a registered owner with the USPTO, she ignores the fact that the portfolio is unquestionably a community asset.  Because Plaintiff and [Teresa Fleming] reside in Idaho, the community nature of their property is established under Idaho law."  *Id.* at 3.  Defendant contends that Teresa Fleming's interest the proceeds anticipated from the sale of the patent portfolio that is the subject of this action is a community asset, and is sufficient to establish the necessary personal jurisdiction.  *Id.* at 5.

In Idaho, where Plaintiff and Teresa Fleming reside, "the characterization of an asset as community or separate property depends on the date and source of the property's acquisition."  *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust,* 206 P.3d 481, 488 (2009).

> Property acquired during the marriage is presumptively regarded as community property.  The party seeking to overcome the presumption has the burden of proving with reasonable certainty and particularity that an asset is his or her separate property.  This may be accomplished by establishing that the property was acquired by gift, bequest or devise during the marriage.  Absent such a showing, all property acquired after marriage by either the husband or wife is community property.

*Id.*

Courts addressing the issue have held that a nonresident spouse is subject to personal jurisdiction by virtue of her membership in the marital community when the subject of the litigation is a community asset.  *See Essex Engineering Company v. Credit Vending, Inc.,* 732 F. Supp. 311, 314 (D. Conn. 1990); *Rollins v. Vidmar,* 147 Ariz. 494, 496-97 (1985); *Barer*

*v. Goldberg,* 20 Wn. App. 472 (1978).  The plaintiffs in *Barer* sued the defendant-husband to secure repayment of a loan, and the husband impleaded his former wife, a nonresident, seeking contribution.  The court addressed whether it had personal jurisdiction over the wife, and stated: "As we see it, the critical question to be answered is whether the *community* had sufficient contact with the [forum state] in connection with this transaction."  *Barer,* 20 Wn. at 478.  The court concluded that it had personal jurisdiction over the nonresident former wife, holding that "the transaction by the husband as manager of the community[] is all that is necessary to subject the wife to jurisdiction, particularly where she had knowledge of the transaction." *Id.* at 481.  In *Essex Engineering Company,* the non-resident wife of the plaintiff-husband opposed the court's exercise of jurisdiction over her, asserting that agency law must be applied to determine whether her husband was acting as her agent, and that there was no evidence that the plaintiff-husband "was acting at the behest and for the benefit of his wife." 732 F. Supp. at 315.  The court rejected the wife's assertion, stating that "[w]here a party seeks to join a spouse based on membership in the marital community, the court must consider the issue of agency in light of the legal status given to the community itself under the applicable community property laws." *Id.*  The court held that it had personal jurisdiction over the wife. The court reasoned:

> Although wife did not take an active role in the negotiations in issue, she was aware of them . . . and stood to benefit, as a member of the community, from the business venture [that was the subject of the litigation] was successful. [Plaintiff-husband] conducted the business in question for and on behalf of the community and for its benefit.  As part of the community, wife stood to benefit by the enhancement of the community's property.

*Id.*

Teresa Fleming contends that the patent portfolio is not community property, and cites to patent laws which state that an invention presumptively belongs to its creator.  *See* 25 U.S.C. § 261; *Teets v. Chromalloy Gas Turbine Corp.,* 83 F.2d 403, 407 (Fed. Cir. 1996).  This contention, however, is insufficient to overcome the presumption that property acquired during marriage is community property.  Teresa Fleming has not established that the patent was acquired by gift, bequest or devise during the marriage, or is otherwise Plaintiff's separate property.  *See Banner Life Ins. Co.,* 206 P.3d at 488.  Teresa Fleming does not assert that

Plaintiff acquired the patent portfolio before she and Plaintiff married.  The Court concludes that Teresa Fleming has failed to satisfy the burden to overcome the presumption that the patent portfolio is community property because Teresa Fleming has not proved with reasonable certainty and particularity that the patent portfolio is Plaintiff's separate property.  *See id*.

Defendant has made a prima facie showing that Plaintiff and Defendant entered into a binding contract for the purchase of Plaintiff's patent portfolio, which is the subject of this litigation; that Teresa Fleming was aware of the transaction; and that Plaintiff and Teresa Fleming are married and reside in Idaho, a community property state.  If, as Plaintiff suggests, the January 22 Email Exchange constitutes a binding contract, and the patent portfolio is sold, Teresa Fleming, as a member of the community, stands to benefit from the transaction.  The community has had sufficient contact with California with respect to the January 22 Email Exchange which was negotiated with Defendant, a California resident.  In light of the foregoing, the Court concludes that the exercise of personal jurisdiction over Teresa Fleming is proper because, as a member of the community, Teresa Fleming stood to benefit from the January 22 Email Exchange between Plaintiff and Defendant, and the Court has jurisdiction over the community.  The Motion to Dismiss for Lack of Jurisdiction is denied.

### Conclusion

IT IS HEREBY ORDERED that (1) Motion for Partial Summary Judgment that the January 22, 2008 Email Exchange is a Valid Contract (Doc. # 50), filed by Plaintiff Hoyt A. Fleming is **DENIED**, (2) Motion to Dismiss for Lack of Jurisdiction (Doc. # 56), filed by Counter-Defendant Theresa A. Fleming is **DENIED**, and (3) Motion for Attorney Fees pursuant to California Code of Civil Procedure section 425.16(c) (Doc. # 51), filed by Defendant Tom Coverstone is **GRANTED.**  The Court awards Defendant Tom Coverstone $10,808.00 in attorney fees, which shall be paid within thirty (30) days of the date of this Order.

DATED:  June 25, 2009

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28