John D. Klinedinst, Bar No. 86254
Gregor A. Hensrude, Bar No. 226660
Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
ghensrude@klinedinstlaw.com

Attorneys for Defendant/Counterclaimant
TOM COVERSTONE

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT A. FLEMING,<br><br>    Plaintiff,<br><br>v.<br><br>TOM COVERSTONE,<br><br>    Defendant. | Case No.   3:08-cv-00355 WQH-NLS<br><br>**MEMORANDUM ON POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOM COVERTONE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date            October 5, 2009<br>Time:           11:00 a.m.<br>Courtroom:   4<br>Judge:          William Q. Hayes<br>Magistrate Judge: Nita L. Stormes<br>Complaint Filed: February 22, 2008<br>Trial Date:    None set |
| TOM COVERSTONE,<br><br>    Counterclaimant,<br><br>v.<br><br>HOYT A, FLEMING,<br><br>    Counterdefendant. | **NO ORAL ARGUMENT REQUIRED** |
| TOM COVERSTONE,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>TERESA A. FLEMING and PARK VAUGHAN FLEMING LLP,<br><br>    Third Party Defendants. | |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND..................................................................................1

III. LEGAL STANDARD..............................................................................................5

IV. THE AGREEMENT IS UNENFORCEABLE AGAINST MR. COVERSTONE BECAUSE TERESA FLEMING NEVER AGREED TO ASSUME THE DUTY TO SIGN ANY DOCUMENTS AS REQUIRED BY THE AGREEMENT..........................................................................................5

V. CONCLUSION........................................................................................................7

- i -

MEMORANDUM ON POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOM COVERTONE'S MOTION FOR SUMMARY JUDGMENT
3:08-cv-00355 WQH-NLS

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*
   (1970) 398 U.S. 144 ...................................................................................................5

*Anderson v. Liberty Lobby, Inc.*
   (1986) 477 U.S. 242 ...................................................................................................5

*Celotex Corp. v. Catrett*
   (1986) 477 U.S. 317 ...................................................................................................5

*Coe v. State Farm Mut. Auto. Ins. Co.*
   (1977) 66 Cal.App.3d 981 ..........................................................................................6

*Kurtz v. Forquer*
   (1892) 94 Cal. 91 .......................................................................................................6

*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332,*
   (1974) 40 Cal.App.3d 431 ..........................................................................................6

**Statutes**

Federal Rule of Civil Procedure section 56(c)...................................................................5

KLINEDINST PC
501 WEST BROADWAY, STE. 600
SAN DIEGO, CALIFORNIA 92101

## I. INTRODUCTION

Hoyt Fleming's breach of contract claim fails as a matter of law because there is no genuine issue of material dispute about the fact that Teresa Fleming never agreed to the sale of the patent portfolio. Her agreement to do so was a predicate to the formation of an enforceable contract and, therefore, the lack of her agreement is dispositive of the entire breach of contract claim.

## II. FACTUAL BACKGROUND

In early 2008, Hoyt Fleming and Tom Coverstone met in Las Vegas during the Consumer Electronics Show to discuss the potential sale of the Flemings' patent portfolio to Mr. Coverstone. [Coverstone Aff. ¶ 3]

Almost two weeks later, Mr. Fleming and Mr. Coverstone discussed the sale of the portfolio further via telephone. [Coverstone Aff. ¶ 4] On January 22, 2008, during discussions related to the potential sale of the portfolio, Mr. Coverstone told Mr. Fleming that Teresa Fleming would have to agree to any deal. [Coverstone Aff. ¶ 4] Having both Mr. Fleming and Teresa Fleming agree to the transaction was of substantial importance to Mr. Coverstone due to his concerns regarding the need for clear ownership of the portfolio. [Coverstone Aff. ¶ 4] If for example, Teresa Fleming did not agree to the deal (in other words, to be bound by the option and sign the documents if Mr. Coverstone elected to purchase the patents),[1] then Mr. Coverstone could incur tens of thousands in due diligence and have it all wasted when Ms. Fleming refused to sign. Mr. Coverstone's notes from one of the phone calls confirm that they discussed the fact that Idaho was a community property state and that Teresa Fleming would have to sign any documents necessary to transfer the portfolio to Mr. Coverstone. [Ex. A: Note; Coverstone Aff. ¶ 4]

Furthermore, Mr. Fleming admits that when he sent his January 22, 2008, e-mail to Mr. Coverstone, Mr. Fleming should have included the requirement that Teresa

---

[1] The parties have a disagreement as to whether the agreement was an option agreement or a binding (and final) purchase and sale agreement. For the purposes of this motion, it matters not at all, for she never agreed to *either*.

