1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

# SOUTHERN DISTRICT OF CALIFORNIA

8

9  HOYT A. FLEMING,                                    CASE NO. 08cv355 WQH (NLS)

10                                   Plaintiff,        **ORDER**

        vs.
11  TOM COVERSTONE,

12                                   Defendant.

13  ─────────────────────────────

14  TOM COVERSTONE,

15                                   Counterclaimant,

16        vs.
    HOYT A. FLEMING; TERESA A.
17  FLEMING; and PARK, VAUGHAN &
    FLEMING, LLP,
18
                                   Counterdefendants.
19

20  HAYES, Judge:

21        The matters before the Court are the Motion to Dismiss Defendant's Declaratory

22  Judgment Count filed by Counterdefendant Teresa A. Fleming (Doc. # 102), the Motion for

23  Summary Judgment on Defendant's Ninth Affirmative Defense and Counterclaim filed by

24  Plaintiff and Counterdefendant Hoyt A. Fleming (Doc. # 110), and the Motion for Summary

25  Judgment filed by Defendant and Counterclaimant Tom Coverstone (Doc. # 117).

26                                   **BACKGROUND**

27  **I.      Procedural History**

28        This action concerns a dispute over the sale of a patent portfolio.  On February 28,

2008, Hoyt A. Fleming ("Fleming") initiated this action by filing a complaint against Tom Coverstone ("Coverstone").  (Doc. # 1).  On October 21, 2008, Fleming filed his Second Amended Complaint ("SAC").  (Doc. # 29).  On March 18, 2009, the Court granted Coverstone's Motion to Strike pursuant to California's anti-SLAPP (Strategic Litigation Against Public Participation) statute and struck the SAC's cause of action for extortion.  (Doc. # 47).  In the same order, the Court also denied Coverstone's Motion to Dismiss the SAC's cause of action for breach of contract, holding that the cause of action stated a claim and that a third party, Vineyard Boise, was not a necessary and indispensable party pursuant to Federal Rule of Civil Procedure 19.  *Id.*

On April 20, 2009, Coverstone filed a First Amended Answer to Plaintiff's Second Amended Complaint which included counterclaims against Fleming for fraudulent misrepresentation and fraudulent concealment; against Teresa  A. Fleming, Fleming's wife, for declaratory relief; and against the law firm of Park, Vaughan, and Fleming, LLP for fraudulent concealment.  (Doc. # 58).  On June 25, 2009, the Court denied Fleming's Motion for Partial Summary Judgment seeking summary judgment on the grounds that emails exchanged on January 22, 2008 between Fleming and Coverstone constitute a valid contract. (Doc. # 77).  In the same order, the Court denied Teresa Fleming's Motion to Dismiss for Lack of Jurisdiction.  *Id.*

On July 1, 2009, Teresa Fleming filed a Motion to Dismiss Defendant's Declaratory Judgment Count.  (Doc. # 78).   On July 28, 2009, the Court granted Fleming's Motion for Leave to File Third Amended Complaint ("TAC"). (Doc. # 83). On July 29, 2009, Fleming filed his TAC, which is the operative pleading in this case. (Doc. # 84). On August 12, 2009, Coverstone filed his Answer and Counterclaim to Plaintiff's Third Amended Complaint. (Doc. # 86).  This filing contains the same counterclaims as Coverstone's previous First Amended Answer to Plaintiff's Second Amended Complaint brought against Teresa Fleming and the law firm of Park, Vaughan, and Fleming, LLP pursuant to Federal Rules of Civil Procedure 13(h), 19(a)(1), and 20(a)(2).  *Compare* Doc. # 58 *with* Doc. # 86; *see also* Doc. # 86 at 11.  On December 7, 2009, the Court denied Coverstone's Motion for Summary Judgment and denied

Teresa Fleming's Motion to Dismiss Defendant's Declaratory Judgment Count as moot. (Doc. # 101).

On December 8, 2009, Teresa Fleming filed a second Motion to Dismiss Defendant's Declaratory Judgment Count Pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. # 102). Teresa Fleming's motion contends that Coverstone's declaratory judgment claim is moot and a request for an impermissible advisory opinion because she has conceded she has no interest in the patents at issue. (Doc. # 102-1 at 2). On December 21, 2009, Fleming filed his Motion for Summary Judgment on Defendant's Ninth Affirmative Defense and Counterclaim. (Doc. # 110). Fleming's motion contends that Coverstone lacks standing to assert some of his claims and defenses, and that Coverstone cannot base a fraud claim upon legal fees or upon stress, anxiety and concern. (Doc. # 110 at 2, 17-18). On January 8, 2010, Coverstone filed his Motion for Summary Judgment. (Doc. # 117). Coverstone's motion contends that Fleming's breach of contract claim fails as a matter of law because Fleming has not suffered damage, that the agreement is unenforceable because Vineyard Boise never agreed to transfer its interest in the patent portfolio to Coverstone, and that Coverstone is not personally liable for any breach because he was negotiating on behalf of a company, not on his own behalf. (Doc. # 117-1 at 1).

## II.    Allegations of the Third Amended Complaint

Fleming and Coverstone are attorneys registered to practice before the United States Patent and Trademark Office. (Doc. # 84 at 2). Fleming is a resident of Idaho and Coverstone is a resident of California, with a place of business in California. *Id.* The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* Fleming agreed to sell and Coverstone agreed to purchase U.S. Patent No. 6,204,798, Reissued Patent No. 039,038, Patent Application No. 11/196,841, and Patent Application No. 11/924,352. *Id.* Fleming sent an email to Coverstone on January 22, 2008 ("Plaintiff's January 22 email"), which stated:

Tom,

This email confirms that I have agreed to sell and that you have agreed to purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent Application No. 11/924,352. The purchase price for the above patents and

applications is one million dollars.

