1
2
3
4
5

FILED

2010 AUG 16  PM 3: 05

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

6      **UNITED STATES DISTRICT COURT**

7      **SOUTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9  HOYT A. FLEMING, | CASE NO. 08cv355 WQH (NLS) |
| 10                          Plaintiff, | **ORDER** |
|          vs. | |
| 11  TOM COVERSTONE, | |
| 12                        Defendant. | |
| 13 | |
| 14  TOM COVERSTONE, | |
| 15                     Counterclaimant, | |
| 16          vs.<br>HOYT A. FLEMING; TERESA A. | |
| 17  FLEMING; and PARK, VAUGHAN &<br>FLEMING, LLP, | |
| 18 | |
| 19                   Counterdefendants. | |

20

21     HAYES, Judge:

22            The matters before the Court are the Motion for Judgment on the Pleadings (Doc.

23     # 134), the Motion for Summary Judgment (Doc. # 139), and the Motion for Leave to Amend

24     Scheduling Order (Doc. # 143) filed by Counterdefendant Park Vaughan& Fleming, LLP and

25     the Motion for Reconsideration (Doc. # 135) filed by Plaintiff Hoyt A. Fleming.

                                        **BACKGROUND**

26     **I.      Procedural History**

27            This action concerns a dispute over the sale of a patent portfolio.  On February 28,

28     2008, Hoyt A. Fleming ("Fleming") initiated this action by filing a complaint against Tom

1  Coverstone ("Coverstone"). (Doc. # 1). On October 21, 2008, Fleming filed his Second
2  Amended Complaint ("SAC"). (Doc. # 29). On March 18, 2009, the Court granted
3  Coverstone's Motion to Strike pursuant to California's anti-SLAPP (Strategic Litigation
4  Against Public Participation) statute and struck the SAC's cause of action for extortion. (Doc.
5  # 47). In the same order, the Court also denied Coverstone's Motion to Dismiss the SAC's
6  cause of action for breach of contract, holding that the cause of action stated a claim and that
7  a third party, Vineyard Boise, was not a necessary and indispensable party pursuant to Federal
8  Rule of Civil Procedure 19. *Id.*

9          On April 20, 2009, Coverstone filed a First Amended Answer to Plaintiff's Second
10  Amended Complaint which included counterclaims against Fleming for fraudulent
11  misrepresentation and fraudulent concealment; against Teresa A. Fleming, Fleming's wife,
12  for declaratory relief; and against the law firm of Park, Vaughan & Fleming, LLP ("Park,
13  Vaughan & Fleming) for fraudulent concealment. (Doc. # 58). On June 25, 2009, the Court
14  denied Fleming's Motion for Partial Summary Judgment seeking summary judgment on the
15  grounds that emails exchanged on January 22, 2008 between Fleming and Coverstone
16  constitute a valid contract. (Doc. # 77). In the same order, the Court denied Teresa Fleming's
17  Motion to Dismiss for Lack of Jurisdiction. *Id.*

18          On July 1, 2009, Teresa Fleming filed a Motion to Dismiss Defendant's Declaratory
19  Judgment Count. (Doc. # 78). On July 28, 2009, the Court granted Fleming's Motion for
20  Leave to File Third Amended Complaint ("TAC"). (Doc. # 83). On July 29, 2009, Fleming
21  filed his TAC, which is the operative pleading in this case. (Doc. # 84). On August 12, 2009,
22  Coverstone filed his Answer and Counterclaim to Plaintiff's Third Amended Complaint. (Doc.
23  # 86). This filing contains the same counterclaims as Coverstone's previous First Amended
24  Answer to Plaintiff's Second Amended Complaint brought against Teresa Fleming and the law
25  firm of Park, Vaughan & Fleming pursuant to Federal Rules of Civil Procedure 13(h), 19(a)(1),
26  and 20(a)(2). *Compare* Doc. # 58 *with* Doc. # 86; *see also* Doc. # 86 at 11. On December 7,
27  2009, the Court denied Coverstone's Motion for Summary Judgment and denied Teresa
28  Fleming's Motion to Dismiss Defendant's Declaratory Judgment Count as moot. (Doc. # 101).

