1

1            UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4    HOYT A. FLEMING,                )
                                     ) CASE NO. 08CV0355-WQH
5               PLAINTIFF,           ) SAN DIEGO,
                                     ) CALIFORNIA
6    VS.                             )
                                     )
7    TOM COVERSTONE,                 ) WEDNESDAY,
                                     ) MARCH 16, 2011
8               DEFENDANT.           ) 9:55 A.M.
                                     )
9    _____)

10

11

12        REPORTER'S TRANSCRIPT OF PROCEEDINGS

13             JURY TRIAL – DAY TWO

14        MORNING SESSION – PAGES 1 – 45

15     BEFORE THE HONORABLE WILLIAM Q. HAYES
              UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21
              CAMERON P. KIRCHER
22         CSR NO. 9427, RPR, CRR, RMR
           880 FRONT STREET, ROOM 4290
23         SAN DIEGO, CALIFORNIA  92101
            PHONE:  (619) 239-4588
24           FAX:  (619) 239-4589
           E-MAIL:  CPKIRCHER@GMAIL.COM
25

COMPUTER–AIDED TRANSCRIPTION

2

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFF:

 3                        HAWLEY TROXELL ENNIS & HAWLEY
                          ATTORNEYS AT LAW
 4                        BY:  STEVEN F. SCHOSSBERGER, ESQ.
                          877 W MAIN STREET
 5                        SUITE 1000
                          BOISE, IDAHO  83702
 6

 7    FOR THE DEFENDANT:

 8                        KLINEDINST PC
                          ATTORNEYS AT LAW
 9                        BY:  GREGOR A. HENSRUDE, ESQ.
                               DANIEL S. AGLE, ESQ.
10                        501 WEST BROADWAY
                          SUITE 600
11                        SAN DIEGO, CALIFORNIA  92101

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

COMPUTER-AIDED TRANSCRIPTION

3

**INDEX**

EXAMINATION

WITNESS NAME                                                    PAGE

TOM COVERSTONE

   DIRECT BY MR. SCHOSSBERGER..........................9

EXHIBITS

EXHIBIT                                                         PAGE

PLAINTIFF'S EXHIBIT 9 ENTERED INTO EVIDENCE          24
DEFENDANT'S EXHIBIT AN ENTERED INTO EVIDENCE          7

COMPUTER–AIDED TRANSCRIPTION

4

1          SAN DIEGO, CALIFORNIA – WEDNESDAY, MARCH 16, 2011

2                            9:55 A.M.

3              (JURY PRESENT, 9:55 A.M.)

4              THE COURT:  GOOD MORNING.

5              ALL THE LADIES AND GENTLEMEN OF THE JURY ARE

6    PRESENT, ALONG WITH MR. FLEMING, MR. COVERSTONE.  LADIES AND

7    GENTLEMEN, I APOLOGIZE FOR THE DELAY IN GETTING STARTED THIS

8    MORNING.

9              COUNSEL, PLEASE CALL YOUR NEXT WITNESS.

10             MR. SCHOSSBERGER:  YES, YOUR HONOR.  STEVE

11   SCHOSSBERGER CALLING HOYT FLEMING –– EXCUSE ME.  I'M SORRY.

12   CALLING JIM BOYD BY DEPOSITION.

13             THE COURT:  ALL RIGHT.  AND IS THAT GOING TO BE READ

14   BY YOU, OR IS THAT GOING TO BE PLAYED ON THE VIDEO?

15             MR. SCHOSSBERGER:  I'M GOING TO READ IT INTO THE

16   RECORD FROM THE TRANSCRIPT.

17             THE COURT:  ARE YOU GOING TO READ IN ALL PORTIONS,

18   BOTH THE QUESTIONS AND THE ANSWERS?

19             MR. SCHOSSBERGER:  YES, SIR.

20             THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, A

21   DEPOSITION IS THE SWORN TESTIMONY OF A WITNESS TAKEN BEFORE

22   TRIAL.  THE WITNESS IS PLACED UNDER OATH TO TELL THE TRUTH

23   AND LAWYERS FOR EACH PARTY MAY ASK QUESTIONS.  THE QUESTIONS

24   AND THE ANSWERS ARE RECORDED.

25             THE DEPOSITION OF WITNESS JIM BOYD WAS TAKEN ON WHAT

1    DATE, COUNSEL?

2              MR. SCHOSSBERGER:  DECEMBER 7, 2009.

3              THE COURT:  DECEMBER 7TH, 2009.

4              YOU SHOULD CONSIDER DEPOSITION TESTIMONY PRESENTED

5    TO YOU IN COURT IN LIEU OF LIVE TESTIMONY INSOFAR AS POSSIBLE

6    IN THE SAME WAY AS IF THE WITNESS HAD BEEN PRESENT TO

7    TESTIFY.  DO NOT PLACE ANY SIGNIFICANCE ON THE BEHAVIOR OR

8    TONE OF VOICE OF ANY PERSON READING THE QUESTIONS OR THE

9    ANSWERS.

10             ALL RIGHT.  YOU MAY RESUME, COUNSEL.

11             MR. SCHOSSBERGER:  THANK YOU, YOUR HONOR.

12             THE COURT:  THE DEPOSITION -- A COPY OF THE

13   DEPOSITION WILL BE ENTERED INTO THE RECORD; IS THAT CORRECT?

14   WE DON'T EXPECT THE COURT REPORTER TO TAKE IT DOWN.  YOU CAN

15   FILE A COPY OF THE DEPOSITION.

16             IS THAT CORRECT?

17             MR. SCHOSSBERGER:  THAT'S CORRECT.

18             THE COURT:  ALL RIGHT.

19             (WHEREUPON THE DEPOSITION TESTIMONY OF JIM BOYD WAS

20             READ INTO RECORD.)

21             THE COURT:  HAVE YOU COMPLETED ALL THE QUESTIONS OF

22   THE DEPOSITION, COUNSEL?

23             MR. SCHOSSBERGER:  YES.

24             THE COURT:  OKAY.  PLEASE CALL YOUR NEXT WITNESS.

25             MR. SCHOSSBERGER:  OKAY.  IT'S MY UNDERSTANDING THAT

6

```
 1    THEY WILL NOW PLAY THEIR PORTION FROM THE JIM BOYD
 2    DEPOSITION.
 3            THE COURT:  DO YOU HAVE PORTIONS THAT YOU WOULD LIKE
 4    TO PLAY?
 5            MR. AGLE:  YOUR HONOR, ALL OF OUR PORTIONS WERE
 6    INCLUDED IN WHAT MR. SCHOSSBERGER READ.
 7            THE COURT:  ALL RIGHT.  PLEASE CALL YOUR NEXT
 8    WITNESS, COUNSEL.
 9            MR. SCHOSSBERGER:  THANK YOU.  I WILL READ FROM THE
10    DEPOSITION TRANSCRIPT OF TERESA FLEMING.
11            THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, THE
12    SAME INSTRUCTION I GAVE YOU WITH RESPECT TO MR. BOYD, HIS
13    DEPOSITION, APPLIES WITH RESPECT TO MS. FLEMING.
14            MR. SCHOSSBERGER:  THE DEPOSITION WAS CONDUCTED
15    AUGUST 13 OF 2009 AT 9:00 A.M. IN BOISE, IDAHO, BY MR. AGLE.
16    THE DEPONENT'S NAME IS TERESA FLEMING.
17            (WHEREUPON THE DEPOSITION TESTIMONY OF TERESA
18            FLEMING WAS READ INTO THE RECORD.)
19            MR. AGLE:  YOUR HONOR, WE'LL BE PLAYING PORTIONS OF
20    THE VIDEO OF TERESA FLEMING'S DEPOSITION.
21            THE COURT:  ALL RIGHT.  THANK YOU.
22            (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF TERESA
23            FLEMING WAS PLAYED.)
24            THE COURT:  ALL RIGHT.  ANY ADDITIONAL SELECTIONS TO
25    BE PLAYED FROM THAT DEPOSITION?
```

1              MR. AGLE:  NO, YOUR HONOR.

2              THE COURT:  PLEASE CALL YOUR NEXT WITNESS.

3              MR. SCHOSSBERGER:  MICHAEL DOWLER BY VIDEO.

4              THE COURT:  AND THIS IS ALSO BY DEPOSITION; IS THAT

5      CORRECT, COUNSEL?

6              MR. SCHOSSBERGER:  CORRECT.

7              (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

8              MICHAEL DOWLER WAS PLAYED.)

9              THE COURT:  DOES THE DEFENSE HAVE ANY PORTIONS THAT

10     THEY WISH TO PLAY?

11             MR. HENSRUDE:  WE DO, YOUR HONOR.

12             (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

13             MICHAEL DOWLER WAS PLAYED.)

14             MR. HENSRUDE:  MOVE TO ADMIT AN, YOUR HONOR.

15             THE COURT:  BEG YOUR PARDON?

16             MR. HENSRUDE:  MOVE TO ADMIT AN, YOUR HONOR.

17             THE COURT:  "AN"?

18             MR. HENSRUDE:  YES, YOUR HONOR.

19             THE COURT:  ANY OBJECTION?

20             MR. SCHOSSBERGER:  RELEVANCE, YOUR HONOR.

21             THE COURT:  RECEIVED.

22             (DEFENDANT'S EXHIBIT AN RECEIVED IN EVIDENCE.)

23             (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

24             MICHAEL DOWLER WAS PLAYED.)

25             THE COURT:  OKAY.  ANY ADDITIONAL PORTIONS?

8

1          MR. HENSRUDE:  NO, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  PLEASE CALL YOUR NEXT

3     WITNESS.

4          MR. SCHOSSBERGER:  YOUR HONOR, MAY I ASK FOR A

5     FIVE-MINUTE BREAK.

6          THE COURT:  BEG YOUR PARDON?

7          MR. SCHOSSBERGER:  FOR A BATHROOM BREAK, FIVE

8     MINUTES.

9          THE COURT:  ALL RIGHT.  WE'LL TAKE OUR MID-MORNING

10    BREAK AT THIS TIME, LADIES AND GENTLEMEN.  WE'LL BE IN RECESS

11    UNTIL 11:25.

12          PLEASE REMEMBER THE ADMONITION.

13          (JURY ABSENT, 11:12 A.M.)