Fleming sign the documents that would transfer the interest in the portfolio:

> Q   Do you recall ever telling Mr. Coverstone that your wife, Teresa, would sign the assignment documents?
>
> A   Yes. And, in fact, that was a term that should have been in the body of the agreement. Because I remember we discussed it before. Mr. Coverstone seems to have this concern relating to community property in Idaho. And he had that concern on January 22nd. I do remember discussing it with him.
>
> Q   In the first phone call of January 22nd?
>
> A   I remember discussing community property and his concern that he wanted my wife to sign the assignment documents on January 22nd. I do not remember first or second phone call.

[Ex. E: Depo. of H. Fleming 113:8-20]

Mr. Fleming's incomplete e-mail stated:

> Tom,
>
> This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No, 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The Purchase price for the above patents and applications is one million dollars.
>
> You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.
>
> Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.
>
> You and I agree that you and/or your attorneys will draft the necessary agreements.
>
> You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.
>
> If you desire my assistance on matters related to the above patents and/or applications, you may retain me through my

- 2 -

> firm, Park, Vaughan, and Fleming. My hourly rate is $425 for non-testifying services, and $850 for testifying services.
>
> If you agree to the above, then please confirm via email.
>
> Thank you.
>
> Hoyt Fleming

[Ex. B: 1/22 E-mail]

Mr. Coverstone's response clarified the necessity of Teresa Fleming signing the agreement:

> Agreed.
>
> I will wire the $10,000 tomorrow to your account.
>
> As we discussed on the phone just now, <u>your wife Teresa will sign the assignment documents or whatever is needed</u>. I am tied up this week, let's talk next Monday morning.
>
> Best Regards,
> Tom

[Ex. C: 1/22 E-mail response (emphasis added)]

Mr. Fleming has also confirmed his understanding that Teresa Fleming's agreement to sign the necessary documents was an important issue for Mr. Coverstone:

> Q And you said he was interested in two ownership issues. Obviously, we've discussed Vineyard Boise. What's the other one?
>
> A Yes. He seems to have never understood USC -- 35 USC 154, maybe it's 153, combined with USC -- 35 USC 261, which relates to the transfer of patents. He's never seemed to get that.
>
> Q Were you guys discussing these USCs, or what was the issue that he was bringing up that relates to these code sections?
>
> A The issue was that he seemed to believe that potentially someone could argue that my wife owned the patents and needed to sign. And that was a concern of his. And at least from my perspective, that concern is completely unfounded.

[Ex. E: Depo. of H. Fleming 270:18-271:7]

Thus, there can be no question that Mr. Fleming knew that having Teresa Fleming

agree to the transaction, and to sign the documents transferring the interest to Mr. Coverstone's business, was a material part of the agreement.

In fact, when Mr. Coverstone sent the $10,000 called for in Mr. Fleming's e-mail, it was sent to both Mr. Fleming and Ms. Fleming. [Coverstone Aff. ¶ 8] Mr. Coverstone specifically included both names on the wire transfer at the request of Mr. Fleming. [Coverstone Aff. ¶ 8] Mr. Coverstone understood that the inclusion of both Mr. Fleming and Ms. Fleming was intended to confirm that consideration had been provided to both. [Ex. D; Coverstone Aff. ¶ 8] He would not have forwarded the money on to them had he not believed that Ms. Fleming had agreed to be bound to the option agreement. [Coverstone Aff. ¶ 8] Mr. Coverstone intended for there to be no agreement until Ms. Fleming had agreed to the terms of the option and potential sale. [Coverstone Aff. ¶ 8]

But in truth, Teresa Fleming *never agreed* to the sale of the patent portfolio to Mr. Coverstone, and *never agreed* to sign the assignment documents. Mr. Fleming confirmed that she had not agreed to sign anything at the time that the January 22, 2008, e-mails were exchanged:

> Q  After he says I want Teresa Fleming to sign, what do you say?
>
> A  I said "If you think you want her to sign, I'll get her to sign."
>
> Q  Had she already agreed to sign?
>
> A  No.
>
> Q  So you were saying prospectively, I'll ask her to do it or have her do it; is that accurate?
>
> A  I will have her do it.

[Ex. E: Depo. of H. Fleming 113:21-114:4]

Teresa Fleming also confirmed in her own deposition that she *never* agreed to sign any documents related to the sale of the patent portfolio:

> Q.  Did you ever agree to sign any documents related to the sale of the patent portfolio?