You and I will strive to close the sale by February 1, 2008. However, you and I will close the sale by February 15, 2008.

Both you and I understand that I will assign a 10% interest in the above patents and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard Boise will then assign its 10% interest to you, or an entity that you designate. I will assign my 90% interest directly to you, or an entity that you designate. You will then immediately pay me $900,000 and you will then immediately pay Vineyard Boise $100,000.

You and I agree that you and/or your attorneys will draft the necessary agreements.

You agree to wire me ten thousand dollars tomorrow as a deposit on the purchase price. This deposit will not be refunded if the above sale is not completed by February 15, 2008. I agree to work with you and your attorneys to close the sale by February 15, 2008.
. . .

If you agree to the above, then please confirm via email.

Thank you,
Hoyt Fleming

*Id.* at 2-3. Coverstone responded via email ("Defendant's January 22 email"), which contained the text of Fleming's email and stated in part:

Hoyt,

Agreed.

I will wire the $10,000.00 tomorrow to your account.

As we discussed on the phone just now, your wife Teresa will sign the assignment documents or whatever is needed . . . .

Best regards,
Tom

*Id.* at 3. This email exchange ("the January 22 emails") constitutes a binding and enforceable contract. *Id.* at 4. Coverstone wired $10,000 to Plaintiff's bank account on January 23, 2008. *Id.*

On February 1, 2008, Coverstone sent an email to Jeffrey A. Hill which stated in part: "He is going to have all of the paperwork signed and sent to me, with the paperwork signed by the pastor and chairman of the finance committee, which is who will sign the documents that receive the 10%." *Id.* On February 6, 2008, Coverstone sent an email to Hank Petri that

stated in part: "Can you please prepare the documents for the Fleming transaction?" *Id.* Fleming sent an email to Defendant on February 11, 2008, which stated in part: "Tom, I look forward to working with you to complete this transaction on or before February 15." *Id.* at 5. Coverstone sent an email to Hank Petri on February 11, 2008 that stated in part: "No need for you to spend any more time on this matter at this point, I have to go through the prior art." *Id.* Coverstone sent a second email to Hank Petri on February 11, 2008, which stated in part: "Yes, hold off on doing any work on this matter." *Id.*   Coverstone sent Fleming an email on February 13, 2008, which stated in part:

> My understanding is that our exchange of emails and our conversations is only an outline of a potential, future agreement, and we have since been engaged in communications and assessment of the price and terms, particularly related to the 10% interest.  Therefore, there is no current legal obligation. The prospective agreement is incomplete until it is reduced to writing, finalized by attorneys and signed at closing. I don't intend a contract until this is done. . . . Because this third party assignment for your tax purposes is not only a material term, but is a troublesome and unconventional term, a binding agreement has not been formed. Even if any contract had been entered, which I don't believe there has, there is no severability provision. . . . If you are not interested in this offer, then we need to make arrangements for the return of the $10,000 I put toward the purchase of the patents.

*Id.*  Coverstone sent an email to Fleming on February 14, 2008, which stated in part: "There is and never was any agreement on the key, material terms for this potential contract.  I don't believe you are negotiating in good faith.  I would like the $10,000 returned." *Id.*

Fleming sent Coverstone an email on February 15, 2008, which stated in part: "I am still willing to meet each and every term included in the agreement dated January 22, 2008.  Please be advised that I will not extend the closing deadline." *Id.*  Coverstone sent Fleming an email on February 15, 2008, which stated in part:

> Per my previous emails where I outlined in detail why there was not an agreement between us, you continue to try to hold that there was an agreement. There was not an agreement, there never was . . . I want my 10k back. And if you send the 10k back – and the return of the money is based on a matter of principle – I am willing to sign a mutual release.

*Id.* at 6. Coverstone refused to perform the contract despite Fleming's demand that Coverstone perform.  *Id.*  Coverstone failed to pay Fleming "the remaining $890,000 of the $900,000 that Defendant owed Plaintiff." *Id.*

The TAC states a single claim for breach of contract. *Id.* In support of the breach of contract claim, the TAC alleges Fleming's performance was excused because Coverstone gave notice that he would not perform his obligations under the contract. *Id.* at 6-7. The TAC alleges Fleming was ready, willing, and able to perform his obligations under the January 22, 2008 contract. *Id.* at 7. The TAC alleges Coverstone's failure to perform was unjustified and unexcused. *Id.* The TAC alleges Fleming has been unable to mitigate his damages despite his efforts to find another buyer for the patents. *Id.* at 8. The TAC alleges damages in the amount of $890,000 plus interest. *Id.*

## III.   Affirmative Defenses and Allegations of the Counterclaims

Coverstone alleges numerous affirmative defenses, including fraud in the inducement. (Doc. # 86 at 6). In his fraud in the inducement defense, Coverstone alleges Fleming told him that a company called Uniden had applied for a patent on a radar detection device and was rejected because of claims made in Fleming's patent portfolio. *Id.* at 6-7. Coverstone alleges Fleming also told him that another company called Escort was blocked from getting a patent for similar technology. *Id.* Coverstone alleges that, contrary to Fleming's assertions, "[n]either Uniden nor Escort were blocked from obtaining patents for GPS-enabled radar detectors due to Plaintiff's portfolio." *Id.* Coverstone alleges these two statements were material representations which induced him to pay a $10,000 deposit on the patents. *Id.*