08cv355 WQH (NLS)

1

2   On June 17, 2010, the Court granted Teresa Fleming's renewed Motion to Dismiss,

3   denied Coverstone's Motion for Summary Judgment, and granted in part and denied in part

4   Fleming's Motion for Summary Judgment. (Doc. # 133 at 22). The Court granted Fleming's

5   Motion for Summary Judgment as to Coverstone's counterclaims for fraudulent

6   misrepresentation and fraudulent concealment and denied the motion as to Coverstone's

7   affirmative defense for fraud in the inducement. *Id.* The Court held that Coverstone cannot

8   base his counterclaims on damages incurred by a third party because he lacks standing to raise

9   claims based on damage to another. *See id.* at 12-16. The Court held that the other damages

10  Coverstone asserted were unavailable as a matter of law. *Id.* at 15-16.

11  On June 21, 2010, Park, Vaughan & Fleming filed its Motion for Judgment on the

12  Pleadings (Doc. # 134) and Fleming filed his Motion for Reconsideration (Doc. # 135). Park,

13  Vaughan & Fleming and Fleming also filed an Ex Parte Motion to Shorten Time which

14  "respectfully submit[s] that the Court will be able to decide Fleming's Motion to Reconsider

15  and PVF's Motion for Judgment on the Pleadings without opposition from Defendant Tom

16  Coverstone . . . ." (Doc. # 136 at 2). On June 22, 2010, the Court denied the Ex Parte Motion

17  to Shorten Time via minute entry. (Doc. # 137). On June 25, 2010, the parties appeared before

18  the Court for a pretrial conference. *See* Doc. # 138. The Court set a trial date of January 25,

19  2011 and informed the parties that it would issue a written ruling on the pending motions. *Id.*

20  On June 28, 2010, Park, Vaughan & Fleming filed its Motion for Summary Judgment. (Doc.

21  # 139). On July 14, 2010, Park, Vaughan & Fleming filed its Motion for Leave to Amend

22  Scheduling Order (Doc. # 143).

23  **II.    Allegations of the Third Amended Complaint**

24  Fleming and Coverstone are attorneys registered to practice before the United States

25  Patent and Trademark Office. (Doc. # 84 at 2). Fleming is a resident of Idaho and Coverstone

26  is a resident of California, with a place of business in California. *Id.* The Court has diversity

27  jurisdiction pursuant to 28 U.S.C. § 1332. *Id.* Fleming agreed to sell and Coverstone agreed

28  to purchase U.S. Patent No. 6,204,798, Reissued Patent No. 039,038, Patent Application No.

1   11/196,841, and Patent Application No. 11/924,352. *Id.* Fleming sent an email to Coverstone

2   on January 22, 2008 ("Plaintiff's January 22 email"), which stated:

3   > Tom,

4   > This email confirms that I have agreed to sell and that you have agreed to
    > purchase U.S. Patent No. 6,204,798, which has been reissued, Reissue Patent
5   > No. 039,038, Patent Application No. U.S. Patent No. 11/196,841, and Patent
    > Application No. 11/924,352. The purchase price for the above patents and
6   > applications is one million dollars.

7   > You and I will strive to close the sale by February 1, 2008. However, you and
    > I will close the sale by February 15, 2008.
8
    > Both you and I understand that I will assign a 10% interest in the above patents
9   > and applications to Vineyard Boise, a church in Boise, Idaho, and that Vineyard
    > Boise will then assign its 10% interest to you, or an entity that you designate.
10  > I will assign my 90% interest directly to you, or an entity that you designate.
    > You will then immediately pay me $900,000 and you will then immediately pay
11  > Vineyard Boise $100,000.