14          THE COURT:  WE'LL BE IN RECESS FOR 15 MINUTES.

15          MR. SCHOSSBERGER:  THANK YOU, YOUR HONOR.

16          (RECESS, 11:13 A.M. TO 11:29 A.M.)

17          THE COURT:  ALL RIGHT.  LET'S GET THE JURY.

18          (JURY PRESENT, 11:30 A.M.)

19          THE COURT:  ALL THE LADIES AND GENTLEMEN OF THE JURY

20    ARE PRESENT, ALONG WITH COUNSEL AND MR. FLEMING AND

21    MR. COVERSTONE.

22          PLEASE CALL YOUR NEXT WITNESS.

23          MR. SCHOSSBERGER:  TOM COVERSTONE.

24          THE CLERK:  PLEASE RAISE YOUR RIGHT HAND.

25

1      TOM COVERSTONE, THE DEFENDANT, HAVING BEEN DULY SWORN,

2      TESTIFIED AS FOLLOWS:

3           THE WITNESS:  YES, I DO.

4           THE CLERK:  PLEASE TAKE THE STAND.

5           PLEASE STATE YOUR FULL NAME FOR THE RECORD AND SPELL

6      YOUR LAST NAME.

7           THE WITNESS:  THOMAS COVERSTONE,

8      C-O-V-E-R-S-T-O-N-E.

9                     DIRECT EXAMINATION

10     BY MR. SCHOSSBERGER:

11     Q.   MR. COVERSTONE, I TOOK YOUR DEPOSITION IN THIS CASE ON

12     AUGUST 1, 2009 AT YOUR COUNSEL'S LAW FIRM IN SAN DIEGO;

13     CORRECT (SIC)?

14     A.   I DON'T RECALL THE DATE SPECIFICALLY, BUT, YES, YOU DID

15     TAKE MY DEPOSITION.

16     Q.   YOU DON'T RECALL THAT I TOOK IT IN OCTOBER OF 2009?

17     A.   I DON'T RECALL THE DAY, SIR.

18     Q.   AT THE BEGINNING OF THE DEPOSITION, YOU TOOK AN OATH TO

19     TELL THE TRUTH; RIGHT?

20     A.   YES, SIR.

21     Q.   AND I WARNED YOU AT THE BEGINNING OF THAT DEPOSITION

22     THAT THAT OATH THAT YOU WERE TAKING IS THE SAME OATH THAT YOU

23     WOULD TAKE IN A COURT OF LAW, WHICH IS SUBJECT TO PENALTIES

24     OF PERJURY; CORRECT?

25     A.   I DON'T RECALL THAT, SIR.

1    Q.   DID YOU TELL THE TRUTH DURING YOUR DEPOSITION ON

2    OCTOBER 1, 2009?

3    A.   OF COURSE.

4    Q.   IS IT TRUE THAT YOU NEVER MISREPRESENTED ANYTHING DURING

5    THAT DEPOSITION?

6    A.   THE BEST THAT I RECALL, YES.

7    Q.   IS IT TRUE THAT EACH AND EVERY STATEMENT THAT YOU MADE

8    IN THAT DEPOSITION WAS TRUE AND CORRECT?

9    A.   TO THE BEST OF MY KNOWLEDGE.

10   Q.   MR. COVERSTONE, WHAT DO YOU DO FOR A LIVING?

11   A.   I PURCHASE PATENTS AND LOOK TO MAKE REVENUE BY LICENSING

12   THE PATENTS OUT.

13   Q.   ISN'T IT TRUE THAT YOU GAVE A DIFFERENT ANSWER DURING

14   YOUR DEPOSITION?

15   A.   I DON'T RECALL.

16        (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

17         THOMAS COVERSTONE WAS PLAYED.)

18   Q.   BY MR. SCHOSSBERGER:  MR. COVERSTONE, PLEASE IDENTIFY

19   THE COMPANY GUARDIAN MEDIA TECHNOLOGIES.

20   A.   THAT'S ONE OF MY COMPANIES.

21   Q.   YOU'RE AN OFFICER OF GUARDIAN MEDIA TECHNOLOGIES;

22   CORRECT?

23   A.   I'M A DIRECTOR.

24   Q.   WHAT BUSINESS IS GUARDIAN IN?

25   A.   LICENSING PATENTS.

1    Q.   WHERE IS GUARDIAN BASED?

2    A.   TEXAS.

3    Q.   WHAT IS YOUR ROLE AS GUARDIAN -- WITH GUARDIAN?   EXCUSE

4    ME.

5    A.   I'M A DIRECTOR.

6    Q.   ARE YOU THE SOLE DIRECTOR?

7    A.   NOW, YES.

8    Q.   GUARDIAN DOES NOT HAVE OFFICERS OR DIRECTORS, DOES IT?

9    A.   I'M A DIRECTOR OF GUARDIAN.

10   Q.   GUARDIAN IS NOT A CORPORATION; CORRECT?

11   A.   GUARDIAN IS A PARTNERSHIP.

12   Q.   IT'S A LIMITED PARTNERSHIP; CORRECT?

13   A.   I BELIEVE THAT'S ACCURATE.

14   Q.   LIMITED PARTNERSHIPS DO NOT HAVE OFFICERS OR DIRECTORS;

15   ISN'T THAT CORRECT?

16   A.   I'M A DIRECTOR OF GUARDIAN.

17   Q.   WHO MANAGES GUARDIAN?

18   A.   I DO.

19   Q.   IS IT NOT TRUE THAT YOUR OTHER COMPANY GMT MANAGEMENT

20   COMPANY MANAGES GUARDIAN?

21   A.   GMT MANAGEMENT COMPANY IS -- AND I GET THESE CONFUSED,

22   BUT GMT MANAGEMENT COMPANY IS THE GENERAL PARTNER.

23   Q.   WHO IS THE LIMITED PARTNER?

24   A.   THE COVERSTONE FAMILY TRUST.

25   Q.   HOW MANY EMPLOYEES DOES GUARDIAN HAVE?

1   A.   THEY HAVE DIFFERENT CONTRACT EMPLOYEES, AND THE NUMBER

2   VARIES FROM TIME TO TIME.

3   Q.   DOES GUARDIAN HAVE AN OFFICE?

4   A.   YES.

5   Q.   A PHYSICAL OFFICE?

6   A.   YES.

7   Q.   WHERE IS THAT LOCATED?

8   A.   LONGVIEW, TEXAS.

9   Q.   WHAT'S THE ADDRESS?

10   A.   I USE MY P.O. BOX THERE AS THE ADDRESS, BUT THE PHYSICAL

11   OFFICE WOULD BE 140 EAST TYLER STREET, LONGVIEW, TEXAS.

12   Q.   DOES GUARDIAN OWN ANY PATENTS?

13   A.   YES.

14   Q.   HOW MANY?

15   A.   SIX.

16   Q.   WHEN WERE THOSE SIX ACQUIRED?

17   A.   TO THE BEST OF MY RECOLLECTION, 2003.

18   Q.   AND THOSE SIX PATENTS WERE ACQUIRED IN 2003 IN ONE

19   TRANSACTION; CORRECT?

20   A.   I'M NOT QUITE SURE I UNDERSTAND WHAT YOU MEAN BY ONE

21   TRANSACTION.  IT WAS --

22   Q.   YOU HAD ONE PURCHASE AND SALE AGREEMENT AND AN

23   ASSIGNMENT AGREEMENT FOR THOSE SIX PATENTS; CORRECT?

24   A.   I'M SORRY.  CAN YOU SAY THAT AGAIN?

25   Q.   THERE WAS ONLY ONE PURCHASE AND SALE AGREEMENT AND

1    ASSIGNMENT DOCUMENT FOR THOSE SIX PATENTS; CORRECT?

2    A.   NO.

3    Q.   WHAT'S INCORRECT ABOUT THAT STATEMENT?

4    A.   THERE WAS -- THE BEST THAT I RECALL, THERE WAS A

5    PURCHASE AND SALE AGREEMENT, THERE WAS A LONG-FORM ASSIGNMENT

6    AND THERE WAS A SHORT-FORM ASSIGNMENT.

7    Q.   AND THAT WAS WITH A COMPANY CALLED VOGEL; RIGHT?

8    A.   NO.

9    Q.   WHO WAS THE COMPANY THAT YOU PURCHASED THE PATENTS

10   FROM?

11   A.   I'M NOT SURE THAT I CAN DISCLOSE THAT.  THERE IS A

12   CONFIDENTIALITY AGREEMENT WITH THAT COMPANY.

13          MR. HENSRUDE:  YOUR HONOR, THERE IS A PROTECTIVE

14   ORDER ENTERED WITH RESPECT TO THIS INFORMATION BEING

15   REQUESTED.

16   Q.   BY MR. SCHOSSBERGER:  DOES GUARDIAN LICENSE THOSE

17   PATENTS?

18   A.   YES.

19   Q.   DOES GUARDIAN LITIGATE THOSE PATENTS?

20   A.   IF NEED BE.

21   Q.   HAS GUARDIAN LITIGATED THOSE PATENTS?

22   A.   YES.

23   Q.   THAT'S HOW GUARDIAN OBTAINS MONEY; CORRECT?

24   A.   WELL, THROUGH THE LICENSE.

25   Q.   AND THE LITIGATION; CORRECT?