- 4 -
MEMORANDUM ON POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOM COVERTONE'S MOTION FOR SUMMARY JUDGMENT
3:08-cv-00355 WQH-NLS

    A. I have not signed any documents.

    Q. That's not my question. My question is whether you ever agreed to sign any documents related to the patent portfolio.

    A. No.

[Ex. F: Depo. of T. Fleming 66:20-67:2]

There was an understanding between Mr. Fleming and Mr. Coverstone that Ms. Fleming had to agree to the potential sale and sign any documents necessary to transfer ownership of the patent portfolio and that requirement was part of the January 22, 2008, e-mails that were exchanged. But Ms. Fleming had not agreed to assume those duties at that time, nor did she ever agree to assume the duty to sign the documents that would transfer ownership of the portfolio.

## III. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the moving party demonstrates the absence of a genuine issue of material fact and establishes entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If, based upon the governing law, a fact will affect the outcome of the suit, it is material. *Anderson*, 477 U.S. at 248. Unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is no genuine dispute as to the material fact at issue. *Id.*

The summary judgment motion may be supported by submitting affirmative evidence that disproves an essential element of the opposing party's claim. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–160 (1970). Further, "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party establishes that there is an absence of a genuine issue of material fact, the initial burden is satisfied and the burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-324.

## IV. THE AGREEMENT IS UNENFORCEABLE AGAINST MR. COVERSTONE BECAUSE TERESA FLEMING NEVER AGREED TO THE SALE AS REQUIRED BY THE PARTIES' DISCUSSIONS

The formation of the agreement being asserted by Mr. Fleming was contingent upon Ms. Fleming agreeing to sign the necessary documents and, therefore, the fact that she never agreed to do so is dispositive of Mr. Fleming's breach of contract claim in its entirety.

An agreement may not be enforced against a signator "where it appeared on the face of the instrument, or by proof, that the person sought to be charged signed upon the consideration that other persons named would also sign." *Kurtz v. Forquer*, 94 Cal. 91, 93-94 (1892). Further more, "[w]hen, as in the present situation, two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens neither party is bound by the agreement." *Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332*, 40 Cal.App.3d 431, 436 (1974). It has also been explained that "when the approval of a third party is necessary for a contract to take effect, there is no contract until such approval has been obtained." *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal.App.3d 981, 993 (1977).

In this case, Mr. Coverstone would not have sent the "Agreed" e-mail on January 22, 2008, but for the representation that Teresa Fleming had agreed to the option, meaning that she would agree to the ultimate sale, and agree to sign whatever documents were necessary to effect the agreement. [Coverstone Aff. ¶¶ 6-7] And Mr. Fleming confirmed at deposition that he knew that this was an important issue to Mr. Coverstone. [Ex. E: Depo. of H. Fleming 113:8-20, 270:18-271:7] Not only was it important, it was a specific term of the agreement that was discussed between Mr. Fleming and Mr. Coverstone.

Because Teresa's agreement to the transaction was a material term of the agreement, and because she never agreed to sign the documents (Ex. F: Depo. of T.

- 6 -

MEMORANDUM ON POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TOM COVERTONE'S MOTION FOR SUMMARY JUDGMENT
3:08-cv-00355 WQH-NLS

Fleming 66:20-67:2), there was no enforceable contract against Mr. Coverstone. Therefore, Mr. Coverstone is not bound by the purported agreement being asserted by Mr. Fleming in his breach of contract claim because no contract was ever formed. *See Kurtz*, 94 Cal. at 93-94; *Coe*, 66 Cal.App.3d at 993; *Santa Clara-San Benito*, 40 Cal.App.3d at 436. It is irrelevant that Teresa Fleming *might have* or *would have* agreed to the transaction had she been told about it. The formation of the contract required that she agree to be bound and to sign the necessary documents if and when the option was exercised, but she never agreed prior to the relationship being terminated.

Because no enforceable contract was formed based upon the lack of Teresa Fleming agreeing to be bound to sign the necessary documents, Mr. Fleming's breach of contract claim fails as a matter of law and this motion for summary judgment should be granted.

## V. CONCLUSION

There is no way for Mr. Fleming to dispute that Ms. Fleming never agreed to sign documents related to the sale of the patent portfolio (either an option or a sale), because they have both unequivocally admitted it. Furthermore, the law is clear that because Mr. Coverstone's "agreed" e-mail was sent upon the requirement that Ms. Fleming agree to be bound to sell the patents and sign the necessary documents, there could be no enforceable contract against Mr. Coverstone until Ms. Fleming so agreed. Therefore, Mr. Coverstone respectfully requests that this court grant Mr. Coverstone's motion for summary judgment against the only remaining claim being asserted against him: Mr. Fleming's breach of contract claim.

KLINEDINST PC

DATED: September 4, 2009      By: /s/ Gregor A. Hensrude
                              Gregor A. Hensrude
                              Attorneys for Defendant/Counterclaimant
                              TOM COVERSTONE

830858v1