Coverstone alleges counterclaims for fraudulent misrepresentation against Fleming and fraudulent concealment against Fleming and Fleming's law firm, Park, Vaughan and Fleming, LLP. *Id.* at 11-13. In support of his counterclaim for fraudulent misrepresentation, Coverstone alleges he reasonably relied on Fleming's misrepresentations about Uniden and Escort which induced Coverstone to pay a $10,000 deposit on the patents. *Id.* at 11-12. Coverstone alleges Fleming has refused to return the $10,000 payment. *Id.* at 12. Coverstone alleges the misrepresentations "were a substantial factor in causing Defendant to undertake and continue his due diligence and to incur legal fees and expenses in defending the breach of contract claim filed by Plaintiff . . . ." *Id.* In support of his counterclaim for fraudulent concealment, Coverstone alleges Fleming failed to reveal the truth about the patents despite an obligation

1     to do so after Coverstone retained Fleming's law firm, Park, Vaughan, Fleming, LLP. *Id.* at

2     13. Coverstone alleges Fleming failed to tell him "that [the patent portfolio] was worth

3     nowhere near the proposed purchase price, though [Fleming] knew the truth." *Id.* Coverstone

4     alleges that Fleming's concealment "was a substantial factor in causing Defendant to incur

5     legal fees and expenses in defending the breach of contract claim filed by Plaintiff . . . ." *Id.*

6     at 14. Coverstone seeks damages for the deposit, the resources expended in conducting due

7     diligence, the legal fees associated with investigating the patents, legal fees incurred in

8     defending against this action, and "stress, anxiety, and concern." *Id.*

9          Coverstone also alleges a counterclaim for declaratory relief against Teresa Fleming.

10    *Id.* at 15. Coverstone alleges Teresa Fleming held an interest in the patent portfolio because

11    Idaho is a community property state. *Id.* Coverstone alleges "Plaintiff has alleged that Teresa

12    Fleming is a signator to a binding contract and Defendant believes that Teresa Fleming agrees

13    with Plaintiff's contentions." *Id.* Therefore, Coverstone alleges, he is at risk of incurring

14    "inconsistent obligations" unless he sues Teresa Fleming because "the court cannot award

15    complete relief without her involvement." *Id.* Coverstone seeks declaratory judgment that he

16    "owes [Teresa Fleming] no obligations as to the purported contract . . . ." *Id.*

17                        **ANALYSIS**

18    **I.**      **Teresa Fleming's Motion to Dismiss**

19          Teresa Fleming contends that Coverstone's counterclaim for a declaratory judgment is

20    moot and a request for an impermissible advisory opinion. (Doc. # 102-1 at 5). Teresa

21    Fleming contends that there is no case or controversy as to whether she is a party to the

22    contract. *Id.* at 6. Teresa Fleming contends that she cannot sue Coverstone because California

23    law does not permit a non-party to sue upon a contract. *Id.* at 7. Teresa Fleming contends she

24    has "unambiguously declared she is not a signator to any contract with Coverstone." *Id.*

25    Teresa Fleming contends that she "will not and can not file an action against Coverstone

26    related to the January 22, 2008 email exchange between Plaintiff and Coverstone." *Id.* Teresa

27    Fleming contends that her attached affidavit is a "unilateral covenant not to sue [which] divests

28    the Court of jurisdiction over Coverstone's declaratory judgment count." *Id.* Teresa Fleming's

attached declaration states "I acknowledge and agree that I will not file a separate action against Tom Coverstone related to any contract that was entered into by Hoyt Fleming and Tom Coverstone on January 22, 2008." (Doc. # 102-2 at 2). Teresa Fleming contends that Coverstone's claim is based on a misunderstanding of Idaho community property law and that although she  has an interest in the patents themselves as community property, she does not have an interest in or rights to enforce the contract. (Doc. # 114 at 7-9).

Coverstone contends that this Court already concluded that Teresa Fleming "has an interest in the purported contract as the portfolio is property of the marital community." (Doc. # 112 at 2). Coverstone contends that Teresa Fleming has an enforceable right as a third party beneficiary to the contract pursuant to California law and Idaho community property law. *Id.* Coverstone contends that Teresa Fleming's affidavit does not "provide any adjudication as to her rights" and that "there is an actual controversy as to Teresa Fleming's rights under the purported contract . . . ." *Id.* at 8-10. Coverstone attaches email correspondence between counsel for Coverstone and counsel for Teresa Fleming. (Doc. # 112-2).

A court may only enter a declaratory judgment if there is an actual controversy between the parties. *See* 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). If there is no actual controversy, this Court is without jurisdiction. *See id.* This Court must review Coverstone's pleadings and the evidence before the Court to determine whether an actual controversy exists. An actual controversy is one which is "real and immediate." *Golden v. Zwicker*, 394 U.S. 103, 106 (1969).

In a prior order, this Court found that Teresa Fleming an interest in the patents as community property and therefore "stands to benefit from the transaction." (Doc. # 77 at 18). Because Teresa Fleming had an interest in the property "as a member of the community," the Court concluded that she was subject to personal jurisdiction in California. *Id.* This Court's order did not address whether Teresa Fleming had an interest in the purported contract. *Id.*

Coverstone alleged that "Plaintiff has alleged that Teresa Fleming is a signatory to a binding contract, and Defendant believes that Teresa Fleming agrees with Plaintiff's contentions." (Doc. # 86 at 14). However, Fleming's TAC did not allege that Teresa Fleming

1   was a "signatory to a binding contract." *See* Doc. # 84.  Coverstone represented to this Court

2   in his motion for summary judgment that "in truth, Teresa Fleming *never agreed* to the sale

3   of the patent portfolio to Coverstone, and *never agreed* to sign the assigned documents." Doc.