12  > You and I agree that you and/or your attorneys will draft the necessary
    > agreements.
13
    > You agree to wire me ten thousand dollars tomorrow as a deposit on the
14  > purchase price. This deposit will not be refunded if the above sale is not
    > completed by February 15, 2008. I agree to work with you and your attorneys
15  > to close the sale by February 15, 2008.
    > . . .
16
    > If you agree to the above, then please confirm via email.
17
    > Thank you,
18  > Hoyt Fleming

19  *Id.* at 2-3. Coverstone responded via email ("Defendant's January 22 email"), which contained

20  the text of Fleming's email and stated in part:

21  > Hoyt,

22  > Agreed.

23  > I will wire the $10,000.00 tomorrow to your account.

24  > As we discussed on the phone just now, your wife Teresa will sign the
    > assignment documents or whatever is needed . . . .
25
    > Best regards,
26  > Tom

27  *Id.* at 3. This email exchange ("the January 22 emails") constitutes a binding and enforceable

28  contract. *Id.* at 4. Coverstone wired $10,000 to Plaintiff's bank account on January 23, 2008.

1   *Id.*

2       On February 1, 2008, Coverstone sent an email to Jeffrey A. Hill which stated in part:

3 "He is going to have all of the paperwork signed and sent to me, with the paperwork signed

4 by the pastor and chairman of the finance committee, which is who will sign the documents

5 that receive the 10%." *Id.* On February 6, 2008, Coverstone sent an email to Hank Petri that

6 stated in part: "Can you please prepare the documents for the Fleming transaction?" *Id.*

7 Fleming sent an email to Defendant on February 11, 2008, which stated in part: "Tom, I look

8 forward to working with you to complete this transaction on or before February 15." *Id.* at 5.

9 Coverstone sent an email to Hank Petri on February 11, 2008 that stated in part: "No need for

10 you to spend any more time on this matter at this point, I have to go through the prior art." *Id.*

11 Coverstone sent a second email to Hank Petri on February 11, 2008, which stated in part: "Yes,

12 hold off on doing any work on this matter." *Id.*   Coverstone sent Fleming an email on

13 February 13, 2008, which stated in part:

14       My understanding is that our exchange of emails and our conversations is only
      an outline of a potential, future agreement, and we have since been engaged in

15       communications and assessment of the price and terms, particularly related to the
      10% interest. Therefore, there is no current legal obligation. The prospective

16       agreement is incomplete until it is reduced to writing, finalized by attorneys and
      signed at closing. I don't intend a contract until this is done. . . . Because this third

17       party assignment for your tax purposes is not only a material term, but is a
      troublesome and unconventional term, a binding agreement has not been formed.

18       Even if any contract had been entered, which I don't believe there has, there is no
      severability provision. . . . If you are not interested in this offer, then we need to

19       make arrangements for the return of the $10,000 I put toward the purchase of the
      patents.

20

21 *Id.* Coverstone sent an email to Fleming on February 14, 2008, which stated in part: "There

22 is and never was any agreement on the key, material terms for this potential contract. I don't

23 believe you are negotiating in good faith. I would like the $10,000 returned." *Id.*

24       Fleming sent Coverstone an email on February 15, 2008, which stated in part: "I am still

25 willing to meet each and every term included in the agreement dated January 22, 2008. Please

26 be advised that I will not extend the closing deadline." *Id.* Coverstone sent Fleming an email

27 on February 15, 2008, which stated in part:

28       Per my previous emails where I outlined in detail why there was not an
      agreement between us, you continue to try to hold that there was an agreement.

08cv355 WQH (NLS)

1    There was not an agreement, there never was . . . I want my 10k back. And if
2    you send the 10k back – and the return of the money is based on a matter of
principle – I am willing to sign a mutual release.