1    A.    THE LITIGATION IS A MEANS TO GET A LICENSE, SO IT'S --

2    ULTIMATELY A LICENSE IS HOW GUARDIAN WOULD MAKE REVENUE OFF

3    OF THE PATENTS.

4    Q.    I'D LIKE TO NOW DISCUSS GMT MANAGEMENT COMPANY.

5          DURING YOUR DEPOSITION, YOU TOLD ME THAT YOU DID NOT

6    SPECIFICALLY KNOW WHAT TYPE OF ENTITY GMT IS; ISN'T THAT

7    RIGHT?

8    A.    IT'S A COMPANY, BUT -- AS I SIT HERE, I CAN'T TELL YOU

9    THE STRUCTURE.

10   Q.    ISN'T THAT RIGHT, THAT DURING YOUR DEPOSITION, YOU COULD

11   NOT TELL ME WHAT TYPE OF COMPANY GMT MANAGEMENT IS?

12   A.    TO THIS DAY, I CAN'T TELL YOU THAT, YES.

13   Q.    IS GMT A LIMITED LIABILITY COMPANY, A LIMITED

14   PARTNERSHIP, A GENERAL CORPORATION OR A CORPORATION?

15   A.    I BELIEVE IT'S A CORPORATION.

16   Q.    AND YOU'RE THE PRESIDENT; RIGHT?

17   A.    I'M THE PRESIDENT.

18   Q.    IS THERE A BOARD OF DIRECTORS?

19   A.    YES.

20          THE COURT:  EXCUSE ME, COUNSEL.  IS THERE ANY

21   WRITING ON THAT BOARD, THE ENLARGEMENT?  IS THAT JUST A BLANK

22   BOARD?

23          MR. SCHOSSBERGER:  THAT'S EXHIBIT 2, WHICH HAS BEEN

24   ADMITTED.

25          THE COURT:  JUST TURN IT THE OTHER WAY UNTIL YOU GO

1    TO USE IT.

2              MR. SCHOSSBERGER:  SURE.

3              THE COURT:  THANK YOU.

4    Q.   BY MR. SCHOSSBERGER:  WHAT BUSINESS IS GMT IN?

5    A.   GMT IS THE GENERAL PARTNER OF GUARDIAN, AND I ALSO USE

6    GMT MANAGEMENT COMPANY FOR MANY OTHER PURPOSES.

7    Q.   HOW MANY EMPLOYEES DOES GMT HAVE?

8    A.   AGAIN, I USE CONTRACT EMPLOYEES; AND THAT NUMBER VARIES

9    OVER TIME.

10   Q.   GMT DOES NOT HAVE A PHYSICAL OFFICE, DOES IT?

11   A.   GMT DOES HAVE A PHYSICAL OFFICE.

12   Q.   WHAT IS THE BUSINESS PHYSICAL ADDRESS OF THAT OFFICE

13   THEN?

14   A.   AGAIN, I TYPICALLY USE THE P.O. BOX, JUST LIKE I DO FOR

15   GUARDIAN, BUT THE PHYSICAL ADDRESS IS THE 140 EAST TYLER

16   STREET IN LONGVIEW.

17   Q.   SAME ADDRESS AS FOR GUARDIAN?

18   A.   YES.

19   Q.   OKAY.  IS THERE A RECEPTIONIST THERE THAT STAFFS THAT

20   OFFICE?

21   A.   YES.

22   Q.   WHAT'S HER NAME?

23   A.   MORGAN.

24             MR. HENSRUDE:  YOUR HONOR, RELEVANCE.

25             THE COURT:  SUSTAINED.

16

1   Q.   BY MR. SCHOSSBERGER:  DOES GMT OWN ANY PATENTS?

2   A.   THEY HAVE A PERCENTAGE OF OWNERSHIP IN PATENTS.

3   Q.   PERCENTAGE OWNERSHIP, YOU MEAN IN THE PATENTS THAT

4   GUARDIAN OWNS?

5   A.   YES.

6   Q.   IT DOES NOT SEPARATELY, IN AND OF ITSELF, OWN ANY

7   PATENTS; CORRECT?

8   A.   NOT CURRENTLY.

9           (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

10          THOMAS COVERSTONE WAS PLAYED.)

11          MR. HENSRUDE:  YOUR HONOR --

12          THE COURT:  COUNSEL.

13          MR. HENSRUDE:  I WOULD APPRECIATE --

14          THE COURT:  STOP THE VIDEO, PLEASE.

15          MR. HENSRUDE:  I'D APPRECIATE KNOWING WHAT PARTS ARE

16   GOING TO BE PLAYED.

17          THE COURT:  BEFORE YOU'RE GOING TO PLAY IT -- ARE

18   YOU PLAYING IT FOR IMPEACHMENT?

19          MR. SCHOSSBERGER:  YES, YOUR HONOR.  FOLLOWING UP ON

20   THE LINE OF QUESTIONING THAT I JUST READ, JUST LIKE WHAT

21   MR. HENSRUDE DID --

22          THE COURT:  COUNSEL -- COUNSEL, YOU ANSWERED MY

23   QUESTION.

24          MR. SCHOSSBERGER:  THANK YOU.

25          THE COURT:  SO BEFORE YOU -- BEFORE YOU PLAY IT,

1    JUST GIVE THE PAGE AND THE LINE NUMBERS.

2         MR. SCHOSSBERGER:  OKAY.  PAGE 4, LINE 25 DASH

3    PAGE 6, LINE 9.

4         (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

5         THOMAS COVERSTONE WAS PLAYED.)

6         THE COURT:  EXCUSE ME, COUNSEL.

7         YOU MAY CONTINUE, COUNSEL.

8         MR. SCHOSSBERGER:  THANK YOU, YOUR HONOR.

9    Q.   MR. COVERSTONE, ARE YOU CURRENTLY AN OFFICER WITH ANY

10   OTHER COMPANIES?

11   A.   CURRENTLY, NONE.

12   Q.   CURRENTLY NONE?

13   A.   CURRENTLY NONE.

14   Q.   ISN'T IT TRUE THAT YOU'RE AN OFFICER OF A COMPANY CALLED

15   TEXAS DATA CO., LLC?

16   A.   NOT RIGHT NOW.

17        MR. HENSRUDE:  RELEVANCE, YOUR HONOR.

18        THE COURT:  OVERRULED.

19   Q.   BY MR. SCHOSSBERGER:  SIR, DID YOU NOT FILE A

20   DECLARATION, DATED DECEMBER 13, 2010, IN THE UNITED STATES

21   DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CAPTIONED

22   TEXAS DATA CO., LLC, PLAINTIFF, V. TARGET BRANDS, INC. AND

23   TARGET CORPORATION.  PARAGRAPH NO. 3:  I AM CURRENTLY THE

24   PRESIDENT OF TEXAS DATA CO., LLC, THE PLAINTIFF IN THIS

25   LAWSUIT.

1    TRUE?

2    A.    YES.

3    Q.    SO YOU ARE AN OFFICER OF TEXAS DATA, CO.; CORRECT?

4    A.    NO, NOT CURRENTLY.

5    Q.    IS THAT CORPORATION OR THAT COMPANY DISSOLVED?

6    A.    NO.

7    Q.    WHERE IS TEXAS DATA BASED?

8    A.    LONGVIEW, TEXAS.

9    Q.    HOW MANY EMPLOYEES DOES TEXAS DATA HAVE?

10          MR. HENSRUDE:  I'LL REASSERT RELEVANCE, YOUR

11   HONOR.

12          THE COURT:  SUSTAINED ON RELEVANCE GROUNDS.

13   Q.    BY MR. SCHOSSBERGER:  DOES TEXAS DATA HOLD ANY

14   PATENTS?

15   A.    NO.

16   Q.    YOU WERE LICENSED BY THE STATE BAR OF CALIFORNIA AS AN

17   ATTORNEY; CORRECT?

18   A.    YES.

19   Q.    YOUR CALIFORNIA STATE BAR NO. IS 216649; RIGHT?

20   A.    I DON'T RECALL.

21   Q.    YOU DON'T KNOW YOUR BAR NUMBER OFF THE TOP OF YOUR

22   HEAD?

23   A.    NO.

24   Q.    AND YOUR CURRENT STATUS IS ACTIVE; CORRECT?

25   A.    I PAY MY DUES.

1    Q.   IT'S ACTIVE; CORRECT?

2    A.   IT'S ACTIVE, YES.

3    Q.   AND THAT MEANS THAT YOU ARE ACTIVE AND MAY PRACTICE LAW

4    IN CALIFORNIA; RIGHT?

5    A.   NO.

6    Q.   THE ACTIVE STATUS WITH THE STATE BAR OF CALIFORNIA MEANS

7    THAT YOU CAN PRACTICE LAW IN THE STATE OF CALIFORNIA;

8    RIGHT?

9    A.   I COULD IF I WANTED TO.

10   Q.   THAT'S WHAT THAT "ACTIVE" STATUS MEANS; CORRECT?

11   A.   NOT TO ME.

12   Q.   YOU WERE A LICENSED PATENT ATTORNEY AS WELL; RIGHT?

13   A.   YES.