4   # 89-1 at 4-5; Doc. # 89-3 at 24.   Coverstone submitted a portion of Teresa Fleming's

5   deposition in support of his Motion for Summary Judgment in which Teresa Fleming states

6   that she never signed, nor agreed to sign any contract.  (Doc. # 89-3 at 24).

7        Coverstone further alleged in his counterclaim that "[i]f [Teresa] Fleming were not a

8   party to this action, she would be free to file a separate action related to the purported contract,

9   thereby creating a substantial risk of [] incurring inconsistent obligations derived from the

10   purported contract."  (Doc. # 86 at 14).  However, Teresa Fleming has stated in her affidavit

11   that she "will not file a separate action against Tom Coverstone."  Doc. # 102-2.

12        The Court concludes that Coverstone's own assertions in previous filings establish that

13   there is no actual controversy as to whether Teresa Fleming has rights under the purported

14   contract. Furthermore, where "the opposing party disclaims the assertion of countervailing

15   rights," a claim for a declaratory judgment is moot.  10B Charles Alan Wright & Arthur Miller,

16   *Federal Practice and Procedure* § 2757, *citing Eccles v. Peoples Bank of Lakewood Village*,

17   333 U.S. 426, 434-35 (1947).  Teresa Fleming's statements that she did not sign the contract

18   and will not sue moot the declaratory judgment claim.  Coverstone's attempt to create an

19   "actual controversy" through the undisputed fact that Teresa Fleming has an interest in the

20   patent portfolio as community property fails. Idaho community property law does not give

21   Teresa Fleming any rights to sue Coverstone based upon a contract between Fleming and

22   Coverstone.  Under Idaho law, except as to real property, "(e)ither the husband or the wife

23   shall have the right to manage and control the community property, and either may bind the

24   community property by contract . . . ."  Idaho Code § 39-912.

25        Teresa Fleming's Motion to Dismiss is granted.   Coverstone's counterclaim for

26   declaratory judgment is dismissed for lack of jurisdiction.

27   **II.      Standard of Review for the Cross Motions for Summary Judgment**

28        Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation omitted). "Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).

"In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted); *see also DiRuzza v. County of Tehama*, 206 F.3d 1304, 1314 (9th Cir. 2000) ("For purposes of summary judgment . . . , we must presume the facts to be those most favorable to the non-moving party."); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn testimony "is to be accepted as true . . . . [The non-movant's] evidence should not be weighed against the evidence of the [movant]."). At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005) ("The district court ... improperly dismissed Dominguez's allegations as consisting of nothing more than 'self-serving statements in her own deposition and affidavit.' Such observations go to

whether Dominguez is credible, a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment . . . ."). "But the non-moving party must come forward with more than the mere existence of a scintilla of evidence. Thus, 'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Simply because the facts are undisputed does not make summary judgment appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper." *Id.* (citation omitted).

## III.  Fleming's Motion for Summary Judgment on Defendant's Ninth Affirmative Defense and Counterclaims

### 1.  Fraud in the Inducement

Fleming contends that Coverstone lacks standing to assert fraud in the inducement as a defense to liability on the breach of contract claim because Coverstone assigned all of his rights in the contract to a third party company, GMT. (Doc. # 110-1 at 12). Fleming contends that Coverstone cannot rescind the contract because the right of rescission was assigned to GMT. *Id.* Because rescission is necessary under California law to assert a fraud in the inducement defense, Fleming contends that defense is unavailable to Coverstone. *Id.*

In support of his motion, Fleming filed excerpts of Tom Coverstone's deposition and exhibits to the deposition. (Doc. # 110-3). Coverstone testified in his deposition that he assigned his rights in the disputed contract (which Coverstone characterizes as an "option agreement") to GMT in a note dated January 22, 2008. (Docs. # 110-3 at 64, 110-6 at 1). The note, written on the stationary of the Hay Adams Hotel, states "I, Tom Coverstone, hereby assigns any and all rights in Fleming option agreement this date, including past damages to GMT, which may assign to New Co. for $1.00 and other valuable consideration." (Doc. # 110-6 at 1).

Coverstone contends that an assignment of rights in the contract would not transfer defenses against liability for failure to perform contractual obligations. (Doc. # 113 at 11).

Coverstone contends that there is a genuine issue of material fact as to whether the assignment transferred defenses or tort claims.  *Id.*

Fraud in the inducement occurs when a party to a contract is induced to consent by fraud.  *See Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996).  Fraud in the inducement is a defense to a suit for breach of contract.  *Id.*  Fraud in the inducement renders a contract voidable.  *Ford v. Shearson Lehman American Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986).   "In order to escape from its obligations the aggrieved party must *rescind*, by prompt notice and offer to restore the consideration received, if any. " *Id.* (citation omitted).  Rescission is accomplished by giving notice to the other party.  Cal. Civ. Code § 1691.