3    *Id.* at 6. Coverstone refused to perform the contract despite Fleming's demand that Coverstone

4    perform. *Id.* Coverstone failed to pay Fleming "the remaining $890,000 of the $900,000 that

5    Defendant owed Plaintiff." *Id.*

6         The TAC states a single claim for breach of contract. *Id.* In support of the breach of

7    contract claim, the TAC alleges Fleming's performance was excused because Coverstone gave

8    notice that he would not perform his obligations under the contract. *Id.* at 6-7. The TAC

9    alleges Fleming was ready, willing, and able to perform his obligations under the January 22,

10    2008 contract. *Id.* at 7. The TAC alleges Coverstone's failure to perform was unjustified and

11    unexcused. *Id.* The TAC alleges Fleming has been unable to mitigate his damages despite his

12    efforts to find another buyer for the patents. *Id.* at 8. The TAC alleges damages in the amount

13    of $890,000 plus interest. *Id.*

14    **III.  Affirmative Defenses and Allegations of the Counterclaims**

15         Coverstone alleges numerous affirmative defenses, including fraud in the inducement.

16    (Doc. # 86 at 6). In his fraud in the inducement defense, Coverstone alleges Fleming told him

17    that a company called Uniden had applied for a patent on a radar detection device and was

18    rejected because of claims made in Fleming's patent portfolio. *Id.* at 6-7. Coverstone alleges

19    Fleming also told him that another company called Escort was blocked from getting a patent

20    for similar technology. *Id.* Coverstone alleges that, contrary to Fleming's assertions,

21    "[n]either Uniden nor Escort were blocked from obtaining patents for GPS-enabled radar

22    detectors due to Plaintiff's portfolio." *Id.* Coverstone alleges these two statements were

23    material representations which induced him to pay a $10,000 deposit on the patents. *Id.*

24         Coverstone alleges counterclaims for fraudulent misrepresentation against Fleming and

25    fraudulent concealment against Fleming and Fleming's law firm, Park, Vaughan and Fleming,

26    LLP. *Id.* at 11-13. In support of his counterclaim for fraudulent misrepresentation, Coverstone

27    alleges he reasonably relied on Fleming's misrepresentations about Uniden and Escort which

28    induced Coverstone to pay a $10,000 deposit on the patents. *Id.* at 11-12. Coverstone alleges

1   Fleming has refused to return the $10,000 payment. *Id.* at 12. Coverstone alleges the

2   misrepresentations "were a substantial factor in causing Defendant to undertake and continue

3   his due diligence and to incur legal fees and expenses in defending the breach of contract claim

4   filed by Plaintiff . . . ." *Id.*   In support of his counterclaim for fraudulent concealment,

5   Coverstone alleges Fleming failed to reveal the truth about the patents despite an obligation

6   to do so after Coverstone retained Fleming's law firm, Park, Vaughan, Fleming, LLP. *Id.* at

7   13. Coverstone alleges Fleming failed to tell him "that [the patent portfolio] was worth

8   nowhere near the proposed purchase price, though [Fleming] knew the truth." *Id.* Coverstone

9   alleges that Fleming's concealment "was a substantial factor in causing Defendant to incur

10  legal fees and expenses in defending the breach of contract claim filed by Plaintiff . . . ." *Id.*

11  at 14. Coverstone seeks damages for the deposit, the resources expended in conducting due

12  diligence, the legal fees associated with investigating the patents, legal fees incurred in

13  defending against this action, and "stress, anxiety, and concern." *Id.*

14          Coverstone also alleges a counterclaim for declaratory relief against Teresa Fleming.

15  *Id.* at 15. Coverstone alleges Teresa Fleming held an interest in the patent portfolio because

16  Idaho is a community property state. *Id.* Coverstone alleges "Plaintiff has alleged that Teresa

17  Fleming is a signator to a binding contract and Defendant believes that Teresa Fleming agrees

18  with Plaintiff's contentions." *Id.*   Therefore, Coverstone alleges, he is at risk of incurring

19  "inconsistent obligations" unless he sues Teresa Fleming because "the court cannot award