14   Q.   YOU PASSED THE PATENT LICENSING EXAM THEN?  YES?

15   A.   NO.

16   Q.   HOW DID YOU BECOME LICENSED AS A PATENT ATTORNEY THEN?

17   A.   I PASSED THE PATENT AGENT'S EXAM.

18   Q.   YOU PASSED A PATENT EXAM TO BE LICENSED; CORRECT?

19   A.   PATENT AGENT'S EXAM, YES.

20   Q.   YOU HAVE AN UNDERGRADUATE DEGREE IN ENGINEERING?

21   A.   MECHANICAL TECHNOLOGY.

22   Q.   YOU HAVE A MASTER'S -- EXCUSE ME.  YOU HAVE AN M.B.A.;

23   CORRECT?

24   A.   YES.

25   Q.   MR. COVERSTONE, YOU ARE A RESIDENT OF THE STATE OF

20

1    TEXAS; RIGHT?

2    A.   YES.

3    Q.   AND YOU LIVE IN HALLSVILLE, HARRISON COUNTY, TEXAS,

4    WHICH IS LOCATED IN THE EASTERN DISTRICT OF TEXAS,

5    MARSHALL DIVISION, AND HAVE FOR MORE THAN A YEAR; IS THAT

6    CORRECT?

7    A.   YES.

8    Q.   WHAT IS THE PHYSICAL ADDRESS OF THE HOUSE IN

9    HALLSVILLE?

10   A.   105 MOSSY DRIVE.

11   Q.   DOES YOUR WIFE LIVE THERE?

12   A.   MOST OF THE TIME.  SOME OF THE TIME.

13   Q.   ISN'T IT TRUE THAT DURING YOUR DEPOSITION, YOU TESTIFIED

14   DIFFERENTLY ABOUT WHERE YOU WERE A RESIDENT?

15   A.   YES.

16          MR. SCHOSSBERGER:  PAGE 17, LINE 12-14, PAGE 18,

17   LINE 18-22.

18          MR. HENSRUDE:  YOUR HONOR --

19          THE COURT:  HOLD ON, COUNSEL.

20          YES.

21          MR. HENSRUDE:  YOUR HONOR, I'LL OBJECT TO PAGE 17 --

22   STRIKE THAT.  NEVER MIND.

23          THE COURT:  YOU MAY PLAY THE CLIP.

24          MR. SCHOSSBERGER:  THANK YOU.

25          (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

1          THOMAS COVERSTONE WAS PLAYED.)

2   Q.   BY MR. SCHOSSBERGER:  ISN'T IT TRUE THAT YOU LIVE AT

3   6241 MIMULUS -- M-I-M-U-L-U-S -- RANCHO SANTA FE, ABOUT

4   20 MILES NORTH OF HERE?

5   A.   NO.

6   Q.   YOU OWN A HOUSE THERE; CORRECT?

7   A.   WE HAVE A HOUSE THERE.

8   Q.   ISN'T IT TRUE THAT YOUR CHILDREN GO TO SCHOOL WITHIN

9   THAT COUNTY?

10          MR. HENSRUDE:  RELEVANCE, YOUR HONOR.

11          THE COURT:  SUSTAINED.

12   Q.   BY MR. SCHOSSBERGER:  THE ADDRESS YOU PROVIDED TO THE

13   STATE BAR OF CALIFORNIA IS P.O. BOX 3107, LONGVIEW, TEXAS;

14   CORRECT?

15   A.   YES.

16   Q.   WHY DID YOU GIVE THE STATE BAR A DROP BOX IN TEXAS WHEN

17   YOU HAVE A RESIDENCE IN CALIFORNIA?

18          MR. HENSRUDE:  RELEVANCE, YOUR HONOR.

19          THE COURT:  SUSTAINED.

20   Q.   BY MR. SCHOSSBERGER:  DURING THE COURSE OF THIS

21   LITIGATION, MR. COVERSTONE, YOU FILED WITH THIS COURT SEVERAL

22   DECLARATIONS AND AFFIDAVITS OF TOM COVERSTONE UNDER PENALTY

23   OF PERJURY; CORRECT?

24   A.   YES.

25   Q.   IS IT TRUE THAT YOU NEVER MISREPRESENTED ANYTHING IN ANY

22

1    DECLARATION OR AFFIDAVIT YOU HAVE FILED IN THIS CASE?

2    A.   YES.

3    Q.   IS IT YOUR TESTIMONY THAT EACH AND EVERY STATEMENT THAT

4    YOU MADE IN YOUR DECLARATIONS AND AFFIDAVITS ARE TRUE AND

5    CORRECT?

6    A.   YES.

7         MR. SCHOSSBERGER:  PAGE 25, LINE 5-7.

8         (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

9         THOMAS COVERSTONE WAS PLAYED.)

10   Q.   BY MR. SCHOSSBERGER:  YOU HAVE SENT MR. FLEMING A NUMBER

11   OF E-MAILS; CORRECT?

12   A.   WHEN WE WERE CORRESPONDING, YES.

13   Q.   WERE ALL OF YOUR STATEMENTS THAT YOU MADE IN YOUR

14   E-MAILS TO MR. FLEMING TRUE AND ACCURATE?

15   A.   TO THE BEST OF MY KNOWLEDGE.

16        MR. SCHOSSBERGER:  PAGE 22, LINES 15-17.

17        (WHEREUPON THE VIDEO DEPOSITION TESTIMONY OF

18        THOMAS COVERSTONE WAS PLAYED.)

19   Q.   BY MR. SCHOSSBERGER:  DID YOU MISSTATE ANYTHING IN ANY

20   E-MAIL THAT YOU SENT TO MR. FLEMING?

21        MR. HENSRUDE:  ASKED AND ANSWERED, YOUR HONOR.

22        THE COURT:  SUSTAINED.

23   Q.   BY MR. SCHOSSBERGER:  MR. COVERSTONE, LET'S WALK THROUGH

24   THE EVENTS THAT OCCURRED BEFORE YOU MET MR. FLEMING FOR THE

25   FIRST TIME.

1          DO YOU HAVE EXHIBIT 5 UP THERE IN FRONT OF YOU,

2     PLEASE.

3     A.   YES.

4     Q.   WHAT IS EXHIBIT 5?

5     A.   IT'S A PATENT.

6     Q.   WHOSE PATENT?

7     A.   THIS IS ONE OF HOYT FLEMING'S PATENTS.

8     Q.   GPS-ENABLED RADAR DETECTOR PATENT; CORRECT?

9     A.   THE TITLE SAYS SOMETHING DIFFERENT.

10    Q.   YOU FIRST BECAME AWARE OF THE FLEMING PATENT IN EARLY

11    OCTOBER 2007; RIGHT?

12    A.   I WAS AWARE OF THE OPPORTUNITY IN I THINK ABOUT

13    MID-OCTOBER.

14    Q.   SIR, YOU BECAME AWARE OF THE FLEMING PATENT IN OCTOBER

15    2007; RIGHT?

16    A.   AS I SIT HERE RIGHT NOW, I DON'T RECALL SPECIFICALLY IF

17    I WAS AWARE OF THIS PATENT.  I WAS AWARE OF THE OPPORTUNITY,

18    FROM WHAT I RECALL.

19    Q.   IN FACT, YOU LEARNED ABOUT THE FLEMING PATENT FROM AN

20    E-MAIL FROM MR. DOWLER IN THAT TIME PERIOD; CORRECT?

21    A.   THAT'S WHAT I'M REFERRING TO.  IF YOU WANT TO SHOW ME

22    THE DOCUMENT, I'M MORE THAN HAPPY TO ANSWER MORE

23    SPECIFICALLY.

24    Q.   DO YOU NOT HAVE A RECOLLECTION THAT MR. DOWLER SENT YOU

25    AN E-MAIL TELLING YOU ABOUT FLEMING'S PATENT?

24

1    A.   WHAT I RECALL AS I SIT HERE RIGHT NOW, IT WAS THAT HE

2    HAD SOME PATENTS THAT HE WAS LOOKING AT AND HE MADE ME AWARE

3    OF THE OPPORTUNITY.

4    Q.   TURN TO EXHIBIT 9.  DO YOU HAVE EXHIBIT 9?

5    A.   THERE IS 39.

6    Q.   EXHIBIT 9, SIR, SHOULD BE IN THE REDWELD.

7         DID YOU FIND IT?

8    A.   YES.

9    Q.   EXHIBIT 9 IS AN E-MAIL FROM TOM COVERSTONE SENT

10   OCTOBER 11TH, 2007, 3:31 P.M., TO MICHAEL DOWLER, SUBJECT,

11   RE: NEW PATENT; RIGHT?

12   A.   I'M SORRY.  WHAT WAS THE QUESTION?

13   Q.   EXHIBIT 9 IS FROM TOM COVERSTONE, SENT THURSDAY,

14   OCTOBER 11TH, 2007, 3:31 P.M., TO MICHAEL DOWLER, SUBJECT,

15   RE: NEW PATENT; RIGHT?

16   A.   YES.

17             MR. SCHOSSBERGER:  OFFER EXHIBIT 9.

18             THE COURT:  ANY OBJECTION?

19             MR. HENSRUDE:  NO, YOUR HONOR.

20             THE COURT:  9 IS RECEIVED.

21             (PLAINTIFF'S EXHIBIT 9 RECEIVED IN EVIDENCE.)