A party to a contract may generally assign rights under the contract to a non-party, although the assignor "cannot escape the *burden* of his or her obligation by a mere assignment" and "remains liable to the promisee."  1 B.E. Witkin, *Summary of California Law*, Contracts § 729 (10th Ed. 2005). Although Coverstone's assignment to GMT transferred "any and all rights in the contract," Coverstone remains liable to Fleming for any breach of the contract despite the assignment.  Fleming has not cited any authority establishing that a transfer of rights under a contract prevents the assignor from asserting the defense of fraud in the inducement in an action for breach of contract.   To the extent that rescission may be required as soon as the grounds for rescission are discovered in order to assert a fraud in the inducement defense, the record in this case includes facts which preclude summary judgment in favor of Fleming.  The Court concludes that Fleming has not established that he is entitled to judgment as a matter of law on Coverstone's defense for fraud in the inducement.  Fleming's Motion for Summary Judgment is denied as to the fraud in the inducement defense.

**2.     Counterclaims for Fraudulent Misrepresentation and Fraudulent Concealment**

Fleming contends that Coverstone lacks standing to assert counterclaims based on damages to GMT.  *Id.* at 13.  Fleming contends that Coverstone has conceded that he made a $10,000 payment, performed due diligence, and paid legal fees for representation on behalf of GMT, not on his own behalf.  *Id.* at 13-15.  Therefore, Fleming contends, Coverstone cannot

recover these damages. *Id.* Fleming contends that Coverstone cannot assert a claim to recover damages for "stress, anxiety, and concern" because he was acting on behalf of GMT, not on his own behalf, with respect to the patent portfolio. *Id.* at 17; *see also* Doc. # 118 at 11-12. Fleming asserts that even if Coverstone has standing to seek these damages, he nonetheless cannot recover attorney's fees or damages for "stress, anxiety, and concern" in an action for fraud under California law. Doc. # 113 at 17-18. Fleming contends that summary judgment is appropriate because Coverstone has "fail[ed] to make a sufficient showing to establish the existence of [damages,] an essential element of" Coverstone's counterclaims for fraudulent misrepresentation and fraudulent concealment.

In support of his motion, Fleming filed excerpts of Tom Coverstone's deposition. (Doc. # 110-3). Coverstone testified in his deposition that he was acting at all times on behalf of GMT in his capacity as president of GMT in the negotiation of the patent deal with Fleming. *Id.* at 85-86, 103. Coverstone testified that although a $10,000 payment to Fleming came from Coverstone's bank account, it was on behalf of GMT. *Id.* at 100-101. Coverstone testified that his due diligence on the patent portfolio was on behalf of GMT, and not on his own behalf. *Id.* at 103.

In his opposition, Coverstone contends that he is entitled to bring a damages claim against Fleming because he transferred money from his personal bank account to Fleming. (Doc. # 113 at 12). Coverstone contends that if he was acting on his own behalf when he entered the purported contract—as Fleming has asserted—Coverstone could not have assigned the obligation to pay the $10,000 to GMT, and remained personally responsible for making the payment. *Id.* at 12-13. Therefore, Coverstone asserts, he has standing to sue to recover the $10,000. *Id.* at 13. Coverstone further contends that his claim for fraudulent concealment does not arise from the contract, rather from a breach of fiduciary duty by Fleming and the law firm of Park, Vaughan, and Fleming . *Id.* Coverstone contends that he may seek emotional distress damages on a breach of fiduciary duty claim. *Id.*

**A.    Deposit of $ 10,000**

As Coverstone concedes in his opposition, he "has maintained throughout this entire

lawsuit that he acted at all times on behalf of GMT." (Doc. # 113).  In his deposition, Coverstone stated he made the $10,000 payment on behalf of GMT, not on his own behalf. (Doc. # 110-2 at 103-105, 169).  Regardless of whether Coverstone was initially acting on behalf of GMT or subsequently assigned his rights to GMT, the parties do not dispute that by the time Coverstone made the $10,000 payment, he was acting on GMT's behalf.  *See* Doc. # 110-3 at 100-101, Doc. # 110-6 at 1.  Coverstone testified in his deposition that the payment was made after the contract rights were assigned to GMT on behalf of GMT.  (Doc. # 110-3 at 100-101).  Under California law, Coverstone lacks standing to recover for injuries to GMT because GMT is a separate legal entity.  *See Kruse v. Bank of America*, 202 Cal. App. 3d 38, 65 (1988).  The facts in the record establish that there is no genuine issue of material fact that Coverstone is not entitled to recover the $10,000 deposit paid on behalf of GMT.

### B.    Due Diligence

Coverstone testified in his deposition that he did not perform due diligence on his own behalf:

> Q:    Did you ever investigate the validity or the value of the Fleming patent portfolio on behalf of yourself as an individual?
>
> A:    No.

(Doc. # 110-3 at 85).  Coverstone further stated he was "performing the due diligence [and] looking at the patents . . . in the capacity of doing this as GMT, not me personally." *Id.* at 85-86.  This evidence is sufficient to establish that there is no genuine issue of material fact as to whether Coverstone was acting only on behalf of GMT.  Coverstone offers no evidence to refute his own statement that he was not acting on his own behalf nor does he offer any legal theory as to why he could recover expenses incurred acting on behalf of another.  Under California law, Coverstone lacks standing to assert claims based on injuries to GMT.  *See Kruse*, 202 Cal. App. 3d at 65.  The facts in the record establish that Coverstone is not entitled to recover the costs of performing due diligence, undertaken on behalf of GMT.

### C.    Legal Fees for Investigating the Patent Portfolio

Coverstone testified in his deposition that GMT paid for the investigation of the patent portfolio:

Q:   Did you pay those attorneys for the work they were doing during that time period?

A:   Yes,

Q:   You, Tom Coverstone?