20  complete relief without her involvement." *Id.* Coverstone seeks declaratory judgment that he

21  "owes [Teresa Fleming] no obligations as to the purported contract . . . ." *Id.*

22                                              **ANALYSIS**

23  **I.    Park, Vaughan & Fleming's Motions**

24          In their motion for judgment on the pleadings, Park, Vaughan & Fleming contend that

25  the Court's conclusion that "Coverstone is not entitled to recover any of the damages

26  Coverstone alleges he suffered in support of his claims for fraudulent misrepresentation and

27  fraudulent concealment" renders Coverstone's fraudulent concealment claim against Park,

28  Vaughan & Fleming moot because it is based on the same damages. (Doc. # 134-1 at 2). Park,

1   Vaughan & Fleming contend that the Court should therefore grant judgment on the pleadings.
2   *Id.* In their motion for summary judgment, Park, Vaughan & Fleming contend that "[p]ursuant
3   to the Court's order granting summary judgment, there is an absence of a genuine issue of
4   material fact" as to Coverstone's damages and Park, Vaughan & Fleming are entitled to
5   summary judgment. (Doc. # 139-1 at 2).

6           In his opposition to the motion for judgment on the pleadings, Coverstone contends that
7   Park, Vaughan & Fleming's motion is untimely and should be denied on those grounds. (Doc.
8   # 142 at 2). Coverstone contends the Court's previous ruling was in error because Coverstone
9   "retained rights to recover" money paid to Fleming on behalf of his company, GMT, upon
10  Fleming's breach of the contract pursuant to California Civil Code § 1689(b)(1).  In his
11  opposition to the motion for summary judgment, Coverstone states "while Coverstone
12  recognizes the Court's prior rulings in its order as to Hoyt Fleming's motion for summary
13  judgment, Park Vaughan's filing an additional motion necessitates a renewal of substantive
14  opposition arguments in order to preserve them for appeal." (Doc. # 141 at 3).

15          In their motion to amend the scheduling order, Park, Vaughan & Fleming contend that
16  the motion for judgment on the pleadings and motion for summary judgment "are a matter of
17  housekeeping to formally dismiss the Park Firm as a party prior to . . . the trial set to
18  commence on January 25, 2011." (Doc. # 143-1 at 2). Park, Vaughan & Fleming contend that
19  there is good cause to amend the scheduling order pursuant to Federal Rule of Civil Procedure
20  16(b)(4) because the Court's prior order makes clear that Coverstone cannot maintain his claim
21  against the firm. *Id.* at 3. Park, Vaughan & Fleming contend that "[u]nder the Court's Order,
22  it makes no judicial or economic sense for the Park Firm to remain as a named party through
23  trial when there is only one claim for breach of contract between Plaintiff Fleming and
24  Defendant Coverstone." *Id.* at 3-4.

25          In his opposition to the motion to amend the scheduling order, Coverstone contends
26  that Park, Vaughan & Fleming's failure to follow the Federal Rules of Civil Procedure and
27  to comply with this Court's scheduling order should not be excused. (Doc. # 147 at 1).
28  Coverstone contends that Park, Vaughan & Fleming has failed to provide any explanation

1    of its failure to meet the Court's motion cutoff date. *Id.*

2          This Court's previous ruling that Coverstone could not base his claims against

3    Fleming for fraudulent misrepresentation and fraudulent concealment on damages incurred

4    by his company, GMT, precludes Coverstone's claim against Park, Vaughan & Fleming for

5    fraudulent concealment. *See* Doc. # 133 at 12-16.[1] Although Park, Vaughan & Fleming

6    failed to file their motions prior to the motion cutoff date, the Court finds that good cause

7    exists pursuant to Federal Rule of Civil Procedure 16(b)(4) to modify the scheduling order.