22   Q.   BY MR. SCHOSSBERGER:  IN EXHIBIT 9 YOU STATE IN YOUR

23   E-MAIL, I AM INTERESTED IN THIS PATENT; CORRECT?

24   A.   YES.

25   Q.   AND THAT STATEMENT IS TRUE AND ACCURATE; RIGHT?

1   A.   AS OF THAT TIME, YES.

2   Q.   ON OCTOBER 11TH, 2007, TELL THE JURY WHY YOU WERE

3   INTERESTED IN THE FLEMING PATENT.

4   A.   IF I HAD THE FULL E-MAIL EXCHANGE, I THINK IT WOULD

5   HELP, BUT I THINK THIS WAS IN RESPONSE TO THE E-MAIL THAT

6   MIKE HAD SENT TO ME.  MY ATTORNEY, MIKE DOWLER.

7   Q.   SIR, I'M NOT ASKING YOU ABOUT ANY E-MAIL EXCHANGE.  I'M

8   ASKING YOU TO TELL THE JURY WHY IN OCTOBER OF 2007, AS STATED

9   IN YOUR E-MAIL, YOU WERE INTERESTED IN THE PATENT.

10  A.   IT WOULD HELP IF I HAD THE OTHER E-MAIL, BUT FROM

11  WHAT I RECALL, I BELIEVE THIS WAS IN RESPONSE TO AN E-MAIL

12  FROM MY LONG-TIME ATTORNEY, MIKE DOWLER, TELLING ME

13  SOMETHING ALONG THE LINES OF, I'VE BEEN LOOKING AT A PATENT,

14  IT'S WHAT -- IT'S A REALLY GOOD PATENT, IT'S AVAILABLE FOR

15  SALE.

16  Q.   SIR, PLEASE TELL THE JURY WHY YOU STATED IN THIS E-MAIL

17  TO MR. DOWLER, I AM INTERESTED IN THIS PATENT.

18       MR. HENSRUDE:  ASKED AND ANSWERED, YOUR HONOR.

19       THE COURT:  SUSTAINED.

20  Q.   BY MR. SCHOSSBERGER:  NEXT YOU SAY, I WOULD LIKE TO HAVE

21  A BETTER IDEA OF THE NUMBER OF UNITS SOLD THAT HAVE THIS

22  FEATURE SO THAT WE CAN TRY TO PLACE A VALUE ON THE MARKET

23  POTENTIALLY COVERED BY THE PATENT; CORRECT?

24  A.   YES.

25  Q.   AND THAT STATEMENT WAS TRUE AND ACCURATE?

1    A.    YES, SIR.

2    Q.    WHAT DID YOU MEAN BY "THIS FEATURE"?

3    A.    WELL, FROM WHAT I RECALL, IT -- AGAIN, IT WOULD HELP IF

4    I HAD THE OTHER E-MAIL.  BUT FROM WHAT I RECALL, THIS FEATURE

5    BEING THIS GPS PLUS RADAR DETECTOR.

6    Q.    AND IN THE E-MAIL -- SO YOU NEEDED TO KNOW THE NUMBER OF

7    THE GPS RADAR DETECTORS SOLD TO BE ABLE TO PLACE A VALUE ON

8    THE MARKET POTENTIALLY COVERED BY THE FLEMING PATENT;

9    CORRECT?

10   A.    I'M SORRY.  CAN YOU ASK THE QUESTION AGAIN?

11   Q.    YOU NEEDED TO KNOW THE NUMBER OF GPS-ENABLED RADAR

12   DETECTORS SOLD TO BE ABLE TO PLACE A VALUE ON THE MARKET

13   POTENTIALLY COVERED BY THE FLEMING PATENT; CORRECT?

14   A.    YES.  IT SAYS I'D LIKE TO HAVE A BETTER IDEA OF THE

15   NUMBERS SOLD WITH THIS FEATURE, SO THAT WE CAN TRY AND PLACE

16   A VALUE ON THE MARKET POTENTIALLY COVERED BY THE PATENT.

17   YES, SIR.

18   Q.    WHAT DID YOU MEAN BY, IN QUOTES, POTENTIALLY COVERED IN

19   YOUR E-MAIL?

20   A.    THE POTENTIAL.

21   Q.    OF WHAT?

22   A.    THE MARKET POTENTIAL.  HOW BIG WAS THE MARKET.

23   Q.    THE MARKET POTENTIALLY COVERED BY THE PATENT; CORRECT?

24   A.    YES.

25   Q.    YOU HAD NOT DONE AN INFRINGEMENT ANALYSIS; ISN'T THAT

1    TRUE?

2    A.   NO, I HAD NOT DONE AN INFRINGEMENT ANALYSIS.

3    Q.   YOUR E-MAIL STATES, IT WOULD BE GOOD TO ALSO SEE THE

4    OWNER'S MANUALS OR WHATEVER YOU HAVE TO DETERMINE

5    INFRINGEMENT; CORRECT?

6    A.   YES.

7    Q.   SO YOU WERE SEEKING INFORMATION THAT WOULD ENABLE YOU TO

8    PERFORM AN INFRINGEMENT ANALYSIS; AGREED?

9    A.   THAT MAY BE A BIT OF A MISCHARACTERIZATION.  I WANTED TO

10   SEE WHAT HE HAD SO THAT I COULD DETERMINE INFRINGEMENT.

11   Q.   TO DETERMINE INFRINGEMENT; RIGHT?

12   A.   YES, DETERMINE INFRINGEMENT.

13   Q.   WHAT DOES AN INFRINGEMENT ANALYSIS DEMONSTRATE?

14   A.   TO ME, FROM A HIGH LEVEL, THAT WOULD SHOW THAT THAT

15   TECHNOLOGY IS BEING USED IN THE MARKETPLACE.

16   Q.   YOU WERE DOING DUE DILIGENCE AT THAT TIME; CORRECT?

17   A.   NO.

18   Q.   DID MR. DOWLER PROVIDE YOU WITH AN ESCORT USER'S MANUAL

19   IN RESPONSE TO YOUR REQUEST IN YOUR OCTOBER 11TH, 2007

20   E-MAIL?

21   A.   AS I SIT HERE, I CAN'T TELL YOU SPECIFICALLY IF IT WAS

22   IN RESPONSE TO THIS E-MAIL, BUT HE DID AT SOME POINT IN TIME

23   FORWARD ME A USER'S MANUAL THAT WAS AVAILABLE ONLINE.

24             MR. SCHOSSBERGER:  TURN TO EXHIBIT 10.

25             THE COURT:  ARE YOU OFFERING EXHIBIT 10, COUNSEL?

1   ARE YOU GOING TO OFFER?

2           MR. SCHOSSBERGER:  YES.

3           THE COURT:  IS EXHIBIT 10 ON THE SCREEN?

4           MR. SCHOSSBERGER:  NO.  IT'S STILL 9 ON THE SCREEN.

5   Q.   THIS IS AN E-MAIL FROM MICHAEL DOWLER, OCTOBER 12, 2007

6   AT 10:41 A.M. TO TOM COVERSTONE.  AND BEHIND IT IS ATTACHED

7   THE ESCORT 9500-I USER'S MANUAL; CORRECT?

8   A.   YES.

9           MR. SCHOSSBERGER:  OFFER 10.

10          THE COURT:  ANY OBJECTION?

11          MR. HENSRUDE:  YOUR HONOR, I CAN'T TELL WHAT'S BEEN

12  REDACTED FROM IT.

13          THE COURT:  WELL, I'LL -- WE'LL DEFER RULING ON

14  THAT, AND YOU CAN KEEP GOING TO YOUR NEXT EXHIBIT, COUNSEL.

15          YOUR OBJECTION IS THAT A PART OF IT IS REDACTED AND

16  YOU DON'T KNOW WHAT HAS BEEN REDACTED?

17          MR. HENSRUDE:  THAT'S CORRECT.

18          THE COURT:  ALL RIGHT.

19  Q.   BY MR. SCHOSSBERGER:  MR. COVERSTONE, WHAT IS AN ESCORT

20  PASSPORT 9500-I?

21  A.   IT APPEARS TO BE A RADAR DETECTOR.

22  Q.   IT'S A GPS RADAR DETECTOR MANUFACTURED BY ESCORT;

23  CORRECT?

24  A.   I'M NOT SURE.

25  Q.   YOU'RE NOT SURE OF WHAT?

1    A.   OF YOUR QUESTION, WHETHER IT'S A GPS-ENABLED RADAR

2    DETECTOR.

3    Q.   YOU HAVE THE MANUAL RIGHT THERE.  CAN YOU LOOK AT IT AND

4    TELL ME IF THE ESCORT 9500-I IS A GPS-ENABLED RADAR DETECTOR.

5    A.   DO YOU WANT ME TO LOOK THROUGH THE DOCUMENT?

6    Q.   I WANT YOU TO LOOK THROUGH THE MANUAL AND TELL THE JURY

7    IF YOU CAN TELL IF IT'S A GPS-ENABLED RADAR DETECTOR.

8    A.   IT SAYS ON PAGE 1 THAT IT'S A GPS-POWERED INTELLIGENCE

9    PERFORMANCE PERMANENT RELIEF, SO --

10   Q.   WELL, IT IS A GPS-ENABLED RADAR DETECTOR; CORRECT?

11   A.   IT APPEARS THAT WAY, YES.

12   Q.   AND YOU WERE INTERESTED IN KNOWING ABOUT THIS

13   GPS-ENABLED RADAR DETECTOR MANUFACTURED BY ESCORT AT THIS

14   TIME IN OCTOBER OF 2007; CORRECT?

15   A.   I WAS INTERESTED IN SEEING WHAT MY ATTORNEY, MIKE

16   DOWLER, HAD ON THIS, YES.

17   Q.   YOU WERE DOING DUE DILIGENCE ON THE FLEMING PATENT;

18   CORRECT?

19   A.   NO.

20   Q.   IN FACT, YOU DID RECEIVE THE ESCORT USER MANUAL ON THE

21   GPS-ENABLED RADAR DETECTOR ON OCTOBER 12, 2007; CORRECT?

22   A.   IT APPEARS I DID GET THIS BY AN E-MAIL, BUT --

23   Q.   AND YOU REVIEWED THAT MANUAL; RIGHT?

24   A.   NO.

25            THE COURT:  EXCUSE ME, COUNSEL.

```
1              IT'S APPROXIMATELY 12 O'CLOCK.  LADIES AND

2    GENTLEMEN, PLEASE REMEMBER THE ADMONITION, DON'T DISCUSS THE

3    CASE WITH ANYONE OR ALLOW ANYONE TO DISCUSS THE CASE WITH

4    YOU.

5              REMEMBER, YOU'RE REMINDED TO KEEP AN OPEN MIND UNTIL

6    YOU'VE HEARD ALL THE EVIDENCE, INSTRUCTION OF THE COURT AND

7    ARGUMENTS OF COUNSEL.

8              IT'S A LITTLE BIT AFTER 12:00, SO WE'LL RESUME AT

9    1:15.  PLEASE ENJOY YOUR LUNCH.  BE OUTSIDE AT 1:15.

10             (JURY ABSENT, 12:05 P.M.)

11             THE COURT:  YOU MAY STEP DOWN.

12             THE WITNESS:  THANK YOU, SIR.

13             THE COURT:  WITH RESPECT TO THIS EXHIBIT 10, IT JUST

14   SEEMS TO BE -- ARE YOU STILL SEEKING TO OFFER THAT?  IT JUST

15   SEEMS LIKE A BLANK PAGE IN THE MANUAL.  IT SEEMS LIKE THE

16   WITNESS HAS ALREADY DISCUSSED THAT HE RECEIVED AN E-MAIL.

17   AND SO THIS E-MAIL THAT SEEMS BLOCKED OUT JUST SEEMS TO HAVE

18   A BLANK PAGE.

19             MR. SCHOSSBERGER:  I'M GOING TO SHOW YOU WHAT'S BEEN

20   REDACTED.

21             THE COURT:  WELL, I NEED TO SEE A COPY --

22             MR. SCHOSSBERGER:  IT'S FOR THE PURPOSE OF THE

23   USER'S MANUAL, FOR THE JURY TO HAVE IT.  IT'S AN ATTACHMENT

24   TO THE E-MAIL.  HE'S TESTIFIED TO THAT.  AND SO ALL THAT'S

25   REDACTED WAS FROM DOWLER TO COVERSTONE SAYING, SORRY IT TOOK
```