A:   No, GMT.

(Doc. # 110-3 at 202-203).  This evidence is sufficient to establish that there is no genuine issue of material fact as to whether Coverstone incurred legal expenses on his own behalf. Coverstone offers no evidence to refute his statement that he incurred legal expenses on behalf of GMT, nor does he offer any legal basis upon which he could recover damages for legal expenses incurred by GMT.  Under California law, Coverstone lacks standing to assert claims based on injuries to GMT.   *See Kruse*, 202 Cal. App. 3d at 65.  The facts in the record establish that Coverstone is not entitled to recover legal fees and expenses incurred on behalf of GMT.

### D.   Stress, Anxiety, and Concern

Coverstone contends his fraudulent concealment claim[1] for "stress, anxiety, and concern" is based on his attorney-client relationship with Fleming and Fleming's law firm.[2] *See* Doc. # 113 at 13; *see also* 119-13 (retention letter signed by Coverstone and Fleming). California law allows recovery for emotional damages for breach of a fiduciary duty. *Simone v. McKee*, 142 Cal. App. 2d 307, 316 (Cal. App. 1956); Cal. Civ. Code § 3333.

However, Coverstone did not allege a claim for breach of fiduciary duty.  Rather, Coverstone alleged a fraudulent concealment claim based entirely on facts allegedly concealed by an attorney during a sale of property.  Under California law, "[o]ne defrauded in the purchase, sale, or exchange of property" is limited to damages available pursuant to California

---

[1] Coverstone concedes that he cannot recover damages for "stress, anxiety, and concern" for fraudulent misrepresentation in his opposition. *See* Doc. # 113 at 13; *see also* Cal. Civ. Code § 3343; *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1415 (9th Cir. 1990) (holding that under California law, damages for emotional distress are unavailable for a claim for fraud based on a contractual relationship).

[2] The law firm of Park, Vaughan, and Fleming, LLP has not moved for summary judgment on this counterclaim.

Civil Code § 3343.  "[U]nder section[] 3343, one conclusion is crystal clear: no damages may be awarded for pain and mental suffering." *O'Neil v. Spillane*, 45 Cal. App. 3d 147, 158 (1975).  Coverstone cannot recover damages for stress, anxiety, and concern based on his fraudulent concealment claim as a matter of law.

Furthermore, the retention letter establishing the attorney-client relationship limits the representation to "prosecution and enforcement matters related" to the patents.  (Doc. # 119-13 at 2).  On January 22, 2008, Coverstone transferred "any and all rights" in the contract to GMT.  Doc. # 110-6 at 1.  Coverstone's testimony and the assignment document establish that he had no personal interest in the patents, which were the subject of Fleming's alleged fraudulent concealment.  *See* Doc. # 110-4 at 1, Doc. # 110-6 at 1. Therefore, any damages for fraudulent concealment by Fleming regarding the patents would result in detriment to GMT and not to Coverstone.  Coverstone may not sue to redress damages to GMT.  The facts in the record establish that Coverstone is not entitled to recover for "stress, anxiety, and concern" stemming from Fleming and his law firm's "conceal[ment] of material information" about the patents.  *See* Doc. # 86 at 13 (Coverstone's Answer and Counterclaim).

**E.     Legal Fees Incurred by Coverstone Defending Against this Action**

There is no genuine issue of material fact as to whether Coverstone can recover legal fees and expenses incurred defending against this action as damages for fraudulent misrepresentation or fraudulent concealment.   Under California law, Coverstone cannot recover attorney's fees or costs incurred in defending this suit.  *See* Cal. Code Civ. P. § 1021; *Gray v. Miller*, 35 Cal. 3d 498, 504 (1984).

**F.     Conclusion**

The Court concludes that the facts in the record establish that Coverstone is not entitled to recover any of the damages Coverstone alleges he suffered in support of his claims for fraudulent misrepresentation and fraudulent concealment.  Fleming is entitled to summary judgment on these counterclaims.

**IV.     Coverstone's Motion for Summary Judgment**

    **1.     Fleming's Breach of Contract Claim**

Coverstone contends that Fleming's breach of contract claim fails as a matter of law because Fleming has not suffered damage. (Doc. # 117-1 at 11). Coverstone contends that Fleming's statement that he believes the market value of his patent is "greatly in excess of a million dollars" establishes that Fleming "has not been damaged" and cannot recover against Coverstone. *Id.* at 11-12.

In support of his motion, Coverstone submitted excerpts of Fleming's deposition transcript. Fleming testified:

> A:   . . . [I] believe my patents are very valuable at this point.
>
> Q:   Do you have any opinion with respect to what their value is?
>
> A:   . . . I guess when you say "value," you mean fair market value?
>
> Q:   . . . . Let's start with the fair market value, purchase and sale of the patents. Do you have a view as to what that value is?
>
> A:   Beginning with your client's communications to Escort, he has done everything in his power to make my patents unmarketable. And as a result, I do not believe that, until possibly very recently, that my patents have become marketable because of his conduct.
>
> . . . .
>
> Q:   Okay. So let's take that that point forward. Do you have a view as to what the purchase and sale value of your patent portfolio would be?
>
> A:   Not really.
>
> Q:   So it could be more than a million, it could be less than a million; you just don't know?
>
> . . .
>
> A:   I believe it is in excess of a million dollars.

(Doc. # 117-11 at 19-20).