8    Allowing Coverstone's claim against Park, Vaughan & Fleming to proceed to trial in spite

9    of this Court's ruling that Coverstone does not have any damages would be a waste of time

10   for the parties, the Court, and jurors. Park, Vaughan & Fleming's motion to amend the

11   scheduling order and motion for summary judgment are granted.[2]

12   **II.    Fleming's Motion for Reconsideration**

13         Fleming contends that this Court "did not appear to address Fleming's argument

14   submitted in the Motion for Summary Judgment that Coverstone lacks standing to assert

15   the affirmative defense of fraud in the inducement because Coverstone's alleged damages

16   of the $10,000 deposit and due diligence costs were incurred on GMT's behalf." (Doc. #

17   135-1 at 2). Fleming contends that damage is a necessary element of the affirmative

18   defense of fraud in the inducement and that the Court erred in ruling that Coverstone could

19   assert the defense despite ruling that Coverstone could not recover the $10,000 deposit or

20   due diligence costs. *Id.* at 3-4.

21         Coverstone contends that the Court directly addresses Fleming's standing argument

22   as to the fraud in the inducement defense. (Doc. # 140 at 1-2). Coverstone contends that

23   the cases Fleming cites which require damages as an element of fraud deal with fraud

24   counterclaims, not with the fraud in the inducement defense. *Id.* at 4.

25

26   [1]Coverstone's assertion that the Court erred in its analysis relies on a misinterpretation of California Civil Code § 1689(b)(1). Coverstone and GMT did not "jointly contract" with

27   Fleming, which is required to invoke § 1689(b)(1).

28   [2] Because the Court's ruling that Coverstone has not personally incurred any damages was based on facts outside of the pleadings, summary judgment, rather than judgment on the pleadings, is appropriate. *See* Doc. # 133 at 16.

1    "A district court may reconsider its grant of summary judgment under either Federal

2    Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief

3    from judgment)." *School Dist. No. 1J v. AcandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

4    "Reconsideration is appropriate if the district court (1) is presented with newly discovered

5    evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

6    there is an intervening change in controlling law." *Id.* at 1263.

7         Fleming does not cite to any newly discovered evidence or changes in controlling

8    law.  Fleming must therefore establish that this Court committed clear error.  Contrary to

9    Fleming's assertion that this Court failed to consider his argument, the Court held that

10   Fleming failed to cite any authority "establishing that a transfer of rights under a contract

11   prevents the assignor from asserting the defense of fraud in the inducement in an action for

12   breach of contract." *See* Doc. # 133 at 12.  Fleming has not carried his burden of

13   establishing that this ruling was clear error or that the ruling was manifestly unjust and is

14   therefore not entitled to reconsideration.

15        In any event, even if the Court entertains Fleming's motion, Fleming's position is

16   not supported by California law.[3]  Assuming a jury finds that the January 22, 2008 email

17   exchange constitutes a contract, the damage to Coverstone caused by a fraudulent

18   inducement to enter the contract would be Coverstone's assent to be bound to purchase the

19   patent portfolio.  Fleming's motion for reconsideration is denied.

20                                   **CONCLUSION**

21        IT IS HEREBY ORDERED that

22        (1)    Park, Vaughan & Fleming's Motion for Leave to Amend Scheduling Order

23               (Doc. # 143) is **GRANTED**.

24        (2)    Park, Vaughan & Fleming's Motion for Summary Judgment (Doc. # 139) is

25               **GRANTED**.

26        (3)    Park, Vaughan & Fleming's Motion for Judgment on the Pleadings (Doc.

27

28   [3] According to Fleming's logic, a party who discovers fraud and immediately rescinds prior to taking any action to perform a contract may not assert a fraud in the inducement defense because he lacks damages.

1 | # 134) is **DENIED AS MOOT**.

2 |     (4)    Fleming's Motion for Reconsideration (Doc. # 135) is **DENIED**.

DATED: _8/13/10_

WILLIAM Q. HAYES
UNITED STATES DISTRICT JUDGE

- 11 -