1    ME A WHILE TO GET THIS TO YOU.  THINGS ARE HECTIC, MIKE.

2              THEY HAD AN OBJECTION OF HEARSAY, SO I THOUGHT THEY

3    WERE GOING TO HAVE THAT -- OBJECT THAT IT'S HEARSAY, SO WE

4    JUST TOOK IT OUT AND WE HAVE THE PLAIN FACT THAT HE SENT HIM

5    THE USER'S MANUAL AS PART OF THE EXHIBIT.

6              MR. HENSRUDE:  IF THAT'S THE ONLY REDACTION, YOUR

7    HONOR, I'D BE HAPPY TO HAVE THE EXHIBIT IN ITS ENTIRETY, OR

8    JUST THE -- OR JUST THE MANUAL; EITHER ONE.  BUT NOT THE

9    REDACTION.

10             THE COURT:  ALL RIGHT.  SO IF YOU WANT TO THEN -- I

11   UNDERSTAND THERE IS NO OBJECTION THEN IF YOU PUT IN 10 WITH

12   THE FULL TEXT OF THE E-MAIL, AND THEN ATTACH THE USER MANUAL,

13   THERE IS NO OBJECTION TO THAT BEING RECEIVED?

14             MR. HENSRUDE:  THAT'S CORRECT, YOUR HONOR.

15             MR. SCHOSSBERGER:  HAPPY TO DO THAT.

16             THE COURT:  ALL RIGHT.  AND SO BRIEFLY WITH RESPECT

17   TO THE NOTES, MR. HENSRUDE, IF YOU HAVE ANY CASES -- YOU SAID

18   YOU HAD SOME CASES -- I'LL TAKE A LOOK AT THEM.

19             HAVE YOU COPIES FOR OPPOSING COUNSEL AS WELL?

20             MR. HENSRUDE:  YES, YOUR HONOR.

21             THE COURT:  I'LL LOOK AT THEM.  AND THEN I HAVE A

22   COUPLE QUESTIONS.

23             MR. HENSRUDE:  MAY I APPROACH, YOUR HONOR?

24             THE COURT:  YES.  YOU MAY GIVE IT TO MS. ROGERS.

25             JUST TO CONFIRM MY UNDERSTANDING OF SOME OF

1   THESE NOTES.  WE DON'T HAVE THAT MUCH TIME TO DISCUSS ALL OF

2   THEM AT THIS POINT.  BUT AS I UNDERSTAND IT, WITH RESPECT TO

3   NT, THOSE ARE NOTES THAT MR. COVERSTONE MADE BEFORE THE

4   MEETING?

5           MR. HENSRUDE:  THE FIRST TWO PAGES ARE, YES, YOUR

6   HONOR.

7           THE COURT:  AND THE HEARSAY EXCEPTION YOU'RE SEEKING

8   TO INTRODUCE THESE UNDER IS, DID YOU SAY, 801(1)?

9           MR. HENSRUDE:  YES, YOUR HONOR.  MY FIRST ARGUMENT

10  IS THAT THEY ARE NOT HEARSAY, BUT...

11          THE COURT:  THEY ARE STATEMENTS OF MR. COVERSTONE

12  ABOUT WHAT HE WANTED TO COVER IN THE MEETING.

13          MR. HENSRUDE:  I THINK THAT'S ACCURATE, YOUR

14  HONOR.

15          THE COURT:  ARE THEY BEING OFFERED TO SHOW THAT, IN

16  FACT, THESE WERE THE TOPICS THAT WERE DISCUSSED IN THE

17  MEETING?

18          MR. HENSRUDE:  NO, YOUR HONOR.

19          THE COURT:  SO THEY ARE BEING OFFERED TO SHOW THAT

20  THEY -- WERE THESE TOPICS DISCUSSED OR NOT DISCUSSED?

21          MR. HENSRUDE:  I THINK SOME OF THEM WERE; SOME WERE

22  NOT.

23          THE COURT:  SO SOME WERE; IS THIS THEN PROOF THAT

24  SOME OF THESE THINGS WERE DISCUSSED IN THE MEETING?

25          MR. HENSRUDE:  NO, YOUR HONOR.  LITERALLY WHAT I'M

1    GOING TO DO IS ASK IF HE TOOK THESE NOTES BEFOREHAND.  HE'S

2    GOING TO SAY, YES, I DID.  AND THEN I'M GOING TO NOT ASK

3    ABOUT ANY OF THE PARTICULAR NOTES.

4            THE COURT:  WHAT IS THE JURY -- IF THESE WERE

5    RECEIVED AND THEY LOOK AT THESE, WHAT DOES THIS MEAN TO THEM?

6            MR. HENSRUDE:  I THINK IT SHOWS FROM THE VERY

7    BEGINNING THAT, AS OF JANUARY 9TH, WHAT MR. COVERSTONE IS

8    TRYING TO DO, IN TERMS OF -- THIS WHOLE THING KIND OF GOES

9    TOGETHER, WHAT HE'S TRYING TO DO IN TERMS OF DUE DILIGENCE

10   AND WHAT'S REQUIRED TO GET HIM TO WHERE HE NEEDS TO GO.

11           IT'S NOT NECESSARILY ONE OF THESE ISSUES THAT IS

12   RELEVANT.  IT'S THAT HE HAS A LOT OF ISSUES OUT THERE

13   STILL.

14           THE COURT:  AND THEN THE THIRD PAGE, WHICH IS BATES

15   1925, THIS IS A NOTE, ARE THESE NOTES OF CONVERSATIONS THAT

16   MR. COVERSTONE HAD AFTER THE MEETING?

17           MR. HENSRUDE:  IT WAS -- THERE WAS A MEETING AND

18   THEN A DINNER.  THIS IS BETWEEN THE TWO.

19           THE COURT:  ALL RIGHT.  AND SO THESE ARE NOTES OF A

20   CONVERSATION THAT HE HAD WITH OTHERS?

21           MR. HENSRUDE:  YES, YOUR HONOR.

22           THE COURT:  AND WHAT ARE THESE BEING -- AND THESE

23   ARE ALSO OFFERED UNDER 801(1)?

24           MR. HENSRUDE:  THEY ARE, YOUR HONOR.  AND THERE IS,

25   I THINK, A SECOND HEARSAY ISSUE, BECAUSE OBVIOUSLY HE'S

1   TALKING ABOUT WHAT -- I'M SORRY.  803(1).

2            THE COURT:  THESE ARE 803(1)?

3            MR. HENSRUDE:  YEAH.  I'M SORRY.

4            THE COURT:  AND THE FIRST NOTES, YOU'RE RIGHT,

5   WERE --

6            MR. HENSRUDE:  803(1) AS WELL.  I MISSPOKE.

7            THE COURT:  THESE ARE -- NOW, THESE PURPORT TO BE

8   NOTES OF CONVERSATIONS HE HAD WITH SOMEONE ELSE; IS THAT

9   RIGHT?

10            MR. HENSRUDE:  YES, YOUR HONOR.

11            THE COURT:  AND WHAT ARE THESE BEING OFFERED FOR?

12            MR. HENSRUDE:  THIS IS THE REASON WHY, IN FACT, HE

13   ULTIMATELY CUT MIKE DOWLER OUT OF THE EQUATION AND DIDN'T

14   RELY ON HIS DUE DILIGENCE.

15            THE COURT:  THIS SAYS:  CHRIS COLBERT.  DOWLER WANTS

16   50 PERCENT, BUT NO WRITTEN AGREEMENT.  UNDER THE RADAR.  AND

17   SO WHO PURPORTEDLY SAYS THAT?

18            MR. HENSRUDE:  CHRIS COLBERT.

19            THE COURT:  AND SO THIS IS BEING OFFERED TO SHOW

20   THIS IS WHAT MR. COLBERT SAID TO HIM.

21            MR. HENSRUDE:  NO.  IT'S BEING -- WELL, THE ISSUE IS

22   THE EFFECT ON THE LISTENER.  THE FACT THAT WHEN MR. COLBERT

23   SAID DON'T DO IT, MR. COVERSTONE THEN CUT MIKE DOWLER OUT.

24   AND THAT'S WHY HE DIDN'T RELY ON HIS DUE DILIGENCE PRIOR TO

25   JANUARY 22ND, THAT THEY ARE SAYING ALLOWED MR. COVERSTONE TO

1    BE ABLE TO MAKE A DECISION AT THAT TIME.

2          THE COURT:  AND SO -- AND YOU PURPORT TO HAVE HIM

3    TESTIFY TO THAT; CORRECT?

4          MR. HENSRUDE:  I WOULD, YES.

5          THE COURT:  BUT THEN IN ADDITION TO HAVING HIM

6    TESTIFY TO WHAT SOMEONE TOLD HIM FOR THE EFFECT ON THE

7    HEARER, THEN YOU WANT TO INTRODUCE HIS HANDWRITTEN NOTES OF

8    THAT OCCURRING; IS THAT RIGHT?

9          MR. HENSRUDE:  I WOULD LIKE TO DO THAT, YOUR

10   HONOR.

11         THE COURT:  AND THAT EXCEPTION IS UNDER WHAT,

12   803(1)?