In his opposition, Fleming contends that Coverstone's argument that there were no damages because the value of the patent is over a million dollars relies on inadmissible lay opinion. (Doc. # 119 at 10). Fleming contends that under California law, "[i]n the absence of an actual or comparable sales, the facts that are relevant to a seller damage offset are (1) the price that the seller could have obtained in the market after the breach and (2) the best offer

that the seller could have obtained after the breach." *Id.*  Fleming contends he attempted to sell the patent portfolio after the deal with Coverstone, but buyers were no longer interested in the portfolio.  *Id.* at 13.  Fleming contends this is due to "Defendant . . . actively frustrating Plaintiff's attempt to sell his patent portfolio." *Id.* at 13-14.  Fleming contends that "due to the special circumstance of Defendant actively frustrating Plaintiff from selling [the] patent portfolio . . . no offset should be applied to the $890,000 that is due Plaintiff." *Id.* at 15.

In support of his opposition, Fleming submitted his own affidavit.  (Doc. # 119-2). Fleming stated "I have been unable to sell my patent portfolio despite my attempt to do so. . . . While I believe that my patent portfolio has value . . . after February 15, 2008, I have not received a singe offer for my patent portfolio." *Id.*  Fleming states that Coverstone's statement to a company called Escort that Coverstone held an interest in the patent portfolio "completely eliminated" his "ability to negotiate a sale with Escort." *Id.* at 4.  Fleming submitted an email from a representative of a potential buyer of the patent portfolio stating the buyer was no longer interested in purchasing the patent.  (Doc. # 119-6).  Fleming submitted a motion to dismiss filed by Escort, Inc. seeking dismissal of Fleming's patent infringement suit in the United States District Court for the District of Idaho on the grounds that Fleming had sold his interest in the patent portfolio to Coverstone.  (Doc. # 119-7).  Fleming submitted GMT's suit in Texas state court against Howrey, LLP and Michael S. Dowler which alleges the patent portfolio is worth less than $1,000,000.  (Doc. # 119-8 at 5).  Fleming submitted an excerpt from the *Texas Lawyer* website which posted the complaint in GMT's suit as well as a Law.com article on the lawsuit.  (Docs. # 119-9, 119-10).

Coverstone has failed to establish that there is no genuine issue of material fact as to whether Fleming has suffered damage from Coverstone's failure to purchase the patent portfolio.  Coverstone contends Fleming's estimate of the value of the patent at $1,000,000, which exceeds the amount of money Fleming would have received for the sale, establishes that Fleming has not been damaged.  (Doc. # 117 at 11).  However, Coverstone ignores Fleming's testimony that his estimation of the value of the patent is the value *but for* Coverstone's actions, which have rendered the patent portfolio "unmarketable." *See* Doc. # 119-2 at 3-4.

Fleming's declaration establishes that there is a genuine issue of material fact as to the present market value of the patents. Coverstone's motion for summary judgment on the grounds that Fleming did not suffer damage is denied.

### 2. Vineyard Boise's Agreement

Coverstone contends that any agreement with Fleming is unenforceable because it is undisputed that Vineyard Boise never agreed to sell its interest in the patent portfolio to Coverstone in exchange for a $100,000. (Doc. # 117-1 at 14-15). Coverstone contends that Vineyard Boise's agreement was a material term of the contract and that the fact that Vineyard Boise's agreement was never obtained made "the agreement unenforceable upon Coverstone or GMT as a matter of law." *Id.* at 15.

In support of his motion, Coverstone submitted an email exchange he had with his tax advisor about the legality of Fleming's plan to assign a percentage of his interest in the patent to Vineyard Boise for tax purposes as well as his February 13, 2008 email to Fleming stating his concern about this assignment. (Docs. # 117-5, 117-6, 117-7). Coverstone submitted excerpts of the deposition of Jim Boyd, a member of Vineyard Boise's finance committee who discussed the patent portfolio assignment with Fleming. (Doc. # 117-10). Boyd testified that he and Fleming never discussed whether Vineyard Boise would be legally obligated to transfer its 10% interest to Coverstone. *Id.* at 7. Coverstone submitted excerpts of Fleming's deposition transcript in which Fleming testified:

> Q:  But in your case, under the January 22, 2008 e-mail, Vineyard Boise would have an obligation to transfer the ten percent to Coverstone, right?
>
> A:  Absolutely not.
>
> Q:  They would not?
>
> A:  Absolutely not.
>
> Q:  So what happens if Vineyard Boise gets the ten percent and doesn't transfer the rest to Coverstone?
>
> A:  The agreement is structured, Mr. Hensrude, that I promised to Coverstone that the transfer would occur.
>
> If I could not have had Vineyard Boise do what it said – what the agreement said, then I would have breached. There was no legal obligation for Vineyard Boise to transfer as of January 22nd . . . . But I

had promised to Coverstone that it would happen.

(Doc. # 117-11 at 2).

Fleming contends that the email exchange is an enforceable contract because it does not state that Vineyard Boise had agreed to anything. (Doc. # 119 at 17). Fleming contends that he had never told Coverstone that the church had agreed to anything, so when Coverstone agreed to the deal, he "could not have believed that the Vineyard Boise church had agreed to transfer its 10% interest . . . ." *Id.* at 17-18.

In support of his opposition, Fleming submitted his own affidavit. (Doc. # 119-2). Fleming stated he "did not believe that any agreement by the Vineyard Boise church was a condition precedent to the formation of the Exchange or that the approval was necessary for the Exchange to take effect." *Id.* at 3.