13         MR. HENSRUDE:  YES.

14         THE COURT:  ALL RIGHT.  THEN THE NEXT IS AU.  AND

15   ARE THESE ALSO OFFERED UNDER 803(1)?

16         MR. HENSRUDE:  THEY ARE, YOUR HONOR.

17         THE COURT:  THERE IS THREE PAGES OF NOTES.

18         MR. HENSRUDE:  YES, YOUR HONOR.

19         THE COURT:  AND THEY ARE ALSO 803(1)?

20         MR. HENSRUDE:  YES, YOUR HONOR.

21         THE COURT:  AND THESE ARE NOTES THAT TOOK -- THAT HE

22   TOOK DURING THE MEETING?

23         MR. HENSRUDE:  THAT'S CORRECT, YOUR HONOR.  WITH THE

24   EXCEPTION OF 1 THROUGH 3, THOSE ARE ACTUALLY NOT

25   MR. COVERSTONE'S NOTES AT ALL.  THOSE WERE WRITTEN BY MIKE

1    DOWLER.  I'D HAVE NO OBJECTION TO REDACTING THEM.

2         THE COURT:  WHEN YOU SAY "1 THROUGH 3," I DON'T

3    UNDERSTAND WHAT THE 1 THROUGH 3 IS.

4         MR. HENSRUDE:  ON THE FIRST PAGE, YOU'LL SEE THERE

5    IS NUMERICAL HANDWRITING.  THAT'S NOT MR. COVERSTONE'S

6    HANDWRITING.  THAT'S MIKE DOWLER.  I HAVE NO OBJECTION TO

7    REDACTING IT, IF THAT'S THE ISSUE.

8         THE COURT:  AND THEN THE REST OF THESE ARE HIS NOTES

9    OF WHAT OCCURRED DURING THE MEETING?

10        MR. HENSRUDE:  THAT IS ACCURATE, YOUR HONOR.

11        THE COURT:  AND THEY ARE OFFERED TO SHOW THAT, IN

12   FACT, THIS IS WHAT HAPPENED DURING THE MEETING; IS THAT

13   RIGHT?

14        MR. HENSRUDE:  MORE TO TALK ABOUT THE ISSUES THAT

15   WERE DISCUSSED.  BUT I THINK TO A CERTAIN EXTENT, THE COURT

16   IS CORRECT.

17        THE COURT:  ALL RIGHT.  SO THESE WOULD SHOW THAT --

18   THIS IS OFFERED TO SHOW THAT, IN FACT, WHAT WAS SAID DURING

19   THE MEETING WERE THESE THINGS THAT ARE REFERENCED ON THE

20   NOTES; IS THAT RIGHT?

21        MR. HENSRUDE:  NOT ENTIRELY, YOUR HONOR.  I MEAN,

22   TAKE THE FIRST ONE ON THE SECOND PAGE, FOR EXAMPLE.  EMPLOYED

23   AT MICRON, YES.  AND THEN THE THING UNDER THAT SAYS WAIVER.

24   THAT'S -- THE REASON WE'RE OFFERING THAT IS TO SHOW THAT

25   THERE WAS A PENDING ISSUE.  SO IN TERMS OF MR. COVERSTONE'S

```
 1    STATE OF MIND, HE COULD NOT HAVE POSSIBLY ENTERED INTO A
 2    CONTRACT UNTIL THAT PENDING ISSUE HAD BEEN RESOLVED.
 3           THE COURT:  NOW, CERTAINLY HE CAN TESTIFY TO
 4    THOSE -- THOSE THINGS.  OR I ASSUME YOU PURPORT -- YOU INTEND
 5    TO HAVE HAVE HIM TESTIFY AS TO WHAT HAPPENED AT THE MEETING,
 6    WHAT WAS SAID AND WHAT HIS UNDERSTANDING OF WHAT WAS SAID; IS
 7    THAT RIGHT?
 8           MR. HENSRUDE:  I DO, YOUR HONOR.
 9           THE COURT:  AND THEN IN ADDITION TO THAT, YOU WISH
10    TO OFFER THESE NOTES AS EVIDENCE THAT, IN FACT, THOSE ARE THE
11    THINGS THAT WERE SAID?
12           MR. HENSRUDE:  IT IS CORROBORATION IN THAT SENSE,
13    YOUR HONOR.  SO I WON'T DENY THAT THAT PART OF IT IS TRUE,
14    YES.  THAT HE IS -- THIS IS IN PART -- OBVIOUSLY, HE'S SAYING
15    WHAT WAS BEING DISCUSSED AT THAT POINT, WHAT HOYT FLEMING
16    TOLD HIM, FOR EXAMPLE.
17           THE COURT:  AND SO THIS IS UNDER 803(1)?
18           MR. HENSRUDE:  IT IS.  I THINK INDEPENDENTLY ALSO IF
19    IT'S, LIKE THE MIDDLE DOWN, IF IT'S A STATEMENT MADE BY HOYT
20    FLEMING, THEN I THINK THERE IS A DIFFERENT HEARSAY
21    EXCEPTION.
22           THE COURT:  WELL, ALL I CAN -- ALL I CAN ADDRESS IS
23    I'VE GOT THREE PAGES OF NOTES, AND I'M ASKING YOU WHAT THE
24    EXCEPTION IS.
25           MR. HENSRUDE:  YEAH.
```

1        THE COURT:  AND SO I THINK I UNDERSTAND YOU'RE

2   TELLING ME IT'S 803(1); IS THAT RIGHT?

3        MR. HENSRUDE:  WITH RESPECT TO THE NOTES, I THINK

4   THAT'S THE GENERAL ONE WE BELIEVE THAT ALLOWS NOTES.

5        THE COURT:  WHEN YOU SAY "GENERAL ONE," I MEAN ALL

6   OF THEM.  I MEAN -- WHEN YOU SAY "GENERAL," THAT LEADS ME TO

7   BELIEVE THAT MAYBE THERE IS SOME OTHER THEORIES.  AND THAT'S

8   WHAT I'M TRYING TO FIND OUT NOW IS -- I JUST WANT TO MAKE

9   SURE THAT I UNDERSTAND THE THEORIES WITH RESPECT TO EACH

10  ONE.

11       MR. HENSRUDE:  OKAY.  WELL, LET ME KIND OF PUT IT IN

12  A BROAD SENSE FOR THE COURT THEN.  I DO BELIEVE THAT IN ALL

13  CASES, NOTES TAKEN DURING A MEETING ARE 803(1) HEARSAY

14  EXCEPTION.

15       THE COURT:  I UNDERSTAND THAT.  AU, LET'S KEEP

16  SPECIFICALLY TO THE EXHIBITS I'M SPEAKING ABOUT.

17       MR. HENSRUDE:  WITH RESPECT TO AU.

18       THE COURT:  ALL RIGHT.

19       MR. HENSRUDE:  ABOUT HALFWAY DOWN, BLOCKED ESCORT

20  AND UNIDEN FROM GPS AND RADAR.  I WOULD OFFER THAT ALSO AS AN

21  ADMISSION BY A PARTY OPPONENT.  THAT'S WHAT HOYT FLEMING TOLD

22  HIM.

23       AND THEN WITH RESPECT TO --

24       THE COURT:  AND HE CAN CERTAINLY SAY THAT.  HE CAN

25  SAY THAT.  BUT THEN THE ISSUE IS HE ALSO WROTE IT DOWN, AND

1   YOU WANT TO INTRODUCE THAT HE WROTE THIS DOWN AS WELL?

2           MR. HENSRUDE:  I DO, YOUR HONOR.

3           THE COURT:  AND SO THIS ONE LINE THEN IS ADMISSION

4   BY A PARTY OPPONENT?

5           MR. HENSRUDE:  I BELIEVE IT IS.

6           THE COURT:  AND EVERYTHING ELSE IS 803(1)?

7           MR. HENSRUDE:  THAT'S ALSO ACCURATE.  THEN -- AND

8   THEN THE ADMISSION BY PARTY OPPONENT AT THE VERY BOTTOM,

9   WHERE IT SAYS 5 TO 25 MILLION-DOLLAR RETURN.

10          THE COURT:  HOW WOULD I -- WHERE WAS THAT?

11          MR. HENSRUDE:  IT'S THE VERY BOTTOM OF AU-2, YOUR

12  HONOR.

13          THE COURT:  ALTHOUGH -- THIS IS -- THIS IS

14  MR. COVERSTONE'S STATEMENT OF WHAT MR. FLEMING SAID.

15          MR. HENSRUDE:  YES.  I MEAN, HE'S WRITING WHAT

16  MR. FLEMING SAYS; SO I THINK THAT'S A FAIR WAY TO

17  CHARACTERIZE IT.

18          THE COURT:  ALL RIGHT.  AND THEN WITH RESPECT TO AY,

19  THESE ARE THE NOTES THAT OCCURRED AFTER THE TELEPHONE

20  CONVERSATION?

21          MR. HENSRUDE:  IMMEDIATELY FOLLOWING.

22          THE COURT:  AND THEY ARE OFFERED UNDER, IS IT

23  803(1)?