Under California law, "[m]utual assent is required to create a contract." *Santa Clara-San Benito Chapter of the Natn'l Elec. Contractor's Ass'n, Inc. v. Local Union No. 332 of the Intn'l Bhd of Elec. Workers*, 40 Cal. App. 3d 431, 436 (1974). "When . . . two parties execute a contract *with the understanding* that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens, neither party is bound by the agreement." *Id.* (emphasis added); *see also Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal. App. 3d 981, 987 (1977). "This is true, however, only where it can be said that reasonable persons would have understood that the agreement would *not* be effective when originally signed." *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 549 (1996) (*citing Jacobs v. Freeman*, 104 Cal. App. 3d 177, 189 (1980)). A contract term requiring the signature of a third-party can be either a condition precedent or a condition subsequent. *See Frankel*, 104 Cal. App. 4th at 549-50. If it is a condition subsequent, the contract is effective immediately: "[t]he potential lack of approval by" a non-party whose approval is necessary to perform the contract can be "simply a condition subsequent, i.e., a future event upon the happening of which [the parties'] obligations no longer would be binding [on them.]" *Id.* at 550.

There is no dispute that Vineyard Boise did not agree to transfer its interest in the patent

portfolio to Coverstone.  However, Fleming and Coverstone dispute whether Vineyard Boise's agreement to transfer its interest in the patent portfolio was necessary for the agreement to take effect.  Fleming contends the transfer was a condition subsequent, not a condition precedent.  (Doc. # 119 at 17).  Fleming states he "never told Coverstone that the Vineyard Boise church had agreed to anything" before Coverstone sent the January 22, 2008 email stating he "agreed." (Doc. # 119-2 at 3).  Fleming states he "did not believe that any agreement by the Vineyard Boise was a condition precedent to the formation of the exchange." *Id.*  This disagreement involves a genuine issue of material fact as to whether Vineyard Boise's assent was required to form a contract.  Coverstone's motion for summary judgment on the grounds that Vineyard Boise never agreed to sell its interest in the patent portfolio is denied.

### 3.    Coverstone's Personal Liability

Coverstone contends he cannot be held personally liable on the contract because he was "act[ing] at all times on behalf of GMT, including during preliminary negotiations with Fleming." (Doc. # 117-1 at 16).  Coverstone contends the January 22, 2008 email exchange explicitly states that the patent portfolio would be assigned to "Coverstone 'or an entity that [he] designate[d].'" *See id.* at 17 (citing Doc. # 117-3) (alterations in original).  Coverstone contends Fleming agreed that the agreement "will cover [Coverstone's] companies.  Just let me know their name in due course for our records." *See* Doc. # 117-1 at 17 (citing Doc. # 117-3) (alterations in original).  Coverstone contends that Fleming has "admitted that Coverstone began working on behalf of GMT no later than his January 22, 2008 assignment." Doc. # 117 at 18.

In support of his motion, Coverstone submitted an email sent by Fleming on January 29, 2008 which reads "Thank you for promptly returning the executed agreement.  The agreement will cover your companies.  Just let me know their names in due course for our records." (Doc. # 117-4 at 1).

Fleming contends that Coverstone is liable for breach of contract because the email exchange shows that Coverstone was negotiating on his own behalf.  (Doc. # 119 at 20).  Fleming contends that the references in the email exchange to Coverstone, such as "you have

agreed to purchase . . ." make clear that Coverstone is a party to the contract, not GMT. *Id.* at 21. Fleming contends the existence of the note assigning Coverstone's rights in the contract to GMT after Coverstone had agreed to purchase the patents, shows that Coverstone was acting on his own behalf. *Id.* Further, Fleming contends Coverstone "did not identify GMT" at any time during the negotiations. *Id.* In support of his opposition, Fleming submitted his own affidavit. (Doc. # 119-2). Fleming stated that Coverstone never mentioned GMT during their negotiations and that he "did not learn of the [e]xistence of GMT until after the initiation of this lawsuit." *Id.* at 2.

The email exchange states that "I have agreed to sell and you have agreed to purchase" the patent portfolio. *See* Doc. # 84 at 2. GMT is not mentioned in the email exchange. *See id.* Coverstone's note assigning his rights in the agreement to GMT after the email exchange is further evidence which could support the conclusion that Coverstone was negotiating on his own behalf, rather than on behalf of GMT. A party to a contract may assign rights under a contract but may not escape the burden of breach of contract claims. *See* 1 B.E. Witkin, *Summary of California Law*, Contracts § 729 (10th Ed. 2005). Coverstone's motion for summary judgment on the grounds that he is not a party to the contract is denied.

## CONCLUSION

IT IS HEREBY ORDERED THAT:

(1)     The Motion to Dismiss Defendant's Declaratory Judgment Count filed by Counterdefendant Teresa Fleming (Doc. # 102) is **GRANTED**.

(2)     The Motion for Summary Judgment on Defendant's Ninth Affirmative Defense and Counterclaim filed by Plaintiff and Counterdefendant Hoyt A. Fleming (Doc. # 110) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the counterclaims for fraudulent misrepresentation and fraudulent concealment, and **DENIED** as to the fraud in the inducement defense.

(3)     The Motion for Summary Judgment filed by Defendant and Counterclaimant Tom A. Coverstone (Doc. # 117) is **DENIED**.

(4)     The Clerk of the Court is ordered to correct the docket to show Teresa Fleming

1     and Park, Vaughan and Fleming, LLP as counterdefendants only.

2

3   DATED:  June 17, 2010

4                                          _William Q. Hayes_
                                           **WILLIAM Q. HAYES**
5                                          United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28