24          MR. HENSRUDE:  THEY ARE ALSO OFFERED UNDER 803(1).

25          THE COURT:  SO IT'S 803(1), YOU'RE SEEKING TO

```
1    INTRODUCE THESE UNDER 803(1)?

2              MR. HENSRUDE:  YES.  THESE ALSO -- THERE IS TWO

3    LAYERS OF HEARSAY HERE, THEORETICALLY.  THE OTHER ONE WOULD

4    BE THE STATE OF MIND ISSUE ABOUT WHAT MR. COVERSTONE -- WHAT

5    HIS STATE OF MIND WAS AFTER AND DURING THIS PHONE CALL.

6              THE COURT:  AND SO IT'S 803(1) IS THE EXCEPTION

7    YOU'RE RELYING ON?

8              MR. HENSRUDE:  THAT IS THE FIRST ONE.  THAT IS THE

9    FIRST ONE, YES.

10             THE COURT:  AND THEN BJ, THESE ARE NOTES THAT HE

11   MADE TO HIMSELF DURING -- JUST DOING DUE DILIGENCE, NOTES

12   THAT HE MADE ABOUT DUE DILIGENCE HE WAS DOING?

13             MR. HENSRUDE:  BJ IS MORE MR. COVERSTONE SITTING

14   THERE ABOUT TO START DUE DILIGENCE, AND HE SAYS WHAT ARE THE

15   PENDING --

16             THE COURT:  IS HE WITH SOMEBODY AT THIS TIME?

17             MR. HENSRUDE:  NO, YOUR HONOR.

18             THE COURT:  THESE ARE NOTES HE MADE HIMSELF?

19             MR. HENSRUDE:  YEAH.  THEY ARE SIMILAR -- ONE OF THE

20   CASES WE PROVIDED TO THE COURT WAS ONE IN WHICH THEY WENT TO

21   A MEAT PACKING -- MR. AGLE MAY BE BETTER EQUIPPED TO ADDRESS

22   THIS ISSUE THAN ME.  AT THAT TIME HE TOOK AN INVENTORY AND

23   TOOK NOTES OF IT.  THIS, IN MY VIEW, IS LIKE MR. COVERSTONE'S

24   INVENTORY.

25             THE COURT:  WELL, I HAVE TO LOOK AT THE CASES, BUT
```

1    THIS IS BEING OFFERED UNDER 803(1)?

2           MR. HENSRUDE:  IT IS.  YOUR HONOR, I THINK IT'S FAIR

3    TO SAY, IF THIS ASSISTS THE COURT, I BELIEVE THE REASON THE

4    NOTES THEMSELVES ARE ADMISSIBLE IS 803(1) IN EVERY INSTANCE.

5    WE CAN DO -- I BELIEVE IT'S 803(5), YOU KNOW, WOULD BE THE

6    PAST STATEMENT REPORTED, BUT THAT, OF COURSE, WOULDN'T ADMIT

7    THEM, AND WE CAN DEAL WITH THAT ON THE STAND.

8           BUT WITH RESPECT TO THE NOTES THEMSELVES, IT IS

9    803(1).  THERE MAY BE HEARSAY STATEMENTS WITHIN THE NOTES, WE

10   MAY HAVE A DOUBLE-HEARSAY PROBLEM, AND I WOULD BE HAPPY TO

11   EXPLAIN ON THOSE CASES.

12          THE COURT:  I DON'T KNOW IF THERE IS DOUBLE HEARSAY

13   OR NOT, BECAUSE THAT'S WHY I -- ALL I CAN RULE ON IS WHAT'S

14   IN FRONT OF ME.  AND SO AT THIS POINT, IF YOU'RE SAYING THIS

15   IS THE THEORY, THIS IS WHY -- SO FAR THE OBJECTION IS

16   HEARSAY.  AND SO THAT'S WHY WE'RE ADDRESSING THE EXCEPTION.

17   SO TO THE EXTENT -- THE ONLY THING I'LL RULE ON AT THIS POINT

18   IS THE HEARSAY OBJECTION.

19          YOUR POSITION IS THESE ARE ADMISSIBLE UNDER 803(1)?

20          MR. HENSRUDE:  IT IS, YOUR HONOR.

21          THE COURT:  AND SO I'LL RULE ON THOSE OR -- YOU CAN

22   ATTEMPT TO LAY YOUR FOUNDATION AND THEN I THINK I CLEARLY

23   UNDERSTAND YOUR THEORY.

24          WITH BK, THOSE ARE MR. COVERSTONE'S NOTES TO HIMSELF

25   ABOUT THE DUE DILIGENCE?

42

1            MR. HENSRUDE:  YEAH.  IT GOES TO THE SAME KIND OF

2     THING.  THIS IS WHERE HE'S STARTING TO LOOK AT WHERE IT IS

3     AND WHAT HE THINK THE PATENT PROPOSES.

4            THE COURT:  THAT'S 803(1)?

5            MR. HENSRUDE:  YES, YOUR HONOR.

6            THE COURT:  AND SIMILARLY THEN WITH RESPECT TO BL,

7     803(1)?

8            MR. HENSRUDE:  YES, YOUR HONOR.  THE CONVERSATION OF

9     MR. FLEMING.

10           THE COURT:  AND AS -- SO THESE ARE NOTES OF A

11    CONVERSATION THAT MR. COVERSTONE MADE FOR HIMSELF DURING THE

12    CONVERSATION; IS THAT RIGHT?

13           MR. HENSRUDE:  I THINK THAT'S FAIR TO SAY.

14           THE COURT:  ALL RIGHT.  AND THEN BX, THOSE ARE

15    NOTES -- THESE ARE NOTES OF MR. COVERSTONE, AND THEY REFLECT

16    NOTES THAT HE MADE AFTER CONVERSATIONS WITH A NUMBER OF

17    INDIVIDUALS; IS THAT RIGHT?

18           MR. HENSRUDE:  A FEW OF THEM ARE AFTER; MANY OF THEM

19    ARE ACTUALLY DURING.

20           THE COURT:  SO SOME OF THESE ARE NOTES HE MADE

21    DURING THE CONVERSATIONS WITH OTHERS AND SOME HE MADE AFTER?

22           MR. HENSRUDE:  I WOULD CHARACTERIZE ALMOST ALL OF

23    THESE AS DURING, YOUR HONOR.  BUT I THINK HE WILL TESTIFY

24    THAT A COUPLE OF THEM HE WROTE A NOTE AFTER AS A FOLLOW-UP

25    ITEM.

```
 1          THE COURT:  SO THEY WERE NOTES DURING THE
 2   CONVERSATION OR AFTER THE CONVERSATION, SOMETIME AFTER THE
 3   CONVERSATION?
 4          MR. HENSRUDE:  I THINK VIRTUALLY ALL ARE DURING,
 5   EXCEPT FOR THIS LAST PAGE.
 6          THE COURT:  ALL RIGHT.  AND THOSE ARE ALSO OFFERED
 7   UNDER 803(1); IS THAT CORRECT?
 8          MR. HENSRUDE:  IT IS, YOUR HONOR.
 9          THE COURT:  ALL RIGHT.  AND SO THEN CH, THAT'S --
10   THOSE ARE NOTES OF THINGS THAT HE DID DURING THE DUE
11   DILIGENCE; IS THAT RIGHT?
12          MR. HENSRUDE:  I THINK THOSE ARE HIS IDEAS AS HE
13   GOES ALONG.  I DON'T SEE ANY CONVERSATIONS REFLECTED IN
14   HERE.
15          THE COURT:  AND THAT'S 803(1)?
16          MR. HENSRUDE:  IT IS, YOUR HONOR.
17          THE COURT:  AND THE SAME WITH CI, 803(1) AS WELL?
18   AND THAT'S ALSO DUE DILIGENCE, THINGS THAT HE DID DURING THE
19   DUE DILIGENCE?
20          MR. HENSRUDE:  YEAH.  DOWN TO "2-6 H.F.," WHICH IS
21   PHONE CALL WITH HOYT FLEMING, IT IS.
22          AND THEN DOWN TO 2-8 UNDER "HANK," THOSE NEXT TWO
23   ENTRIES ARE PHONE CALLS WITH HANK.  EVERYTHING ELSE IS DUE
24   DILIGENCE.
25          THE COURT:  AND THEN THAT WOULD PURPORT TO BE HIS
```

44

1    STATEMENT AS TO WHAT HAPPENED IN THE CONVERSATION?

2            MR. HENSRUDE:  I WOULD CALL IT PRESENT-SENSE

3    IMPRESSION OF WHAT WAS SAID, WHILE THE CONVERSATION WAS

4    ONGOING.

5            THE COURT:  ALL RIGHT.  AND IT'S OFFERED TO SHOW

6    THAT THAT'S, IN FACT, WHAT HAPPENED?

7            MR. HENSRUDE:  IT'S CLEARLY OFFERED WITH RESPECT TO

8    SAYING THAT THAT IS SOMETHING THAT WAS DISCUSSED IN THE PHONE

9    CALL.

10           THE COURT:  ALL RIGHT.  ALL RIGHT.  I'LL TAKE A LOOK

11   AT THE CASES THAT YOU'VE SUBMITTED, AND YOU CAN ATTEMPT TO

12   LAY THE FOUNDATION, BUT I -- YOU KNOW, YOU CAN LAY THE

13   FOUNDATION FOR THE ADMISSIBILITY OF THE NOTES.

14           I HAVE YOUR THEORY UNDER 803(1).  AND THEN IF THERE

15   IS OTHERS THAT COME INTO PLAY, BASED UPON THE EXAMINATION,

16   THEN THAT MAY CHANGE THINGS.  BUT I'LL LOOK AT THE CASES THAT

17   YOU'VE GIVEN ME.

18           MR. HENSRUDE:  THANK YOU, YOUR HONOR.

19           THE COURT:  ALL RIGHT.  WE'LL SEE EVERYBODY BACK AT

20   1:15.

21           (RECESS, 12:22 P.M.)

22           (CHANGE IN COURT REPORTERS.)

23

24

25

1                          --oOo--

2                C E R T I F I C A T I O N

3        I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
4  STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
   CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
5  AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
   CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
6  FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
   OF THE UNITED STATES JUDICIAL CONFERENCE.

7

8        DATED:  APRIL 14, 2011, AT SAN DIEGO, CALIFORNIA.

9                          S/CAMERON P. KIRCHER
                           CAMERON P. KIRCHER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25